**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE KRYSTAL COMPANY, *et al.*,[1] | ) | Case No. 20-61065 |
| | ) | |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER**
**(I) AUTHORIZING PAYMENT OF PREPETITION WAGES, PAYROLL**
**TAXES, CERTAIN EMPLOYEE BENEFITS, AND RELATED EXPENSES;**
**(II) DIRECTING BANKS TO HONOR RELATED PREPETITION**
**TRANSFERS; AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this *Emergency Motion for Entry of an Order (I) Authorizing Payment of Prepetition Wages, Payroll Taxes, Certain Employee Benefits, and Related Expenses; (II) Directing Banks to Honor Related Prepetition Transfers; and (III) Granting Related Relief* (the "Motion"). In support of this Motion, the Debtors respectfully represent as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over these cases and this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: The Krystal Company (4140); Krystal Holdings, Inc. (5381); and K-Square Acquisition Co., LLC (8916). The location of the Debtors' corporate headquarters and service address is: 1455 Lincoln Parkway, Suite 600, Dunwoody, Georgia 30346.

2.      The bases for the relief requested herein are sections 105(a), 363(b), 507, 541, 1107, and 1108 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3.      On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division (the "Court").  The Debtors have continued in possession of their properties and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner, and no official committee has yet been established in these cases.

4.      The factual background relating to the Debtors' commencement of these cases is set forth in detail in the *Declaration of Jonathan M. Tibus in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") filed on the Petition Date and incorporated herein by reference.

**The Employee Obligations**

5.      As of the Petition Date, the Debtors employ approximately 4,890 people (the "Employees"), of which approximately 55 operate out of their corporate office located in Dunwoody, Georgia.  Of the Employees, 291 are full-time salaried Employees, 743 are full-time hourly Employees, and 3,856 are part-time hourly Employees.

6.      The Debtors employ six independent contractors (the "Independent Contractors").

7.      As described more fully below, in the ordinary course of business the Debtors have incurred certain prepetition employee obligations that remain unpaid as of the Petition Date. Even though arising prior to the Petition Date, these obligations (collectively, the "Employee Obligations") will become due and payable in the ordinary course of the Debtors' business on and after the Petition Date.[2]  These obligations can generally be categorized as follows:  (a) wages, salaries, and other compensation; (b) payroll taxes; (c) vacation and holiday programs; (d) qualified 401(k) plan obligations; (e) health and welfare benefits; and (f) miscellaneous other benefits provided to the Employees in the ordinary course of business.  These obligations are described as follows:[3]

- *Wages, Salaries, and Other Compensation.* Wages, salaries, and other compensation consist of prepetition wages and salaries owed to the Debtors' Employees (the "Payroll Obligations"), consisting of (i) wages, salaries and other compensation owed to corporate Employees ("Administrative Payroll") and (ii) wages, salaries, and other compensation owed to all other Employees ("Operating Payroll").  All Employees are paid on a bi-weekly basis, with Administrative Payroll last run on January 15, 2020 and Operating Payroll last run on January 8, 2020.  The average monthly gross Payroll Obligations over the past six months was approximately $775,018 for Administrative Payroll and $4,900,000 for Operating Payroll.  These gross amounts include certain deductions described separately below, such as payroll taxes owed by the Employees and 401(k) contributions.  Payroll Obligations are electronically deposited directly into the Employees' bank accounts.  As of the Petition Date, the Debtors estimate that they owe approximately $1,482,745 on account of Operating Payroll and no amounts on account of Administrative Payroll.  Accordingly, as of the Petition Date, the Debtors estimate that they owe approximately $1,482,745 total in gross Payroll Obligations.[4]

---

[2]   No amount proposed to be paid to any individual Employee will exceed the priority unsecured cap of $13,650 set forth in 11 U.S.C. §507(a)(4) and (5).

[3]   In addition to the benefits described herein, the Debtors maintain a workers' compensation plan, which is discussed in the Debtors' *Emergency Motion for Entry of an Order (I) Authorizing Debtors to Continue Prepetition Insurance and Workers' Compensation Programs and to Pay Prepetition Premiums and Related Obligations; and (II) Granting Related Relief.*

[4]   This amount excludes prepetition severance obligations.

- *Independent Contractors' Compensation*.  These obligations consist of amounts owed as compensation to six Independent Contractors.  The average monthly gross amount of these obligations is approximately $33,000.  As of the Petition Date, the Debtors estimate that they owe approximately $28,875 to the Independent Contractors.

