IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| THE KRYSTAL COMPANY, *et al.*,[1] | ) | CASE NO. 20-61065-pwb |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

### DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (1) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL; (2) GRANTING ADEQUATE PROTECTION TO LENDERS; (3) MODIFYING THE AUTOMATIC STAY; (4) SCHEDULING A FINAL HEARING; AND (5) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collective, the "**Debtors**"), file this *Emergency Motion for Entry of Interim and Final Orders (1) Authorizing the Debtors to Use Cash Collateral; (2) Granting Adequate Protection to Lenders; (3) Modifying the Automatic Stay; (4) Scheduling a Final Hearing; and (5) Granting Related Relief* (the "**Motion**"). In support of this Motion, the Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over these cases and this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a).

2.      The bases for the relief requested herein are Sections 105, 361, 363, 1107, and 1108 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 4001(c) and 6003 of the

---

[1]      The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: The Krystal Company (4140); Krystal Holdings, Inc. (5381); and K-Square Acquisition Co., LLC (8916). The location of the Debtors' corporate headquarters and service address is: 1455 Lincoln Parkway, Suite 600, Dunwoody, Georgia 30346.

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the Procedure G of *Amended and Restated General Order 26-2019, Procedures for Complex Chapter 11 Cases, dated November 4, 2019* (the "**Complex Cases Procedures**").

## BACKGROUND

3.      On January 19, 2020 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division (the "**Court**").  The Debtors have continued in possession of their properties and have continued to operate and manage their business as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner, and no official committee has yet been established in these cases.

4.      The factual background relating to the Debtors' commencement of these cases is set forth in detail in the *Declaration of Jonathan M. Tibus in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**") filed on January 20, 2020, and incorporated herein by reference.

## RELIEF REQUESTED

5.      The Debtors seek the entry of an interim order, substantially in the form attached hereto as Exhibit A (the "**Interim Order**"), (a) authorizing the Debtors to use cash collateral, (b) granting adequate protection, and (c) scheduling a final hearing (the "**Final Hearing**").  In accordance with Bankruptcy Rule 4001, below is a summary of the terms of the Debtors' use of cash collateral:[2]

---

[2]      Terms used but not defined in the summary are otherwise defined in this Motion.  To the extent of any conflict between the summary provided herein and the Interim Order or Final Order, the applicable order shall govern.

(a)     Purpose.  The Cash Collateral shall be used to provide for the working capital requirements, costs of administration and other general corporate purposes of the Debtors during the pendency of the Debtors' Chapter 11 cases.

(b)     Use of Cash Collateral.  The Cash Collateral will be used by the Debtors pursuant to the terms of the budget (which shall be supplied at or before the Interim Hearing (defined below), and attached to the Interim Order) (the "**Budget**") during the period commencing immediately following the entry of the Interim Order.

(c)     Adequate Protection.  As adequate protection for the Agent's, Lenders' and other Secured Parties' respective interests in the Prepetition Collateral, the Agent, Lenders and other Secured Parties shall be granted, pursuant to Sections 361(2), 362, 363(c)(2), and 363(e) of the Bankruptcy Code, continuing valid, binding, enforceable and perfected first priority liens and security interests against, in, and on all of the Postpetition Collateral (defined below) to secure any Adequate Protection Obligations (the "**Adequate Protection Liens**").  The Adequate Protection Liens shall be subordinate only to the Prepetition Liens and the Prior Liens.  The Agent or Lenders shall also have an administrative claim allowable under Section 507(a)(2) of the Bankruptcy Code for its Adequate Protection Obligations (the "**Adequate Protection Claim**"), and shall be payable from, and have recourse to, the Postpetition Collateral.  The Adequate Protection Liens and Adequate Protection Claim shall secure the payment of the Prepetition Indebtedness in an amount equal to any diminution in the value of the Agent's, Lenders' and other Secured Parties' respective interests in the Prepetition Collateral from and after the Petition Date (the "**Adequate Protection Obligations**"), including, without limitation, any such diminution resulting from the following:  (i) the use by the Debtors of the Prepetition Collateral, including, without limitation, the Cash Collateral, (ii) the imposition of the automatic stay pursuant to Section 362(a) of the Bankruptcy Code, or (iii) the physical deterioration, consumption, use, sale, lease, disposition, or shrinkage of the Prepetition Collateral.

(d)     Collateral.  The Adequate Protection Liens shall attach to all real and personal, tangible and intangible property and assets of each of the Debtors of the kind and nature in which the Agent, Lenders and Secured Parties enjoyed perfected, unavoidable liens and security interests as of the Petition Date (the "**Postpetition Collateral**").  The Postpetition Collateral shall not include the actions for preferences, fraudulent conveyances, and other avoidance power claims under Sections 544, 545, 547, 548, 550, and 553 of the Bankruptcy Code (the "**Avoidance Actions**").

