UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| In re: | ) CHAPTER 11 |
|  | ) |
| THE KRYSTAL COMPANY, *et al.*, | ) Case No. 20-61065 (PWB) |
|  | ) |
|  | ) (Jointly Administered) |
| Debtors. | ) |
|  | ) |

**OBJECTION OF FLORIDA POWER & LIGHT COMPANY,
GEORGIA POWER COMPANY, AND ORLANDO UTILITIES
COMMISSION TO THE DEBTORS' EMERGENCY MOTION FOR ENTRY OF
INTERIM AND FINAL ORDERS (I) PROHIBITING UTILITIES FROM ALTERING,
REFUSING, OR DISCONTINUING SERVICE ON ACCOUNT OF PREPETITION
INVOICES; (II) DEEMING UTILITIES ADEQUATELY ASSURED OF FUTURE
PERFORMANCE; (III) ESTABLISHING PROCEDURES FOR DETERMINING
ADEQUATE ASSURANCE OF PAYMENT; AND (IV) GRANTING RELATED RELIEF**

Florida Power & Light Company ("FPL"), Georgia Power Company ("Georgia Power") and Orlando Utilities Commission ("OUC") (collectively, the "Utilities"), hereby object to the *Debtors' Emergency Motion For Entry of Interim and Final Orders (I) Prohibiting Utilities From Altering, Refusing, or Discontinuing Service on Account of Prepetition Invoices; (II) Deeming Utilities Adequately Assured of Future Performance; (III) Establishing Procedures For Determining Adequate Assurance of Payment, and (IV) Granting Related Relief* (the "Utility Motion")(Docket No. 14), and set forth the following:

## Introduction

The Debtors' Utility Motion improperly seeks to shift the Debtors' obligations under Section 366(c)(3) from modifying the amounts of the adequate assurance of payment requested by the Utilities under Section 366(c)(2) to setting the form and amount of the adequate assurance

of payment acceptable to the Debtors. This Court should not permit the Debtors to shift their statutory burden.

The Debtors seek to have this Court approve their form of adequate assurance of payment, which is a bank account containing $299,000 that supposedly reflects the estimated average costs for two weeks of utility services, minus the amounts of any existing bonds or deposits held by a utility (the "Bank Account"). Utility Motion at ¶ 13. Exhibit "A" to the Utility Motion reflects that the Debtors propose to provide no adequate assurance of payment to FPL or Georgia Power because those utilities held prepetition security. Not providing FPL or Georgia Power with any adequate assurance of payment whatsoever because those Utilities held prepetition security does not make sense because the Debtors do not know if: (a) any of the amounts available under the prepetition security bonds held by Georgia Power will remain after Georgia Power makes a demand upon those bonds; or (b) any of the FPL cash deposit will remain after FPL exercises it rights under Section 366(c)(4) of the Bankruptcy Code to recoup prepetition security against prepetition debt.

Additionally, the Court should reject the Debtors' proposed Bank Account because: (1) The Utilities bill the Debtors on a monthly basis and provide the Debtors with generous payment terms pursuant to applicable state law, tariffs and/or regulations, and a three-day utility escrow account is not sufficient in amount or in form to provide the Utilities with adequate assurance of payment; (2) Section 366(c) of the Bankruptcy Code specifically defines the forms of adequate assurance of payment in Section 366(c)(1), none of which include a segregated bank account; and (3) Even if this Court were to improperly consider the Bank Account as a form of adequate assurance of payment for the Utilities, the Court should reject it as an insufficient form of adequate assurance of payment for the reasons set forth in Section A.1. of this Objection.

The Utilities are seeking the following two-month cash deposits from the Debtors, which are amounts that they are authorized to obtain pursuant to applicable state law: (a) FPL - $21,247; (b) Georgia Power - $303,231; and (c) OUC - $20,600.  Based on all the foregoing, this Court should deny the Utility Motion as to the Utilities because the amounts of the Utilities' post-petition deposit requests are reasonable under the circumstances and should not be modified.

