# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| The Krystal Company, *et al.*, | ) | Case No. 20-61065 (PWB) |
| | ) | |
| Debtors. | ) | Jointly Administered |

## OBJECTION OF ALABAMA POWER COMPANY TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE ON ACCOUNT OF PREPETITION INVOICES; (II) DEEMING UTILITIES ADEQUATELY ASSURED OF FUTURE PERFORMANCE; (III) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT; AND (IV) GRANTING RELATED RELIEF

Alabama Power Company ("APCO"), by and through its undersigned counsel, objects to the Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Prohibiting Utilities from Altering, Refusing, or Discontinuing Service on Account of Prepetition Invoices; (II) Deeming Utilities Adequately Assured of Future Performance; (III) Establishing Procedures for Determining Adequate Assurance of Payment; and (IV) Granting Related Relief [Doc. No. 14] (the "Utility Motion"). In support of its objection, APCO states as follows:

### INTRODUCTION

1. The Utility Motion disregards the significant changes made to 11 U.S.C. § 366 by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Notwithstanding the manifest intent of Congress to protect the interests of utilities in chapter 11 bankruptcy cases, and the procedures imposed by BAPCPA with respect to those protections, the Debtors have made only a token effort to comply with the legislation. Therefore, based upon the various reasons recited in this objection, the Utility Motion should be denied.

1601705.1

**BACKGROUND**

2.On January 19, 2020 (the "Petition Date"), The Krystal Company and its affiliated debtors in this jointly-administered bankruptcy case (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code").

3.APCO provides electric service to the Debtors under 40 accounts at multiple locations in the State of Alabama. Attached hereto as **Exhibit "A"** is a summary of the Debtors' prepetition electric service accounts with APCO (the "Debtors' APCO Accounts").

4.As of the Petition Date, the unpaid charges due on the Debtors' APCO Accounts totaled $34,002.99 (the "APCO Prepetition Charges"). The total amount of the APCO Prepetition Charges is subject to increase due to unbilled charges incurred by the Debtors from the last prepetition meter reading until the Petition Date.

5.Contrary to what the Debtors allege in the Utility Motion, as of the Petition Date APCO does not hold any deposits to secure the Debtors' APCO Accounts or to the extent deposits are held, they are in a de minimis amount of less than $100.00. Therefore, any statement in the Utility Motion suggesting that deposits held by APCO should factor into the calculations of the adequate assurance to which APCO is entitled is misplaced.

6.The adequate assurance APCO deems satisfactory for the Debtors' APCO Accounts is (a) payment of the APCO Prepetition Charges in the amount of $34,002.99 (b) a cash deposit delivered to APCO in the amount of $132,987.94, which amount is equal to the average charges for approximately two months of electric service based on the Debtors' account histories for the twelve months preceding the Petition Date; and (c) the Debtors' continued and timely payment of post-petition utility charges incurred.

16017051

7. This is not what the Debtors propose. Instead, the Utility Motion requests entry of an interim and final order providing, among other things: (i) the deposit of amount the Debtors contend is the estimated average costs for two weeks of utility services minus any deposits or bonds now held by utilities and (ii) the continued post-petition payment of utility charges a they are incurred.

## SECTION 366

8. Section 366 of the Bankruptcy Code ("Section 366") was enacted originally to balance a debtor's need for utility services from a provider that holds a monopoly on such services with the need of the utility to ensure for itself and its rate payers that it receives payment for these essential services. *See In re Hanratty*, 907 F.2d 1418, 1424 (3d Cir. 1990).

9. Despite the apparent protections afforded to utilities under Section 366, *ex parte* orders and other judicial decisions interpreting the statute steadily eroded those safeguards in a manner that Congress apparently did not intend. Therefore, when enacting BAPCPA, substantial modifications were made to the text of Section 366, which became effective in bankruptcy cases commenced on or after October 17, 2005. Congress has clearly expressed in the new legislation that utilities are entitled to be treated in bankruptcy cases in a manner that is consistent with a plain reading of the phrase "adequate assurance of payment". Section 366 now (i) grants to utilities significant substantive rights concerning the security to which they are entitled and (ii) prescribes a new procedure that eliminates the need for first day motions, interim orders and other practices that were common prior to BAPCPA.

10. Subsections (a) and (b) of Section 366 are substantively identical to their statutory predecessors. However, subsection (c) of Section 366 was a new provision that unambiguously prohibits many of the practices that were common to cases filed prior to October 17, 2005 and

16017051

which are proposed by the Debtors in this case. "As with most issues arising under BAPCPA, the threshold inquiry is to determine precisely what was said, and left unchanged, as Congress amended the Code." In re Astle, 338 B.R. 855, 857 (Bankr. D. Idaho 2006). Subsection (c) of Section 366 provides as follows:

> (c)(1)(A) For purposes of this subsection, the term 'assurance of payment' means –
>
>> (i)      a cash deposit;
>> (ii)     a letter of credit;
>> (iii)    a certificate of deposit;
>> (iv)     a surety bond;
>> (v)      a prepayment of utility consumption; or
>> (vi)     another form of security that is mutually agreed on between the utility and the debtors or the trustee.
>
> (B)     For purposes of this subsection an administrative expense priority shall not constitute an assurance of payment.
>
> (2)     Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtors or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.
>
> (3)(A)  On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).
>   (B) In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider –
>
>> (i)     the absence of security before the date of the filing of the petition;
>>
>> (ii)    the payment by the debtors of charges for utility service in a timely manner before the date of the filing of the petition; or
>>
>> (iii)   the availability of an administrative expense priority.
>
> (4)     Notwithstanding any other provision of law, with respect to a case subject to this subsection, a utility may recover or set off against a security deposit provided to the utility by the debtors before the date of the filing of the petition without notice or order of the court.

