**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE KRYSTAL COMPANY, *et al.*,[1] | ) | Case No. 20-61065 (PWB) |
| | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administrated) |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING BIDDING
PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS, (II) SCHEDULING
HEARINGS AND OBJECTION DEADLINES WITH RESPECT TO THE SALE, (III)
SCHEDULING BID DEADLINES AND AN AUCTION, (IV) APPROVING THE FORM
AND MANNER OF NOTICE THEREOF, (V) APPROVING CONTRACT ASSUMPTION
AND ASSIGNMENT PROCEDURES, AND (VI) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this *Debtors' Motion for Entry of an Order (I) Approving Bidding Procedures for the Sale of the*

*Debtors' Assets, (II) Scheduling Hearings and Objection Deadlines with Respect to the Sale, (III)*

*Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice*

*Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting*

*Related Relief* (the "Motion").  In support of this Motion, the Debtors respectfully represent as

follows:

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal
tax identification number, include: The Krystal Company (4140); Krystal Holdings, Inc.
(5381); and K-Square Acquisition Co., LLC (8916).  The location of the Debtors' corporate
headquarters and service address is: 1455 Lincoln Parkway, Suite 600, Dunwoody, Georgia
30346.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over these cases and this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a).

2.      The bases for the relief requested herein are sections 105(a), 363 and 365 of title 11

of the United States Code (the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3.      On January 19, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for

relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the

Northern District of Georgia (the "Court").  The Debtors have continued in possession of their

properties and have continued to operate and manage their business as debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the

appointment of a trustee or examiner.  On February 11, 2020, an official committee of unsecured

creditors (the "Committee") was established.

4.      The factual background relating to the Debtors' commencement of these cases is

set forth in detail in the *Declaration of Jonathan M. Tibus in Support of Chapter 11 Petitions and

First Day Pleadings* (the "First Day Declaration") filed on the Petition Date and incorporated

herein by reference.  Additional facts specific to this Motion are set forth below.

**A.    The Debtors' Assets**

5.    The Debtors operate the well-known restaurant brand "Krystal," consisting of 186 locations across nine states and are also the franchisor for 113 franchised locations (collectively, the "Assets").

6.    Over the past year, the Debtors have experienced declining financial performance due to, among other things, declines in restaurant sales. The Debtors have closed underperforming restaurants and implemented cost reduction measures to help mitigate the effect of these declines and improve their financial position and liquidity but have not been able to overcome these trends.

7.    Despite their continuing efforts to improve performance and to build sales, the Debtors have been unable to comply with their obligations under their credit agreement with Wells Fargo Bank, National Association and certain other prepetition lenders (the "Prepetition Lenders").

8.    In December 2019, the Debtors engaged a financial advisor and investment banker, Piper Sandler & Co. ("PSC"), a nationally recognized investment banking firm with extensive expertise in marketing and selling distressed businesses, including distressed restaurant chains, to assist the Debtors in evaluating various strategic alternatives available to the Debtors.    After evaluating the options, and the continued pressures of the business climate, the Debtors have commenced a process to pursue the sale of the Assets (the "Sale") and determined in their business judgment that a Sale may offer the best recovery for all of their stakeholders.

**B.    Sale Process**

9.    In December 2019, PSC began a marketing process related to the Assets.    In consultation with the Debtors, PSC developed a list of parties whom they believe may be interested

in, and whom PSC reasonably believes would have the financial resources to consummate a Sale. The list of parties includes both strategic and financial investors.

10.    The Bidding Procedures (as defined below) are designed to—and the Debtors believe the Bidding Procedures will operate to—maximize the likelihood of a competitive bidding process.

## C.    Stalking Horse Purchaser

11.    To further maximize the competitiveness of any bidding process, the Debtors also seek authority, but not direction, to select, after consultation with the Consultation Parties (as defined in the Bidding Procedures), one or more parties to serve as a Stalking Horse Purchaser (a "Stalking Horse Purchaser") on or before April 1, 2020.

12.    In the event that the Debtors enter into any Stalking Horse Agreement (as defined in the Bidding Procedures) that the Debtors determine, after consultation with the Consultation Parties (as defined in the Bidding Procedures), is in the best interests of the Debtors and their estates, the Debtors will file with the Court, and upload to the Data Room (as defined in the Bidding Procedures), a notice that shall include the following: (a) the identification of the Stalking Horse Purchaser; (b) a copy of the Stalking Horse Agreement; (c) the purchase price provided for in the Stalking Horse Agreement; (d) the amount of the deposit paid by the Stalking Horses Purchaser; and (e) the amount of any Break-Up Fee or any Expense Reimbursement (as defined in the Bidding Procedures).  The Debtors will seek expedited approval of the Stalking Horse Agreement and any Break-Up Fee or Expense Reimbursement provided for therein.

### D.    Proposed Bidding Procedures

13.    By this Motion, the Debtors request approval of the Bidding Procedures (the "Bidding Procedures") attached as **Exhibit 1** to the proposed order attached hereto as **Exhibit A** (the "Bidding Procedures Order").  The proposed Bidding Procedures are designed to permit a fair, efficient, competitive, and value-maximizing auction process for the Debtors' assets (the "Assets").

14.    The Debtors believe the Bidding Procedures will provide them sufficient time to conduct a robust marketing process with outreach to both strategic and financial parties. Furthermore, the Debtors believe that potential bidders will have ample notice and time to conduct thorough due diligence to submit binding bids in advance of the bid deadline.  The Bidding Procedures are designed to encourage all prospective bidders to put their best bid forward, bring finality to the Debtors' chapter 11 process, and create a path towards the highest or otherwise best available recoveries to the Debtors' stakeholders.

15.    Because the Bidding Procedures are attached as **Exhibit 1** to the Bidding Procedures Order (which is attached hereto as **Exhibit A**), they are not restated fully herein. Generally, however, the Bidding Procedures establish, among other things:[2]

- the Debtors will serve the Bidding Procedures Order (setting forth the schedule for the sale process), Bidding Procedures, and Sale Notice (as defined below) on all relevant notice parties as soon as practicable after entry of the Bidding Procedures Order;

- the availability of, and access to, due diligence by potential bidders;

- the deadlines and requirements for submitting competing bids and the method and criteria by which such competing bids are deemed to be "Qualifying Bids"

---

[2]    The following summary is provided for convenience purposes only.  To the extent any of the terms described below are inconsistent with the Bidding Procedures, the Bidding Procedures control in all respects.

sufficient to trigger the Auction (as defined in the Bidding Procedures) and participate in the Auction;

- the manner in which Qualifying Bids will be evaluated by the Debtors to determine the starting bid for the Auction;

- the conditions for having the Auction and procedures for conducting the Auction, if any; and

- various other matters relating to the sale process generally, including the designation of the back-up bid, return of any good faith deposits, and certain reservations of rights.

16.    Importantly, the Bidding Procedures recognize and comply with the Debtors' fiduciary obligations to maximize sale value and do not impair the Debtors' ability to consider all strategic alternatives made at or prior to the Auction.  The Bidding Procedures preserve the Debtors' right, after consulting with the Consultation Parties, to modify the Bidding Procedures as necessary or appropriate to maximize value for the Debtors' estates.

E.    **Proposed Sale Schedule**

17.    The Debtors are seeking approval of the Bidding Procedures and the Sale Schedule (as defined below) to establish a clear and open process for the solicitation, receipt, and evaluation of third-party bids on a timeline that will allow the Debtors to consummate a Sale.  A defined path toward effectuating the Sale will drive the sale process in an expeditious and efficient manner and is designed to encourage all prospective bidders to put their best bids forward at the outset of these chapter 11 cases to provide the highest or otherwise best available recoveries to the Debtors' stakeholders.

18.    The Debtors have already initiated their marketing efforts and the Debtors will use the time following entry of the Bidding Procedures Order to continue the process to actively market their Assets.  Subject to the Court's availability, the key dates and deadlines the Debtors seek to

establish pursuant to this Bidding Procedures Order (the "Sale Schedule") are as follows, provided

that the Debtors may amend the Sale Schedule without further order of the Court so long as such

changes to the Sale Schedule (i) comply with any milestones contained in the DIP Order and/or

Cash Collateral Order or (ii) are made with the consent of the DIP Agent and First Lien Prepetition

Agent:

(i)  **Bid Deadline**: **May 4, 2020 at 5:00 p.m. (prevailing Eastern Time)** is the deadline by which all Qualifying Bids must be ***actually received*** by the parties specified in the Bidding Procedures (the "Bid Deadline").

(ii)  **Auction**: The Auction, if necessary, will be held on **May 7, 2020 at 10:00 a.m. (prevailing Eastern Time)** at the offices of counsel to the Debtors, King & Spalding LLP, 1180 Peachtree Street, Atlanta GA  30309

(iii)  **Sale Objection Deadline**: The deadline by which all objections to the Sale or the assumption and assignment of any executory contracts must be filed with the Court and served so as to be ***actually received*** by the appropriate notice parties (the "Sale Objection Deadline"), is **May 12, 2020 at 5:00 p.m. (prevailing Eastern Time)**.

(iv)  **Sale Hearing**: The hearing approving the Sale to the Successful Bidder (as defined in the Bidding Procedures) shall take place before the Court on **May 14, 2020 at 10:00 a.m. (prevailing Eastern Time)**.

**F.   Notice of Auction**

19.   As soon as reasonably practicable, but no later than three (3) business days after

entry of the Bidding Procedures Order (the "Mailing Date"), the Debtors (or their agents) will

cause the notice substantially in the form attached as **Exhibit 2** to the Bidding Procedures Order

(the "Sale Notice"), to be served on the following parties or their respective counsel, if known:

(a) the Office of the United States Trustee for the Northern District of Georgia; (b) the counsel to

the official committee of unsecured creditors; (c) counsel to the First Lien Prepetition Agent; (d)

all parties who have expressed a written interest in some or all of the Debtors' Assets; (e) all parties

who are known or reasonably believed, after reasonable inquiry, to have asserted any lien,

encumbrance, claim or other interest in the Debtors' Assets; (f) the Internal Revenue Service; (g) the Georgia Department of Revenue; (h) the Attorney General for the State of Georgia; (i) the United States Attorney for the Northern District of Georgia; (j) the state attorneys general for states in which the Debtors conduct business; (k) the Pension Benefit Guaranty Corporation; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002.