- *Payroll Taxes*.  These obligations consist of federal, state, and local income taxes, Social Security, and Medicare taxes (the "Payroll Taxes").  The Payroll Taxes include the amounts owed by the Employees that the Debtors withhold from the gross amount of the Employees' wages or salary as well as the amounts separately owed by the Debtors.  The Debtors' average Payroll Taxes for each payroll over the last six months was approximately $290,273 for Administrative Payroll and $1,342,505 for Operating Payroll.  This includes approximately $62,938 for the Administrative Payroll employer obligation and $495,652 for the Operating Payroll employer obligation, and approximately $227,335 and $846,854 or the Administrative Payroll and Operating Payroll employee components, respectively.  As of the Petition Date, the Debtors estimate that they owe approximately $532,783 in employer and employee prepetition Payroll Taxes for Administrative Payroll and Operating Payroll.  This amount is not included in the Payroll Obligations described in the paragraph above.

- *Holiday, Vacation and Sick Day Programs*.  These obligations consist of time off for vacation, illness and company holidays.

  - *Holidays.* Full-time Employees at the Debtors' corporate office and full-time Employees at the District Manager level and above (the "Eligible Corporate Employees") receive ten paid holidays and seven paid early release half days per year. Full-time assistant general managers and general managers at Debtors' restaurants (the "Eligible Restaurant Employees") as well as hourly Employees receive two paid holidays, Thanksgiving Day and Christmas Day.

  - *Sick Days*.  Both Eligible Restaurant Employees and Eligible Corporate Employees receive two weeks of sick days per year.  Unused sick days may be carried over to the following year, provided that no more than 26 weeks may be carried over.  Hourly Employees are not eligible for sick leave.

  - *Vacation*.  Employees receive paid vacation based on years of service. Eligible Restaurant Employees receive annual paid vacation as follows: (i) Eligible Restaurant Employees receive two weeks of vacation; and (ii) after five years of employment, Eligible Restaurant Employees receive three weeks of vacation. Eligible Corporate Employees at or above Director Level (the "Eligible Directors") receive annual paid vacation as follows: (a) Eligible Directors receive three weeks of vacation; and (b) after five years of employment, Eligible Directors receive four weeks of vacation. Eligible Corporate Employees below the Director Level (the "Eligible Corporate

4

Managers") receive annual paid vacation as follows: (y) Eligible Corporate Managers receive two weeks of vacation; and (z) after five years of employment, Eligible Corporate Managers receive three weeks of vacation. Hourly employees averaging 30 hours or more per week are eligible for one week of paid vacation after one year of employment and two weeks of paid vacation after five years of employment. Unused vacation time cannot be carried over under any of the policies.

     o   *Personal.*  Eligible Corporate Employees also receive two personal days per year. Unused personal days cannot be carried over.

Each pay period salaried Employees accrue a portion of their vacation time as set forth above.  Vacation time does not carry over to the next calendar year. The Debtors desire to continue to honor their obligations for holidays, sick days and vacation on a going forward basis.  As of the Petition Date, the Debtors estimate that the aggregate amount of accrued vacation time equals approximately $3,281,885.  This amount is not included in the total Payroll Obligations described above.

- *Qualified 401(k) Plan Obligations.* The Debtors maintain a 401(k) plan sponsored by Fidelity (the "401(k) Plan"), under which eligible Employees may defer a portion of their salary on a pre-tax basis, post-tax basis, or a combination.  After completing six months (1040 hours) of employment, Employees that are 21 years of age or older can contribute up to 100% of their annual pay (up to the maximum deferral amount). Under the plan, the Debtors match 100% of each participating Employee's contributions for the first 3% of the participating Employee's salary, and 50% of each participating Employee's contributions for the next 2% of the Employee's salary. Contributions are deducted from the Employee's bi-weekly pay.

Approximately 261 Employees in total participate in the 401(k) Plan. On account of these participating Employees, the Debtors withhold and remit to Fidelity approximately $28,320 every two weeks on account of 401(k) Plan contributions ("401(k) Withholdings"), and the Debtors remit to Fidelity approximately $14,069 every two weeks on account of matching 401(k) contributions.