(e)     Modification of Automatic Stay. The automatic stay pursuant to Section 362 of the Bankruptcy Code shall be lifted and vacated as necessary to effectuate the terms of the Interim Order.  The stay of Section 362 of the Bankruptcy Code is modified to permit the Debtors and each of the Agent and Lenders to accomplish the transactions contemplated in the Interim Order.

## STATEMENT REGARDING SIGNIFICANT PROVISIONS

6.     The Debtors hereby disclose the below provisions (collectively, the "**Highlighted Provisions**") pursuant to Complex Cases Procedure G(1)(a):

a.     <u>Cross-Collateralization Provisions</u>.  No such provision is contained in the Interim Order.  *See* Complex Case Procedure G(1)(a)(i).

b.     <u>Findings of Fact</u>.  The Interim Order does not bind the estate with respect to the extent, validity, enforceability and priority of the Lenders' liens and claims.  *See* Complex Cases Procedure G(1)(a)(ii).

c.     <u>506(c) Waiver</u>.  No such provision is contained in the Interim Order.  *See* Complex Cases Procedure G(1)(a)(iii).

d.     <u>Liens on Avoidance Actions</u>.  No such provision is contained in the Interim Order. *See* Complex Cases Procedure G(1)(a)(iv).

e.     <u>Provisions Authorizing "Roll Up" or Repayment of Prepetition Debt</u>.  No such provision is contained in the Interim Order.  *See* Complex Cases Procedure G(1)(a)(v).

f.     <u>Disparate Treatment of Debtors and Creditors' Committee Professionals in Carve-Out</u>.  No such provision is contained in the Interim Order.  *See* Complex Cases Procedure G(1)(a)(vi).

g.     <u>Non-Consensual Priming of Prepetition Liens</u>.  No such provision is contained in the Interim Order.  *See* Complex Cases Procedure G(1)(a)(vii).

h.     <u>552(b) Waiver</u>.  No such provision is contained in the Interim Order.  *See* Complex Cases Procedure G(1)(a)(viii).

## SECURED INDEBTEDNESS

7.     The Krystal Company, as borrower, Wells Fargo Bank, National Association, as administrative agent (the "**Agent**"), and the lenders party thereto (the "**Lenders**") are parties to that certain Third Amended and Restated Credit Agreement, dated as of April 26, 2018 (as amended and otherwise modified from time to time, the "**Credit Agreement**", and together with all Loan Documents (as defined in the Credit Agreement) executed prior to the Petition Date (in each case, as amended and otherwise modified from time to time), collectively, the "**Credit Documents**").

8.     The Lenders assert that the principal amount of the loans and other obligations owed by the Debtors, on a joint and several basis, to the Agent and Lenders under the Credit Documents, exclusive of accrued but unpaid interest, costs, fees and expenses, was not less than $49,551,522.00, as of the Petition Date.  All loans and other obligations of the Debtors arising under or in connection with the Credit Agreement (including, without limitation, the "**Secured Obligations**" as defined therein) or any other Credit Document shall collectively be referred to herein as the "**Prepetition Indebtedness**."

9.     The Lenders assert that, pursuant to the Amended and Restated Guaranty, dated as of June 28, 2013 (as amended and otherwise modified from time to time, the "**Guaranty**") and the other applicable Credit Documents, the Debtors each unconditionally guaranteed, on a joint and several basis, to the Agent and the Lenders the punctual and complete performance, payment and satisfaction when due and at all times thereafter of all of the Prepetition Indebtedness.

10.     The Lenders assert that, pursuant to the Credit Agreement and the other applicable Credit Documents, the Agent was granted, for its benefit and the benefit of the Lenders and the other Secured Parties, continuing liens, mortgages and security interests against, on, and in the Prepetition Collateral (as defined below) to secure the repayment of the Prepetition Indebtedness. Such liens, mortgages, and security interests of the Agent against, on, and in the Prepetition Collateral are referred to herein as the "**Prepetition Liens**".  All Collateral on which the Agent, for the benefit of the Lenders, have a valid, binding and properly perfected lien under applicable law, whether real or personal, tangible or intangible, that existed as of the Petition Date and all Proceeds thereof, whether arising pre-petition or post-petition to the extent permitted by Section 552(b) of the Bankruptcy Code, in all cases wherever located, shall hereafter be referred to as the "**Prepetition Collateral**."

11. The Lenders assert that substantially all of the cash held by the Debtors as of the Petition Date constitutes "cash collateral," as such term is defined in Section 363(a) (the "**Cash Collateral**").