### Facts

### Procedural Facts

1. On January 19, 2020, the Debtors commenced their cases under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are now pending with this Court. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

2. The Debtors' chapter 11 bankruptcy cases are being jointly administered.

### The Utility Motion

3. On January 20, 2020, the Debtors filed the Utility Motion.

4. The *Notice of Hearing* (Docket No. 56) set (i) a deadline of February 3, 2020 to file an objection to the Utility Motion, and (ii) a hearing on the Utility Motion to take place on February 4, 2020 at 10:00 a.m.

5. In the Utility Motion, the Debtors seek to avoid the applicable legal standards under Sections 366(c)(2) and (3) by seeking Court approval to avoid providing FPL or Georgia Power with adequate assurance of payment because those two Utilities held prepetition security. See Exhibit "A" to the Utility Motion; Utility Motion at ¶ 13.  FPL held a prepetition deposit in the amount of $5,701 that it will recoup against prepetition debt ($7,365.11) pursuant to Section

366(c)(4) of the Bankruptcy Code. As such, the Debtors' proposal to not provide FPL with any adequate assurance whatsoever does not make sense because the prepetition deposit held by FPL will not remain after recoupment. Although Georgia Power did not hold prepetition cash deposits, it does hold three surety bonds in the total amount of $358,528 (the "Georgia Power Bonds"). Georgia Power will be making claims upon the Georgia Power Bonds for the prepetition charges owed by the Debtors to Georgia Power. As Georgia Power is entitled to make demand upon those bonds to satisfy prepetition debt owed by the Debtor to Georgia Power, it is not clear why the existence of the Georgia Power Bonds should form the basis for denying any adequate assurance of payment for Georgia Power.

6. The Debtors seek to avoid the applicable legal standards under Sections 366(c)(2) and (3) by seeking Court approval for their own form of adequate assurance of payment, which is the Bank Account containing $299,000 that supposedly reflects the estimated average costs for two weeks of utility services, minus the amount of any existing bonds or deposits held by a utility. Utility Motion at ¶ 13.

7. The proposed Bank Account is not acceptable to the Utilities and should not be considered relevant by this Court because Sections 366(c)(2) and (3) do not allow the Debtors to establish the form or amount of adequate assurance of payment. Under Sections 366(c)(2) and (3), this Court and the Debtors are limited to modifying, if at all, the amounts of security sought by the Utilities under Section 366(c)(2).

8. The Debtors claim that in general, they have established satisfactory payment histories with their utilities, and have made payment on a regular and timely basis. Utility Motion at ¶ 9. However, Section 366(c)(3)(B)(ii) expressly provides that in making an adequate

assurance of payment determination, a court may not consider a debtor's timely payment of prepetition utility charges.

9.  The Debtors propose that upon their termination of utility services regardless of any adequate assurance requests, the amount in the Bank Account will be reduced. Utility Motion at ¶ 14. Even if monies were contained in the Bank Account on behalf of FPL and Georgia Power, the Utilities bill the Debtors in arrears and the proposed Bank Account would be insufficient to cover their monthly billing charges. Moreover, even if the Court were to approve a Bank Account with amounts for FPL and Georgia Power, any amounts in that Bank Account should not be released until the Debtors confirm payment in full of their post-petition utility expenses.

10. The Utility Motion does not address why the Bank Account would be underfunded at supposedly only nine days of utility charges ($987,000 of average monthly utility charges and $299,000 in the Bank Account) when the Debtors know that the Utilities are required by applicable state laws, regulations and/or tariffs to bill the Debtors monthly. Moreover, presumably the Debtors want the Utilities to continue to bill them monthly and provide them with the same generous payment terms that they received prepetition. Accordingly, if the Bank Account is relevant, which the Utilities dispute, and monies were put into the Bank Account on behalf of FPL and Georgia Power, the Debtors need to explain: (A) why they are only proposing to deposit supposed two-week amounts into the Bank Account for utilities that did not hold prepetition security; and (B) how such an insufficient amount could even begin to constitute adequate assurance of payment for the Utilities' monthly bills.

11. Furthermore, the Utility Motion does not address why this Court should consider modifying, if at all, the amounts of the Utilities' adequate assurance requests pursuant to Section

5

366(c)(2). Rather, without providing any specifics, the Utility Motion merely states that the Bank Account and prepetition security held by utilities, "in conjunction with the Debtors' ability to pay for future utility services in the ordinary course of business . . . constitute sufficient adequate assurance to the Utility Providers." Utility Motion at ¶ 15.