## SIGNIFICANCE OF SECTION 366

11.     Section 366 prohibits a debtor from claiming that utilities are adequately assured of payment of postpetition charges simply by conceding that such charges are entitled to an administrative expense priority.  Pursuant to 11 U.S.C. § 366(c)(1)(A), only the tangible forms of security listed in the statute qualify as assurance of payment, unless a utility otherwise agrees.  The protections granted to utilities by Section 366 recognize the inherent risk that utilities must bear since they are statutorily compelled to provide uninterrupted postpetition service to debtors for a minimum period, even though their invoices are payable only after the utility service has been irreversibly consumed by the debtors.  No creditors in this bankruptcy case, other than utilities, are required to incur such risks.

12.     Paragraph (c)(2) of Section 366 establishes a procedure by which debtors are to provide assurance of payment to utilities.  Prior to BAPCPA, debtors were required to "furnish" adequate assurance of payment within 20 days of the petition date to avoid a disruption in service.  However, paragraph (c)(2) of Section 366 requires that one of the allowed forms of assurance of payment "that is satisfactory to the utility" be "received" by the utility within 30 days of the petition date to ensure continuous service.  This purposeful revision of Section 366 requires debtors to timely deliver assurance of payment to a utility without imposing any burdens or other measures upon utilities, including first day motions, interim orders, *ex parte* hearings and other court proceedings.

13.     Following delivery of a payment assurance to a utility, if the amount of the delivered assurance is deemed unreasonable by the debtor, 11 U.S.C. § 366(c)(3) authorizes a court, after a motion and hearing, to <u>modify the amount</u> of assurance required by and delivered to the utility.  Paragraph (c)(3) of Section 366 does not authorize a bankruptcy court to either (i) determine the "form" of adequate assurance that a utility may require or (ii) establish the

1601705.1

"amount" of assurance that is adequate prior to the utility "receiv[ing] from the debtors or the trustee adequate assurance of payment for utility service that is satisfactory to the utility." See 11 U.S.C. § 366(c)(3). Court modification of the amount of an assurance of payment may occur only after the security described in Section 366 is received by a utility. See In re Lucre, Inc., 333 B.R. 151, 154 (Bankr. W.D. Mich. 2005); 11 U.S.C. § 366(c)(3)(A).

14. Textually and in theory, Section 366(c) requires a debtor to timely communicate with its utility service providers (and not by the filing of a first-day motion) in an effort to reach an agreement within the first 30 days of a case concerning the assurance of payment that will be required. During this 30 day period, three scenarios could occur: (1) the debtor and a utility will agree on the adequacy of payment assurance to be received by the utility to ensure uninterrupted service; (2) the debtor will deem the service provided by a utility to be unnecessary and will request that the service be terminated; or (3) the debtor will deliver to the utility the requested assurance of payment and then move the bankruptcy court to modify the amount. Regardless of the scenario, a bankruptcy court's involvement under Section 366, if any, should commence only after the debtor has delivered the assurance of payment required by the utility.

### THE UTILITY MOTION DOES NOT MEET THE REQUIREMENTS OF SECTION 366

15. As an initial matter, the Utility Motion states that the Debtors state that APCO holds pre-petition deposits in the amount of $6,576.82. Such is not the case as APCO records indicate that at most, a pre-petition deposit of no more than $100.00 is held. However, even if the Debtors seek to provide adequate assurance to APCO through the use of a prepetition deposit supplemented so that on deposit is two weeks' worth of charges, the Utility Motion still conflicts with both the letter and the intent of Section 366.

1601705.1

16. Further, the Debtors seem to hang their hat on the assertion that they have historically paid their utility bills on time. Section 366(c)(3)(B)(ii) specifically prevents the Court from considering a debtor's timely payment of prepetition utility charges in determining adequate assurance.

17. First, the burden is on the Debtors to timely deliver a payment assurance that is <u>satisfactory to the utility</u>. 11 U.S.C. § 366(c)(2) (*emphasis added*). Granting the Utility Motion would improperly shift the burden to the Debtors' utilities by making an advance determination that the proposed assurance was satisfactory. See <u>In re Viking Offshore (USA) Inc.</u>, No. 08-31219-H3-16 2008 WL 782449 at *3 (Bankr. S.D. Tex. March 20, 2008). "Section 366(c)(2) imposes no requirement that a utility came to court before altering, refusing or discontinuing service, though clearly Congress knew how to condition an action upon first seeking a hearing…. Likewise, nothing in Section 366 suggests that the court may set a time limit within which a utility must contest a debtor's proposal of adequate assurance or that the court may prohibit a utility from thereafter demanding further or alternate assurance." <u>In re Pilgrim's Pride Corporation</u>, No. 08-45664 (DML), 2009 Bankr. Lexis 2 at *5-6 (Bankr. N.D. Tex. Jan. 4, 2009).