20.     In addition, on the Mailing Date, or as soon thereafter as practicable, the Debtors (or their agents) will serve by first-class mail, postage prepaid, the Sale Notice, upon all other known creditors of the Debtors and all counterparties to the Debtors' executory contracts and unexpired leases.

21.     The Debtors submit that the Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including the date, time, and place of the Auction (if one is held) and the Bidding Procedures and the dates and deadlines related thereto.  Accordingly, the Debtors request that the form and manner of the Sale Notice be approved and that the Court determine that no other or further notice of the Auction is required.

**G.     Summary of the Assumption and Assignment Procedures**

22.     The Debtors propose the Assumption and Assignment Procedures set forth below for notifying the counterparties to executory contracts and unexpired leases (each a "Contract Counterparty" and collectively, the "Contract Counterparties") of proposed cure amounts in the event the Debtors decide to assume and assign such contracts or leases in connection with the Sale.

    i.     Notice of Assumption and Assignment.

23.     In accordance with the Bidding Procedures Order, on or before March 31, 2020 (such date, the "Assumption and Assignment Service Date"), the Debtors shall file with the Court

and serve via first class mail, electronic mail, or overnight delivery the Cure Notice annexed as **Exhibit 3** to the Bidding Procedures Order on all Contract Counterparties and, include as **Exhibit A** to the Cure Notice, a list (the "Assigned Contracts Schedule") that specifies: (a) each of the Debtors' executory contracts and unexpired leases that may be assumed and assigned in connection with the Sale (*i.e.*, the Assigned Contracts), including the name of the Contract Counterparty to each such contract; (b) the proposed amount necessary, if any, to cure all monetary defaults, if any, under each Assigned Contract (the "Cure Costs"); and (c) the deadline by which any Contract Counterparty may file an objection to the proposed assumption, assignment, cure, and/or adequate assurance and the procedures relating thereto.  The Debtors shall serve, via first class mail, a customized version of the Cure Notice, without the Assigned Contracts Schedule, which will include: (w) instructions (the "KCC Instructions") regarding how to view the Assigned Contracts Schedule on the Debtors' case website, http://www.kccllc.net/krystal (the "Case Website"); (x) information necessary and appropriate to provide notice of the relevant proposed assumption and assignment of Assigned Contracts and rights thereunder; (y) Cure Costs, if any; and (z) the procedures for objecting thereto ((x)-(z) collectively, the "Necessary Notice Information"), on each Contract Counterparty to the Assigned Contracts.  The Debtors shall serve on all parties that requested notice pursuant to Bankruptcy Rule 2002 a modified version of the Cure Notice that contains the KCC Instructions and Necessary Notice Information.  The Debtors believe the service as set forth herein shall be deemed proper, due, timely, good, and sufficient notice and no other or further notice will be necessary.

24.    A Contract Counterparty listed on the Assigned Contract Schedule may file an objection (an "Assigned Contract Objection") to the proposed assumption and assignment of the

applicable Assigned Contract or the proposed Cure Costs, if any. All Assigned Contract Objections must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Complex Case Procedures, the Bankruptcy Local Rules for the Northern District of Georgia, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court and served and *actually received* no later than the April 20, 2020 (the "Cure Objection Deadline").

25.    If a Contract Counterparty files an Assigned Contract Objection in a manner that is consistent with the requirements set forth above, and the Stalking Horse Bidder (if any) or other Successful Bidder (as defined in the Bidding Procedures) has designated in writing that it wishes to take assignment of such Assigned Contract, and the parties are unable to consensually resolve the dispute prior to the Sale Hearing (as defined below), such objection will be resolved at the Sale Hearing or such later date as determined by the Court. To the extent that any Assigned Contract Objection cannot be resolved by the parties, such Assigned Contract shall be assumed and assigned only upon satisfactory resolution of the Assigned Contract Objection, to be determined in the Stalking Horse Bidder (if any) or other Successful Bidder's discretion. To the extent an Assigned Contract Objection remains unresolved, the Assigned Contract may be conditionally assumed and assigned, subject to the consent of the Stalking Horse Bidder (if any) or other Successful Bidder, pending a resolution of the Assigned Contract Objection after notice and a hearing. If an Assigned Contract Objection is not satisfactorily resolved, the Stalking Horse Bidder (if any) or other Successful Bidder may determine that such Assigned Contract should be rejected and not assigned,

in which case the Stalking Horse Bidder (if any) or other Successful Bidder will not be responsible for any Cure Costs in respect of such contract.

       ii.     <u>Supplemental Cure Notice</u>.

26.     If (a) the Debtors discover contracts inadvertently omitted from the Assigned Contracts Schedule, (b) the Successful Bidder identifies other executory contracts or unexpired leases that it desires to assume and assign in connection with the Sale, or (c) the previously stated Cure Cost associated with any assigned Contract requires modification, the Debtors may, at any time after the Assumption and Assignment Service Date: (i) supplement the Assigned Contracts Schedule with the previously omitted Assigned Contracts; (ii) remove any Assigned Contracts from the list of executory contracts and unexpired leases ultimately selected as Assigned Contracts that the Successful Bidder proposes be assumed and assigned to it in connection with the Sale or add to such list; and/or (iii) modify the previously stated Cure Costs associated with any Assigned Contract.

27.     In the event that the Debtors exercise any of the rights reserved above, the Debtors shall promptly serve a supplemental notice of assumption and assignment by electronic transmission, hand delivery, or overnight mail on the Contract Counterparty, and its counsel, if known, at the last known address available to the Debtors (a "<u>Supplemental Cure Notice</u>"). Each Supplemental Cure Notice shall include the same information with respect to listed Assigned Contracts as would have been included in the Notice of Assumption and Assignment (a "<u>Supplemental Assigned Contracts Schedule</u>").

28.     Any Contract Counterparty that receives a Supplemental Cure Notice may file an objection (a "<u>Supplemental Assigned Contract Objection</u>") to the proposed assumption and

assignment of the applicable Assigned Contract or the proposed Cure Costs, if any.    All Supplemental Assigned Contract Objections must: (a) state, with specificity, the legal and factual basis for the objection as well as what Cure Costs are required, if any; (b) include appropriate documentation in support thereof; and (c) be filed on the date that is the later of (i) the Sale Objection Deadline and (ii) 14 days following the date of service of such Supplemental Cure Notice, which date will be set forth in the Supplemental Cure Notice (the "Supplemental Assigned Contract Objection Deadline").

29.    If a Contract Counterparty files a Supplemental Assigned Contract Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the Debtors shall seek an expedited hearing before the Court (a "Supplemental Assigned Contract Hearing") to determine the Cure Costs, if any, and approve the assumption of the relevant Assigned Contracts.  If there is no such objection, then the Debtors shall obtain an order of this Court fixing the Cure Costs and approving the assumption and assignment of any Assigned Contract listed on a Supplemental Cure Notice.

iii.    Supplemental Cure Notice.

30.    If a Contract Counterparty does not file and serve an Assigned Contract Objection or Supplemental Assigned Contract Objection in a manner that is consistent with the requirements set forth above, and absent a subsequent order of the Court establishing an alternative Cure Cost, (a) the Cure Costs, if any, set forth in the Cure Notice (or Supplemental Cure Notice) shall be controlling, notwithstanding anything to the contrary in any Assigned Contract or any other document, and (b) the Contract Counterparty will be deemed to have consented to the assumption and assignment of the Assigned Contract and the Cure Costs, if any, and will be forever barred

from objecting to the assumption and assignment of such Assigned Contract and rights thereunder, including the Cure Costs, if any, and from asserting any other claims related to such Assigned Contract against the Debtors or the Successful Bidder, or the property of any of them.

31.     Any objections to the Successful Bidder's proposed form of adequate assurance of future performance must be filed by the later of the Sale Objection Deadline or Supplemental Assigned Contract Objection Deadline, as applicable, and such objections will be resolved at the Sale Hearing or Supplemental Assigned Contract Hearing, as applicable.  The Debtors may, with the consent of the Successful Bidder, adjourn the resolution of any such objection to a later hearing.

32.     For the avoidance of doubt, the inclusion of an Assigned Contract on the Assigned Contracts Schedule or Supplemental Assigned Contracts Schedule shall not obligate the Debtors to assume any such Assigned Contract or obligate any Stalking Horse Bidder or a Successful Bidder to take assignment of any such Assigned Contract.  Any Stalking Horse Bidder or other Successful Bidder shall determine whether to take assignment of any Assigned Contracts pursuant to the terms of the Purchase Agreement (as defined in the Bidding Procedures).

33.     The Debtors also request that the Sale Order (as defined below) include approval of certain procedures and designation rights of the Successful Bidder to the extent provided for in the Purchase Agreement.

## **RELIEF REQUESTED**

34.     By this Motion, the Debtors seek entry of two orders: (i) following an initial hearing (the "Bidding Procedures Hearing"), an order in the form attached hereto as **Exhibit A** (a) authorizing and scheduling the Auction at which the Debtors will solicit the highest or best bid for the Sale; (b) approving the bidding procedures related to the conduct of the Auction; (c) approving

the form and manner of the notices of (1) the proposed sale of the Debtors' Assets, the Auction

and the Sale Hearing and (2) the proposed assumption and assignment of the Debtors' executory

contracts and unexpired leases and proposed cure costs related thereto; and (ii) following a final

hearing (the "Sale Hearing"), an order (the "Sale Order") approving the sale by the Debtors of the

Debtors' Assets to the bidder submitting the highest or best bid for the Debtors' Assets in

connection with the sale and bidding process.

## BASIS FOR RELIEF REQUESTED

**A.    The Assets May Be Sold Free and Clear of Liens, Claims, Interests and Encumbrances under Bankruptcy Code Section 363(f).**

35.    Bankruptcy Code section 363(f) authorizes a debtor to sell assets free and clear of

all liens, claims, interests and encumbrances provided that one of the following conditions is met:

> (a) applicable non-bankruptcy law permits sale of such property free and clear of such interests;
>
> (b) such entity consents;
>
> (c) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (d) such interest is in bona fide dispute; or
>
> (e) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)(1)–(5).

36.    As section 363(f) of the Bankruptcy Code is stated in the disjunctive, when

proceeding pursuant to section 363(b), it is only necessary for a debtor to meet one of the five

conditions of section 363(f).  *See In re Flyboy Aviation Props., LLC,* 501 B.R. 828, 834 (Bankr.