Because the Debtors' payroll is paid in arrears, as of the Petition Date the Debtors estimate that they owe approximately $12,601 in accrued 401(k) Withholdings that have not yet been remitted to Fidelity, and owe $7,488 in matching 401(k) contributions. These amounts are not included in the estimated total Payroll Obligations above. The Debtors also deduct and transmit certain payments to Fidelity relating to their Employees' 401(k) loan payments (the "401(k) Loan Withholdings"). The average monthly loan payments in 2019 were $11,403. As of the Petition Date, the Debtors estimate that they owe approximately $3,400 in unpaid 401(k) Loan Withholdings to Fidelity, which amount is not included in the estimated total Payroll Obligations above.

The Debtors seek authority, not direction, to pay prepetition amounts in respect of 401(k) Withholdings, 401(k) matching contributions, and 401(k) Loan Withholdings in the ordinary course of business on a postpetition basis.

- *Expense Reimbursement and Other Benefits.*  The Debtors reimburse eligible Employees who incur business expenses in the ordinary course of performing their duties on behalf of the Debtors. These reimbursement obligations include such things as mileage reimbursement, meals and travel expenses, relocation expenses and office supply reimbursements.  The average monthly amount of these reimbursement obligations is approximately $129,000.  As of the Petition Date, the Debtors estimate that they owe approximately $64,500 in expense reimbursements. This amount is not included in the total Payroll Obligations above.  The Debtors also provide a communications allowance up to $100 on a monthly basis for certain Employees.

- *Tax Advantaged Health Reimbursement HSA and FSA Accounts.* Full-time management Employees of the Debtors working a minimum of 30 hours per week ("Eligible Management") and full-time non-management Employees of the Debtors working a minimum of 30 hours per week ("Eligible Crew") are both eligible for certain tax advantaged accounts through the Debtors. The Debtors offer Eligible Management and Eligible Crew the option of contributing a portion of their pre-tax wages into tax-exempt health savings accounts ("HSA") that can be used to pay qualified health care expenses.  A third-party vendor, Optum Bank, maintains the HSAs.  The Debtors request the authority to maintain the HSA program in the ordinary course of business regardless of whether the qualified expenses were incurred before or after the Petition Date.  Under Debtors' 2020 benefits policy, the Debtors have agreed to contribute $250 towards the employee HSAs for those with employee only coverage, and $500 for those with covered dependents. The Debtors also offer Eligible Management and Eligible Crew the alternative option of contributing a portion of their pre-tax wages into tax-exempt Flexible Spending Accounts ("FSA") that can be used to reimburse qualified health care or dependent care expenses. United Healthcare maintains the FSAs. Pursuant to Internal Revenue Service regulations, the money in FSAs must be used by no later than March 15 of the following year; up to $500 in unused funds may be rolled over into the following plan year.  Federal law limits contributions to FSAs to $2,750 for traditional FSAs and $5,000 per year for "dependent care" FSAs.  The Debtors request the authority to maintain the FSA program in the ordinary course of business regardless of whether the qualified expenses were incurred before or after the Petition Date. The total monthly cost to the Debtors for the HSA and FSA programs is $4.42 per enrolled Employee. As of the Petition Date, the Debtors estimate that they owe approximately $1,655 on account of the HSA and FSA accounts.  Additional "pass through" programs are discussed below.

- *Health and welfare benefits.* The Debtors provide several health and welfare benefit plans for their Employees, including insurance plans relating to medical, vision, dental, disability, and life insurance (collectively, the "Employee Benefits"). The Debtors' estimated average monthly costs in the aggregate on account of the Employee Benefits for 2020 is $242,888. By way of comparison, the average monthly costs of the plans were $233,889 in 2019 and $257,460 in 2018.

  - *Medical Plans.* The Debtors maintain and provide five medical care plans for their Employees (the "Medical Plans"), which they will be increasing to six plans for the 2020 year, through Century Healthcare and United Healthcare. Eligible Management may enroll in one of four plans (the "Management Plans") offered to them after 30 days of employment. Eligible Crew may enroll in one of two plans (the "Crew Plans"), offered to them after six months of employment averaging 30 hours per week. The Debtors pay a portion of the premiums for the Medical Plans and the balance is deducted from the Employees' paychecks.

    - The Debtors' healthcare costs include health insurance for current and former Employees. There are seven former Employees covered under COBRA (covered 18 months from departure). The Debtors pay an administrative fee of approximately $260 per month to cover Employees under COBRA.