## THE DEBTORS' PROPOSED USE OF CASH COLLATERAL

12. Without the use of the Cash Collateral, the Debtors do not have sufficient access to working capital to operate their businesses in the ordinary course for a period of time sufficient to sell their assets in these chapter 11 cases. More specifically, the Debtors' ability to continue their operations and administer these bankruptcy cases is dependent on their ability to use the Cash Collateral.

13. Any disruption of the Debtors' operations would be devastating at this critical juncture. The inability of the Debtors to access the Cash Collateral and to make payments on certain obligations on a timely basis may result in, *inter alia*, the Debtors' inability to continue the operation of their restaurants. If this were to occur, the impact on the Debtors' estates would be catastrophic and would result in material harm to all of the Debtors' creditors and other constituents.

14. Accordingly, the Debtors request this Court to (a) initially approve the use of the Cash Collateral in accordance with the terms of the Interim Order, and (b) approve the use of the Cash Collateral on a final basis in accordance with the term of a final order (the "**Final Order**").

## LEGAL BASES FOR REQUESTED RELIEF

### A.    Cash Collateral

15.    The Debtors seek to use Cash Collateral commencing immediately following the entry of the Interim Order.  The Cash Collateral will be used by the Debtors to the extent necessary to meet their working capital needs.

16.    Section 363(c)(2) provides that a debtor may not use, sell, or lease cash collateral unless: "(a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2).

17.    Additionally, Section 363(e) provides that "on request of an entity that has an interest in property . . . proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).

18.    The Debtors are requesting authority to use the full amount of the Cash Collateral for the purposes and amounts set forth in the Approved Budget, subject to the granting of the adequate protection set forth in the Interim Order.

19.    The determination of adequate protection is a fact-specific inquiry to be decided on a case-by-case basis.  *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996).  "Its application is left to the vagaries of each case . . . but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process."  *Id.* (quoting *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986)).   Examples of adequate protection are provided for in section 361 and include, but are not limited to: (i) making a cash payment or periodic cash payments to a secured creditor to the extent that the estate's use of property will

result in a decrease in the value of such creditor's interest in the property; (ii) provisions for an additional or replacement lien to the extent that the use of such property will cause a decrease in the value of such entity's interest in the property; and (iii) granting such other relief as will result in the realization by the creditor of the indubitable equivalent of such creditor's interest in the property. *See In re C.G. Chartier Constr., Inc.*, 126 B.R. 956, 960 (E.D. La. 1991).

20.    In accordance with Section 363(e), and consistent with the purposes underlying the provision of adequate protection, the proposed Interim Order provides that adequate protection will be provided to the Agent and the Lenders in connection with the use of the Cash Collateral to the extent of any diminution in value of their Prepetition Collateral, as follows:  (a) Adequate Protection Liens on the Postpetition Collateral; and (b) an administrative expense claim equal to the aggregate diminution in value of the Cash Collateral under Section 507(b) of the Bankruptcy Code.

21.    Accordingly, the Debtors request that the Court authorize the Debtors' use of Cash Collateral subject to the Budget.

**B.    <u>Request for Immediate Interim Relief</u>**

22.    Pending the Final Hearing, the Debtors require immediate use of Cash Collateral for, among other things, the maintenance of their restaurants and other working capital needs.  It is essential that the Debtors immediately stabilize their operations and pay for ordinary, postpetition operating expenses, as well as the prepetition expenses approved in the first-day orders, to minimize the damage occasioned by their cash flow problems.

23.    Absent immediate use of Cash Collateral, the Debtors will be unable to pay ongoing operational expenses.  Accordingly, if interim relief is not obtained, the Debtors' assets will be

immediately and irreparably jeopardized, to the detriment of their estates, their creditors and other parties in interest.

24.     Accordingly, the Debtors request that, pending the Final Hearing, the Court schedule an interim hearing (the "**Interim Hearing**") as soon as practicable to consider the Debtors' request for authorization to use Cash Collateral, in accordance with and pursuant to the terms and conditions contained in the Interim Order.

25.     Bankruptcy Rule 4001(b) permits a court to approve a debtor's request for use of cash collateral during the 14-day period following the filing of a motion requesting authorization to use cash collateral, but "only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing."  Fed. R. Bankr. P. 4001(b)(2).  In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions.

26.     For the foregoing reasons, the Debtors believe that granting the relief requested herein is appropriate and in the best interests of their estates.

### REQUEST FOR FINAL HEARING

27.     Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors request that the Court set a date for the Final Hearing that is as soon as practicable, and fix the time and date prior to the Final Hearing for parties to file objections to this Motion.