## Facts Concerning the Utilities

12. Each of the Utilities provided the Debtors with prepetition utility goods and/or services and have continued to provide the Debtors with utility goods and/or services since the Petition Date.

13. Under the Utilities' regulated billing cycles, the Debtors receive approximately one month of utility goods and/or services before the Utility issues a bill for such charges. Once a bill is issued, the Debtors have approximately 20 to 30 days to pay the applicable bill. If the Debtors fail to timely pay the bill, a past due notice is issued and, in most instances, a late fee may be subsequently imposed on the account. If the Debtors fail to pay the bill after the issuance of the past due notice, the Utilities issue a notice that informs the Debtors that they it must cure the arrearage within a certain period of time or its service will be disconnected. Accordingly, under the Utilities' billing cycles, the Debtors could receive at least two months of unpaid charges before the utility could cease the supply of goods and/or services for a post-petition payment default.

14. In order to avoid the need to bring witnesses and have lengthy testimony regarding the Utilities regulated billing cycles, the Utilities request that this Court, pursuant to Rule 201 of the Federal Rules of Evidence, take judicial notice of the Utilities' billing cycles. Pursuant to the foregoing request and based on the voluminous size of the applicable documents, the Utilities' web site links to the tariffs and/or state laws, regulations and/or ordinances are as

follows:

FPL:  http://www.fpl.com/customer/rates_and_bill/rules_tariffs.shtml

Georgia Power:  https://www.georgiapower.com/business/prices-rates/business-tariffs.cshtml

OUC:  The OUC Electric Service Policies, which sets forth the OUC billing cycle, will be provided upon request.

15. Subject to a reservation of the Utilities' rights to supplement their post-petition deposit requests if additional accounts belonging to the Debtors are subsequently identified, the Utilities' post-petition deposit requests are as follows:

| **Utility** | **No. of Accts.** | **Estimated Prepet. Debt** | **Deposit Request** |
| --- | --- | --- | --- |
| FPL | 7 | $7,365.11 | $21,247 (2-month) |
| Georgia Power | 99 | $not yet available | $303,231 (2-month) |
| OUC | 1 | $not yet available | $20,600 (2-month) |

16. FPL held a prepetition cash deposit in the amount of $5,701 that it will recoup against prepetition debt pursuant to Section 366(c)(4) of the Bankruptcy Code. No FPL prepetition deposit will remain after recoupment.

17. Georgia Power holds the three Georgia Power Surety Bonds in the total amount of $358,528 that Georgia Power will make claims on for payment of the prepetition debt owed by the Debtors to Georgia Power.

## Discussion

### A.   THE UTILITY MOTION SHOULD BE DENIED AS TO THE UTILITIES.

Sections 366(c)(2) and (3) of the Bankruptcy Code provide:

> (2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility;

> (3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

As set forth by the United States Supreme Court, "[i]t is well-established that 'when the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms.'" *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004) (*quoting Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N. A.,* 530 U.S. 1, 6, 120 S. Ct., 1942, 147 L. Ed. 2d 1 (2000)). *Rogers v. Laurain (In re Laurain)*, 113 F.3d 595, 597 (6th Cir. 1997) ("Statutes . . . must be read in a 'straightforward' and 'commonsense' manner."). A plain reading of Section 366(c)(2) makes clear that a debtor is required to provide adequate assurance of payment satisfactory to its utilities on or within thirty (30) days of the filing of the petition. *In re* Lucre, 333 B.R. 151, 154 (Bankr. W.D. Mich. 2005). If a debtor believes the **amount** of the utility's request needs to be modified, then the debtor can file a motion under Section 366(c)(3) requesting the court to modify the **amount** of the utility's request under Section 366(c)(2).

In this case, the Debtors filed the Utility Motion to improperly shift the focus of their obligations under Section 366(c)(3) from modifying the amount of the adequate assurance of payment requested under Section 366(c)(2) to setting the form and amount of the adequate assurance of payment acceptable to the Debtors. Accordingly, this Court should not reward the Debtors for their failure to comply with the requirements of Section 366(c) and deny the Utility Motion as to the Utilities.