18. Subsection (c)(2) of Section 366 authorizes service refusal, modification or termination if within 30 days of the petition date the utility "does not <u>receive</u> from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility." (*emphasis added*). Here, APCO will not have received anything. APCO will not possess, have access to, or control over the bank account the Debtors propose to set up to hold deposits and any attempts by APCO to draw against this proposed deposit account are arguably subject to Court approval. Such is the antithesis of receipt.

19. APCO does not consent to the Debtors' proposed terms as being a satisfactory form of payment assurance. As a result, Section 366 does not authorize the Court or the Debtors to determine which of the approved assurances of payment APCO must accept. Subsection (c)(2) of Section 366 requires a chapter 11 debtor to deliver to each servicing utility a payment assurance deemed satisfactory by the receiving utility. Upon delivery of a payment assurance, any party is authorized under 11 U.S.C. § 366(c)(3) to file a motion requesting the entry of an order modifying the <u>amount</u> of the delivered payment assurance. However, the textual authorization for court modification of an amount of a payment assurance does not extend to the <u>form</u> of that assurance of payment. See 11 U.S.C. § 366(c)(3). A precise reading of Section 366 reflects that a utility is the only party with discretion to determine which of the specified forms of payment assurance is satisfactory.

20. Although the use of the deposit account as a payment assurance is, in and of itself, contrary to Section 366, in addition, the proposed funding amount of the deposit account is not "adequate". The Debtors make no effort in the Utility Motion to justify its conclusion that holding deposits in the amount of the Debtors' two week utility service charge average is adequate and have made no attempts to discuss with APCO, as contemplated by Section 366, what amount of assurance APCO deems adequate.

21. Further, the amount the Debtors' propose to pay as adequate assurance wholly ignores the manner in which APCO invoices the Debtors for their electric service. APCO service meters are read on a monthly basis. On the date that a meter is read, APCO has already delivered approximately thirty days of electric service for which no payment has been received (*Day 30*). As a general rule, approximately two to three days after a meter is read, APCO issues an invoice (*Day 33*). Payment of the invoice is due upon receipt (*Day 35*), but is not delinquent

16601705.1

until ten (10) days after receipt (*Day 45*). Once an invoice is delinquent, APCO is required by Rule 10 of the Alabama Public Service Commission to send a written notice of termination to the customer. APCO cannot terminate service until the expiration of five (5) days after delivery of the termination notice to a United States Post Office (*at the earliest, Day 51*). Additional time invariably passes before service is actually terminated by APCO. Therefore, APCO customarily provides businesses such as the Debtors with more than fifty-one (51) days of utility service at a particular location before it can terminate electric service. This very substantial risk has resulted in formal recognition by the Alabama Public Service Commission in General Rule 8 that a deposit equal to two (2) months average electric service is reasonable and appropriate "for the purpose of guaranteeing final payment for service, when, in the judgment of the utility, such deposit is necessary." Rule 8 <u>General Rules of the Alabama Public Service Commission</u>.

22.   Under virtually any canon of statutory construction, it is inconceivable that a deposit based upon 15 days average service is "adequate assurance of payment" for 51 or more days of service. The Debtor's proposed adequate assurance should not be endorsed by this Court as being consistent with the requirements of Section 366.

### RELIEF REQUESTED

23.   Based upon the foregoing, APCO requests that the Court enter an order:

    (i)   deny the Utility Motion with respect to APCO;

    (ii)   requiring the Debtors to pay the pre-petition amounts due APCO in the amount of $34,002.99 and deliver to APCO a cash deposit in the amount of $132,987.94, which amount is equal to the average charges for approximately two months of electric service based on the Debtors' account history for the twelve months preceding the Petition Date; and

(iii)   granting to APCO such other, further and additional relief as the Court deems proper.

Dated: January 31, 2020

/s/ *Walter E. Jones*
Walter E. Jones
Georgia Bar Number 163287
Austin Alexander
Georgia Bar Number 926056

**BALCH & BINGHAM LLP**
30 Ivan Allen Jr. Boulevard, N.W.
Suite 700
Atlanta, GA 30308
Telephone: (404) 261-6020
Facsimile: (404) 261-3656
wjones@balch.com
aalexander@balch.com

*Attorney for Alabama Power Company*

## CERTIFICATE OF SERVICE

I certify that on January 30, 2020, I electronically filed the foregoing with the Clerk of the Court by using the Court's CM/ECF system, which will serve a notice to all counsel.

/s/ *Walter E. Jones*
WALTER E. JONES
Georgia Bar Number 163287

16017051.1