N.D. Ga. 2013); *Mich. Employment Sec. Comm'n* v. *Wolverine Radio Co.  (In re Wolverine Radio

Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code section 363(f)

14

written in disjunctive; holding that court may approve sale "free and clear" provided at least one of the subsections of section 363(f) is met); *In re Zeigler*, 320 B.R. 362, 381 (Bankr. N.D.Ill. 2005); *In re Dundee Equity Corp.*, No. 89-B-10233, 1992 Bankr. LEXIS 436, at *12 (Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of §363(f) have been met."); *In re Bygaph, Inc.*, 56 B.R. 596, 606 n. 8 (Bankr. S.D.N.Y. 1986) (same).

37.    The Debtors submit that each lien (other than liens that will be assumed liabilities or permitted encumbrance under the Purchase Agreement) satisfies at least one of the five conditions of Bankruptcy Code section 363(f). If an entity with liens on the Assets does not consent to the proposed sale of such Assets, the Debtors intend to demonstrate at the Sale Hearing their satisfaction of the requirements of Bankruptcy Code section 363(f). Alternatively, the Debtors may sell the Assets free and clear of any other interests under section 363(f)(5) because the liens on any Assets sold will attach to the cash proceeds of such Sale in their order of priority and entities holding such interests could be compelled to accept money satisfaction in legal or equitable proceedings. Accordingly, pursuant to Bankruptcy Code section 363, the Debtors may sell the Assets free and clear of all claims, liens and encumbrances.

38.    Moreover, the Debtors have sent or will send the Sale Notice to any purported lienholders. If such lienholders do not object to the Sale, then their consent should reasonably be presumed. Accordingly, the Debtors request that unless a party asserting a lien on any of the Assets (other than with respect to assumed liabilities and permitted encumbrances under the Purchase Agreement) timely objects to this Motion, such party shall be deemed to have consented to any Sale approved at the Sale Hearing.

39.     It is also appropriate to sell the Assets free and clear of successor liability relating to the Debtors' businesses. Such limitations on successor liability ensure that the Successful Bidder is protected from any claims or lawsuits premised on the theory that the Successful Bidder is a successor in interest to one or more of the Debtors.  Courts have consistently held that a buyer of a debtor's assets pursuant to a section 363 sale takes free and clear from successor liability relating to the debtor's business. *See e.g., In re Tran World Airlines, Inc.*, 322 F.3d 283, 288–90 (3d Cir. 2003) (sale of assets pursuant to section 363(f) barred successor liability claims for employment discrimination and rights under travel voucher program); *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 585 (4th Cir. 1996) (affirming the sale of debtors' assets free and clear of certain taxes); *In re Dixie Pellets LLC*, 2009 WL 8189341 (Bankr. N.D. Ala. Sept. 13, 2009) (approving sale of substantially all of Debtor's assets free and clear of all liens, including but not limited to "all rights or claims based on any theory or principle of successor liability."); *In re Ormet*, 2014 WL 3542133 (Bankr. D. Del. July 17, 2014) (permitting a sale free and clear of successor liability claims relating to an under-funded pension plan); *In re Insilco Techs., Inc.*, 351 B.R. 313, 322 (Bankr. D. Del. 2006) (stating that a 363 sale permits a buyer to take ownership of property without concern that a creditor will file suit based on a successor liability theory); *see also In re General Motors Corp.*, 407 B.R. 463, 505-06 (Bankr. S.D.N.Y. 2009) (holding that "[T]he law in this Circuit and District is clear; the Court will permit GM's assets to pass to the purchaser free and clear of successor liability claims, and in that connection, will issue the requested findings and associated injunction"); *In re Chrysler LLC*, 405 B.R. 84, 111 (Bankr. S.D.N.Y. 2009) ("[I]n personam claims, including any potential state successor or transferee liability claims against New Chrysler,

as well as in rem interests, are encompassed by section 363(f) and are therefore extinguished by the Sale Transaction").

40.    The purpose of a sale order purporting to authorize the transfer of assets free and clear of all claims, liens and encumbrances would be defeated if claimants could thereafter use the transfer as a basis to assert claims against a purchaser arising from a seller's pre-sale conduct. Moreover, without such assurances, a buyer may not agree to purchase the Assets and potential bidders may choose not to participate in the Auction or, if they did, would submit reduced bid amounts. To that end, the Successful Bidder should not be liable under any theory of successor liability relating to the Debtors' businesses, but should hold the Assets free and clear.

**B.    A Successful Bidder Should be Entitled to the Protection of Bankruptcy Code 363(m).**

41.    Pursuant to Bankruptcy Code section 363(m), a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims.  *See Miami Ctr. Ltd. P'ship v. Bank of New York*, 838 F.2d 1547, 1554 (11th Cir. 1988); *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Congoleum Corp.*, Case No. 03-51524, 2007 WL 1428477 at *2 (Bankr. D.N.J. May 11, 2007); *Abbotts Dairies of Penn., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).

42.    The Purchase Agreement for the Successful Bidder will be negotiated at arm's-length, with each of the parties represented by its own advisors and counsel.  Accordingly, the Debtors request that the order approving the Sale include a provision that the Successful Bidder for the relevant Assets is a "good faith" purchaser within the meaning of Bankruptcy Code section 363(m).  The Debtors maintain that providing the Successful Bidder with such protection will ensure that the maximum price will be received by the Debtors for the Assets.

C.     **The Form, Manner and Extent of Notice of the Motion and the Proposed Sale are Appropriate and Adequate Under the Circumstances.**

43.     The Debtors will serve the Sale Notice and the Cure Notice in accordance with the Bidding Procedures Order.  The notice of the proposed Sale to be provided by the Debtors as set forth herein sufficiently describes the terms and conditions of the proposed Sale.

44.     Several sections of the Bankruptcy Code and Bankruptcy Rules dictate the sufficiency of notice and adequacy of service. As discussed below, the content and manner of service of this Motion and the related notices satisfy all such requirements:

- Sale Notice – Bankruptcy Code section 363 provides that a trustee may sell property "after notice and hearing." Under Section 102(1) of the Bankruptcy Code, the phrase "after notice and hearing" means "notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A). As set forth above, creditors have been provided notice of the salient details regarding this motion and the Sale Hearing. Accordingly, notice is sufficient under Bankruptcy Code section 363.

- Bankruptcy Rule 2002 – Bankruptcy Rule 2002 requires twenty-one (21) days' notice of the proposed sale of property other than in the ordinary course of business. In addition, Bankruptcy Rule 2002 provides that notice of a sale shall "include the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections." Fed. R. Bankr. P. 2002. As set forth above, the notice of this motion that has been and will be provided by the Debtors satisfies each of these requirements.

- Bankruptcy Rules 6004 and 6006 – Bankruptcy Rule 6004 requires that notice of sales of property out of the ordinary course of business complies with Bankruptcy Rule 2002. As set forth above, the Debtors have complied with Bankruptcy Rule 2002. Bankruptcy Rule 6006 requires notice of a motion to assume and assign an executory contract or unexpired lease to be served on the counterparty to such contract or lease, as well as on other parties in interest as the Court may direct. The Sale Notice and the Cure Notice have been or will be served on counterparties to the Assigned Contracts, thereby satisfying this requirement.

- Procedural Due Process – The notices of this motion that are being provided as described herein, including the notice being provided by publication as set forth above, are "reasonably calculated" to apprise interested parties of the pendency of the matter and to afford them an opportunity to object. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). Parties in interest have been and should be found to have been

18

afforded adequate notice of this motion, the Sale, the Bidding Procedures and the other relief requested herein.

45.    The Debtors submit that the notice they have provided and intend to provide as outlined above with respect to the proposed Sale, the Bidding Procedures, and the Cure Costs, as applicable, is reasonable and appropriate and constitutes good and adequate notice of the proposed Sale and the procedures and proceedings related thereto and therefore should be approved by this Court.

**D.    The Assumption and Assignment Procedures Should Be Approved.**

46.    To facilitate and effectuate the Sale, the Debtors are seeking approval of the Assumption and Assignment Procedures.  The Assumption and Assignment Procedures are reasonable and necessary to properly notify parties of potential assumptions and/or assignments and provide the Contract Counterparties with sufficient time to determine the accuracy of the proposed cure amount and whether the Debtors have provided adequate assurance of future performance.

47.    The Debtors believe that they can and will demonstrate at the Sale Hearing that the requirements for assumption and assignment of the Assigned Contracts to the Successful Bidder will be satisfied.  As required by the Bidding Procedures, the Debtors will evaluate the financial wherewithal of potential bidders before designating such party a Qualifying Bidder (as defined in the Bidding Procedures) or Successful Bidder (*e.g.*, financial credibility, willingness, and ability of the interested party to perform under the Assigned Contracts), including as it relates to such Qualifying Bidder's willingness, and ability to perform under the Assigned Contracts assigned to the Successful Bidder.  Further, the Assumption and Assignment Procedures provide the Court and other interested parties ample opportunity to evaluate and, if necessary, challenge the ability

of the Successful Bidder to provide adequate assurance of future performance and object to the assumption of the Assigned Contracts or proposed cure amounts.  The Court therefore will have a sufficient basis to authorize the Debtors to reject or assume and assign the Assigned Contracts as set forth in the definitive agreement of the Successful Bidder.

48.    Accordingly, the Debtors submit that the Assumption and Assignment Procedures should be approved as reasonable and necessary measures to adequately notify parties in interest and conducting the proposed sale process in a fair, efficient, and proper manner.

**E.    The Stay of the Sale Order Should be Waived.**

49.    Pursuant to Bankruptcy Rules 6004(h) and 6006(d), an order authorizing the sale of property or the assignment of an unexpired lease is stayed for fourteen (14) days after the entry of an order unless the Court orders otherwise.