    The Debtors' average monthly costs in the aggregate on account of the Medical Plans and COBRA over the last six months is approximately $329,584. As of the Petition Date, the Debtors owe approximately $323,000 on account of the Medical Plans and COBRA and hold approximately $143,618 in premiums collected from Employees but not yet remitted to the carrier.

  - *Basic Life Insurance.* The Debtors provide life insurance to Eligible Management at no cost to the Employee. The Debtors' average monthly premium is approximately $7,500. As of the Petition Date, the Debtors owe approximately $2,714 on account of basic life insurance.

**The following are "pass through" programs for which the Debtors make no contributions or payments. The Debtors withhold the necessary amounts from the Employee's paycheck and remit the amounts to the benefit provider. Accordingly, the Debtors ask for authority to remit amounts collected from the Employees prior to the Petition Date but not yet remitted to the carrier.**

  - *Additional Life and AD&D Insurance.* The Debtors permit Eligible Management to purchase supplemental life insurance and AD&D insurance. The Debtors collect funds from the Employees and remit to the insurance company, but do not provide any reimbursement for this program. There is no

material cost to the Debtors for this program.  As of the Petition Date, the Debtors hold approximately $1,668 in premiums collected from Employees but not yet remitted to the carrier.

- o  *Short Term Disability and Long Term Disability*.  The Debtors provide the option to purchase short-term and long-term disability insurance to Eligible Management. The Debtors collect funds from the Employees and remit the funds to the insurance company, but do not provide any reimbursement for the programs. As of the Petition Date, the Debtors hold approximately $3,518 in short term disability premiums and $3,063 in long-term disability insurance premiums collected from Employees but not yet remitted to the carrier. This amount is not included in the total Payroll Obligations above.

- o  *Dental and Vision*.  Eligible Management is given the opportunity to participate in a dental plan (the "Dental Plan") and a vision plan (the "Vision Plan") administered by United Healthcare.  Under the Dental Plan, Employees pay a yearly deductible of $100, with the option of paying an additional $100 for increased benefits. Under the Vision Plan, Employees have a $15 exam copay and a $30 materials copay for in-network providers. As of the Petition Date, the Debtors hold approximately $6,620 in premiums collected from Employees but not yet remitted to the carrier. This amount is not included in the total Payroll Obligations above.

- • *Independent Director Fees and Expenses*.  On December 12, 2019, the Board of Directors of The Krystal Company (the "Company") appointed Mike Elliott to serve as an independent director for the Company.  Aside from serving as a director, Mr. Elliott has no material relationship with the Company, its affiliates, the Company's sole stockholder and such stockholder's affiliates, or the Company's executives, and Mr. Elliott has no material affiliations with the Company or its sole stockholder that would cause Mr. Elliott to be unable to (a) exercise independent judgment based on the best interests of the Company or (b) make decisions and carry out respective responsibilities as a member of the Board of Directors, in each case, in accordance with the terms of the Company's Fourth Amended and Restated Charter, By-laws and applicable law.  As compensation for serving in this role, Mr. Elliott is paid $90,000 per year, payable monthly in advance on the first business day of each month.  In the event that Mr. Elliott ceases serving on the Board, the monthly payments are terminated; provided, however, that Mr. Elliott shall not receive less than $90,000, in the aggregate, for his service on the board.  The Debtors are also obligated to reimburse Mr. Elliott for all reasonable and documented out-of-pocket expenses (including reasonable legal fees and expenses) incurred in connection with his service as a member of the board.  As of the Petition Date, the Debtors are current with respect to these payments.  By this Motion, the Debtors seek authority to continue paying these amounts (collectively, the "Independent Director Fees and Expenses").

## RELIEF REQUESTED

8.      The Debtors seek authority, but not direction, to pay the Employee Obligations that become due and owing during these chapter 11 cases and to continue their practices, programs, and policies that were in effect as of the Petition Date.  The Debtors request that all banks and other financial institutions be authorized and directed, when requested by the Debtors and in the Debtors' sole discretion, to receive, process, honor, and pay any and all checks drawn on the Debtors' accounts to pay the Employee Obligations, provided that sufficient funds are available in the applicable accounts to make the payments and transfers.  The Debtors similarly request that they be authorized to pay any cost or penalty incurred by their Employees in the event that a check issued by the Debtors for payment of the Employee Obligations is inadvertently not honored because of the filing of the Debtors' bankruptcy cases.  Though the Debtors estimate any such costs or penalties to be *de minimis* in amount, if the Debtors are not authorized to pay such costs or penalties, then their Employees will suffer the exact type of harm that this Motion seeks to prevent and the Debtors will suffer from loss of employee goodwill.