### EMERGENCY CONSIDERATION

28.     The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a Chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  Here, the Debtors believe an immediate and orderly transition into Chapter 11

is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first 21 days of these Chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

### WAIVER OF BANKRUPTCY RULE 4001(a)

29.     The Debtors request a waiver of the stay of the effectiveness of the order approving this motion under Bankruptcy Rule 4001(a)(3).  Bankruptcy Rule 4001(a)(3) provides that "[an] order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of fourteen days after entry of the order, unless the court orders otherwise."  As set forth herein, the use of Cash Collateral is necessary to allow the Debtors to operate their business, transition smoothly into the chapter 11 cases and effectuate an orderly sale process.  Furthermore, allowing the Debtors' use of Cash Collateral will prevent irreparable harm

to the Debtors' estates.  Accordingly, the Debtors submit that ample cause exists to justify the waiver of the fourteen-day stay imposed by Bankruptcy Rule 4001(a)(3).

## **NOTICE**

30.    Notice of this Motion has been provided to: (a) the Office of the United States Trustee for the Northern District of Georgia; (b) the Debtors' thirty (30) largest unsecured creditors; (c) counsel to the administrative agent for the Debtors' prepetition credit facilities; (d) the Internal Revenue Service; (e) the Georgia Department of Revenue; (f) the Attorney General for the State of Georgia; (g) the United States Attorney for the Northern District of Georgia; (i) the state attorneys general for states in which the Debtors conduct business; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court:

(a)     enter the Interim Order substantially in the form attached hereto as <u>Exhibit A</u>; and

(b)     grant the Debtors such other and further relief as is just and proper.

This 20th day of January, 2020.

SCROGGINS & WILLIAMSON, P.C.


By: */s/ Matthew W. Levin*
      J. ROBERT WILLIAMSON
      Georgia Bar No. 765214
      ASHLEY REYNOLDS RAY
      Georgia Bar No. 601559
      MATTHEW W. LEVIN
      Georgia Bar No. 448270

4401 Northside Parkway
Suite 450
Atlanta, GA 30327
T: (404) 893-3880
F: (404) 893-3886
E: rwilliamson@swlawfirm.com
   aray@swlawfirm.com
   mlevin@swlawfirm.com

*Proposed Special Counsel to the Debtors*

## EXHIBIT A

**Interim Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| THE KRYSTAL COMPANY, *et al.*,[1] | ) | CASE NO. 20-61065-pwb |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**INTERIM ORDER (1) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL,
(2) GRANTING ADEQUATE PROTECTION TO LENDERS,
(3) MODIFYING THE AUTOMATIC STAY, AND (4) SETTING A FINAL HEARING**

Upon the emergency motion, dated January 20, 2020 (the "**Motion**"),[2] of The Krystal

Company and the other above-captioned debtors and debtors in possession (each a "**Debtor**" and,

---

[1]     The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  The Krystal Company (4140); Krystal Holdings, Inc. (5381); and K-Square Acquisition Co., LLC (8916).  The location of the Debtors' corporate headquarters and service address is:  1455 Lincoln Parkway, Suite 600, Dunwoody, Georgia 30346.

[2]     Unless otherwise specified, all capitalized terms used herein without definition shall have the respective meanings given such terms in the Credit Agreement (as defined below).

collectively, the "**Debtors**") in the above-captioned Chapter 11 cases (the "**Chapter 11 Cases**"),
to use cash collateral of the Agent (as defined below) and the Lenders (as defined below) in
accordance with the Budget (as defined below); and the interim hearing on the Motion having been
held before this Court on January 22, 2020 (the "**Interim Hearing**"); and pursuant to Rule 4001
of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), Procedure G of
*Amended and Restated General Order 26-2019, Procedures for Complex Chapter 11 Cases,* dated
November 4, 2019 (the "**Complex Cases Procedures**"), notice of the Motion and the relief sought
at the Interim Hearing having been given by the Debtors as set forth herein; and this Court having
considered the Budget filed and served by the Debtors; and this Court having considered the
Motion, all pleadings related thereto, and the record made by the Debtors at the Interim Hearing;
and it appearing to this Court that granting the relief sought in the Motion on the terms and
conditions contained herein is necessary and essential to preserve the value of the Debtors'
business and assets and that such relief is fair and reasonable and that entry of this Order is in the
best interests of the Debtors and their respective estates and creditors; and after due deliberation
and consideration, and good and sufficient cause appearing therefor:

THIS COURT HEREBY FINDS, DETERMINES, AND CONCLUDES AS FOLLOWS:[3]

A.      Commencement of Cases.  On January 19, 2020 (the "**Petition Date**"), each of the
Debtors filed with this Court a voluntary petition for relief under Chapter 11 of Title 11 of the
United States Code (the "**Bankruptcy Code**").  The Debtors are operating their business and
managing their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the
Bankruptcy Code.  An official committee of unsecured creditors (the "**Creditors' Committee**")
has not yet been appointed in these Chapter 11 Cases.