> **1. The Debtors' Proposed Bank Account Is Not Relevant And Even If It Is Considered, It Is Unsatisfactory Because It Does Not Provide the Utilities With Adequate Assurance of Payment.**

This Court should not even consider the Bank Account as a form of adequate assurance

8

of payment because: (1) It is not relevant because Section 366(c)(3) provides that a debtor can only modify "the amount of an assurance of payment under paragraph (2)"; (2) The Bank Account is not a form of adequate assurance of payment recognized by Section 366(c)(1)(A); and (3) would not contain any money on behalf of FPL or Georgia Power.  Moreover, even if the Court were to consider the Bank Account, and the Debtors put funds in the Bank Account for FPL and Georgia Power, the Bank Account is an improper and otherwise unreliable form of adequate assurance of future payment for the following reasons:

1. Unlike the statutory approved forms of adequate assurance of payment, the Bank Account is not something held by the Utilities.  Accordingly, the Utilities have no control over how long the Bank Account will remain in place.

2. In order to access the Bank Account, the Utilities have to incur the expense to draft, file and serve a default pleading with the Court and possibly litigate the demand if the Debtors refuse to honor a disbursement request.

3. It is underfunded from the outset because the Utilities issue monthly bills and by the time a default notice is issued the Debtors will have received approximately 60 days of commodity or service.

4. The Debtors are not required to replenish the Bank Account following pay-outs.

5. The Debtors fail to state whether draws from the Bank Account would be limited to two-week amounts.

6. The Debtors may close the Bank Account before all post-petition utility charges are paid in full.

7. The Debtors should not reduce the amount of Bank Account on account of the termination of utility services to a Debtor account until the Debtors confirm that all post-petition charges on a closed account are paid in full.

Accordingly, the Court should not approve the Bank Account as adequate assurance as to the Utilities because the Bank Account is: (a) not the **form** of adequate assurance requested by the Utilities; (b) not a form recognized by Section 366(c)(1)(A); and (c) an otherwise unreliable form of adequate assurance.

### 2. The Utility Motion Should Be Denied As To the Utilities Because the Debtors Have Not Set Forth Any Basis For Modifying the Utilities' Requested Deposits.

In the Utility Motion, the Debtors fail to address why this Court should modify the amounts of the Utilities' requests for adequate assurance of payment. Under Section 366(c)(3), the Debtors have the burden of proof as to whether the amounts of the Utilities' adequate assurance of payment requests should be modified. *See In re Stagecoach Enterprises, Inc.*, 1 B.R. 732, 734 (Bankr. M.D. Fla. 1979) (holding that the debtor, as the petitioning party at a Section 366 hearing, bears the burden of proof). However, the Debtors do not provide the Court with any evidence or factually supported documentation to explain why the amounts of the Utilities' adequate assurance requests should be modified. Accordingly, the Court should deny the relief requested by Debtors in the Utility Motion and require the Debtors to comply with the requirements of Section 366(c) with respect to the Utilities.

### B. THE COURT SHOULD ORDER THE DEBTORS TO PROVIDE THE ADEQUATE ASSURANCE OF PAYMENT REQUESTED BY THE UTILITIES PURSUANT TO SECTION 366 OF THE BANKRUPTCY CODE.

Section 366(c) was amended to overturn decisions such as *Virginia Electric and Power Company v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997), that held that an administrative expense, without more, could constitute adequate assurance of payment in certain cases. Section 366(c)(1)(A) specifically defines the forms that assurance of payment may take as follows:

> (i) a cash deposit;
> (ii) a letter of credit;
> (iii) a certificate of deposit;
> (iv) a surety bond;
> (v) a prepayment of utility consumption; or

>    (vi) another form of security that is mutually agreed upon between the utility and the debtor or the trustee.