50.    The Debtors request that this Court order that such stay is not applicable with respect to the sale of the Debtors' Assets and assignment and assumption of the related executory contracts and/or unexpired leases. To require the Debtors to effectively be liable under the applicable executory contracts and/or unexpired leases for an extra fourteen (14) days and to delay the closing will burden the estates and require unnecessary expenditures of the Debtors' limited resources. The Debtors note that similar requests to waive the stay imposed under Bankruptcy Rules 6004(h) and 6006(d) are routinely granted in this district and others. *See In re Beaulieu Group, LLC,* Case No. 17-41677 (MGD) (Bankr. N.D. Ga. Oct. 31, 2017); *In re Astroturf, LLC*, Case No. 16-41504 (PWB) (Bankr. N.D. Ga. Aug. 12, 2016);  *In re Southern Regional Health Systems, Inc.,* Case No. 15-64266 (WLH) (Bankr. N.D. Ga. Aug. 26, 2015); *see also In re The Colonial Bancgroup, Inc.*, 2011 WL 6014076 (Bankr. M.D. Ala. Oct. 13, 2011); *In re Moore-*

*Handley, Inc.*, Case No. 09-04198 (TBB-11) (Bankr. N.D. Ala. Oct. 2, 2009); *In re the Great Atlantic & Pacific Tea Company, Inc.*, Case No. 15-23007 (SCC) (Bankr. S.D.N.Y. Aug. 11, 2015); *In re Delia's, Inc.*, Case No. 14-23678 (RDD) (Bankr. S.D.N.Y. Feb. 10, 2015); s*ee, e.g., In re Midway Games Inc.*, Case No. 09-10465 (KG) (Bankr. D. Del. June 3, 2009); *In re Nortel Networks Inc.*, Case No. 09-10138 (Bankr. D. Del. Feb. 27, 2009).

**Notice**

51.     The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the Northern District of Georgia; (b) the Debtors' thirty (30) largest unsecured creditors; (c) the Committee; (d) counsel to the First Lien Prepetition Agent; (e) all parties who have expressed a written interest in some or all of the Debtors' Assets; (f) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim or other interest in the Debtors' Assets; (g) the Internal Revenue Service; (h) the Georgia Department of Revenue; (i) the Attorney General for the State of Georgia; (j) the United States Attorney for the Northern District of Georgia; (k) the state attorneys general for states in which the Debtors conduct business; (l) the Pension Benefit Guaranty Corporation; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice is required.

**CONCLUSION**

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court (a) enter an order following the Bidding Procedures Hearing, substantially in the form attached hereto as **Exhibit A**, (i) approving the Bidding Procedures, and (ii) authorizing the Debtors to take all actions reasonably necessary to effectuate such Bidding Procedures and the Sale; (b) enter the

Sale Order following the Sale Hearing, approving the highest or best bid for the Assets and

granting the other relief requested in this Motion; and (c) grant such other and further relief as the

Court deems just and proper.

Date:  February 12, 2020                   Respectfully submitted,
       Atlanta, Georgia

                                          KING & SPALDING LLP


                                          /s/ *Sarah R. Borders*
                                          Sarah R. Borders
                                          Georgia Bar No. 610649
                                          Jeffrey R. Dutson
                                          Georgia Bar No. 637106
                                          Leia Clement Shermohammed
                                          Georgia Bar No. 972711
                                          **KING & SPALDING LLP**
                                          1180 Peachtree Street NE
                                          Atlanta, Georgia 30309
                                          Telephone: (404) 572-4600
                                          Email: sborders@kslaw.com
                                          Email: jdutson@kslaw.com
                                          Email: lshermohammed@kslaw.com

                                          *Counsel for the Debtors in Possession*

## EXHIBIT A

**Bidding Procedures Order**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE KRYSTAL COMPANY, *et al.*,[1] | ) | Case No. 20-61065 (PWB) |
| | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (I) APPROVING BIDDING PROCEDURES FOR THE SALE OF THE
DEBTORS' ASSETS, (II) SCHEDULING HEARINGS AND OBJECTION DEADLINES
WITH RESPECT TO THE SALE, (III) SCHEDULING BID DEADLINES AND AN
AUCTION, (IV) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (V)
APPROVING CONTRACT ASSUMPTION AND ASSIGNMENT PROCEDURES, AND
(VI) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above captioned debtors and

debtors in possession (the "Debtors") for the entry of an order (this "Order"): (a) approving the

proposed bidding procedures attached as **Exhibit 1** to this Order (the "Bidding Procedures");

(b) scheduling an auction (the "Auction"); (c) approving the form and manner of notice thereof;

(d) scheduling dates and deadlines in connection with the sale (the "Sale") of all or substantially

all of the Debtors' assets (the "Assets"); (e) approving the form and manner of notice thereof;

(f) approving procedures for assuming and assigning the Debtors' executory contracts and

unexpired leases (the "Assumption and Assignment Procedures"); and (g) granting related relief;

all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal
tax identification number, include: The Krystal Company (4140); Krystal Holdings, Inc.
(5381); and K-Square Acquisition Co., LLC (8916).  The location of the Debtors' corporate
headquarters and service address is: 1455 Lincoln Parkway, Suite 600, Dunwoody, Georgia
30346.

[2]    Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to
them in the Motion or the Bidding Procedures, as applicable.

jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is

a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter

a final order consistent with Article III of the United States Constitution; and this Court having

found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C.

§§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best

interests of the Debtors' estates, their creditors, and other parties in interest; and this court having

found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were

appropriate under the circumstances and no other notice need be provided; and this court having

reviewed the Motion and having heard the statements in support of the relief requested therein at

a hearing, if any, before this Court (the "<u>Bidding Procedures Hearing</u>"); and this court having

determined that the legal and factual bases set forth in the Motion and at the Bidding Procedures

Hearing establish just cause for the relief granted herein; and upon all of the proceedings had

before this court; and after due deliberation and sufficient cause appearing therefor, THAT THE

COURT FINDS THAT:

   A. The findings of fact and conclusions of law herein constitute the court's findings of

fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant

to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law, they are

adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as

such.

   B. This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

Venue in this court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     The statutory bases for the relief requested in the Motion are sections 105, 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006.

D.     Notice of the Motion, the Bidding Procedures Hearing, and the proposed entry of this Order was adequate and sufficient under the circumstances of these chapter 11 cases, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, the Complex Case Procedures, and the Bankruptcy Local Rules for the Northern District of Georgia.  Notice of the Motion has been given to: (a) the Office of the United States Trustee for the Northern District of Georgia; (b) the Debtors' thirty (30) largest unsecured creditors; (c) the Committee; (d) counsel to the First Lien Prepetition Agent; (e) all parties who have expressed a written interest in some or all of the Debtors' Assets; (f) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim or other interest in the Debtors' Assets; (g) the Internal Revenue Service; (h) the Georgia Department of Revenue; (i) the Attorney General for the State of Georgia; (j) the United States Attorney for the Northern District of Georgia; (k) the state attorneys general for states in which the Debtors conduct business; (l) the Pension Benefit Guaranty Corporation; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002.

E.     The Debtors have articulated good and sufficient reasons for this Court to: (a) approve the Bidding Procedures; (b) schedule the Bid Deadline, the Auction, the Sale Objection Deadline, and the Sale Hearing; (c) approve the form of the Sale Notice attached hereto as **Exhibit 2**; (d) approve the Assumption and Assignment Procedures and the form and manner of notice of the Cure Notice attached hereto as **Exhibit 3**; and (e) grant related relief.

3

F.      The Bidding Procedures are reasonable and appropriate and represent the best available method for maximizing value for the benefit of the Debtors' estates. The Bidding Procedures balance the Debtors' interests in emerging expeditiously from the chapter 11 cases while preserving the opportunity to attract value-maximizing proposals beneficial to the Debtors' estates, their creditors, and other parties in interest.

G.      The Sale Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction.

H.      The Cure Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Assumption and Assignment Procedures.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as provided herein.

2.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the court at the Bidding Procedures Hearing or by stipulation filed with the Court, are overruled.

**I.      <u>Important Dates and Deadlines.</u>**

3.      The following dates and deadlines are hereby approved (and may be amended from time to time by the Debtors in consultation with the Consultation Parties (as defined in the Bidding Procedures) by filing an appropriate notice on the Court's docket and posting such notice on the Case Website).

4.      Unless extended by the Debtors, in consultation with the Consultation Parties and with consent of the DIP Agent and First Lien Prepetition Agent, the deadline by which all bids for

4

the Assets must be *actually received* by the parties specified in the Bidding Procedures is **May 4, 2020 at 5:00 p.m. (prevailing Eastern Time)**.

5.      The date and time of the Auction, if needed, is **May 7, 2020 at 10:00 a.m. (prevailing Eastern Time)**, which time may be extended by the Debtors, in consultation with the other Consultation Parties, upon written notice filed with the Court, to be held at the offices of King & Spalding LLP, 1180 Peachtree Street, Atlanta, GA 30309. The Debtors shall send written notice of the date, time, and place of the Auction to Qualifying Bidders no later than two (2) business days before such Auction, and shall post notice of the same no later than two (2) business days before such Auction on the Case Website.

6.      The deadline to object to approval of the Sale (the "Sale Objection Deadline") is set for **May 12, 2020 at 5:00 p.m. (prevailing Eastern Time)**.

7.      The hearing to consider approval of the Sale (the "Sale Hearing") will take place on **May 14, 2020 at 10:00 a.m. (prevailing Eastern Time)**.

8.      Notwithstanding the foregoing, the Court's approval of the foregoing schedule is without prejudice to all parties' rights to object to the approval of any sale contemplated under this Order at the Sale Hearing on any grounds.

## II.      The Bidding Procedures.

9.      The Bidding Procedures are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all bids relating to the proposed sale of the Assets. Any party desiring to bid for all or substantially all of the Assets shall comply with the Bidding Procedures and this Order. The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

10.     Each bidder participating at the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale, as set forth in the Bidding Procedures.

11.     The Debtors are deemed to have complied with all contractual rights of first refusals, or similar contractual purchasing rights, regarding the Assets.  The Bidding Procedures and the notice thereof provide all parties in interest with notice of, and the opportunity to participate in, any potential Sale and/or Auction.

**III.    Notice Procedures.**

12.     The form of Sale Notice attached hereto as **Exhibit 2** is approved.

13.     No later than three (3) business days after entry of the Bidding Procedures Order (the "Mailing Date"), the Debtors shall serve the Bidding Procedures Order and Bidding Procedures by first-class mail or courier service upon: (a) the Office of the United States Trustee for the Northern District of Georgia; (b) the Debtors' thirty (30) largest unsecured creditors; (c) counsel to the First Lien Prepetition Agent; (d) all parties who have expressed a written interest in some or all of the Debtors' assets; (e) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim or other interest in the Debtors' assets; (f) the Internal Revenue Service; (g) the Georgia Department of Revenue; (h) the Attorney General for the State of Georgia; (i) the United States Attorney for the Northern District of Georgia; (j) the state attorneys general for states in which the Debtors conduct business; (k) the Pension Benefit Guaranty Corporation; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002.