## BASIS FOR RELIEF REQUESTED

### A.      Cause Exists to Authorize Payment of the Employee Obligations

9.      Payment of the Employee Obligations is justified by sections 363(b), 105(a), and 507(a) of the Bankruptcy Code and similar relief has been granted in numerous cases.  Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code require that certain claims for prepetition wages, salaries, commissions, vacation, sick leave and employee benefit related contributions be accorded priority in payment in an amount not to exceed $13,650 for each individual Employee

9

(to the extent such amounts accrued within 180 days of the Petition Date).  The Debtors request authority to pay the Employee Obligations within the statutory priority caps.

### i.    *Payment of Certain Payroll Obligations Is Required by Law*

10.     Certain of the Payroll Obligations represent earnings that governments, Employees, and judicial authorities have designated for deduction from the Employees' paychecks.  Accordingly, certain of the Payroll Obligations are not property of the Debtors' estates because the Debtors have withheld such amounts from the Employees' paychecks on another party's behalf.  *See* 11 U.S.C. §§ 541(b)(1), (d).  Furthermore, federal and state laws require the Debtors to withhold certain tax payments from the Employees' paychecks and to pay such amounts to the appropriate taxing authority.  26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp*., 41 F.3d 92, 95-97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from their employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co*., 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes); *In re Chabrand*, 301 B.R. 468, 475-81 (Bankr. S.D. Tex. 2003) (same).  Because the Payroll Obligations may not be property of the Debtors' estates, the Debtors request that the Court authorize them to transmit the Payroll Obligations on account of the Employees to the proper parties in the ordinary course of business.

### ii.    *A Sound Business Justification Under Section 363(b) Exists for Payment of the Employee Obligations*

11.     Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of

business, property of the estate."  11 U.S.C. § 363(b)(1).  To satisfy section 363(b), "the debtor must articulate some business justification, other than the mere appeasement of major creditors." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989); *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) (determining whether the "business justification" standard is satisfied depends on the facts and circumstances of the case); *In re San Jacinto Glass Indus., Inc.*, 93 B.R. 934, 944 (Bankr. S.D. Tex. 1988) (finding that sale outside the ordinary course satisfied the "interests of debtor, creditors and equity holders alike").

12.    The Debtors have satisfied the business justification standard.  The Debtors have adequate funding available to pay the Employee Obligations and such payment will be included in any budget submitted in these cases.  Any delay in paying the Employee Obligations will adversely impact the Debtors' relationships with their Employees and will irreparably impair the Employees' morale, dedication, confidence, and cooperation.  The Debtors must have the support of their Employees in order for the Debtors' reorganization efforts to succeed.  At this early stage, the Debtors simply cannot risk the substantial damage to their business that would inevitably result from a decline in their Employees' morale attributable to the Debtors' failure to pay previously earned wages, salaries, benefits, and other similar items.

13.    Absent an order granting the relief requested in this Motion, the Debtors' Employees will suffer undue hardship and, in many instances, serious financial difficulties, as the amounts in question are needed to enable certain of the Employees to meet their own personal financial obligations.  The stability of the Debtors will thus be irreparably undermined by the possibility that otherwise loyal Employees will seek other employment alternatives.

14.     The Debtors do not seek to alter their compensation, vacation, and other benefit policies in this Motion, and this Motion is not to be deemed an assumption or adoption of any agreement or policy providing for any such benefits.  Instead, this Motion is intended only to permit the Debtors, in their discretion, to make payments consistent with those policies and to continue to honor their practices, programs, and policies with respect to their Employees, as such practices, program, and policies were in effect as of the Petition Date.[5]

### iii.    Payment of the Employee Obligations is Warranted by the Doctrine of Necessity

15.     The relief requested in this Motion is supported by the well-established "necessity of payment" doctrine.[6]  The "necessity of payment" doctrine "teaches no more than, if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during reorganization, payment may be authorized even if it is made out of corpus." *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981); *In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 369 (Bankr. S.D. Tex. 2000) (observing that courts within the Fifth Circuit have authorized the payment of prepetition claims "primarily out of common sense and the presence of a legal or factual inevitability of payment").