---

[3]      Pursuant to Bankruptcy Rule 7052, any findings of fact contained herein that may be construed as matters of
law shall be treated as conclusions of law as if set forth below, and vice versa.

B.    <u>Jurisdiction; Venue</u>.  This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief sought herein are Sections 105, 361, 362, 363, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014, and Procedure G of the Complex Case Procedures.  Venue of the Chapter 11 Cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    <u>Adequate Notice</u>.  On January 20, 2020, the Debtors filed the Motion with this Court and provided notice of the Motion and the Interim Hearing by electronic mail, facsimile, hand delivery or overnight delivery to the following parties and/or their counsel as indicated below:  (i) the Office of the United States Trustee for the Northern District of Georgia (the "**U.S. Trustee**"); (ii) the Debtors' thirty (30) largest unsecured creditors; (iii) counsel to the Agent (as defined below); (iv) all parties known to the Debtors to have liens of record on assets of the Debtors as of the Petition Date; (v) all financial institutions at which the Debtors maintain deposit accounts; (vi) the Internal Revenue Service; (vii) the Georgia Department of Revenue; (viii) the Attorney General for the State of Georgia; (ix) the United States Attorney for the Northern District of Georgia; (x) the state attorneys general for states in which the Debtors conduct business; and (xi) all other parties required to receive notice pursuant to Bankruptcy Rules 2002, 4001 or 9014 or requesting to receive notice prior to the date hereof (collectively, the "**Notice Parties**").  Given the nature of the relief sought in the Motion, this Court concludes that the foregoing notice was sufficient and adequate under the circumstances and complies with the Bankruptcy Code, the Bankruptcy Rules, the Complex Case Procedures, and any other applicable law, and no further notice of, or hearing on, the relief sought at the Interim Hearing and the relief granted herein is necessary or required.

D.    <u>Secured Indebtedness</u>.  The Lenders (defined below) assert that as of the Petition Date, they were indebted and bound as described below:

- 3 -

1.      The Krystal Company, as borrower, Wells Fargo Bank, National Association, as administrative agent (the "**Agent**"), and the lenders party thereto (the "**Lenders**") are parties to that certain Third Amended and Restated Credit Agreement, dated as of April 26, 2018 (as amended and otherwise modified from time to time, the "**Credit Agreement**", and together with all Loan Documents (as defined in the Credit Agreement) executed prior to the Petition Date (in each case, as amended and otherwise modified from time to time), collectively, the "**Credit Documents**") among The Krystal Company, as borrower, the Guarantors (as defined in the Credit Agreement) and other guarantors party thereto from time to time (the "**Guarantors**" and together with the Borrower, the "**Loan Parties**"), the Agent, Cadence Bank, N.A., as documentation agent, Regions Bank, as syndication agent, Wells Fargo Securities, LLC and Regions Capital Markets, as joint lead arranger and joint bookrunners, and the lenders party thereto from time to time.

2.      The principal amount of the loans and other obligations owed by the Debtors, on a joint and several basis, to the Agent and Lenders under the Credit Documents, exclusive of accrued but unpaid interest, costs, fees and expenses, was not less than $49,551,522.00 as of the Petition Date.  All loans and other obligations of the Debtors arising under or in connection with the Credit Agreement (including, without limitation, the "**Secured Obligations**" as defined therein) or any other Credit Document shall collectively be referred to herein as the "**Prepetition Indebtedness**."

3.      Pursuant to the Amended and Restated Guaranty, dated as of June 28, 2013 (as amended and otherwise modified from time to time, the "**Guaranty**") and the other applicable Credit Documents, the Debtors each unconditionally guaranteed, on a joint and several basis, to the Agent and the Lenders the punctual and complete performance, payment and satisfaction when due and at all times thereafter of all of the Prepetition Indebtedness.

4.      Pursuant to the Credit Agreement and the other applicable Credit Documents, the Agent was granted, for its benefit and the benefit of the Lenders and the other Secured Parties, continuing liens, mortgages and security interests against, on, and in the Prepetition Collateral (as defined below) to secure the repayment of the Prepetition Indebtedness. Such liens, mortgages, and security interests of the Agent against, on, and in the Prepetition Collateral are referred to herein as the "**Prepetition Liens**".  All Collateral on which the Agent, for the benefit of the Lenders, have a valid, binding and properly perfected lien under applicable law, whether real or personal, tangible or intangible, that existed as of the Petition Date and all Proceeds thereof, whether arising pre-petition or post-petition to the extent permitted by Section 552(b) of the Bankruptcy Code, in all cases wherever located, shall hereafter be referred to as the "**Prepetition Collateral**."