Section 366 of the Bankruptcy Code was enacted to balance a debtor's need for utility services from a provider that holds a monopoly on such services, with the need of the utility to ensure for itself and its rate payers that it receives payment for providing these essential services. *See In re Hanratty*, 907 F.2d 1418, 1424 (3d Cir. 1990). The deposit or other security "should bear a reasonable relationship to expected or anticipated utility consumption by a debtor." *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 883 (Bankr. E.D.N.Y. 1986). In making such a determination, it is appropriate for the Court to consider "the length of time necessary for the utility to effect termination once one billing cycle is missed." *In re Begley*, 760 F.2d 46, 49 (3d Cir. 1985).

The Utilities bill the Debtors on a monthly basis for the charges already incurred by the Debtors in the prior month. The Utilities then provide the Debtors with approximately 20 to 30 days to pay a bill before a late fee may be charged, and also provide written notice before utility service can be terminated for non-payment pursuant to applicable state laws, tariffs and/or regulations. Based on the foregoing state-mandated billing cycles, the minimum period of time the Debtors could receive service from the Utilities before termination of service for non-payment of post-petition bills is approximately two (2) months. Moreover, even if the Debtors timely pay their post-petition utility bills, the Utilities still have potential exposure of approximately 45 to 60 days based on their billing cycles. Furthermore, the amounts of the Utilities' deposit requests are the amounts that the applicable public service commission, which is a neutral third-party entity, permit the Utilities to request from their customers. The Utilities are not taking the position that the deposits that they are entitled to obtain under applicable state

11

law are binding on this Court, but, instead are introducing those amounts as evidence of amounts that their regulatory entities permit the Utilities to request from their customers.

Despite the fact that the Utilities continue to provide the Debtors with crucial post-petition utility goods/services on the same generous terms that were provided prepetition, with the possibility of non-payment, the Debtors are seeking to deprive the Utilities of adequate security for which they are entitled to for continuing to provide the Debtors with post-petition utility goods/services.  Against this factual background, it is reasonable for the Utilities to seek and be awarded the full security they have requested herein.

WHEREFORE, the Utilities respectfully request that this Court enter an order:

1. Denying the Utility Motion as to the Utilities;

2. Awarding the Utilities the post-petition adequate assurance of payments pursuant to Section 366 in the amount and form satisfactory to the Utilities, which is the form and amount requested herein; and

3. Providing such other and further relief as the Court deems just and appropriate.

Dated: January 29, 2020

BRINSON, ASKEW, BERRY, SEIGLER, RICHARDSON & DAVIS, LLP

/s/ Thomas D. Richardson
Thomas D. Richardson
Georgia Bar No. 604313
615 West First Street
P.O. Box 5007
Rome, Georgia  30162-5007
Telephone:  (706) 291-8853
Facsimile:  (706) 234-3574
Email: trichardson@brinson-askew.com

and

Russell R. Johnson III
Virginia State Bar No. 31468
John M. Craig

        Virginia State Bar No. 32977
Law Firm of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia  23103
Phone: (804) 749-8861
Facsimile: (804) 749-8862
Email: russell@russelljohnsonlawfirm.com
      john@russelljohnsonlawfirm.com

*Co-Counsel for Florida Power & Light Company, Georgia Power Company and Orlando Utilities Commission*
(pro hac vice application pending)

## CERTIFICATE OF SERVICE

I hereby certify that on this day of January 29, 2020, I caused a true and correct copy of the foregoing *Objection* to be served upon the following parties via the Court's ECF System or by email:

Sarah R. Borders
Jeffrey R. Dutson
Leia Clement Shermohammed
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, Georgia  30309
Email:  sborders@kslaw.com, jdutson@kslaw.com, lshermohammed@kslaw.com
*Debtors' Counsel*

Thomas Wayne Dworschak
Office of the U. S. Trustee
Room 362
75 Ted Turner Drive, SW
Atlanta, Georgia 30303
Email: thomas.w.dworschak@usdoj.gov

By:    BRINSON, ASKEW, BERRY, SEIGLER,
RICHARDSON & DAVIS, LLP

/s/ Thomas D. Richardson
Thomas D. Richardson
Georgia Bar No. 604313
615 West First Street
P.O. Box 5007
Rome, Georgia  30162-5007
Telephone:  (706) 291-8853
Facsimile:  (706) 234-3574
Email: trichardson@brinson-askew.com