## IV.    **The Assumption and Assignment Procedures.**

14.    The Assumption and Assignment Procedures set forth in the Motion regarding the assumption and assignment of the Assigned Contracts proposed to be assumed by the Debtors and assigned to the Successful Bidder are approved.

1.    **Cure Notice**.  On the Mailing Date, or as soon as practicable thereafter, subject to consultation with the Consultation Parties, the Debtors shall file with the Court and serve via first class mail, electronic mail, or overnight delivery, the Cure Notice, which shall contain the KCC Instructions and the Necessary Notice Information, on all Contract Counterparties and all parties that have requested notice pursuant to Bankruptcy Rule 2002, and post the Cure Notice to the Case Website.  Service as set forth herein shall be deemed proper, due, timely, good, and sufficient notice and no other or further notice is necessary.

2.    **Content of Cure Notice**.  The Cure Notice shall notify the applicable Contract Counterparties that the Assigned Contracts may be subject to assumption and assignment in connection with a proposed sale transaction, and contain the following information: (i) a list of the Assigned Contracts; (ii) the applicable Contract Counterparties; (iii) the Debtors' good faith estimates of the Cure Costs; and (iv) the deadline by which any Contract Counterparty to an Assigned Contract may file an objection to the proposed assumption, assignment, cure, and/or adequate assurance and the procedures relating thereto; *provided* that service of a Cure Notice does not constitute an admission that such Assigned Contract is an executory contract or unexpired lease or that such Assigned Contract will be assumed at any point by the Debtors or assumed and assigned pursuant to any Successful Bid.

3.    **Objections**.  Objections, if any, to a Cure Notice must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Complex Case Procedures, the Bankruptcy Local Rules for the Northern District of Georgia, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court and served so as to be **actually received** by counsel to the Debtors prior to **April 20, 2020 at 5:00 p.m. (prevailing Eastern Time)**; *provided* that the Debtors, subject to consultation with the

Consultation Parties, may modify the Cure Objection Deadline by filing a notice of such modification on the Court's docket.

4.   **Dispute Resolution**.   Any objection to the proposed assumption and assignment of an Assigned Contract, or Cure Costs, that remain unresolved as of the Sale Hearing, shall be heard at the Sale Hearing (or at such later date as may be fixed by the Court).   Upon entry of an order by the Court resolving such Assigned Contract Objection, the assignment, if approved by the Court, shall be deemed effective as of the closing date of the sale transactions.   To the extent that any Assigned Contract Objection cannot be resolved by the parties, such Assigned Contract shall be assumed and assigned only upon satisfactory resolution of the Assigned Contract Objection, to be determined in any Stalking Horse Bidder's or other Successful Bidder's reasonable discretion.   To the extent an Assigned Contract Objection remains unresolved, the Assigned Contract may be conditionally assumed and assigned, subject to the consent of the Stalking Horse Bidder or other Successful Bidder, pending a resolution of the Assigned Contract Objection after notice and a hearing.   If an Assigned Contract Objection is not satisfactorily resolved, any Stalking Horse Bidder or other Successful Bidder may determine that such Assigned Contract should be rejected and not assigned, in which case any Stalking Horse Bidder or other Successful Bidder will not be responsible for any Cure Costs in respect of such contract.

5.   **Supplemental Cure Notice**.   The Debtors reserve the right, with the consent of the Successful Bidder and subject to consultation with the Consultation Parties, at any time after the Assumption and Assignment Service Date, to: (i) supplement the Assigned Contract Schedule attached to the Cure Notice with previously omitted Assigned Contracts in accordance with the definitive agreement for a Sale; (ii) remove any Assigned Contracts from the list of executory contracts and unexpired leases ultimately selected as Assigned Contracts that the Successful Bidder proposes be assumed and assigned to it in connection with a Sale or add to such list; and/or (iii) modify the previously stated Cure Cost associated with any Assigned Contracts (a "Supplemental Assigned Contracts Schedule").   In the event that the Debtors exercise any of the rights reserved above, the Debtors will promptly provide the Consultation Parties with notice and an opportunity to object to any such actions, and thereafter will serve a Supplemental Cure Notice by electronic transmission, hand delivery, or overnight mail on the applicable Contract Counterparty, and its counsel, if known, to each impacted Assigned Contract at the last known address available to the Debtors.   Each Supplemental Cure Notice will include the same information with respect to listed Assigned Contracts as was included in the Cure Notice.   Any Assigned Contract Counterparty

8

listed on a Supplemental Cure Notice may file a Supplemental Assigned Contract Objection only if such objection is to the proposed assumption and assignment of the applicable Assigned Contract or the proposed Cure Costs, if any. All Supplemental Assigned Contract Objections must: (x) state with specificity the legal and factual basis thereof as well as what Cure Costs the objecting party believes are required, if any; (y) include appropriate documentation in support of the objection; and (z) be filed and served on the Objection Recipients no later than 5:00 p.m. (prevailing Eastern Time) on the date that is the later of (i) the Sale Objection Deadline and (ii) fourteen days from the date of service of such Supplemental Cure Notice, which date will be set forth in the Supplemental Cure Notice (the "Supplemental Assigned Contract Objection Deadline").

6.    **Supplemental Hearing**. If a Contract Counterparty files a Supplemental Assigned Contract Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the Debtors will seek a Supplemental Assigned Contract Hearing to determine the Cure Costs, if any, and approve the assumption of the relevant Assigned Contracts. If there is no such objection, then the Debtors will obtain entry of an order, including by filing a certification of no objection, fixing the Cure Costs and approving the assumption of any Assigned Contract listed on a Supplemental Cure Notice.

15.    If a Contract Counterparty does not file and serve an Assigned Contract Objection or Supplemental Assigned Contract Objection in a manner that is consistent with the requirements set forth above, and absent a subsequent order of the Court establishing an alternative Cure Cost, (a) the Cure Costs, if any, set forth in the Cure Notice (or Supplemental Cure Notice) shall be controlling, notwithstanding anything to the contrary in any Assigned Contract or any other document, and (b) the Contract Counterparty will be deemed to have consented to the assumption and assignment of the Assigned Contract and the Cure Costs, if any, and will be forever barred from objecting to the assumption and assignment of such Assigned Contract and rights thereunder, including the Cure Costs, if any, and from asserting any other claims related to such Assigned Contract against the Debtors or the Successful Bidder, or the property of any of them.

9

16.     Any objections to the Successful Bidder's proposed form of adequate assurance of future performance must be filed no later than the later of the Sale Objection Deadline or Supplemental Assigned Contract Objection Deadline, as applicable, and such objections will be resolved at the Sale Hearing or Supplemental Assigned Contract Hearing, as applicable.  The Debtors may adjourn the resolution of any such objection to a later hearing.

17.     The inclusion of an Assigned Contract on the Assigned Contract Schedule, Supplemental Assigned Contract Schedule, and/or in a Supplemental Cure Notice will not: (a) obligate the Debtors to assume any Assigned Contract listed thereon or obligate the Successful Bidder to take assignment of such Assigned Contract; or (b) constitute any admission or agreement of the Debtors that such Assigned Contract is an executory contract or unexpired lease.  Only those Assigned Contracts that are included on a schedule of assumed and assigned contracts attached to the definitive sale agreement with the Successful Bidder (including amendments or modifications to such schedules in accordance with such agreement and any designation rights procedures approved int eh Sale Order) will be assumed and assigned to the Successful Bidder.

**V.     Miscellaneous.**

18.     The failure to include or reference a particular provision of the Bidding Procedures specifically in this Order shall not diminish or impair the effectiveness or enforceability of such provision.

19.     In the event of any inconsistency between this Order and the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

20.     The Debtors, subject to the terms of this Order and the Bidding Procedures, are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

10

21.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a), the Bankruptcy Local Rules for the Northern District of Georgia and the Complex Case Procedures are satisfied by such notice.

22.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

23.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

END OF ORDER

Prepared and presented by:

/s/ *Sarah R. Borders*
Sarah R. Borders
Georgia Bar No. 610649
Jeffrey R. Dutson
Georgia Bar No. 637106
Leia Clement Shermohammed
Georgia Bar No. 972711
**KING & SPALDING LLP**
1180 Peachtree Street NE
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Email: sborders@kslaw.com
Email: jdutson@kslaw.com
Email: lshermohammed@kslaw.com

*Counsel for the Debtors in Possession*

## **EXHIBIT 1**

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE KRYSTAL COMPANY, *et al.*,[1] | ) | Case No. 20-61065 (PWB) |
| | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**BIDDING PROCEDURES**

Set forth below are the bidding procedures (the "Bidding Procedures") that will be employed in connection with a sale (the "Sale") of substantially all of the assets (the "Assets") of the above-captioned debtors and debtors in possession (the "Debtors").

On January 19, 2020, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On March [*], 2020, the United States Bankruptcy Court for the Northern District of Georgia (the "Court") entered an order [Docket No. *] (the "Bidding Procedures Order"), which, among other things, authorized the Debtors to solicit bids and approved Bidding Procedures to be employed by the Debtors in connection with the sale of all or substantially all of the Debtors' assets, free and clear of all liens, claims, encumbrances, and other interests, to a potential stalking horse purchaser (a "Stalking Horse Purchaser") or, absent a Stalking Horse Purchaser or in the event the Stalking Horse Purchaser is not the Successful Bidder, then to the Successful Bidder (as defined below), pursuant to a purchase agreement with such Successful Bidder.

**ANY PARTY INTERESTED IN BIDDING ON THE ASSETS SHOULD CONTACT**:

**PIPER SANDLER & CO.**
**2321 ROSECRANS AVENUE, SUITE 3200**
**EL SEGUNDO, CA 90245**
**ATTENTION: TERI STRATTON**
**E-MAIL: TERISTRATTON@PSC.COM**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: The Krystal Company (4140); Krystal Holdings, Inc. (5381); and K-Square Acquisition Co., LLC (8916). The location of the Debtors' corporate headquarters and service address is: 1455 Lincoln Parkway, Suite 600, Dunwoody, Georgia 30346.