---

[5]  Some courts have also permitted payment of prepetition claims under Bankruptcy Code sections 1107(a) and 1108 as consistent with the Debtors' fiduciary duties in operating their business.  *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  *CoServ* held that such payments are permitted when (1) it is critical for the debtor to deal with the claimant, (2) the failure to make the payment creates the risk of disproportionate damage to the debtor, and (3) there is no practical alternative to paying the claim.  *Id.* at 498.  Each of these factors is satisfied here because it is critical for the Debtors to maintain their workforce, without payment of Employee Obligations there is a substantial risk that the Debtors' workforce will be depleted, and there is no viable alternative to paying the claims.  *See id.*

[6]  The doctrine was first articulated by the Supreme Court in railroad reorganization cases, *see Miltenberger v. Logansport Ry.*, 106 U.S. 286 (1882), and it has been held to be equally applicable to non-railroad debtor cases.  *See, e.g., Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (hotel); *In re Gulf Air, Inc.*, 112 B.R. 152, 153 (Bankr. W.D. La. 1989) (airline).

12

16.     Similarly, the court in *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989), stated that the "necessity of payment" doctrine "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor." In that case, the court permitted Eastern Air Lines, Inc., to pay their current employees' prepetition wages, salaries, medical benefits, and business expense claims. Judge Lifland relied on his equitable powers under section 105(a) of the Bankruptcy Code and, in particular, the "necessity of payment" doctrine to authorize such payments, recognizing that the debtor had to make the payments in order to retain its current employees and maintain positive employee morale. *Id.* at 176-77 (*citing* H.R. Rep. No. 595 95th Cong. 1st Sess. 16 (1977)). Other courts have also found that the "necessity of payment" doctrine applies to the payment of prepetition employee compensation and benefits. *See In re Chateaugay Corp.*, 80 B.R. 279, 281 (Bankr. S.D.N.Y. 1987) (under the "necessity of payment" doctrine, bankruptcy courts should defer to the debtor's business judgment in permitting payment of certain workers' compensation claims).

17.     Payment of the Employee Obligations is warranted under the doctrine of necessity. The Debtors' Employees provide the Debtors essential services necessary to conduct their business and maintain the value of their estates. Payment of the prepetition claims of the Debtors' Employees is essential to avoid large-scale attrition and service disruption.

### iv.    *Similar Relief has Been Granted in Numerous Cases*

18.     This Court has similarly approved the payment of prepetition claims of employees for wages, salaries, expenses, and benefits on the grounds that the payment of such claims was necessary to effectuate a successful reorganization or liquidation. The importance of a debtor's

employees to its operations cannot be understated and has been regularly recognized by bankruptcy courts in this district in granting relief similar to the relief requested herein. *See, e.g.*, *In re Jack Cooper Ventures, Inc.*, Case No. 19-62393 (PWB) (Bankr. N.D. Ga. Aug. 8, 2019) [Docket No. 66]; *In re LakePoint Land, LLC*, Case No. 18-41337 (BEM) (Bankr. N.D. Ga. June 13, 2018) [Docket No. 27]; *In re Beaulieu Grp., LLC*, Case No. 17-41677 (PWB) (Bankr. N.D. Ga. July 20, 2017) [Docket No. 35]; *In re AstroTurf, LLC*, Case No. 16-41504 (PWB) (Bankr. N.D. Ga. June 29, 2016) [Docket No. 31]; *In re S. Reg'l Health Sys., Inc.*, Case No. 15-64266 (WLH) (Bankr. N.D. Ga. Aug. 5, 2015) [Docket No. 39]; *In re Cagle's, Inc.*, Case No. 11-80202 (JB) (Bankr. N.D. Ga. Oct. 20, 2011) [Docket No. 30]; *In re Pike Nursery Holding, LLC*, Case No. 07-79129 (MGD) (Bankr. N.D. Ga. Nov. 16, 2007) [Docket No. 39]; *In re Allied Holdings, Inc.*, Case No. 05-12515 (WHD) (Bankr. N.D. Ga. Aug. 2, 2005) [Docket No. 58]; *In re Rhodes, Inc.*, Case No. 04-78434 (MGD) (Bankr. N.D. Ga. Nov. 8, 2004) [Docket No. 61]; *In re Galey & Lord, Inc.*, Case No. 04-43098 (MGD) (Bankr. N.D. Ga. Aug. 19, 2004) [Docket No. 20]; *In re Dan River Inc.*, Case No. 04-10990 (WHD) (Bankr. N.D. Ga. Apr. 1, 2004) [Docket No. 54]; *In re Sport Court, Inc.*, Case No. 04-41107 (PWB) (Bankr. N.D. Ga. Mar. 18, 2004) [Docket No. 17]; *In re Sw. Recreational Indus., Inc.*, Case No. 04-40656 (PWB) (Bankr. N.D. Ga. Feb. 17, 2004) [Docket No. 23]; *In re iPcs, Inc.*, Case No. 03-62695 (MGD) (Bankr. N.D. Ga. Feb. 25, 2003) [Docket No. 32]; *In re Centennial Health Care Corp.*, Case No. 02-74974 (JEM) (Bankr. N.D. Ga. Dec. 24, 2002) [Docket No. 40]; *In re New Power Co.*, Case No. 02-10835 (WHD) (Bankr. N.D. Ga. July 12, 2002) [Docket No. 164].[7]