E.      Cash Collateral Defined.  For purposes of this Order, the term "**Cash Collateral**" shall mean and include all "cash collateral" as defined by Section 363(a) of the Bankruptcy Code.

F.      Exigent Circumstances.  If the Debtors' use of Cash Collateral were to be discontinued, their business operations would be severely disrupted, they would be unable to pay operating expenses, including for necessary products and payroll, and unable to operate their

businesses in the ordinary course, thereby severely impairing the value of the Prepetition Collateral and other assets of their estates. Accordingly, the Debtors and their estates will suffer immediate and irreparable harm unless the Debtors are immediately authorized to use Cash Collateral on terms and conditions set forth herein.

G.     Budget. Attached hereto as Exhibit A is a budget (the "**Budget**") setting forth on a line item basis the Debtors' anticipated cash receipts and expenditures on a weekly basis and all necessary and required expenses which the Debtors expect to incur prior to the Final Hearing.

H.     Immediate Entry of this Order. The Debtors have requested immediate entry of this Order pursuant to, and have complied with, Bankruptcy Rule 4001(b), and the Complex Case Procedures and have an immediate need to obtain the use of the Prepetition Collateral, including the Cash Collateral (in the amount and in the manner set forth in the Budget) in order to, among other things, preserve and maintain the value of their assets and businesses. The ability of the Debtors to obtain liquidity through the use of the Cash Collateral is vital to the Debtors and their efforts to maximize the value of their assets. Absent entry of this Order, the Debtors' estates and reorganization efforts will be immediately and irreparably harmed. For the reasons stated above and as stated on the record at the Interim Hearing, this Court concludes that immediate entry of this Order is in the best interests of the Debtors' estates and creditors.

Based upon the foregoing findings, stipulations, and conclusions, and upon the record made before this Court at the hearing on the Motion, and good and sufficient cause appearing therefore:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.     Motion Granted. The Motion is granted on an interim basis in accordance with the terms and conditions of this Order. Subject to the terms hereof, this Order is valid immediately and is fully effective upon its entry. All objections to the entry of this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.       <u>Authorization</u>.  The Debtors are authorized to use Cash Collateral prior to the Final

Hearing solely in accordance with and pursuant to the terms and provisions of this Order and only

to the extent required to pay the expenses contained in the Budget.  For each week set forth in the

Budget, the aggregate expenditures for each week shall not exceed the total budgeted expenses in

the Budget for such week; provided, however, that the Debtors' aggregate expenditures for any

week shall still be deemed authorized expenditures under the Budget if:  (a) the total disbursements

from the Petition Date through the last day of such week do not exceed the total budgeted

expenditures for such period by more than 15%; and (b) the total receipts for such period are at

least 85% of the budgeted receipts for such period (the "**Permitted Variances**").

3.       <u>Accounting of Cash Collateral; Access to Books and Records</u>.  The Debtors shall,

pursuant to Section 363(c)(4) of the Bankruptcy Code, account for all Cash Collateral which is

now, and which may hereafter be, in their possession, custody or control, and shall not, without

further order of this Court, transfer any of such Cash Collateral to any of their non-Debtor affiliates

or subsidiaries.  The Debtors shall provide to the Agent and counsel to the Creditors' Committee,

so as to be actually received within four (4) business days following the end of each week, weekly

line-by-line certified variance reports for the preceding weekly period and on a cumulative basis

from the Petition Date to the report date, comparing actual cash receipts and disbursements to

amounts projected in the Budget.  The Prepetition Liens against, on and in the Prepetition

Collateral shall continue to attach to the Cash Collateral irrespective of the commingling of the

Cash Collateral with other cash of the Debtors.  Any failure by the Debtors on or after the Petition

Date to comply with the segregation requirements of Section 363(c)(4) of the Bankruptcy Code in

respect of any Cash Collateral shall not be used as a basis to challenge the Prepetition Indebtedness,

or the extent, validity, enforceability or perfected status of the Prepetition Liens.

4.      <u>Postpetition Collateral Defined</u>.  As used in this Order, the term "**Postpetition Collateral**" means the real and personal property of the Debtors that is of the same nature, type and character of the Prepetition Collateral; <u>provided</u> that in no event shall the Postpetition Collateral include the actions for preferences, fraudulent conveyances, and other avoidance power claims under Sections 544, 545, 547, 548, 550, and 553 of the Bankruptcy Code (the "**Avoidance Actions**").