**Summary of Important Dates and Deadlines**

| Date | Deadline |
|---|---|
| March 31, 2020 | Potential Assumption and Assignment Notice Deadline |
| April 1, 2020 | Selection of Stalking Horse Bidder, if applicable |
| [April 7, 2010] | Hearing to approve Stalking Horse Bidder, if applicable |
| April 20, 2020 at 4:00 p.m. (ET) | Cure Cost/Assignment Objection Deadline |
| [May 4, 2020 at 5:00 p.m. (ET)] | Bid Deadline |
| [May 7, 2020 at 10:00 a.m. (ET)] | Auction |
| [May 8, 2020] | Deadline to Serve Notice of Successful Bidder and Successful Bidder's Adequate Assurance Information |
| [May 12, 2020] | Sale Objection Deadline |
| [May 14, 2020] | Sale Hearing |
| No later than May 29, 2020 | Closing Date |

1.   **Assets to be Sold**

The Sale shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or estates or any other party, except to the extent set forth in the Purchase Agreement between the Debtors and the Successful Bidder.  Except as otherwise provided in the Successful Bidder's Purchase Agreement (as defined below), all of the Debtors' right, title and interest in and to the Assets shall be sold free and clear of all liens, claims, interests, and encumbrances (collectively, the "Encumbrances") pursuant to section 363(f) of the Bankruptcy Code, such Encumbrances to attach to the proceeds of the sale of the Assets, with the same validity and priority as existed immediately prior to such sale.

The available Assets are fully described in the data room maintained by the Debtors' investment banking advisors, which is accessible on the terms described herein.

2.      **Participation Requirements**

Any person or entity that wishes to participate in the bidding process for the Assets (each, a "Potential Bidder") must first become a "Qualifying Bidder". To become a Qualifying Bidder (and thus being able to conduct due diligence and gain access to the Debtors' confidential electronic data room concerning the Assets (the "Data Room")), a Potential Bidder must submit to the Debtors and their advisors:

(a) documentation identifying the interested party, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction;

(b) an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors, which by its terms will inure to the benefit of the Successful Bidder;

(c) a statement and other factual support demonstrating to the Debtors' reasonable satisfaction that the interested party has a bona fide interest in consummating a sale transaction; and

(d) sufficient information to allow the Debtors to determine that the Potential Bidder (i) has, or can obtain, the financial wherewithal and any required internal corporate, legal or other authorizations to close a sale transaction, including, but not limited to, current audited financial statements of the interested party (or such other form of financial disclosure acceptable to the Debtors) and (ii) can provide adequate assurance of future performance under any executory contracts and unexpired leases to be assumed by the Debtors and assigned to such bidder, pursuant to section 365 of the Bankruptcy Code, in connection with the Sale.

Each Potential Bidder shall comply with all reasonable requests for information by the Debtors, or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate its contemplated transaction. The Debtors shall provide regular updates to the Consultation Parties (as defined below) on the Potential Bidders and shall specifically identify to the Consultation Parties any Potential Bidder who submitted the foregoing items (a) to (d) and was not qualified as a Qualifying Bidder and the Debtors' basis for such determination.

Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bidding Procedures: any designated Stalking Horse Purchaser shall be considered a Qualifying Bidder. In addition, the administrative agent under any postpetition credit facility (the "DIP Agent") and the Administrative Agent under the Debtors' pre-petition senior secured credit facility (the "First Lien Prepetition Agent") shall also be considered Qualifying Bidders.

3.    **Bankruptcy Court Jurisdiction**

Any Potential Bidders and Qualifying Bidders shall: (a) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating the Bidding Procedures, the Sale, the Auction (as defined below) and the construction and enforcement of the contemplated transaction documents of such parties, (b) bring any such action or proceeding in the Court, and (c) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.

4.    **Due Diligence**

The Debtors will provide any Qualifying Bidder with reasonable access to the Data Room and any other additional information that the Debtors believe to be reasonable and appropriate under the circumstances.  The Debtors will provide, in the Data Room, a form of asset purchase agreement for the Sale of Assets (the "Form APA").  All additional due diligence requests shall be directed to:

**PIPER SANDLER & CO.**
**2321 ROSECRANS AVENUE, SUITE 3200**
**EL SEGUNDO, CA 90245**
**ATTENTION: TERI STRATTON**
**E-MAIL: TERISTRATTON@PSC.COM**

The due diligence period shall extend through and including the Bid Deadline (as defined below).  The Debtors may, but shall not be obligated to, in their sole discretion, furnish any due diligence information after the Bid Deadline.

The Debtors reserve the right, in their reasonable discretion, to withhold or limit access to any due diligence information that the Debtors determine is business-sensitive or otherwise not appropriate for disclosure to a Qualifying Bidder; provided that the Debtors shall notify the Consultation Parties of any decision to withhold such information.  Notwithstanding any prepetition limitations, including, without limitation, any non-disclosure, confidentiality or similar provisions relating to any due diligence information, the Debtors and their estates shall be authorized to provide due diligence information to Qualifying Bidders provided that such Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors.  The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Qualifying Bidders in connection with the Bidding Procedures and the Sale.

4

5. **Stalking Horse Purchaser**

The Debtors shall endeavor to identify a Stalking Horse Purchaser and shall have the ability to select a Stalking Horse Purchaser, after consultation with the Consultation Parties, upon any terms and conditions they deem beneficial to the sale process. The Debtors shall have no obligation to select a Stalking Horse Purchaser if, in their business judgment, it will be detrimental to the sale process.

Pursuant to the Bidding Procedures Order, the Debtors, after consultation with the Consultation Parties, are authorized to enter into a Purchase Agreement with a Stalking Horse Purchaser (a "Stalking Horse Agreement"). In the event that the Debtors enter into a Stalking Horse Agreement, the Debtors will file with the Court and upload to the Data Room, a notice that includes the following: (a) the identification of the Stalking Horse Purchaser; (b) a copy of the Stalking Horse Agreement; (c) the purchase price provided for in the Stalking Horse Agreement (the "Stalking Horse Purchase Price"); (d) the amount of the deposit paid by the Stalking Horse Purchaser; and (e) the amount of any Break-Up Fee or any Expense Reimbursement (each, as defined in the Bidding Procedures Order) and seek expedited approval of the Stalking Horse Agreement and any Break-Up Fee or Expense Reimbursement provided for therein. Nothing herein or in the Bidding Procedures Order authorizes the Debtors to pay, any Break-Up Fee or Expense Reimbursement, and approval of, and authorization for the Debtors to pay, any such Break-Up Fee and Expense Reimbursement, shall be subject to further order of the Court.

6. **Bid Requirements**

To be deemed a "Qualifying Bid," a bid must be received from a Qualifying Bidder on or before the Bid Deadline and satisfy each of the following requirements, as determined by the Debtors in consultation with the Consultation Parties (each, a "Bid Requirement"):

a. be in writing;

b. fully disclose the identity of the Qualifying Bidder (and any other party participating in the bid) and provide the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by the Qualifying Bidder;

c. set forth the purchase price to be paid by such Qualifying Bidder;

d. not propose payment in any form other than cash (except as otherwise expressly set forth in these Bidding Procedures); provided, however, that the DIP Agent and the First Lien Pre-Petition Agent shall be entitled to credit bid any portion of their outstanding secured obligations pursuant to section 363(k) of the Bankruptcy Code with respect to any assets on which they hold liens;

e.  be accompanied by a clean, executed copy of a purchase agreement (the "Purchase Agreement") and a redline of the Purchase Agreement marked to reflect any proposed amendments and modifications to the Form APA or Stalking Horse Agreement, to the extent a Stalking Horse Purchaser is designated, and the applicable schedules and exhibits;

f.  state that such Qualifying Bidder's offer is formal, binding and unconditional and is irrevocable until two (2) business days after the closing of the Sale;

g.  state that such Qualifying Bidder is financially capable of consummating the transactions contemplated by the bid and provide written evidence in support thereof;

h.  contain such financial and other information to allow the Debtors to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to close the transactions contemplated by the proposal, including, without limitation, such financial and other information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code, including the Qualifying Bidder's financial wherewithal and willingness to perform under any contracts and leases that are assumed and assigned to the Qualifying Bidder, in a form that allows the Debtors to serve, within one (1) business day after such receipt, such information on any counterparties to any contracts or leases being assumed and assigned in connection with the Sale that have requested, in writing, such information;

i.  a commitment to close the transaction contemplated by the proposal by no later than May 29, 2020;

j.  not request or entitle such Qualifying Bidder to any break-up fee, termination fee, expense reimbursement or similar type of fee or payment (unless the Qualifying Bidder is a Stalking Horse Purchaser);

k.  in the event that there is a Stalking Horse Purchaser, the aggregate consideration proposed by the Qualifying Bidder must equal or exceed the sum of the amount of (A) any Stalking Horse Purchase Price, (B) any break-up fee approved by the Court, (C) any Expense Reimbursement approved by the Court, and (D) $250,000;

l.  not contain any contingencies of any kind, including, without limitation, contingencies related to financing, internal approval or due diligence;

m.  contain a written acknowledgement and representation that the Qualifying Bidder (i) has had an opportunity to conduct any and all due diligence regarding the Assets, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and other information in making its Qualifying Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties

whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any documents or other information provided in connection with the Bidding Procedures and the Sale;

n.  provides for the Qualifying Bidder to serve as a backup bidder (the "Back- Up Bidder") if the Qualifying Bidder's bid is the next highest or best bid (the "Back-Up Bid") after the Successful Bid;

o.  includes written evidence of authorization and approval from the Qualifying Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of the subject purchase agreement; and

p.  provides a good faith cash deposit (the "Deposit") in an amount equal to the greater of $1,000,000 and ten percent (10%) of the purchase price provided for in the proposal (or such additional amount as may be determined by the Debtors in their reasonable discretion and in consultation with the Consultation Parties) to be deposited, prior to the Bid Deadline, with an escrow agent selected by the Debtors (the "Escrow Agent") pursuant to the escrow agreement to be provided by the Debtors to the Qualifying Bidders (the "Escrow Agreement").

The Debtors reserve the right, in consultation with the Consultation Parties, to negotiate with any Qualifying Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualifying Bid.

Each Qualifying Bidder submitting a bid shall be deemed to: (a) acknowledge and represent that it is bound by all of the terms and conditions of the Bidding Procedures and (b) have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its bid, the Bidding Procedures, and the Sale.