---

[7]   Because of the voluminous nature of the orders cited herein, they are not attached to this Motion.  Copies of these orders, however, are available upon request.

**B.      Banks Should be Directed to Honor and Pay Checks Issued and Make Other Transfers in Respect of the Employee Obligations**

19.      The Debtors have sufficient funds to pay the Employee Obligations in the ordinary course of business. The Debtors believe that each payment of an Employee Obligation can be readily identified as such.  Accordingly, the Debtors believe there is minimal risk that unrelated checks or wire transfer will be inadvertently made.  Thus, the Debtors request that this Court authorize all applicable financial institutions to receive, process, honor and pay any and all checks or wire transfer requests in respect of the Employee Obligations.

## EMERGENCY CONSIDERATION

20.      The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  Here, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

15

**WAIVER OF ANY APPLICABLE STAY**

21.     The Debtors seek a waiver of any stay of the effectiveness of the order granting

this Motion.  Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease

of property other than cash collateral is stayed until the expiration of 14 days after entry of the

order, unless the court orders otherwise."  The Debtors submit that the relief requested in this

Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set

forth herein.  Accordingly, the Debtors submit that ample cause exists to justify a waiver of the

14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable.

**NOTICE**

22.     Notice of this Motion has been provided to: (a) the Office of the United States

Trustee for the Northern District of Georgia; (b) the Debtors' thirty (30) largest unsecured

creditors; (c) counsel to the administrative agent for the Debtors' prepetition credit facilities; (d)

the Internal Revenue Service; (e) the Georgia Department of Revenue; (f) the Attorney General

for the State of Georgia; (g) the United States Attorney for the Northern District of Georgia; (h)

the state attorneys general for states in which the Debtors conduct business; and (i) any party that

has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief

requested, the Debtors respectfully submit that no further notice is necessary.

**NO PRIOR REQUEST**

23.     No prior request for the relief sought in this Motion has been made to this or any

other court.

## **CONCLUSION**

WHEREFORE, the Debtors request this Court enter an order, substantially in the form of **Exhibit A**, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

*[Remainder of Page Intentionally Blank]*

Date:   January 19, 2020
Atlanta, GA

Respectfully submitted,

KING & SPALDING LLP

/s/ *Sarah R. Borders* _____
Sarah R. Borders
Georgia Bar No. 610649
Jeffrey R. Dutson
Georgia Bar No. 637106
Leia Clement Shermohammed
Georgia Bar No. 972711
**KING & SPALDING LLP**
1180 Peachtree Street NE
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Email: sborders@kslaw.com
Email: jdutson@kslaw.com
Email: lshermohammed@kslaw.com

*Proposed Counsel for the Debtors in Possession*

## **EXHIBIT A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE KRYSTAL COMPANY, *et al.*,[1] | ) | Case No. 20-61065 |
| | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (I) AUTHORIZING PAYMENT OF PREPETITION WAGES,
PAYROLL TAXES, CERTAIN EMPLOYEE BENEFITS, AND RELATED EXPENSES;
(II) DIRECTING BANKS TO HONOR RELATED PREPETITION TRANSFERS; AND
(III) GRANTING RELATED RELIEF**

This matter is before the Court on the *Emergency Motion for Entry of an Order (I)
Authorizing Payment of Prepetition Wages, Payroll Taxes, Certain Employee Benefits, and
Related Expenses; (II) Directing Banks to Honor Related Prepetition Transfers; and (III)
Granting Related Relief* (the "Motion") [Docket No. __] of the above-captioned debtors and

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal
tax identification number, include: The Krystal Company (4140); Krystal Holdings, Inc.
(5381); and K-Square Acquisition Co., LLC (8916).  The location of the Debtors' corporate
headquarters and service address is: 1455 Lincoln Parkway, Suite 600, Dunwoody, Georgia
30346.

debtors in possession (the "Debtors").  All capitalized terms used but not defined herein shall have the meanings given them in the Motion.