5.      <u>Prior Lien Defined</u>.  As used in this Order, the term "**Prior Liens**" means only valid, enforceable, continuing, and non-avoidable liens and security interests in the Prepetition Collateral or any other property or assets of the Debtors that were properly perfected prior to the Petition Date (or properly perfected on or after the Petition Date to the extent permitted by Section 546(b) of the Bankruptcy Code), which are not subject to avoidance, disallowance, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and which are senior in priority to the Prepetition Liens under applicable law and after giving effect to any lien release, subordination or inter-creditor agreements.  For the avoidance of doubt, the Prior Liens shall not include, or be deemed to include, any or all of the Prepetition Liens or Adequate Protection Liens (as defined in <u>Paragraph 5</u> below).  All parties retain and reserve all their rights to dispute the validity, priority, enforceability, and perfection of any asserted Prior Lien.

6.      <u>Adequate Protection to Agent and Lenders</u>.  As adequate protection for the Agent's, Lenders' and other Secured Parties' respective interests in the Prepetition Collateral, the Agent, Lenders and other Secured Parties are hereby granted the following (but only to the extent of any Adequate Protection Obligations arising from and after the Petition Date as provided in <u>Paragraph 5(c)</u> below):

- 7 -

a.      <u>Replacement Liens</u>.  Pursuant to Sections 361(2), 362, 363(c)(2), and 363(e) of the Bankruptcy Code, the Agent, for its benefit and the benefit of the Lenders and other Secured Parties, is hereby granted by each Debtor continuing valid, binding, enforceable and perfected first priority liens and security interests against, in, and on all of the Postpetition Collateral to secure any Adequate Protection Obligations (the "**Adequate Protection Liens**").   The Adequate Protection Liens shall be subordinate only to the Prepetition Liens and the Prior Liens.

b.      <u>Adequate Protection Claim</u>.  Pursuant to Sections 503(b) and 507(a) of the Bankruptcy Code, the Agent, for its benefit and the benefit of the Lenders and other Secured Parties, shall have an allowed administrative expense claim (the "**Adequate Protection Claim**") against each Debtor and its respective estate on a joint and several basis to the extent of any Adequate Protection Obligations, under Section 507(a) of the Bankruptcy Code, whether in these Chapter 11 Cases or any other subsequent proceedings under the Bankruptcy Code, including, without limitation, any Chapter 7 proceeding (collectively, the "**Successor Case**").  The Adequate Protection Claims shall be payable from, and have recourse to, the Postpetition Collateral.

c.      <u>Adequate Protection Obligations Defined; Other Priority Matters</u>.   The Adequate Protection Liens and Adequate Protection Claim shall secure the payment of the Prepetition Indebtedness in an amount equal to any diminution in the value of the Agent's, Lenders' and other Secured Parties' respective interests in the Prepetition Collateral from and after the Petition Date (the "**Adequate Protection Obligations**"), including, without limitation, any such diminution resulting from the following:  (i) the use by the Debtors of the Prepetition Collateral, including, without limitation, the Cash Collateral, (ii) the imposition of the automatic stay pursuant to Section 362(a) of the Bankruptcy Code, or (iii) the physical deterioration, consumption, use, sale, lease, disposition, or shrinkage of the Prepetition Collateral.

      d.    <u>Perfection</u>.  The Adequate Protection Liens shall be, and hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the Petition Date, and no notice, filing, mortgage recordation, control, possession, further order, or other act, shall be required to effect such perfection.  The Agent may, but shall not be required to, file a certified copy of this Order in any filing or recording office in any state, county or other jurisdiction in which any Debtor has real or personal property and such filing or recording shall be accepted and shall constitute sufficient evidence of perfection of such party's interests in the Postpetition Collateral as of the Petition Date, but with the priorities as set forth herein.  All filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.  The Adequate Protection Liens shall be deemed legal, valid, binding, enforceable, and perfected liens, not subject to subordination, impairment or avoidance, for all purposes in the Chapter 11 Cases and any Successor Case.

      7.    <u>Rights Reserved; No Waiver</u>.

      a.    The entry of this Order is without prejudice to, and does not expressly or implicitly constitute a waiver of, the right of the Agent, the Lenders and Secured Parties to seek any other or supplemental relief in respect of any Debtor, including the right to seek additional adequate protection.  Except as specifically set forth herein regarding the use of Cash Collateral, nothing contained in this Order shall be in lieu of, or limit, prejudice or otherwise affect, any rights, claims, liens, security interests or priorities of the Agent, the Lenders or other Secured Parties under the Credit Documents or applicable law, and all such rights, claims, liens, security interests and priorities are reserved.

      b.    The rights of any secured party (including the Agent and Lenders) to credit bid under Sections 363(k) of the Bankruptcy Code and other applicable law in connection with

- 9 -

any proposed sale, transfer, lease or disposition of Prepetition Collateral, or to object to such proposed transaction, are preserved.

        c.       Nothing in this Order shall constitute a finding as to the validity, priority, perfection or amount of the Prepetition Indebtedness or Prepetition Liens.