7. **Bid Deadline**

A Qualifying Bidder, other than any Stalking Horse Purchaser, the DIP Agent and the First Lien Prepetition Agent that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Notice Parties and Consultation Parties so as to be received on or before [May 4, 2020] at 5:00 p.m. (ET) (the "Bid Deadline"); provided that the Debtors, after consulting with the Consultation Parties and with the consent of the DIP Agent (if any) and the First Lien Prepetition Agent, may extend the Bid Deadline without further order of the Court. To the extent that the Bid Deadline is extended for all parties, the Debtors shall file a notice on the docket of these chapter 11 cases indicating the same. If the DIP Agent and/or the First Lien Prepetition Agent intends to credit bid at the Auction, they shall provide the Debtors with a "Notice of Intention to Credit Bid" by 5:00 p.m. on the Business Day prior to commencement of the Auction, which notice shall include a marked copy of an asset purchase agreement reflecting any changes from the Purchase Agreement of the opening bid at the

7

Auction or, if there no opening bid, the Form APA (provided that such Agent will have the same rights as any other Qualifying Bidder hereunder to amend such terms during the Auction). If the DIP Agent and/or the First Lien Prepetition Agent shall submit a Notice of Intention to Credit Bid, the DIP Agent and First Lien Prepetition Agent shall thereafter cease to be a Consultation Party hereunder. Other than as set forth herein, **any party that does not submit a bid by the Bid Deadline will not be allowed to (a) submit any offer after the Bid Deadline, or (b) participate in the Auction.**

### 8. <u>Evaluation of Qualifying Bids</u>

The Debtors will deliver, promptly upon receipt thereof, copies of all bids from Qualifying Bidders to each of the Consultation Parties. The Debtors, in consultation with the Consultation Parties, shall make a determination regarding whether a timely submitted bid from a Qualifying Bidder is a Qualifying Bid, and shall notify all Qualifying Bidders whether their bids have been determined to be a Qualifying Bid by no later than two (2) days prior to the Auction Date. In the event that a bid is determined not to be a Qualifying Bid, the Qualifying Bidder shall be notified by the Debtors and, in the Debtors' discretion, provided with an opportunity to modify its bid to increase the purchase price or otherwise improve the terms of the Qualifying Bid for the Debtors; provided that any Qualifying Bid may be improved at the Auction as set forth herein.

One (1) day prior to the Auction Date, the Debtors shall determine, in consultation with the Consultation Parties, which of the Qualifying Bids, at such time, is the highest or best bid for purposes of constituting the opening bid of the Auction (the "<u>Baseline Bid</u>" and the Qualifying Bidder submitting the Baseline Bid, the "<u>Baseline Bidder</u>"), and shall promptly notify any Stalking Horse Purchaser and all Qualifying Bidders with Qualifying Bids of the Baseline Bid.

### 9. <u>No Qualifying Bids</u>

If there is a Stalking Horse Purchaser Qualifying Bid, but no timely Qualifying Bids other than any Stalking Horse Purchaser's Qualifying Bid and no Notice of Intention to Credit Bid are submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and shall request at the Sale Hearing that the Stalking Horse Purchaser be deemed the "Successful Bidder" and that the Court approve the Stalking Horse Agreement and the transactions contemplated thereunder.

### 10. <u>Auction</u>

If the Debtors timely receive one or more Qualifying Bids other than any Stalking Horse Purchaser's Qualifying Bid or a Notice of Intention to Credit Bid, then the Debtors shall conduct an auction (the "<u>Auction</u>"), which shall take place at 10:00 a.m. prevailing Eastern Time on [May 7, 2020], at the office of King & Spalding, LLP, 1180 Peachtree Street NE, Atlanta, Georgia 30309, or such other date, time and location as shall be timely communicated to all entities entitled to attend the Auction.

Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest or best bid for the Assets, which will be determined by considering, among other things, the following non-binding factors: (a) the terms of the Purchase Agreement and any Stalking Horse Agreement requested by each bidder; (b) the extent to which such terms are likely to delay closing of the Sale and the cost to the Debtors and their estates of such modifications or delay; (c) the total consideration to be received by the Debtors and their estates; (d) the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval; (e) the net benefit to the Debtors' estates, taking into account any Break-Up Fee and any Expense Reimbursement provided for in any applicable Stalking Horse Agreement; (f) the impact on employees, trade creditors and landlords; and (g) any other factors the Debtor may reasonably deem relevant.

The Auction, which shall be recorded and transcribed, shall run in accordance with the following procedures:

(a) only the Stalking Horse Purchaser, the other Qualifying Bidders with Qualifying Bids (collectively, the "Auction Bidders"), the Debtors, the Consultation Parties, and the advisors to each of the foregoing shall be permitted to attend the Auction in person;

(b) only the Auction Bidders will be entitled to make subsequent bids at the Auction;

(c) the Auction Bidders shall confirm that they have not engaged in any collusion with respect to the Bidding Procedures, the Auction or the Sale;

(d) the Debtors and their professional advisors shall direct and preside over the Auction;

(e) bidding shall commence at the amount of the Baseline Bid, and the Auction Bidders may submit successive bids in increments of at least $250,000, provided that: (i) each such successive bid must be a Qualifying Bid; (ii) any Stalking Horse Purchaser shall receive a credit, when bidding, in the amount of any Break-Up Fee and any Expense Reimbursement; and (iii) the Debtors, in consultation with the Consultation Parties, shall retain the right to modify the bid increment requirements at the Auction;

(f) the Auction may include individual negotiations with any of the Auction Bidders, but all bids shall be made on the record and in the presence of all of the Auction Bidders;

(g)     all material terms of the bid that is deemed to be the highest or best bid for each round of bidding shall be fully disclosed to the Auction Bidders, and the Debtors shall use reasonable efforts to clarify any and all questions that the Auction Bidders may have regarding the Debtors' announcement of the then-current highest or best bid;

(h)     the Debtors and their professional advisors, in consultation with the Consultation Parties, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make subsequent bids) for conducting the Auction, provided that such rules are (i) not inconsistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or any applicable order of the Court entered in connection with these chapter 11 cases, including, without limitation, the Bidding Procedures Order, and (ii) disclosed to the Auction Bidders;

(i)     each Auction Bidder shall (i) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating the Bidding Procedures, the Sale, the Auction and the construction and enforcement of the contemplated transaction documents of the Auction Bidders, (ii) bring any such action or proceeding in the Court, and (iii) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law;

(j)     Auction Bidders shall have the right to make additional modifications to their respective Purchase Agreements or any Stalking Horse Agreement, as applicable, in conjunction with each Qualifying Bid submitted in each round of bidding during the Auction, provided that (i) any such modifications on an aggregate basis and viewed in whole, shall not, in the Debtors' discretion, in consultation with the Consultation Parties, be less favorable to the Debtors and their estates than the terms of the Auction Bidders' respective Purchase Agreements or any Stalking Horse Agreement, as applicable, and (ii) each Qualifying Bid shall constitute an irrevocable offer and shall be binding on the Auction Bidder submitting such bid until such party shall have submitted a subsequent Qualifying Bid at the Auction or the conclusion of the Sale Hearing, whichever occurs sooner, unless such bid is selected as the Successful Bid or the Back-Up Bid, which shall remain binding as provided for herein;

(k)     the Debtors and the Consultation Parties shall have the right to request any additional financial information that will allow the Debtors and the Consultation Parties to make a reasonable determination as to an Auction Bidder's financial

10

and other capabilities to consummate the transactions contemplated by their proposal or any Stalking Horse Agreement, as applicable, as may be amended during the Auction, and any further information that the Debtors may believe is reasonably necessary to clarify and evaluate any bid made by an Auction Bidder during the Auction;

(l)      upon the conclusion of the Auction, the Debtors shall determine, in consultation with the Consultation Parties, and subject to Court approval, the offer or offers for the Assets that is the highest or best from among the Qualifying Bids submitted at the Auction, which may be a Stalking Horse Agreement (the "Successful Bid"). In making this decision, the Debtors shall consider, in consultation with the Consultation Parties, the amount of the purchase price, the likelihood of the bidder's ability to close a transaction and the timing thereof, the nature and impact of any variances from the form Purchase Agreement requested by each bidder, and the net benefit to the Debtors' estates. The bidder submitting such Successful Bid, which may be the Stalking Horse Purchaser, shall become the "Successful Bidder," and shall have such rights and responsibilities of the purchaser as set forth in the subject Purchase Agreement, as applicable. The Debtors may, in consultation with the Consultation Parties, designate Back-Up Bids (and the corresponding Back-Up Bidders) to purchase the Assets in the event that the Successful Bidder does not close the Sale; and

(m)      upon the conclusion of the Auction, the Successful Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

**THE SUCCESSFUL BID AND ANY BACK-UP BIDS SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE SUCCESSFUL BIDDER AND THE BACK-UP BIDDER, RESPECTIVELY, FROM THE TIME THE BID IS SUBMITTED UNTIL TWO (2) BUSINESS DAYS AFTER THE SALE HAS CLOSED. EACH QUALIFYING BID THAT IS NOT THE SUCCESSFUL BID OR BACK-UP BID SHALL BE DEEMED WITHDRAWN AND TERMINATED AT THE CONCLUSION OF THE SALE HEARING.**

### 11. Sale Hearing

The Successful Bid and any Back-Up Bid (or if no Qualifying Bid other than that of any Stalking Horse Purchaser is received, then the Stalking Horse Agreement) will be subject to approval by the Court.  The Sale Hearing shall take place, subject to the Court's availability, on [May 14, 2020] at 10:00 a.m. (ET).  The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a hearing agenda or notice on the docket of the Debtors' chapter 11 cases.

At the Sale Hearing, the Debtors will seek entry of an order that, among other things: (i) authorizes and approves the Sale to the Successful Bidder, pursuant to the terms and conditions set forth in the Stalking Horse Agreement or the Purchase Agreement executed by the Successful Bidder, as applicable; and (ii) finding that the Stalking Horse Purchaser or Successful Bidder, as applicable, is a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code.

### 12. **Back-Up Bidder**

Notwithstanding any of the foregoing, in the event that the Successful Bidder fails to close the Sale by May 29, 2020 (or such date as may be extended by the Debtors with the agreement of the Back Up Bidder, DIP Agent (if any) and the First Lien Prepetition Agent), the Back-Up Bid will be deemed to be the Successful Bid, the Back-Up Bidder will be deemed to be the Successful Bidder, and the Debtors will be authorized, but not directed, to close the Sale to the Back-Up Bidder subject to the terms of the Back-Up Bid without the need for further order of the Court and without the need for further notice to any interested parties.

### 13. **Return of Deposits**

All Deposits shall be returned to each bidder not selected by the Debtors as the Successful Bidder and the Back-up Bidder, no later than five (5) business days following the closing of the Sale.  The deposit of the Successful Bidder or, if the Sale is closed with the Back-Up Bidder, the deposit of the Back-Up Bidder, shall be applied to the purchase price for the Sale. If the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then, subject to the terms of the Purchase Agreement or any Stalking Horse Agreement, as applicable, the Debtors and their estates shall be entitled to retain the Deposit of the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.