The Court has considered the Motion, the First Day Declaration, and the matters reflected in the record of the hearing held on the Motion on January 22, 2020. It appears that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §1408; and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties in interest, and that good cause has been shown therefore; IT IS HEREBY ORDERED:

1.      The Motion is granted to the extent set forth herein.

2.      The Debtors are authorized, but not directed, to pay all Employee Obligations that have accrued by virtue of the services rendered by their Employees prior to the Petition Date. The Employee Obligations that the Debtors are authorized to pay are described in the Motion and include, without limitation, (i) wages, salaries, other compensations and reimbursements; (ii) payroll taxes; (iii) vacation and holiday programs; (iv) qualified 401(k) plan obligations; (v) health and welfare benefits; (vi) life, disability and accident insurance; and (vii) other benefits.

3.      The Debtors are authorized, but not directed, to pay the Independent Director Fees and Expenses in the ordinary course of business.

4.      The Debtors are authorized, but not directed, to pay any cost or penalty incurred by their Employees in the event that a check issued by the Debtors for payment of the Employee Obligations is inadvertently not honored because of the filing of the Debtors' bankruptcy cases.

2

5.      The Debtors are authorized, but not directed, to make payments to applicable third parties in connection with the Employee Obligations in accordance with the Debtors' ordinary course of business and stated policies, as set forth in the Motion.

6.      Subject to the availability of funds, all applicable banks and other financial institutions are directed to receive, process, honor, and pay any and all checks, drafts and transfer requests evidencing Employee Obligations under this Order, regardless of whether they are drawn prior to the Petition Date or subsequent to the Petition Date.

7.      Banks and other financial institutions that process, honor, and pay any and all checks on account of Employee Obligations may rely on the representation of the Debtors as to which checks are issued and authorized to be paid in accordance with this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

8.      The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to the Employee Obligations.

9.      Neither this Order, nor the Debtors' payment of any amounts authorized by this Order, shall (i) result in any assumption of any executory contract by the Debtors; (ii) result in a commitment to continue any plan, program, or policy of the Debtors; or (iii) impose any administrative, prepetition, or postpetition liabilities upon the Debtors.

10.     Nothing in this Order shall be deemed to authorize the payment of any amounts in satisfaction of bonus or severance obligations, including without limitation any obligations subject to section 503(c) of the Bankruptcy Code.

11.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

12.     Notwithstanding anything to the contrary in this Order, any payment made (or to be made) and any authorization contained in this Order shall be subject to the terms, conditions, limitations, and requirements of the *Interim and Final Orders (1) Authorizing the Debtors to Use Cash Collateral, (2) Granting Adequate Protection to Lenders, (3) Modifying the Automatic Stay, (4) Setting a Final Hearing, and (5) Granting Related Relief* (collectively, the "Cash Collateral Order"), and to the extent there is any inconsistency between the terms of the Cash Collateral Order and any action taken or proposed to be taken under this Order, the terms of the Cash Collateral Order (together with any approved budget (including any permitted variances) in connection therewith) shall control.

13.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or are otherwise deemed waived.

14.     To the extent the fourteen day stay of Bankruptcy Rule 6004(h) may be construed to apply to the subject matter of this Order, such stay is hereby waived.

15.     Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, this Order shall be immediately effective and enforceable upon entry.

16.     The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

17.    Counsel for the Debtors is directed to serve a copy of this Order on the parties that received service of the Motion within three (3) days of the entry of this Order and to file a certificate of service with the Clerk of Court.

[END OF ORDER]

Prepared and presented by:

_/s/ Sarah R. Borders_ _____
Sarah R. Borders
Georgia Bar No. 610649
Jeffrey R. Dutson
Georgia Bar No. 637106
Leia Clement Shermohammed
Georgia Bar No. 972711
**KING & SPALDING LLP**
1180 Peachtree Street NE
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Email: sborders@kslaw.com
Email: jdutson@kslaw.com
Email: lshermohammed@kslaw.com

_Proposed Counsel for the Debtors in Possession_

6