        8.     <u>Survival</u>. The provisions of this Order and any actions taken pursuant hereto shall: (a) survive the Termination Date and entry of any order:  (i) converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code; (ii) substantively consolidating any of the Debtors or their respective estates; (iii) confirming a Chapter 11 plan in any of the Chapter 11 Cases; or (iv) dismissing or closing any of the Chapter 11 Cases; and (b) shall continue in full force and effect notwithstanding the Termination Date or entry of any such order described above.

        9.     <u>Successors and Assigns</u>.  The provisions of this Order (including all findings contained herein) shall be binding upon, and inure to the benefit of, the Agent, the Lenders, the other Secured Parties, and the Debtors and their respective estates, and their respective successors and assigns, including, without limitation, any trustee, examiner, or other fiduciary hereafter appointed as a legal representative of any of the Debtors or their estates, whether in these Chapter 11 Cases or any Successor Case.  Except as expressly provided for herein, this Order does not create any rights for the benefit of any creditor, equity holder, or other person or entity, or any direct, indirect, or incidental beneficiary, other than the Agent, the Lenders, and the other Secured Parties.

        10.     <u>Jurisdiction</u>.  This Court shall retain exclusive jurisdiction to enforce the terms of this Order and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Order.

11.     <u>Findings of Fact and Conclusions of Law</u>.  This Order constitutes, where applicable, findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry hereof.  The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  To the extent any findings of fact constitute conclusions of law, they are adopted as such.  To the extent any conclusions of law constitute findings of fact, they are adopted as such.  Notwithstanding Bankruptcy Rules 4001, 6004, 7062 or 9024, any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

12.     <u>No Impact on Certain Contracts/Transactions</u>.  No rights of any person or entity under Sections 555, 556, 559, 560, 561, and 562 of the Bankruptcy Code shall be affected by the entry of this Order as to any contract or transaction of the kind listed in such sections of the Bankruptcy Code.

13.     <u>Controlling Effect of Order</u>.  To the extent any provision of this Order conflicts or is inconsistent with any provision of the Motion, or any order entered by this Court relating to the Debtors' cash management systems, the provisions of this Order shall control and govern to the extent of such conflict.  In the event of any inconsistency between the provisions of this Order and any "First Day" order in the Chapter 11 Cases, the provisions of this Order shall govern and control, and any payments to be made under any such "First Day" order shall be made in accordance with and subject to this Order and the Budget.  Unless otherwise specified herein or the context requires otherwise, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to this Order.

14.     <u>Section 507(b) Reservation</u>.  Nothing in this Order shall impair, limit, or modify the application of Section 507(b) of the Bankruptcy Code in the event that the adequate protection provided hereunder to the Agent or any of the Lenders or other Secured Parties is insufficient to compensate for any Adequate Protection Obligations arising during the Chapter 11 Cases or any Successor Cases.

15.     <u>Final Hearing</u>.  The Motion is set for a final hearing (the "**Final Hearing**") to be held at _____ (Eastern time) on _____, 2020, with an objection deadline of 4:00 p.m. (Eastern time) on _____, 2020 (the "**Objection Deadline**").  Any objection to entry of the Final Order shall be filed with this Court, and served upon the respective counsel to the Debtors, the Creditors' Committee, and the Agent on or before the Objection Deadline.

**END OF DOCUMENT**

**Prepared and presented by:**

SCROGGINS & WILLIAMSON, P.C.


By: <u>*/s/ Matthew W. Levin*</u>
        J. ROBERT WILLIAMSON
        Georgia Bar No. 765214
        ASHLEY REYNOLDS RAY
        Georgia Bar No. 601559
        MATTHEW W. LEVIN
        Georgia Bar No. 448270

4401 Northside Parkway
Suite 450
Atlanta, GA 30327
T: (404) 893-3880
F: (404) 893-3886
E: rwilliamson@swlawfirm.com
    aray@swlawfirm.com
    mlevin@swlawfirm.com

*Proposed Special Counsel to the Debtors*

# **EXHIBIT A**

**Budget**

[TO BE SUPPLIED AT OR BEFORE THE INTERIM HEARING]