### 14. **Notice and Consultation Parties**

(a) The term "Notice Parties" as used in these Bidding Procedures shall mean: (i) the Debtors (Attn: Jonathan Tibus, Chief Restructuring Officer; jtibus@alvarezandmarsal.com); (ii) lead counsel to the Debtors, King & Spalding LLP (Attn: Sarah R. Borders; sborders@kslaw.com); and (iii) investment banking advisor to the Debtors, Piper Sandler & Co. (Attn: Teri Stratton teri.stratton@psc.com).

(b) The term "Consultation Parties" as used in these Bidding Procedures shall mean: (i) counsel to the First Lien Prepetition Agent, Morgan, Lewis & Bockius LLP (Attn: Sula R. Fiszman, and Jennifer Feldsher; sula.fiszman@morganlewis.com, jennifer.feldsher@morganlewis.com); (ii) if applicable, counsel to the official

committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "Creditors' Committee"); and (iii) counsel for the DIP Agent, if any.

For the avoidance of doubt, any consultation rights provided to the Consultation Parties by these Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment.

In the event that any Consultation Party or any member of the Creditors' Committee or an affiliate of any of the foregoing submits a bid that is a Qualifying Bid, any obligation of the Debtors to consult with the bidding party established under these Bidding Procedures will be waived, discharged and released without further action; provided that the bidding party will have the same rights as any other Qualifying Bidder set forth above. If a member of the Creditors' Committee submits a Qualifying Bid, the Creditors' Committee will continue to have consultation rights as set forth in these Bidding Procedures; provided that the Creditors' Committee shall exclude such member from any discussions or deliberations regarding the sale of the Assets and shall not provide any information regarding the sale of the Assets to such member.

## 15. **Reservation of Rights**

Notwithstanding any of the foregoing, the Debtors and their estates reserve the right to, after consultation with the Consultation Parties, modify these Bidding Procedures at or prior to the Auction, including, without limitation, to allow for bidding on only a portion of the Assets and not all of them, modify bidding increments, waive terms and conditions set forth herein with respect to any or all potential bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all Potential Bidders, adjourn or cancel the Auction at or prior to the Auction, and adjourn the Sale Hearing; provided, however, that any changes to the dates and deadlines set forth herein shall comply with any milestones contained in any order for the use of cash collateral or DIP financing entered by the Bankruptcy Court in these cases or (ii) be made with the consent of the DIP Agent and First Lien Prepetition Agent.

**<u>Exhibit 2</u>**

**Sale Notice**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE KRYSTAL COMPANY, *et al.*,[1] | ) | Case No. 20-61065 (PWB) |
| | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF AUCTION FOR THE SALE OF THE DEBTORS' ASSETS**

———————————————————————————————————————

       **PLEASE TAKE NOTICE** that on _____, 2020, the United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court") entered the *Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling Hearings and Objection Deadlines with Respect to the Sale, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief* [Docket No. __] (the "Bidding Procedures Order"),[2] authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to conduct an auction (the "Auction") to select the party or parties to purchase the Debtors' assets. The Auction will be governed by the bidding procedures approved pursuant to the Bidding Procedures Order (attached to the Bidding Procedures Order as Exhibit 1, the "Bidding Procedures").

---

**Copies of the Bidding Procedures Order or other documents related thereto are available upon request to Kurtzman Carson Consultants by calling (888) 249-2792 (U.S./Canada) or (310) 751-2607 (International) or visiting the Debtors' Case Website at http://www.kccllc.net/krystal.**

---

———————————————

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: The Krystal Company (4140); Krystal Holdings, Inc. (5381); and K-Square Acquisition Co., LLC (8916).  The location of the Debtors' corporate headquarters and service address is: 1455 Lincoln Parkway, Suite 600, Dunwoody, Georgia 30346.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

**PLEASE TAKE FURTHER NOTICE** that the **Bid Deadline is May 4, 2020 at 5:00 p.m. (prevailing Eastern Time),** and that any person or entity who wishes to participate in the Auction must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend to conduct the Auction, at which they will consider proposals submitted to the Debtors and their professionals, by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, on **May 7, 2020 at 10:00 a.m. (prevailing Eastern Time)** at the offices of counsel to the Debtors, King & Spalding LLP, 1180 Peachtree Street, Atlanta, GA  30309.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right to modify the Bidding Procedures, in their reasonable business judgment in accordance with the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that on **May 14, 2020 at 10:00 a.m. (prevailing Eastern Time)** or as soon thereafter as the Debtors may be heard, shall be the date and time for the hearing at which the Bankruptcy Court will consider approval of the Sale (the "Sale Hearing").

**PLEASE TAKE FURTHER NOTICE** that the deadline to object to approval of the Sale (the "**Sale Objection Deadline**") is set for **May 12, 2020 at 5:00 p.m. (prevailing Eastern Time)**.[3] Any objection must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Complex Case Procedures, the Bankruptcy Local Rules for the Northern District of Georgia, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection; and (iv) be filed with the Bankruptcy Court and served on counsel to the Debtors so as to be **actually received** by the no later than the Sale Objection Deadline.

[*Remainder of Page Intentionally Blank*]

---

[3]  Parties may object to the Sale based on the identity of the Successful Bidder (if other than the Stalking Horse Bidder) at any time prior to the commencement of the Sale Hearing.

Date: _____, 2020
      Atlanta, Georgia

KING & SPALDING LLP

/s/ _____
Sarah R. Borders
Georgia Bar No. 610649
Jeffrey R. Dutson
Georgia Bar No. 637106
Leia Clement Shermohammed
Georgia Bar No. 972711
**KING & SPALDING LLP**
1180 Peachtree Street NE
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Email: sborders@kslaw.com
Email: jdutson@kslaw.com
Email: lshermohammed@kslaw.com

*Counsel for the Debtors in Possession*

**<u>EXHIBIT 3</u>**

**Cure Notice**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE KRYSTAL COMPANY, *et al.*,[1] | ) | Case No. 20-61065 (PWB) |
| | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE TO CONTRACT PARTIES TO POTENTIALLY**
**ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

---

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU**
**OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN**
**EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE**
**OF THE DEBTORS AS SET FORTH ON __EXHIBIT A__ ATTACHED HERETO.**

---

**PLEASE TAKE NOTICE** that on _____, 2020, the United States Bankruptcy Court for the Northern District of Georgia (the "Court") entered the *Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling Hearings and Objection Deadlines with Respect to the Sale, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief* [Docket No. __] (the "Bidding Procedures Order"),[2] authorizing the Debtors to conduct an auction (the "Auction") to select the party to purchase the Debtors' assets. The Auction will be governed by the bidding procedures approved pursuant to the Bidding Procedures Order (attached to the Bidding Procedures Order as Exhibit 1, the "Bidding Procedures").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures, the Debtors **may** assume and assign to the Successful Bidder certain of the Assigned Contracts listed on the Assigned Contracts Schedule, attached hereto as **Exhibit A**, to which you are a counterparty, upon approval of the Sale. The Assigned Contracts Schedule can also be viewed on the Debtors' Case Website (http://www.kccllc.net/krystal). The Debtors have conducted a review

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: The Krystal Company (4140); Krystal Holdings, Inc. (5381); and K-Square Acquisition Co., LLC (8916). The location of the Debtors' corporate headquarters and service address is: 1455 Lincoln Parkway, Suite 600, Dunwoody, Georgia 30346.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

of their books and records and have determined that the cure amount for unpaid monetary obligations under such Assigned Contracts is as set forth on **Exhibit A** attached hereto (the "Cure Costs").

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the proposed Cure Costs, object to a proposed assignment to the Successful Bidder of any Assigned Contract, or object to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract, your objection must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Complex Case Procedures, the Bankruptcy Local Rules for the Northern District of Georgia, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Bankruptcy Court and served so as to be **actually received** by counsel to the Debtors prior to **April 20, 2020 at 5:00 p.m. (prevailing Eastern Time)** (the "Cure Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if no objection to (a) the Cure Costs(s), (b) the proposed assignment and assumption of any Assigned Contract, or (c) adequate assurance of the Successful Bidder's ability to perform is filed by the Cure Objection Deadline, then (i) you will be deemed to have stipulated that the Cure Costs as determined by the Debtors are correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional cure amount under the proposed assigned Contract, and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment to the Successful Bidder on the grounds that the Successful Bidder has not provided adequate assurance of future performance as of the closing date of the Sale.

**PLEASE TAKE FURTHER NOTICE** that any objection to the proposed assumption and assignment of an Assigned Contract or related Cure Costs in connection with the Successful Bid that otherwise complies with these procedures yet remains unresolved as of the commencement of the Sale Hearing, shall be heard at a later date as may be fixed by the Bankruptcy Court.

**PLEASE THAT FURTHER NOTICE** that, notwithstanding anything herein, the mere listing of any Assigned Contract on the Cure Notice does not require or guarantee that such Assigned Contract will be assumed by the Debtors at any time or assumed and assigned, and all rights of the Debtors and the Successful Bidder with respect to such executory contracts and/or unexpired leases are reserved. Moreover, the Debtors explicitly reserve their rights, in their reasonable discretion, to seek to reject or assume each Assigned Contract pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures allowing the Debtors and/or the Successful Bidder, as applicable, to designate any Assigned Contract as either rejected or assumed on a post-closing basis.

**PLEASE TAKE FURTHER NOTICE** that, nothing herein (i) alters in any way the prepetition nature of the Assigned Contracts or the validity, priority, or amount of any claims of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract, (ii) creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract.

*[Remainder of page intentionally left blank]*

Date: _____, 2020
      Atlanta, Georgia

KING & SPALDING LLP

/s/_____
Sarah R. Borders
Georgia Bar No. 610649
Jeffrey R. Dutson
Georgia Bar No. 637106
Leia Clement Shermohammed
Georgia Bar No. 972711
**KING & SPALDING LLP**
1180 Peachtree Street NE
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Email: sborders@kslaw.com
Email: jdutson@kslaw.com
Email: lshermohammed@kslaw.com

*Counsel for the Debtors in Possession*

## EXHIBIT A TO CURE NOTICE

**SCHEDULE OF CURE COSTS AND TRANSFERRED CONTRACTS**