**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| THE KRYSTAL COMPANY, et al.[1] | : | CASE NO. 20-61065-PWB |
| Debtor. | : | (Jointly Administered) |

| | |
|---|---|
| 182 EMERSON LLC | : |
| Movant | : |
| | : |
| Vs. | : |
| | : |
| THE KRYSTAL COMPANY, et al | : |
| Respondent | : |

**AMENDED** NOTICE OF REQUIREMENT OF RESPONSE TO **EMERSON'S AMENDED**
MOTION TO COMPEL ASSUMPTION OR REJECTION OF EXECUTORY CONTRACT

**PLEASE TAKE NOTICE** that 182 Emerson LLC hereinafter collectively referred to as

"Emerson" have filed a Motion to Compel Assumption or Rejection of Contract and related

papers with the Court seeking an order compelling assumption or rejection of the lease.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the **Motion**

**to Compel Assumption or Rejection** in Courtroom **1401,** The Richard B. Russell Federal

Building, 75 Ted Turner Dr., SW, Atlanta, Georgia at **10:00 a.m.** on **March 24, 2020.**

Your rights may be affected by the Court's ruling on these pleadings. You should read

these pleadings carefully and discuss with your attorney, if you have one in this bankruptcy case.

(If you do not have an attorney, you may wish to consult one.) If you do not want the Court to

grant the relief sought in these pleadings, or if you want the Court to consider your views, then

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number include: The Krystal Company (4140); Krystal Holdings Inc (5381); and k-Square
Acquisition Co, LLC (8916). The location of the Debtors' corporate headquarters and service address is:
1455 Lincoln Parkway, Ste 600, Dunwoody, GA 3034

you and/or your attorney must attend the hearing.  You may also file a written response to the pleading with the Clerk at the address below, but you are not required to do so.  If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response.  Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing.  The address for the Clerk's Office is: United States Bankruptcy Court, Room 1340, U.S. Courthouse, 75 Ted Turner Dr., SW, Atlanta, GA 30303.  You must also mail a copy of your response to the undersigned at the address stated below.

IF THE MOTION IS FOR RELIEF FROM STAY, and a hearing on the Motion for Relief from the Automatic Stay cannot be held within thirty (30) days, Movants waive the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date.  Movants consent to the Automatic Stay remaining in effect until the Court orders otherwise.

Dated: February _26_, 2020.

/s/Ian M. Falcone
Ian M. Falcone
Bar Number 254470
Attorney for Emerson

The Falcone Law Firm, P.C.
363 Lawrence St.
Marietta, GA 30060
(770) 426-9359
imf@falconefirm.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| THE KRYSTAL COMPANY, et al. | : | CASE NO. 20-61065-PWB |
| Debtor. | : | (Jointly Administered) |

| | |
|---|---|
| 182 EMERSON LLC | : |
| Movant | : |
| | : |
| Vs. | : |
| | : |
| THE KRYSTAL COMPANY, et al | : |
| Respondent | : |

182 EMERSON LLC'S **AMENDED** MOTION TO COMPEL ASSUMPTION OR
REJECTION OF EXECUTORY CONTRACT

    182 Emerson LLC. (hereinafter "Emerson"), creditor in the above-styled matter by and through undersigned counsel, pursuant to Section 365(d) and Section 362(d) of Title 11 of the United States Code, 11 U.S.C 101, *et seq.* (the "Bankruptcy Code") and Rule 6006, Federal Rules of Bankruptcy Procedure herby files this Motion to Compel Assumption or Rejection of Executory Contract, and states as follows:

Jurisdiction and Venue

1.

    This Court has jurisdiction over this matter pursuant to 28 U.S.C § 1334. This matter is a core proceeding within the meaning of 28 U.S.C § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C § 1409(a).

2.

On or about January 19, 2020, Debtor filed its voluntary petition pursuant to Chapter 11, Title 11, U.S. Code. Since that time, Debtor has been a debtor-in-possession, and has operated its business pursuant to 11 U.S.C. §§ 1107 and 1108.

Background

3.

On or about July 12, 1999, Debtor entered into a ground lease as modified by the First Amendment to Lese dated September 5, 2018 (collectively "Lease"), in regards to property located at 475 Schillinger Rd, Mobile, AL. See Exhibit A.

2.

On July 3, 2019, Emerson purchased the property and assumed the Lease. See attached Exhibit B.

3.

Under the terms of the Lease, Debtor is to pay Emerson monthly rent in the amount of $9,208.33.

4.

Debtor has defaulted under the Lease by failing to pay pre-petition monthly rents.

5.

Debtor is currently in arrears $18,416.66 (December 2019 and January 2020).

6.

To date, Emerson has not received any written election from the Debtor regarding its intent to assume or reject the Lease. Moreover, Emerson has not received any adequate assurance: (a) that the Debtor's defaults under the Lease will be cured; or (b) of Debtor's future performance under the terms of the Lease.

7.

By this Motion, Emerson seeks for this Court to compel the Debtor to assume or reject the Lease.

<u>Relief Requested</u>

8.

The court should compel the Debtor to assume or reject the Lease within 10 days of the Court's ruling. Section 365(d)(2) provides that:

> In a case under chapter 9, 11, 12 or 13 of this title, the trustee may assume or reject an executor contract…at any time before the confirmation of the plan but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract…

9.

Here, the Lease is an unexpired, pre-petition executory contract that has not yet been assumed or rejected by the Debtor.

10.

A non-debtor party to the executor contract, such as Emerson, may file a motion with the Court to compel a debtor to assume or reject an executor contract within a specified period of time.

11.

Debtor has defaulted under the terms of the Lease and Emerson is prejudiced by its inability to collect fees due while Debtor continues to be unjustly enriched by continuing to use the property and other items belonging to Emerson.

12.

While Section 365 (d)(2) is intended to give a debtor some "breathing room" by allowing reasonable time within which to decide whether assumption or rejection of a executor contract is appropriate, such breathing room is not "without limits". *In re Adelphia Corp.,* 291 B.R. 283, 292 (Bankr. S.D.N.Y. 2003)(quoting *In re Enron Corp.,* 279 B.R. 695, 702 (Bankr. S.D.N.Y. 2002)); *see also in re Braniff, Inc.,* 118 B.R. 819, 845 (Bankr. M.D. Fla 19900(citations omitted).

13.

Here, the Debtor has had more than 45 days to determine whether to assume or reject the Lease, which under the present circumstances is a reasonable amount of time.

14.

Pursuant to Section 365 (b), if there has been a default in an executory contract, there can be no assumption or rejection unless the debtor-in-possession: (a) cures, or provides adequate assurance that it will cure, the defaults; (b) compensates, or provides adequate assurance that it will promptly compensate the other party for its actual pecuniary loss resulting from such default; and (c) provides adequate assurance of future performance under the executory contract.

15.

Debtor's defaults and failure to assume and cure its defaults have harmed Emerson and expose Emerson to additional damages and expense. Emerson has not received the benefit of its bargain with the Debtor.

16

Because of Debtor's default and inability to make all required payments, Emerson is not adequately protected.

17.

If Debtor does not reaffirm the Lease, Movant shows that there is cause for relief from the automatic stay.

18.

By this Motion, Emerson requests that (1) the Lease be assumed; (2) the Debtor be made to cure all defaults; and (3) the Debtor be required to provide adequate assurance of future performance. Alternatively, Emerson requests that the Court enter an interim order requiring the Debtor to maintain all post-petition obligations under the Lease and direct the Debtor to either assume or reject the Lease within sixty (60) days of entry of such order.

19.

Movant waives the requirements of 11 USC § 362(e) which would otherwise require a hearing on said Motion within thirty (30) days. Movant waives such provisions and consents to the automatic stay remaining in effect with respect to Movants until such time as the Court orders otherwise.

20.

Movant requests that the Court grant them relief from the automatic stay, instanter, without the necessity of any fourteen day stay, all as authorized by the provisions of Federal

Rule of Bankruptcy Procedure 4001(a)(3) and further requests that the collateral be deemed abandoned for the Bankruptcy Estate.

WHEREFORE, for all the foregoing reasons, Emerson respectfully requests that:

a)   this Court either enter an Order compelling Debtor to assume the Lease with Emerson, cure all defaults and provide adequate assurance of future performance; or, alternatively, enter an interim order requiring the Debtor to maintain all post-petition obligations under the Lease and direct the Debtor to either assume or reject the Lease within sixty (60) days of entry of such order.

b)   In the alternative, this Court enter and order modifying the automatic stay, authorizing Emerson, its successors and assigns, to proceed terminate the Lease and take possession of the property by any means allowed by law;

c)   Grant such other and further relief as this Court deems proper and just.

This  _26_   day of February 2020

/s/ IAN M. FALCONE
Ian M. Falcone
Attorney for Emerson
Georgia Bar No. 254470

THE FALCONE LAW FIRM, P.C.
363 Lawrence Street
Marietta, GA  30060
(770) 426-9359
imf@falconefirm.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| THE KRYSTAL COMPANY, et al. | : | CASE NO. 20-61065-PWB |
| Debtor. | : | (Jointly Administered) |

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have on this day electronically filed the foregoing "**AMENDED
MOTION TO COMPEL ASSUMPTION OR REJECTION OF EXECUTORY CONTRACT**"
using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this
document and an accompanying link to this document to the following parties who have
appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

- Brad Baldwin  brad@hmhwlaw.com
- J. Steven Bloodworth  sbloodworth@bushlawfirm.com
- Sarah Robinson Borders  sborders@kslaw.com, cpope@kslaw.com
- Jacob A. Brown  jacob.brown@akerman.com, jennifer.meehan@akerman.com;
  matthew.drawdy@akerman.com
- Wade Kyle Cannon  wcannon@gearhiserpeters.com, young@gearhiserpeters.com
- James S. Carr  kdwbankruptcydepartment@kelleydrye.com
- John A. Christy  jchristy@swfllp.com, amcrae@swfllp.com
- Leia Ashlin Clement Shermohammed  LShermohammed@kslaw.com,
  jdutson@kslaw.com
- David F. Cooper  dcooper@kkgpc.com, sfarland@kkgpc.com
- S. Nathaniel De Veaux  ndeveaux@kkgpc.com, kaaron@kkgpc.com
- Frank W. DeBorde  fwd@mmmlaw.com, lwolgast@mmmlaw.com
- C. Edward Dobbs  edobbs@phrd.com
- Mark I. Duedall  mark.duedall@bclplaw.com, Debbie.hopkins@bclplaw.com,
  REC_KM_ECF_ATL@bclplaw.com
- Erich N. Durlacher  edurlach@burr.com, brobinson@burr.com
- Thomas Wayne Dworschak  thomas.w.dworschak@usdoj.gov, ltctommyd@aol.com
- T. Lawrence Evans  levans@olivermaner.com, mboehlke@olivermaner.com
- Ian M. Falcone  legalassistant@falconefirm.com
- Jennifer Feldsher  jennifer.feldsher@morganlewis.com
- Anna Mari Humnicky  ahumnicky@smallherrin.com, klemons@smallherrin.com;
  notices@nextchapterbk.com; lcarlton@smallherrin.com
- John F. Isbell  john@JFI-Law.com
- Steven M. Jampol  sjampol@northatlantalaw.net, sengle@northatlantalaw.net
- Leon S. Jones  ljones@joneswalden.com, jwdistribution@joneswalden.com;
  eparker@joneswalden.com; mvining@joneswalden.com; cmccord@joneswalden.com;
  lpineyro@joneswalden.com; arich@joneswalden.com; ewooden@joneswalden.com
- Walter E. Jones  wjones@balch.com, fednoticesatl@balch.com

- Benjamin Keck bkeck@rlklawfirm.com, mwinokur@rlklawfirm.com; swenger@rlklawfirm.com; csmith@rlklawfirm.com; dlamonte@rlklawfirm.com
- Charles N. Kelley ckelley@kelleyclements.com, twinkler@cummingskelley.com; 1663@notices.nextchapterbk.com; 3667002420@filings.docketbird.com
- Gerald P. Kennedy gerald.kennedy@procopio.com, angela.stevens@procopio.com
- Benjamin S. Klehr bklehr@smallherrin.com, klemons@smallherrin.com
- David S. Klein dklein@rlklawfirm.com, swenger@rlklawfirm.com; yalamin@rlklawfirm.com; R71213@notify.bestcase.com; csmith@rlklawfirm.com; dlamonte@rlklawfirm.com;1030641420@filings.docketbird.com
- Sean C. Kulka sean.kulka@agg.com
- Kurtzman Carson Consultants LLC ECFpleadings@kccllc.com
- Darryl S. Laddin bkrfilings@agg.com, darryl.laddin@agg.com
- Matthew W. Levin mlevin@swlawfirm.com, fharris@swlawfirm.com; centralstation@swlawfirm.com; rwilliamson@swlawfirm.com; aray@swlawfirm.com; hkepner@swlawfirm.com
- T. Charlie Liu charlie.liu@morganlewis.com
- Roy E. Manoll kdd@fbglaw.com
- Michael E. Mayo mayo@mayohill.law, sherrie@mayohill.law
- Leah Fiorenza McNeill Leah.Fiorenza@bclplaw.com, debbie.hopkins@bclplaw.com; REC_KM_ECF_ATL@bclplaw.com
- Evan T. Miller emiller@bayardlaw.com, lmorton@bayardlaw.com
- Victor W. Newmark bankruptcy@evict.net, vnewmark@evict.net
- Office of the United States Trustee ustpregion21.at.ecf@usdoj.gov
- Lisa M. Peters lisa.peters@kutakrock.com, Marybeth.brukner@kutakrock.com
- Stephen B. Porterfield sporterfield@sirote.com
- Sarah T. Reise reises@ballardspahr.com, southerlandl@ballardspahr.com; LitDocket_East@ballardspahr.com
- Thomas D. Richardson TRichardson@Brinson-Askew.com, Tdr82454@gmail.com
- Michael D. Robl michael@roblgroup.com
- Paul M. Rosenblatt prosenblatt@kilpatricktownsend.com
- William A. Rountree wrountree@rlklawfirm.com, swenger@rlklawfirm.com; yalamin@rlklawfirm.com; R71213@notify.bestcase.com; csmith@rlklawfirm.com; dlamonte@rlklawfirm.com
- David S. Rubin David.Rubin@butlersnow.com
- Andres H. Sandoval andres.sandoval@usdoj.gov, charlie.cromwell@usdoj.gov; Larissa.selchenkova@usdoj.gov
- Gus H. Small gsmall@smallherrin.com, klemons@smallherrin.com
- Robert J. Solomon rsolomon@sb-law.com, mlee@sb-law.com; efc-sblaw@sb-law.com; mabedinzadeh@sb-law.com; mflower@sb-law.com
- Michael Charles Sullivan msullivan@phrd.com
- Cater C. Thompson cater.thompson@jonescork.com, stacey.davis@jonescork.com; debi.richards@jonescork.com
- Ryan David Thompson rthompson@maynardcooper.com, rcthomps@samford.edu
- Hannah Leah Uricchio uricchio.hannah@pbgc.gov, efile@PBGC.gov
- Thomas R. Walker thomas.walker@fisherbroyles.com
- C. Brent Wardrop brent.wardrop@qpwblaw.com

- Jason H. Watson  jwatson@mmmlaw.com
- J. Robert Williamson rwilliamson@swlawfirm.com, centralstation@swlawfirm.com; aray@swlawfirm.com; hkepner@swlawfirm.com; fharris@swlawfirm.com; rbazzani@swlawfirm.com; mlevin@swlawfirm.com
- Stuart Freeman Wilson-Patton agbankgeorgia@ag.tn.gov, Stuart.Wilson-Patton@ag.tn.gov
- Adolyn C. Wyatt awyatt@burr.com, brobinson@burr.com
- Gai Lynn McCarthy. gmccarthy@kppblaw.com
- Christopher Roberge  croberge@boselaw.com
- Joseph Burton, Jr.  jburton@mfllwaw.com

This ___26___ day of February, 2020

/s/ IAN M. FALCONE
Ian M. Falcone
Georgia Bar No. 254470
Attorney for Debtor

The Falcone Law Firm, P.C.
363 Lawrence Street
Marietta, GA  30060
(770) 426-9359
imf@falconefirm.com

## GROUND LEASE

**THIS GROUND LEASE** ("Lease") dated as of the _____ day of _____, 1999 (the "Effective Date"), by and between **THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA**, a _New York corporation_, having an office for the transaction of business at 201 Park Avenue, South, New York, New York, 10003, Attention: Mr. Mike Noulas, 2nd Vice President (hereinafter referred to as "Landlord") and **THE KRYSTAL COMPANY**, a Tennessee corporation, having an office for the transaction of business at The Krystal Building, One Union Square, Chattanooga, Tennessee, 37402, Attention: Real Estate Department (hereinafter referred to as "Tenant").

## W I T N E S S E T H :

In consideration of Ten Dollars ($10.00), other good and valuable consideration, and the mutual covenants contained herein, and intending to be legally bound hereby, Landlord and Tenant hereby agree with each other as follows:

Section 1. Premises:  Landlord hereby leases and lets to Tenant, and Tenant hereby takes and hires from Landlord, upon and subject to the terms, conditions, covenants and provisions hereof, all that certain tract, piece or parcel of land (the "Land"), consisting of approximately 30,000 square feet located within the Westwood Plaza Shopping Center (the "Shopping Center") at the intersection of Schillinger Road and Airport Boulevard, Mobile County, Mobile, Alabama, more particularly described or shown on **Exhibit "A"** attached hereto and by this reference made a part hereof; **TOGETHER WITH** (a) a non-exclusive easement for the purposes of pedestrian and vehicular access, ingress and egress upon, over, through and across all driveways, accessways and sidewalks located from time to time on the adjoining property of Landlord more particularly described or shown on **Exhibit "B"** attached hereto and by this reference made a part hereof (the "Adjoining Property"); (b) for so long as there shall be seven (7) paved, marked spaces per one thousand (1000) square feet of floor area contained in the building(s) from time to time constructed on the Land, non-exclusive easement over the parking areas located from time to time on the Adjoining Property for automobile parking for the benefit of Tenant, its employees, customers and patrons; (c) a non-exclusive easement upon, over, under and through the Adjoining Property for the installation, use, maintenance, repair and replacement of underground utility lines, conduits and facilities to serve the Land and the improvements thereon, together with the right to tie into and connect to existing utility lines, conduits and facilities located on the Adjoining Property (the location of any such utility lines installed by Tenant shall be approved by Landlord, such approval not to be unreasonably withheld, conditioned or delayed) in order to serve the Land, provided the location of such lines, conduits and facilities shall be subject to the reasonable approval of Landlord; (d) a non-exclusive easement over and across the Adjoining Property for the purposes of passing and discharging storm and surface waters thereon from the Land as it may be improved from time to time; (e) any and all buildings, improvements, and structures located on the Land; and (f) any and all appurtenances, rights, privileges and easements benefitting, belonging or pertaining to the Land, and any right, title and interest of Landlord in and to any land lying in the bed of any street, road or highway in front

628040.6

Exhibit

A

of or adjoining said Land, together with any strips and gores relating to said Land (all the foregoing being hereinafter referred to as the "Demised Premises"). In the event that Tenant shall at any time obtain a survey of the Land, Tenant and Landlord agree to amend this Lease by substituting a description of the Land based upon such survey in place of the description or site plan attached hereto as **Exhibit "A"**.

Section 2. Term: (a) Provided Tenant has not otherwise terminated this Lease expressly in accordance with the terms set forth herein allowing such termination, the term of this Lease shall commence on the first day following the expiration of the Inspection Period, as such term is hereinafter defined (such date being hereinafter referred to as the "Commencement Date"). Landlord hereby covenants that Landlord shall deliver full and exclusive possession of the Demised Premises to Tenant on or before the Commencement Date. As provided in Section 3 below, the basic rent shall commence to accrue on the date which is the earlier of (i) one hundred eighty (180) days after the Effective Date or (ii) the date upon which Tenant commences to do business with the public from the Demised Premises (hereinafter the "Rental Commencement Date").

(b)      The initial term of this Lease shall be for the period beginning on the Commencement Date and terminating on the fifteenth (15th) anniversary of the Rental Commencement Date, unless sooner terminated or extended as herein provided. The parties shall execute a letter agreement specifying the Commencement Date and the Rent Commencement Date. Tenant shall have the right, at its option to extend the term of this Lease for four (4) additional, consecutive periods of five (5) years each, at the rent and upon all of the other terms, conditions, covenants and provisions set forth herein; provided, however, that Tenant may only extend the term of this Lease by giving Landlord written notice of such extension on or prior to a date which is three (3) months before the expiration of the initial term of this Lease or any extension period, as the case may be. The expression "term of this Lease" as hereinafter used shall mean and refer to the initial term of this Lease and any extensions thereof, as the context may permit or require.

Section 3. Rent: (a) Provided Tenant has not otherwise terminated this Lease expressly in accordance with the terms set forth herein allowing such termination, Tenant covenants and agrees to pay Landlord for the Demised Premises without notice or demand, and without offset or deduction, basic rent at the rate hereinafter set forth from the Rental Commencement Date and thereafter throughout the term of this Lease. All basic rent shall be payable by Tenant in equal monthly installments on the first day of each and every calendar month throughout the term of this Lease. The monthly basic rent shall be as follows:

| Initial Term | Annual Basic Rent | Monthly Basic Rent |
|---|---|---|
| Years 1-10 | $42,000.00 | $3,500.00 |
| Years 11-15 | $46,200.00 | $3,850.00 |

628040.6                                                2

| Renewal Periods | Annual Basic Rent | Monthly Basic Rent |
|---|---|---|
| Years 16-20 | $50,820.00 | $4,235.00 |
| Years 21-25 | $55,902.00 | $4,658.50 |
| Years 26-30 | $61,492.00 | $5,124.33 |
| Years 31-35 | $67,641.00 | $5,636.75 |

(b)    As used herein, the term "rent" shall be deemed to include the basic rent and the additional rent, if any, payable by Tenant to Landlord hereunder.

(c)    In the event that rent commences hereunder on other than the first calendar day of a month, or if the last day of the term of this Lease is other than the last calendar day of a month, the rent due hereunder for the first and/or last month, as the case may be, shall be prorated on a daily basis.

Section 4. Place of Payment:  All amounts payable under Section 3 of this Lease, as well as all other amounts payable by Tenant to Landlord under the terms of this Lease, shall be paid at the office of Landlord set forth above, or at such other place as Landlord may from time to time designate by written notice to Tenant, in lawful money of the United States which shall be legal tender for the payment of all debts and dues, public and private, at the time of payment.

Section 5. Rent to be Net to Landlord:  It is the intention of the parties hereto that the rent payable hereunder shall be net to Landlord so that this Lease shall yield, net to Landlord, the basic rent specified herein during the term of this Lease, as such basic rent may be adjusted as provided in Section 3; provided, however, Tenant shall not pay any leasing commissions or brokerage fees incurred in connection herewith, and such costs, if any, shall be paid by Landlord as provided in Section 30 hereof.

Section 6. Use of Premises:  The Demised Premises may be used for a Krystal restaurant or for any other lawful purposes approved by Landlord, which approval shall not be unreasonably withheld, conditioned, or delayed, but in no event may the Demised Premises be used for a restaurant in which chicken is a principal menu item.  Tenant hereby represents and warrants that chicken is not a principal menu item in Tenant's operation of a Krystal fast-food restaurant.   For purposes hereof, "principal menu item" shall mean any restaurant deriving twenty-five percent (25%) or more of its gross sales from the sale of chicken.

Section 7. Taxes and Utility Expenses:  (a)    Tenant shall, during the term of this Lease, as additional rent, pay and discharge punctually, as and when the same shall become due and payable, all taxes and other governmental impositions and charges of every kind and nature whatsoever, extraordinary as well as ordinary, which arise or accrue from and after the Commencement Date and which shall or may during the term of this Lease be charged, levied, laid, assessed, imposed, become due and payable, or liens upon or for or with respect to the Land or any part thereof or any buildings, appurtenances or equipment owned by Tenant thereon or therein or any part thereof, together with

all interest and penalties thereon, under or by virtue of all present or future laws, ordinances, requirements, orders, directives, rules or regulations of the federal, state and county governments and of all other governmental authorities whatsoever (hereinafter referred to as "Taxes"). Landlord acknowledges and agrees that any standby fees, taxes or assessments by any taxing authority for any period prior to the Commencement Date which may become due shall be paid in full by Landlord.

Tenant shall be deemed to have complied with the covenants of this Section 7 if payment of such Taxes shall have been made within any period allowed either by law or by the governmental authority imposing the same during which payment is permitted without penalty or interest, and Tenant shall produce and exhibit to Landlord satisfactory evidence of such payment, if Landlord shall demand the same in writing.

(b)     All such Taxes which shall become payable during each of the calendar years in which the term of this Lease commences and terminates, shall be apportioned pro-rata between Landlord and Tenant in accordance with the respective portions of such years during which term shall be in effect. In the event any of said Taxes are payable in installments, Tenant may pay the same as such installments become due and payable. Landlord shall pay all special assessments made or becoming a lien against or with respect to the Land and improvements thereon prior to the Commencement Date. If any special assessments made after the Commencement Date shall be payable in installments, Tenant shall pay on the installments that become due and payable during the remaining term of this Lease.

(c)     Tenant or its designees shall have the right to contest or review all such Taxes by legal proceedings, or in such other manner as it may deem suitable (which, if instituted, Tenant or its designees shall conduct promptly at its own cost and expense, and free of any expense to Landlord, and, if necessary, in the name of and with the cooperation of Landlord and Landlord shall execute all documents necessary to accomplish the foregoing). Notwithstanding the foregoing, Tenant shall promptly pay all such Taxes if at any time the Land or any part thereof shall then be immediately subject to forfeiture, or if Landlord shall be subject to any criminal liability arising out of the nonpayment thereof.

The legal proceedings referred to above in this Section 7(c) shall include appropriate certiorari proceedings and appeals from orders therein and appeals from any judgments, decrees or orders. In the event of any reduction, cancellation or discharge, Tenant shall pay the amount finally levied to be due and payable on any such contested Taxes.

(d)     Landlord covenants and agrees that if there shall be any refunds or rebates on account of the Taxes paid by Tenant under the provisions of this Lease, such refund or rebate, less the reasonable costs, if any, incurred by Landlord in obtaining such refund or rebate, shall belong to Tenant. Landlord will, upon the request of Tenant, sign any receipts which may be necessary to secure the payment of any such refund or rebate, and will pay over to Tenant such refund or rebate as and when received by Landlord.

628040.6                                                    4

(e)      Nothing contained in this Lease shall require or be construed to require Tenant to pay any inheritance, estate, succession, transfer, gift, franchise, income, gross receipts, excise or profit taxes that are or may be imposed upon or assessed against Landlord, its heirs, successors or assigns.

(f)      During the term of this Lease, Tenant shall also pay and discharge punctually, as and when the same shall become due and payable, all sewer rents and all charges for water, steam, heat, gas, hot water, electricity, light and power, and other service or services furnished to the Land and improvements thereon or the occupants thereof during the term of this Lease.

Section 8.  Conditions to Tenant's Obligations:  (a) It is a condition to Tenant's obligations hereunder that there are no zoning laws, deed restrictions, ordinances, regulations, easements, rights or other legal requirements, or any deficiencies in or lack of access, ingress or egress, necessary utilities, curb cuts, sanitary and storm sewers, drainage, adequate soil conditions, nor other difficulties, including without limitation excessive site preparation and construction expenses, which would prohibit or in any way impair the full use of the Demised Premises by Tenant for restaurant purposes, including the construction of all improvements, signs, curbs, access, and parking facilities thereon, and that Tenant is able to obtain all rights and privileges necessary or reasonably desirable for the construction of all contemplated improvements on the Demised Premises according to the plans and specifications of Tenant for a fast food restaurant, including but not limited to, all necessary licenses, zoning or zoning changes, building permits, sign permits and other permits (collectively the "Permits").  It is a further condition of Tenant's obligations hereunder that Tenant's Executive Committee approve this location for a Krystal restaurant.  Tenant shall diligently pursue same, but if all necessary Permits have not been obtained within ninety days (90) from the Effective Date (the "Inspection Period"), or if approval of Tenant's Executive Committee has not been obtained within sixty (60) days from the Effective Date, or if any of the foregoing conditions or any other conditions specified in this Lease have not been resolved to Tenant's satisfaction within the Inspection Period, or if the Plans (as hereinafter defined) are not approved by Landlord prior to expiration of the Inspection Period, or if for any reason, or no reason at all, Tenant elects not to proceed with this transaction, Tenant may, at its option cancel this Lease by providing written notice to Landlord at any time prior to the  expiration of the Inspection Period.  If Tenant fails to give such notice on or prior to the expiration of the Inspection Period, then the conditions set forth in this paragraph shall be deemed to have been waived by Tenant.  In the event Tenant shall terminate this Lease on or prior to the expiration of the Inspection Period as provided herein, Tenant shall be obligated to pay Landlord the sum of $1,000.00.

(b)      Tenant shall, upon giving prior notice to Landlord and with Landlord's prior consent, at all times before the Commencement Date of the Lease have the privilege of going upon the Demised Premises with its agents or engineers as needed to inspect, examine, survey and otherwise do whatever Tenant deems necessary in the engineering and planning for development of the Demised Premises.  Said privilege shall include the right, at Tenant's sole expense, to make soil tests, borings, percolation tests and tests to obtain other information necessary to determine surface, subsurface and topographic conditions of the Land.  Tenant hereby indemnifies and agrees to hold Landlord harmless from and against any claims or damages incurred by Tenant as a result of persons

or firms entering the Demised Premises on Tenant's behalf pursuant to the privilege granted under this Section 8. In the event Tenant shall terminate this Lease under this Section 8, Tenant shall restore and/or repair any damage to the Land caused by Tenant or Tenant's agents or employees.

(c)    This Lease and Tenant's obligations hereunder are subject to Tenant, at Tenant's expense, being able to procure a leasehold title insurance binder from a reputable title insurance company satisfactory to Tenant agreeing to issue a valid leasehold title insurance policy on the latest American Land Title Association form or on such other form as shall be acceptable to Tenant, insuring Tenant's leasehold interest and easement rights as provided for in this Lease to the extent deemed adequate by Tenant. Said title binder must show that Landlord's title to the Demised Premises is good and marketable, free, clear and unencumbered, and subject to no liens, encumbrances or exceptions (other than current real estate taxes not delinquent), except such as Tenant may, at its option, waive, and that Tenant has a valid and binding first leasehold interest without exception other than such taxes and waived exceptions. Superior deeds to secure debt, deeds of trust or mortgages (herein "Mortgages") which constitute a lien against the Demised Premises or which are superior to the easements granted herein to Tenant shall be permitted exceptions provided Landlord shall use Landlord's best efforts to procure and deliver to Tenant, no later than the expiration of the Inspection Period, a non-disturbance agreement substantially in the form set forth on **Exhibit "D"** attached hereto and made a part hereof for each Mortgage against the Demised Premises and for each Mortgage which is superior to the easements granted herein to Tenant. Landlord shall diligently pursue the curing of title exceptions and defects raised by Tenant during the Inspection Period, including, but not limited to, any objections made by Tenant to the items disclosed on **Exhibit "C"** of this Lease, and if such title exceptions and defects raised by Tenant are not cured to Tenant's satisfaction then Tenant shall have the right to terminate this Lease on such basis by delivering written notice of such termination to Landlord prior to the expiration of the Inspection Period.

(d)    If necessary to lease the Demised Premises to Tenant pursuant to this Lease or if otherwise necessary for Tenant's development of the Demised Premises, Landlord agrees to prepare and have recorded a subdivision plat for the Demised Premises establishing the Demised Premises as an individual parcel separate and apart from any other adjacent property owned by Landlord. Any such necessary subdivision plat must be approved by Tenant and all necessary governmental authorities. All costs and expenses associated with the preparation, approval and recording of such subdivision plat shall be the responsibility of Landlord.

Section 9. Improvements, Repairs, Additions, Replacements: (a)    Tenant shall have the right, at its own cost and expense, to construct on any part or all of the Land, at any time and from time to time, such buildings, structures, parking areas, driveways, drive-thru windows, walks, gardens and other improvements as Tenant in its sole discretion shall from time to time determine are necessary for conducting the business of Tenant on the Demised Premises, provided that the same shall (i) be in compliance with all then applicable building codes and ordinances, and (ii) be subject to the prior written approval of Landlord, such approval not to be unreasonably withheld, conditioned, or delayed. Landlord hereby approves the preliminary plans for the building and other

improvements which Tenant proposes to construct on the Land, which plans are identified on **Exhibit "E"** attached hereto and by reference made a part hereof (the "Plans"). Any material change to such plans shall require Landlord's written approval, which approval shall not be unreasonably withheld, conditioned or delayed. Landlord agrees to respond to any request for approval of material changes in such plans within ten (10) business days after receipt by Landlord of the proposed changes, and if Landlord fails to respond to any request by Tenant for such approval within such ten (10) business day period, such changes shall be deemed to be approved.

(b)    Unless expressly provided herein, Landlord shall not be required to furnish any services or facilities or to make any improvements, repairs or alterations in or to the Land during the term of this Lease.

(c)    Subsequent to the completion of the building and other improvements on the Land pursuant to the Plans, Tenant may from time to time during the term of this Lease make such alterations, changes, replacements, improvements and additions in and to the buildings or other structures on the Land in such manner and as often as Tenant may deem beneficial with respect to the development and use of the Land, provided that the same shall (i) be in compliance with all then applicable building codes and ordinances, and (ii) be subject to the prior written approval of Landlord, such approval not to be unreasonably withheld, conditioned or delayed. Notwithstanding the foregoing to the contrary, Tenant may (i) make interior alterations which do not cost in excess of $50,000 in any lease year and which do not involve structural changes or diminution in value of the building; and (ii) install, use on and about, and remove (subject to repairing all damage caused by any such activity) at any time or times interior equipment or interior trade fixtures used in Tenant's normal operation of the Demised Premises, without Landlord's prior written approval.

(d)    Until the expiration or sooner termination of this Lease, title to any building or buildings or improvements situate or erected on the Land, the building equipment and other items installed therein and thereon, and any alteration, change or addition thereto shall remain solely in Tenant; and Tenant alone shall be entitled to deduct all depreciation on Tenant's income tax returns for any such building or buildings, building equipment and/or other items, improvements, additions, changes or alterations. Upon the expiration or sooner termination of the term of this Lease, title to any building or buildings or improvements situate or erected on the Land shall vest in and become the full and absolute property of Landlord, subject to Section 9(e) below.

(e)    Upon the expiration or sooner termination of the term of this Lease, Tenant shall quit and surrender to Landlord the Demised Premises and the buildings and improvements then located thereon subject to normal wear and tear and damage by casualty; provided, however, Tenant shall be permitted to remove Tenant's installed food service equipment, signs, trade fixtures and floor coverings, decorative wall panels (but not walls), stained glass windows, wall lanterns, menu soffits and any other items that make up Tenant's trade style, and Tenant shall have the right to alter the design and physical features of the buildings and improvements to protect the trade style or patent rights claimed by Tenant in such building and improvements; provided, however, Tenant shall be required to restore the building to an architectural whole after any such alteration.

628040.6                                    7

Section 10. Requirements of Public Authority: (a)   During the term of this Lease, Tenant shall, at its own cost and expense, promptly observe and comply with all present and future laws, ordinances, requirements, orders, directives, rules and regulations of the federal, state, and county governments and of all other governmental authorities affecting Tenant's use and occupation of the Demised Premises or appurtenances thereto or any part thereof whether the same are in force at the Commencement Date or may in the future be passed, enacted or directed, and Tenant shall pay all costs, expenses, liabilities, losses, damages, fines, penalties, claims and demands that may in any manner arise out of or be imposed because of the failure of Tenant to comply with the covenants of this Section 10.  The foregoing covenant of Tenant shall not impose any liability for the presence of Hazardous Materials on the Demised Premises beyond the express liability of Tenant set forth in Section 31 hereof.

(b)     Tenant shall have the right to contest by appropriate legal proceedings diligently conducted in good faith, in the name of the Tenant or Landlord (as legally required), or both (if legally required), without cost or expense to Landlord, the validity or application of any law, ordinance, rule, regulation or requirement of the nature referred to in paragraph (a) of this Section and if compliance therewith may legally be delayed pending the prosecution of any such proceeding, Tenant may delay such compliance therewith until the final determination of such proceeding.

(c)     Landlord agrees to execute and deliver any appropriate papers or other instruments which may be necessary or proper to permit Tenant so to contest the validity or application of any such law, ordinance, order, directive, rule, regulation or requirement and to fully cooperate with Tenant in such contest.

Section 11. Covenant Against Liens:  If, because of any act or omission of Tenant, any mechanic's lien or other lien, charge or order for the payment of money shall be filed against Landlord or the interest of Landlord in and to any portion of the Demised Premises, Tenant shall, at its own cost and expense, cause the same to be discharged of record or bonded within thirty (30) days after written notice from Landlord to Tenant of the filing thereof; and Tenant shall indemnify and save harmless Landlord against and from all costs, liabilities, suits, penalties, claims and demands, including reasonable attorneys' fees, resulting therefrom.  Notice is hereby given that all such liens shall relate and attach only to the interest of Tenant in the Demised Premises.

Section 12. Access to Demised Premises:  Landlord or Landlord's agents and designees shall have the right, but not the obligation, to enter upon the Demised Premises at all reasonable times after reasonable notice to Tenant to examine same and to exhibit the Demised Premises to prospective purchasers and prospective tenants, but in the latter case only during the last three (3) months of the term of this Lease; provided further, however, such notice shall not be required in the event of an emergency.

Section 13. Assignment and Subletting:  Tenant shall not assign, mortgage or otherwise encumber this Lease or sublease all or any part of the Demised Premises without obtaining Landlord's consent therefor, which consent shall not be unreasonably withheld or delayed; provided,

however, Tenant may assign this Lease, after notice to Landlord, to any wholly owned subsidiary of Tenant without obtaining Landlord's consent. Any attempted assignment, mortgage, sublease or other encumbrance of this Lease, without Landlord's prior written consent shall be void and shall, at the option of Landlord, terminate this lease. With each consent request, Tenant shall submit to Landlord the terms of the proposed transaction; the identity of the parties to the transaction; the proposed documentation for the transaction; a certified statement of all economic considerations being given or received with respect to the transaction; all information reasonably necessary for Landlord to investigate the credit standing of the proposed transferee; the specific business plan of the proposed transferee which shall include, but not be limited to, a detailed written description of the proposed operation, sales projections for the remaining term of the lease, and description of the previous applicable experience of the proposed transferee; and all other information reasonably requested by Landlord concerning the proposed transaction and the parties involved therein. Tenant agrees to reimburse Landlord for Landlord's reasonable attorney's fees incurred in conjunction with the processing and documentation of any transfer, assignment, subletting, mortgage or encumbrance of this lease or Tenant's interest in and to the Demised Premises. The consent by Landlord to any transfer, assignment, subletting, mortgage or encumbrance of this lease shall not constitute a waiver of the necessity for such consent to any subsequent attempted transfer, assignment, subletting, mortgage, or encumbrance of this Lease. Upon any such assignment of this Lease or subletting of all or any part of the Demised Premises consented to by Landlord, Tenant shall be and remain fully responsible for all obligations under this Lease except as otherwise set forth herein.

Section 14. Signs: Tenant shall not have the right to install, maintain and replace in, on, over or in front of the Demised Premises or in any part thereof signs without the prior written consent of Landlord, and Tenant shall comply with any applicable requirements of governmental authorities having jurisdiction and shall obtain any necessary permits for such purposes. As used in this Section 14, the word "sign" shall be construed to include any placard, light, window display or other advertising symbol or object visible from the exterior of the Demised Premises, the Adjoining Property or public ways, irrespective of whether same be temporary or permanent.

Section 15. Indemnity: (a) Tenant shall indemnify and save Landlord harmless from and against any and all liability, damages, penalties or judgments arising from injury to person or property sustained by anyone in and about the Demised Premises resulting from Tenant's use or operation of the Demised Premises. Tenant shall, at its own cost and expense, defend any and all suits or actions (just or unjust) which may be brought against Landlord or in which Landlord may be impleaded with others upon any such above-mentioned matter or claim, except as may result from the acts set forth in paragraph (b) of this Section 15.

(b)      Landlord shall indemnify and save Tenant harmless from and against any and all liability, damages, penalties or judgments arising from injury to person or property sustained by anyone in and about the Demised Premises resulting from any negligence or willful misconduct of Landlord or Landlord's officers, agents, servants, employees or contractors. Landlord shall, at its own cost and expense, defend any and all suits or actions (just or unjust) which may be brought

against Tenant or in which Tenant may be impleaded with others upon any such above-mentioned matter or claim, except as may result from the acts set forth in paragraph (a) of this Section 15.

Section 16. Insurance: (a) Tenant shall provide at its expense, and keep in force during the term of this Lease, general liability insurance in a good and solvent insurance company or companies licensed to do business in the state in which the Land is located selected by Tenant, and reasonably satisfactory to the holder of any Leasehold Mortgage (as hereinafter defined) placed by Tenant on the Demised Premises in the amount of at least Three Million ($3,000,000.00) Dollars with respect to injury or death to any one person, and Five Million ($5,000,000.00) Dollars with respect to injury or death of more than one person in any one accident or other occurrence, and One Million ($1,000,000.00) Dollars with respect to damage to property. Such policy or policies shall include Landlord and each such Leasehold Mortgagee (as hereinafter defined) as additional insureds. Tenant agrees to deliver certificates of such insurance to Landlord on or before the Commencement Date and thereafter not less than ten (10) days prior to the expiration of any such policy. Such insurance may not be canceled without thirty (30) days written notice to Landlord and to each Leasehold Mortgagee.

(b)      Tenant, at Tenant's expense, throughout the term of this Lease, shall keep all buildings and improvements located on the Land insured against damage or casualty and in no event shall Landlord be responsible for repair, maintenance or restoration of Tenant's improvements. In the event of any damage to the Demised Premises and subject to the provisions of Section 18 of this Lease, Tenant shall use the proceeds of insurance to restore or repair the Demised Premises and there shall be no abatement of rent.

(c)      Any insurance required to be provided by Tenant pursuant to this Lease may be provided by blanket insurance covering the Demised Premises and other locations of Tenant provided such blanket insurance complies with all of the other requirements of this Lease with respect to the insurance involved, references the Demised Premises, names the Landlord as an additional insured, guarantees a minimum amount available for the Demised Premises equal to the amounts required in this Lease, and such blanket insurance is acceptable to any Leasehold Mortgagee. Landlord, as additional insured, agrees that Landlord shall make available to Tenant all insurance proceeds payable pursuant to subsection (b) of this Section for restoration of the Demised Premises so long as Tenant shall have the obligation to restore or repair the Demised Premises; subject, however, to the provisions of Section 18 of this Lease regarding disbursements of such insurance proceeds. Each mortgage now or hereafter encumbering the Demised Premises or any interest therein shall be subject to Tenant's and Landlord's right to collect insurance proceeds under any policy of casualty insurance maintained by Tenant hereunder and the Tenant's right to apply such proceeds to the repair or restoration of the Demised Premises in accordance with the terms hereof. The rights of any Mortgage Lender under any such mortgage shall be subordinate to the rights of the Landlord and Tenant hereunder. The provisions of this subsection pertaining to such mortgages shall be included in the terms of the memorandum of lease contemplated herein.

(d)      Landlord shall provide at its expense, and keep in force during the term of this Lease general liability insurance in a good and solvent insurance company or companies licensed to do business in the State in which the Land is located on the Adjoining Property in the amount of at least Three Million Dollars ($3,000,000.00) with respect to injury or death to any one person, and Five Million Dollars ($5,000,000.00) with respect to injury or death of more than one person in any one accident or occurrence, and One Million Dollars ($1,000,000.00) with respect to damage to property. Such policy or policies shall include Tenant and any Leasehold Mortgagee (as hereinafter defined) as additional insureds. Landlord agrees to deliver certificates of such insurance to Tenant on or before the Commencement Date and thereafter not less than ten (10) days prior to the expiration of any such policy. Such insurance may not be canceled without thirty (30) days written notice to Tenant and to each Leasehold Mortgagee.

(e)      In the event Tenant shall fail to deliver certificates of insurance as required under this Section 16, Landlord may, after providing Tenant with written notice of such failure if such failure remains uncured within five (5) days of such notice, elect to pay any premium due on such policy in order to prevent the expiration or lapse of the related policy and Tenant shall reimburse to Landlord the amount so paid by Landlord.

Section 17. Waiver of Subrogation: All insurance policies carried by either party covering the Demised Premises and/or the Adjoining Property, including but not limited to contents, fire and casualty insurance, shall expressly waive any right on the part of the insurer against the other party and such waiver shall not invalidate, adversely affect or impair said policies or prejudice the right of the insured to recover thereunder. Landlord and Tenant agree that each will cause its insurance carriers to include such clause or endorsement in its respective policies. As to any loss or damage which may occur upon the property of a party hereto and be collected under any insurance policy(ies), such party hereby releases the other from any amount of liability for such loss or damage to the extent of such amounts collected.

Section 18. Destruction: In the event that, at any time during the term of this Lease, the buildings and improvements on the Land shall be destroyed or damaged in whole or in part by fire or other cause within the extended coverage of the fire insurance policies carried by Tenant in accordance with this Lease, then Tenant, at its own cost and expense, shall cause the same to be repaired, replaced or rebuilt (with such changes in the design, type or character of the building and improvements as Tenant may deem desirable) within one hundred eighty (180) days after the date such damage occurs. Insurance proceeds up to Ten Thousand Dollars ($10,000.00) received for such damage shall be paid directly to Tenant for such purpose without claim thereto by Landlord or any other party. Any insurance proceeds (exclusive of the proceeds of insurance covering Tenant's trade fixtures or personal property, which shall be solely for Tenant's benefit and shall be paid directly to Tenant) in excess of Ten Thousand Dollars ($10,000.00) shall be deposited with a bank or trust company under the joint control of Landlord and Tenant, as trustees. The trustees shall disburse the proceeds to Tenant upon certification by the architect or engineer in charge of such restoration that the amounts requested have been paid in connection with such restoration or shall be due to persons who have furnished services or materials for such restoration. Upon completion, the balance of such

proceeds, if any, shall be paid to Tenant upon demand. Notwithstanding the foregoing to the contrary, in the event the buildings and improvements on the Land are destroyed or damaged in whole or in part at any time during the last two (2) years of the initial term of this Lease or during any extension period, to the extent that, in Landlord's reasonable judgment, the Demised Premises are not usable in their damaged condition for the conduct of Tenant's business, Tenant may, upon written notice to Landlord, terminate this Lease and assign to Landlord all insurance proceeds collected in connection with such damage and destruction and which are attributable to the buildings and other improvements on the Demised Premises.

Section 19. Eminent Domain: (a) As used herein, the term "Taking" shall mean and refer to the event of vesting of title in a competent authority vested with the power of eminent domain or condemnation pursuant to any action or proceeding brought by such authority in exercise of such power, including a voluntary sale to such authority, either under threat of, or in lieu of, condemnation, or while a condemnation action or proceeding is pending. If, at any time during the term of this Lease, there shall be a Taking of all or any portion of the Land comprising the Demised Premises or any portion of the building or other improvements constructed by Tenant on the Land or any portion of Tenant's drive-thru configuration for the Demised Premises including, but not limited to, the drive-thru lane, or any easements, entranceways, ingress/egress lanes or service drives providing access to the Demised Premises, such that the portion of the Demised Premises remaining after such Taking would, in Landlord's reasonable business judgment, be impractical for use by Tenant, then Tenant shall have the option of terminating this Lease as of a date no earlier than the date of such Taking and Tenant shall be relieved of its obligations to pay rent and to perform its other covenants hereunder from and after the date of such Taking, and Tenant shall surrender the remaining portion of the Demised Premises, if any, to the Landlord as of such date; provided that such release and surrender shall in no way prejudice or interfere with Tenant's right to an award for its loss or damage as hereinafter provided. The rent for the last month of Tenant's possession of the Demised Premises shall be prorated and any rent paid in advance shall be refunded to the Tenant. Such notice of termination must be given in writing to Landlord no later than the date of such Taking.

(b)      In the event of a Taking which gives rise to an option to terminate and Tenant does not elect to terminate, the term of this Lease shall not be reduced or affected in any way, but the basic rent payable hereunder shall be reduced by an amount which bears the same ratio to the basic rent payable immediately prior to such Taking as the fair market value of the Demised Premises (excluding improvements) after the Taking bears to the fair market value of the Demised Premises (excluding improvements) immediately prior to the Taking (such fair market value to be determined pursuant to the Section hereof entitled "Determination of Fair Market Value"). The award for any partial Taking shall be allocated between Landlord and Tenant as described in subsection (c) below; provided, however, if Tenant elects to restore, replace or reconstruct any improvements which are the subject of any Taking, Landlord shall deliver to Tenant its share of the award attributable to such improvements to the extent Tenant's award attributable to such improvements is not sufficient to pay for the cost of restoration, replacement and reconstruction.

(c)     In the event of any Taking of all or any portion of the Demised Premises, Landlord shall be entitled to an award based on the taking of or injury to the fee simple estate in the Land and the Adjoining Property and any reversionary interest in the Land and improvements, if any, and Tenant shall be entitled to an award based on any loss or reduction of its leasehold and easement estates, loss of any building or other improvement constructed or placed on the Land or the Adjoining Property by Tenant, loss or interruption of business and the cost of any alterations or restoration resulting from any such Taking.  Any single award or settlement shall be allocated between the parties in accordance with the foregoing.

(d)     If a court fails or refuses to grant separate awards to Landlord and Tenant upon a Taking of all or any portion of the Demised Premises, and if Landlord and Tenant cannot agree on the allocation of the award, and if such inability to agree continues for thirty (30) days after the amount of the award is determined, Landlord and Tenant agree that the determination of such allocation shall be made in accordance with the following procedure:  Landlord and Tenant shall each promptly appoint one (1) appraiser. Those two (2) appraisers shall promptly appoint a third (3rd) appraiser. Each appraiser appointed hereunder shall be a member of the American Institute of Real Estate Appraisers (or successor organization) having at least five (5) years experience in appraisal of real estate for commercial use in the metropolitan area in which the Land is located.  If such appraisers fail to appoint such third (3rd) appraiser within thirty (30) days after notice of their appointment, then either Landlord or Tenant, upon notice to the other, may request the appointment of a third (3rd) appraiser by the then president of the Board of Realtors in the city in which the Land is located, or any then similar existing body. The three (3) appraisers so appointed shall jointly make the required appraisals of the values of Landlord's and Tenant's interests in the Demised Premises and shall allocate the award based upon such appraisals, and if they cannot agree, the appraisals of the third (3rd) appraiser will be accepted by Landlord and Tenant. If, after notice by either Landlord or Tenant of the appointment of an appraiser by the party giving such notice, the other party to whom such notice is given shall fail, within a period of ten (10) days after such notice, to appoint an appraiser, then the appraisers  appointed by the party giving the notice shall have the power to proceed as sole appraiser to make the appraisal and allocation hereunder.  Landlord shall pay the fees and expenses of the person appointed by Landlord as an appraiser hereunder, Tenant shall pay the fees and expenses of the person appointed by Tenant as an appraiser hereunder, and Landlord and Tenant shall each pay one-half (1/2) of the fees and expenses of the third (3rd) appraiser appointed pursuant to the provisions of this Section 19.

Section 20.  Utility Easements:   Tenant shall have the right to enter into reasonable agreements with utility suppliers creating easements in favor of such suppliers, including, without limitation, gas, electricity, telephone, water and sewer, as are required in order to service the buildings and improvements on the Land, subject, however, to Landlord's reasonable approval of the location of such utility lines and provided that such easements shall require the utility supplier to restore the easement area following any construction or repair work and further provided that such easements shall reserve the rights of Landlord to relocate such utility lines from time to time at Landlord's expense.  Landlord covenants and agrees to consent thereto and to execute any and all

628040.6                                               13

documents, agreements and instruments, and to take all other actions in order to effectuate the same, all at Tenant's cost and expense.

Section 21. Leasehold Mortgages: (a) Tenant shall have the right, from time to time, to convey or encumber by mortgage, deed to secure debt or similar financing instrument, Tenant's leasehold estate and interest in and to the Demised Premises or any part thereof (each such leasehold mortgage, deed to secure debt or other financing instrument being herein referred to as a "Leasehold Mortgage" and the holder thereof as a "Leasehold Mortgagee"). The execution and delivery of a Leasehold Mortgage shall not, in and of itself, be deemed to constitute an assignment or transfer of this Lease nor shall the Leasehold Mortgagee, as such, be deemed an assignee or transferee of this Lease so as to require such Leasehold Mortgagee to assume the performance of any of the covenants or agreements on the part of Tenant to be performed hereunder. Tenant shall also have the right from time to time to obtain financing by a "sale and leaseback" of Tenant's leasehold interest hereunder (i.e., an assignment of Tenant's leasehold estate under this Lease simultaneously with or subsequent to the making of a sublease of all of the Demised Premises to Tenant). If Tenant shall enter into any such financing arrangement, it shall deliver to Landlord true and complete copies of the instruments effecting such transaction. Simultaneously with the delivery to Landlord of the aforesaid instruments effecting such transaction, Tenant shall also give Landlord notice of the name and address of the party providing such financing.

(b)    Tenant agrees that Tenant shall not encumber its leasehold estate with more than one (1) Leasehold Mortgage at one time without the prior, written consent of Landlord. With respect to any Leasehold Mortgagee or other person providing financing as to which Landlord shall have been given notice, the following shall apply notwithstanding anything in this Lease to the contrary:

(i)    No voluntary termination by Tenant of this Lease shall be effective unless consented to in writing by such Leasehold Mortgagee; and any material amendment or material modification of this Lease or the exercise by Tenant of any option to terminate this Lease without the written consent of such Leasehold Mortgagee shall be voidable as against such Leasehold Mortgagee at its option. If any Leasehold Mortgagee shall fail to respond to any written consent under this Section 21(b)(1) within thirty (30) days after the receipt by such Leasehold Mortgagee of such written request, the Leasehold Mortgagee shall be deemed to have granted its consent to such request;

(ii)    Landlord shall give any and all notices given to Tenant hereunder simultaneously to any such Leasehold Mortgagee at the address of such Leasehold Mortgagee provided to Landlord, and no such notice shall be effective as to such Leasehold Mortgagee unless and until a copy thereof has been given to such Leasehold Mortgagee. In the event Landlord sends Tenant a notice of default, from and after the time that such notice has been delivered to such Leasehold Mortgagee, such Leasehold Mortgagee shall have a period equal to the period granted to the Tenant plus, with respect to monetary defaults, an additional ten (10) business days in which to effect a cure, and with respect to non-monetary defaults only, an additional thirty (30) days in which to effect a cure of any default by Tenant under this

Lease (provided, however, that if such cure is of a nature that it cannot be effected within such a period of time, no default shall have been deemed to have occurred hereunder as long as such Leasehold Mortgagee shall have commenced to cure such default within such period and shall thereafter be taking diligent steps to effect the same). Landlord shall accept performance of any and all of Tenant's obligations hereunder, including the obligations to pay rent, from any such Leasehold Mortgagee and the performance of such obligation by such Leasehold Mortgagee shall be deemed to have been a cure effected by Tenant. Landlord hereby consents to the entry into the Demised Premises by any such Leasehold Mortgagee for the purpose of effecting the cure of any default by Tenant. In the event of a default by Tenant hereunder, any Leasehold Mortgagee may effect the cure of such default by foreclosing its Leasehold Mortgage, obtaining possession of the Demised Premises and performing all of Tenant's obligations hereunder;

(iii)   If it shall be necessary for any such Leasehold Mortgagee to obtain possession of the Demised Premises to effect any such cure of a default by Tenant under this Lease, then Landlord shall not commence any proceeding or action to terminate the term of this Lease if (i) such Leasehold Mortgagee shall have informed Landlord within the grace period applicable to such Leasehold Mortgagee that such Leasehold Mortgagee has taken steps to foreclose its Leasehold Mortgage, or cancel its sublease or other financing arrangement, necessary to obtain possession of the Demised Premises, (ii) the rent shall be paid and all other provisions and requirements of this Lease which are capable of being observed and performed without obtaining possession of the Demised Premises are so observed and performed while any such foreclosure, other action or other remedy is being prosecuted by any such Leasehold Mortgagee and for so long thereafter as such Leasehold Mortgagee shall have obtained possession of the Demised Premises, and (iii) such Leasehold Mortgagee shall be diligently prosecuting such foreclosure or cancellation and attempting to effect a cure of the default. Nothing herein contained shall be deemed to require the Leasehold Mortgagee to continue with any foreclosure or other proceedings, or, in the event such Leasehold Mortgagee shall otherwise acquire possession of the Demised Premises, to continue such possession, if the default in respect to which Landlord shall have given the notice shall be remedied;

(iv)   Landlord agrees that in the event of the termination of this Lease by reason of any default by Tenant, and if Landlord has prior to such termination been given written notice of the name and address of such Leasehold Mortgagee, Landlord will enter into a new lease of the Demised Premises with any Leasehold Mortgagee or its nominee for the remainder of the term of this Lease, effective as of the date of such termination, at the rent and upon the terms, options, provisions, covenants and agreements as herein contained, provided:

(a)   Such Leasehold Mortgagee shall make written request upon Landlord for such new lease prior to or within ten (10) days after the date of

Case 20-61065-pwb    Doc 193    Filed 02/26/20    Entered 02/26/20 15:52:16    Desc Main
Document    Page 26 of 58

such termination and such written request is accompanied by payment to Landlord of all sums then due to Landlord hereunder; and

(b)     Such Leasehold Mortgagee or its nominee shall pay to Landlord at the time of the execution and delivery of said new lease any and all sums which would at that time be due hereunder but for such termination, together with any expenses, including reasonable attorneys' fees, incurred by Landlord as a result of such termination, as well as in the preparation, execution and delivery of such new lease;

(v)     No Leasehold Mortgagee shall become liable under the agreements, terms, covenants or conditions of this Lease unless and until it becomes the owner of the leasehold estate. Any assignment of the entire interest in this Lease by any owner of the leasehold estate whose interest shall have been acquired by, through or under any Leasehold Mortgage or from any holder thereof, shall be subject to Section 13 of this Lease, except that the assignor shall be relieved of any further liability which may accrue hereunder from and after the date of such assignment, provided that the assignee shall execute and deliver to Landlord a recordable instrument of assumption wherein such assignee shall assume and agree to perform and observe the covenants and conditions in this Lease contained on Tenant's part to be performed and observed, it being the intention of the parties that once the Leasehold Mortgagee or its nominee shall succeed to Tenant's interest hereunder, any and all subsequent assignments (whether by such Leasehold Mortgagee, its nominee, or any purchaser at a foreclosure sate or other transferee or assignee from Leasehold Mortgagee or its nominee) shall upon the aforesaid assumption and agreement by the assignee, effect a release of the assignor's liability hereunder;

(vi)     If at any time there shall be two or more Leasehold Mortgages constituting a lien on the Tenant's interest in this Lease and the leasehold estate hereby created, the holder of the Leasehold Mortgage recorded prior in time shall be vested with the rights under Section 21(b)(4) of this Lease to the exclusion of the holder(s) of the other Leasehold Mortgages; provided, however, that if the holder of a Leasehold Mortgage recorded prior in time to any other Leasehold Mortgage shall fail or refuse to exercise the rights set forth in this Lease, the holder of the other Leasehold Mortgage next in time shall have the right to exercise such rights. All of the provisions contained in this Lease with respect to Leasehold Mortgages and the rights of Leasehold Mortgagees shall survive the termination of this Lease for such period of time as shall be necessary to effectuate the rights granted to all Leasehold Mortgagees by the provisions of this Lease; and

(vii)     Nothing herein contained shall require any Leasehold Mortgagee or its nominee to cure any default by Tenant hereunder.

Section 22. Performance by Subtenant: Any act required to be performed by Tenant pursuant to the terms of this Lease may be performed by any sublessee of Tenant occupying all or any part of

the Demised Premises and the performance of such act shall be deemed to be performance by Tenant and shall be acceptable as Tenant's act by Landlord.

### Section 23. Quiet Enjoyment: Status of Landlord's Title:

(a)    Tenant, upon paying the rent and additional rent and all other sums and charges to be paid by it as herein provided, and observing and keeping all covenants, warranties, agreements and conditions of this Lease on its part to be kept, shall quietly have and enjoy the Demised Premises during the term of this Lease, without hindrance or molestation by anyone.

(b)    Landlord represents and warrants to Tenant that Landlord owns fee simple title to the Demised Premises free and clear of any liens, encumbrances and restrictions except only those matters set forth on **Exhibit "C"** attached hereto and by reference made a part hereof and that Landlord has the power and authority to execute and deliver this Lease and to carry out and perform all covenants to be performed by Landlord hereunder.

(c)    Landlord agrees and covenants to use its best efforts to obtain prior to the expiration of the Inspection Period from the holder of any mortgage, deed to secure debt or other security instrument presently placed against the Demised Premises, an agreement in the form attached hereto as **Exhibit "D"** and made a part hereof by this reference, which provides that in the event of any foreclosure, sale under power of sale, or transfer in lieu of any of the foregoing pursuant to any such mortgage, deed to secure debt or other security instrument, the Tenant's use, possession and enjoyment of the Demised Premises shall not be disturbed and this Lease shall continue in full force and effect so long as Tenant is not in default hereunder.

(d)    To induce Tenant to enter into this Lease, Landlord does hereby expressly warrant and represent to Tenant the following:

(i)    To Landlord's knowledge, there are no actions, suits or proceedings of any kind or nature whatsoever, legal or equitable, pending or threatened against the Demised Premises or Landlord in any court or before or by any federal, state, county or municipal department, commission, board, bureau or agency or other governmental instrumentality, including, without limitation, any condemnation or eminent domain proceedings which may affect the Demised Premises.

(ii)    To Landlord's knowledge, no person, firm, corporation or other legal entity whatsoever (other than Tenant) has any right or option whatsoever to acquire or lease the Demised Premises or any portion or prorations thereof or any interest or interests therein.

(iii)    To Landlord's knowledge, the Demised Premises is not and will not be subject to or affected by any special assessments, whether or not presently a lien thereon.

(iv)    To Landlord's knowledge, Landlord is not in violation or breach of any ordinance, code, law, rule, requirement or regulation applicable to the Demised Premises.

(v)    To Landlord's knowledge, there are no actions, suits, proceedings or proposals of any kind or nature whatsoever pending or being considered relating to any proposed changes to the highways, roadways and/or accessways adjoining or adjacent to the Demised Premises, including without limitation, the widening thereof, proposed or pending construction of road medians, proposed or pending construction of acceleration/deceleration lanes, changes in or additions to existing or approved curb cuts, proposed or pending installation or removal of traffic lights or any other changes or proposed changes in traffic patterns or management of traffic flow thereover.

(e)    As used herein, the term "knowledge" or "best of knowledge" means actual knowledge only of either (i) Mike Noulas, in his capacity as Second Vice President of Landlord, or (ii) Bill Cooper in his capacity with Folmar and Associates as management agent of Landlord and contains no express or implied requirement on the part of Mike Noulas or Bill Cooper to have conducted or caused to be conducted any independent investigation, study or survey in order to determine the accuracy or inaccuracy of such actual knowledge.

Section 24. Defaults: (a)    The following events shall constitute events of default under this Lease:

(1)    Tenant's failure to pay any installment of basic rent or additional rent when the same shall be due and payable and the continuance of such failure for a period of ten (10) days after receipt by Tenant of notice in writing from Landlord specifying the nature of such failure; or

(2)    Tenant's failure to perform any of the other covenants, conditions and agreements herein contained on Tenant's part to be kept or performed [other than maintaining insurance, which shall be governed by (3), below], and the continuance of such failure without the curing of same for a period of thirty (30) days after receipt by Tenant of notice in writing from Landlord specifying the nature of such failure, and provided Tenant shall not cure said failure as provided in subparagraph (b) of this Section 24; or

(3)    Tenant's failure to procure and maintain the insurance coverages and provide evidence of such coverages to Landlord as set forth in Section 16 herein, and the failure to cure such failure for a period of five (5) business days following receipt notice in writing from Landlord regarding such failure; or

628040.6                    18

(4)     if Tenant shall (i) file a petition commencing a voluntary case under any applicable federal or state bankruptcy, insolvency or other similar law; (ii) make a general assignment for the benefit of its creditors; (iii) file an application for, or consent to, the appointment of any receiver or a permanent or interim trustee of Tenant or of all or a substantial portion of its property; (iv) file a petition seeking a reorganization of its financial affairs or to take advantage of any bankruptcy, insolvency or similar law, or an answer admitting the material allegations of a petition filed against it in any proceeding under any such law; (v) take any action for the purpose of effecting any of the foregoing; or (vi) be the subject of a decree or order for relief by a court having jurisdiction in respect of Tenant in any involuntary case under any applicable federal or state bankruptcy, insolvency or similar law; or

(5)     if any proceedings brought against Tenant seeking any of the relief mentioned in Section 24(a)(4) shall not have been dismissed within ninety (90) days.

Upon the occurrence of any event or events of default by Tenant and failure of Tenant to cure same within the cure period set forth in Section 24(a), Section 21(b)(2), or 21(b)(3), whether enumerated in this Section or not, Landlord shall have the option, at Landlord's election to pursue any one or more of the following in addition to, and not in limitation of, any other remedy or right permitted Landlord by law or by this Lease: (i) Landlord may cancel and terminate this lease and dispossess Tenant; (ii) Landlord may elect to enter and repossess the Demised Premises and relet the Demised Premises for Tenant's account, holding Tenant liable for any damages, for all reasonable expenses incurred in any such reletting and for any difference between the amount of rent received from such reletting and the amount due and payable under the terms of this Lease; (iii) Landlord may enter upon the Demised Premises and do whatever Tenant is obligated to do under the terms of this Lease (and Tenant shall reimburse Landlord on demand for any reasonable expenses which Landlord may incur in effecting compliance with Tenant's obligations under this Lease); provided, however, Landlord shall not operate Tenant's business.

If Landlord shall elect, as previously provided, to reenter the Demised Premises, it is agreed that Landlord shall conduct itself in a reasonable manner and Landlord shall not be liable for damages by reason of such entry, unless such damage is caused by the negligence or willful misconduct of Landlord or its agents.

All rights, options, and remedies of Landlord contained in this Lease shall be construed and held to be cumulative and the exercise of one or more rights, remedies, or options shall not be taken to exclude or waive the right to the exercise of any other. All such rights, remedies, and options may be exercised and enforced concurrently and whenever and as often as deemed desirable. Landlord shall have the right to pursue any one or all of such remedies which may be provided herein or by law or in equity. For the purpose of any suit by Landlord brought or based on this Lease, this Lease shall be construed to be a divisible contract, to the end that successive actions may be maintained as successive periodic sums shall mature under this Lease. It is further

agreed that failure to include in any suit or action any sum or sums then matured shall not be a bar to the maintenance of any suit or action for the recovery of said sum or sums so omitted.

(b)    In the event that Landlord gives notice of a default referred to in Section 24(a)(2) and said default is of such a nature that it cannot be cured within such thirty (30) day period then such default shall not be deemed to continue so long as Tenant, after receiving such notice, promptly proceeds to cure the default and continues to take all steps necessary to complete the same promptly. No default shall be deemed to continue if and so long as Tenant shall be delayed in or prevented from curing the same by any cause specified in the Section of this Lease entitled "Force Majeure".

(c)    Upon the occurrence of any event or events of default by Landlord and failure of Landlord to cure same within any applicable cure period set forth herein, Tenant shall have the option, at Tenant's election to pursue any remedy or right permitted Tenant by law or expressly by this Lease.

Section 25. Interest and Late Charges: All rent owed by Tenant to Landlord under this Lease shall bear interest from the tenth (10th) day after the date due until paid at the lesser of (i) the "prime rate" (or if the "prime rate" is discontinued, the rate announced as that being charged to the most creditworthy commercial borrowers) announced by Chase Manhattan Bank, New York, New York, or its successor, from time to time, or (ii) the maximum lawful contract rate per annum. In addition, in the event any installment of rent under this Lease shall not be paid on or before the fifteenth (15th) day after the due date, a "late charge" of $25.00 may be charged by Landlord, as additional rent, for the purpose of defraying Landlord's administrative expenses incident to the handling of such overdue payment.

Section 26. Waivers: Failure of Landlord or Tenant to complain of any act or omission on the part of the other party no matter how long the same may continue, shall not be deemed to be a waiver by said party of any of its rights hereunder. No waiver by Landlord or Tenant at any time, express or implied, of any breach of any provision of this Lease shall be deemed a waiver of a breach of any other provision of this Lease or a consent to any subsequent breach of the same or any other provision.

Section 27. Limitation of Liability: Tenant shall look solely to Landlord's estate and interest in the Demised Premises and the rentals therefrom for the satisfaction of any right of Tenant for the collection of a judgment or other judicial process requiring the payment of money by Landlord, and no other property or assets of Landlord shall be subject to levy, lien, execution, attachment or other enforcement procedure for the satisfaction of Tenant's rights and remedies under or with respect to this Lease.

Section 28. Adjoining Property: Landlord hereby agrees and covenants that (i) Landlord shall maintain and repair, at no cost to Tenant, all driveways, accessways and sidewalks located on the Adjacent Property and cross-hatched on the site plan attached hereto as Exhibit "B" from time to time in accordance with first-class shopping center standards and practices; and (ii) Tenant shall have

the right to construct and maintain such curb cuts on the boundary lines of the Land as Tenant may elect.

Section 29, Brokerage Commissions:  Landlord hereby covenants and agrees that it shall be solely responsible for the payment of any commissions or fees owed to S.T.C., LLC and Baker Properties by reason of the creation or procurement of this Lease.  Landlord hereby indemnifies Tenant against and agrees to hold Tenant harmless from any and all liability or claim (including, without limitation, court costs and attorneys' fees incurred in connection with any such claim) for any such commissions or fees arising out of or in any way connected with this Lease.  This Section 31 shall survive the termination of this Lease.

Section 30, Hazardous Materials:  As used herein the term "Applicable Environmental Law" shall be defined as any statutory law, regulation, or case law pertaining to health or the environment, or oil, or petroleum products, or "Hazardous Substances" (as herein defined), including, without limitation: (i) the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") as codified at 42 U.S.C. §§ 9601 et seq., as amended; (ii) the Alabama Underground Storage Tank and Wellhead Protection Act of 1988, as codified at Ala. Code §§ 22-36-1 et seq., as amended; and (iii) the Alabama Hazardous Substance Cleanup Fund Act, as codified at Ala. Code §§ 22-30A-1 et seq., as amended.  As used herein the terms "Hazardous Substance" and "release" shall have the meanings specified for said terms in CERCLA; provided however, that in the event CERCLA is amended to broaden the meaning of any term defined thereby, such broadened meaning shall apply subsequent to the effective date of such amendment; and provided further, that to the extent that the laws of the State of Alabama establish a meaning for "Hazardous Substance" or "release" which is broader than that specified in CERCLA, such broader meaning shall apply; and provided further, that "Hazardous Substance" shall also be defined to include oil, petroleum products, extremely flammable substances, explosives, and radioactive materials, and "release" shall also be defined to include any disturbance or release of asbestos which would call for abatement or removal procedures under any Applicable Environmental Law.

    i.  Tenant shall not suffer, allow, permit, or cause the generation, accumulation, storage, possession, release, or threat of release of Hazardous Substances; provided, however, the foregoing prohibition shall not be applicable to: (i) Hazardous Substances which are present on the Demised Premises prior to the date Tenant first took possession of the Premises; or (ii) normal and reasonable amounts of supplies necessary for normal operation of the Demised Premises as a Krystal restaurant so long as such materials are properly, safely, and lawfully stored and used by Tenant and the quantity of same does not exceed a "reportable quantity" as defined under 40 C.F.R 302, as amended.

    ii.  Tenant shall notify Landlord immediately upon learning: (i) that any duty described in this Section of this lease has been violated; (ii) that there has been a release, discharge, or disposal of any Hazardous Substance on a part of the Demised Premises or the Property; (iii) that radon gas or urea formaldehyde has been detected on or in the Premises; or (iv) that the Demised Premises or improvements thereto are subject to any third-party claim or action, or threat thereof, because of any environmental condition at the Property or in or originating from the Demised Premises or arising

628040.6                                        21

in connection with the operation of the Demised Premises. Tenant shall promptly provide Landlord with copies of all correspondence to or from third parties regarding such claims or actions or regarding environmental conditions in or originating from the Demised Premises.

iii. In the event of a release of any Hazardous Substance on, in or from the Demised Premises which was not caused by Landlord, Tenant shall immediately cause complete remediation of such release and restore the Demised Premises to the condition that existed prior to the date Tenant first took possession of the Premises; provided, the environmental condition of the Demised Premises (as opposed to the physical condition) may be restored to the extent such restoration conforms with the requirements of all Applicable Environmental Law. Landlord shall have the right, but not the obligation, to enter the Demised Premises and remediate any environmental condition on the Demised Premises to comply with all Applicable Environmental Laws during which time Tenant shall not be entitled to any abatement of Rent.

iv. Tenant hereby agrees to pay any judgments, fines, charges, fees, damages, losses, penalties, demands, actions, costs and expenses (including without limitation legal fees and expenses), remedial and response costs, remediation plan preparation costs, and any continuing monitoring or closure costs arising from or pertaining to the application of any Applicable Environmental Law to the Demised Premises due to a breach of Tenant's obligations pursuant to this Section. Further, Tenant hereby covenants and agrees to indemnify and forever hold harmless the Landlord of and from any and all liabilities (including strict liability), judgments, fines, charges, fees, damages, losses, penalties, demands, actions, costs and expenses (including without limitation legal fees and expenses), remedial and response costs, remediation plan preparation costs, and any continuing monitoring or closure costs incurred or suffered by the Landlord, or asserted by any third party against the Landlord, due to the breach of Tenant's obligations set forth in this Section. This indemnification shall survive the expiration or earlier termination of this lease.

v. At the expiration or earlier termination of this Lease, Tenant shall return the Demised Premises to Landlord free of any Hazardous Substances in, on, or from the Demised Premises which were not placed on the Demised Premises by Landlord or present in the Demised Premises prior to the date Tenant first took possession of the Demised Premises.

Section 31. Force Majeure: In the event that Landlord or Tenant shall be delayed, hindered in or prevented from the performance of any act required hereunder by reason of strikes, lock-outs, labor troubles, inability to procure materials, failure of power, restrictive governmental laws or regulations, riots, insurrection, the act, failure to act or default of the other party, war or any reason beyond their control, then performance of such act shall be excused for the period of the delay and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay; provided, however, the provisions of this Section shall not operate to extend the date Landlord is required to deliver possession of the Demised Premises to Tenant. Lack of funds shall not be a basis for avoidance or delay of any obligation under this Lease. The provisions of this section shall not operate to excuse Tenant from the prompt payment of Rent.

Section 32. Notices: Every notice, approval, consent, or other communication authorized or required by this Lease shall not be effective unless same shall be in writing and delivered in person, by courier, by reputable overnight courier guaranteeing next day delivery, or sent postage prepaid by United States registered or certified mail, return receipt requested, directed to the other party at its address hereinabove first mentioned, or such other address as either party may designate by notice given from time to time in accordance with this Section. Such notices or other communications shall be effective (i) in the case of personal delivery or courier delivery, on the date of delivery to the party to whom such notice is addressed as evidenced by a written receipt signed on behalf of such party, (ii) if by overnight courier, one (1) day after the deposit thereof with all delivery charges prepaid, and (iii) in the case of registered or certified mail, the earlier of the date receipt is acknowledged on the return receipt for such notice or five (5) business days after the date of posting by the United States Post Office or refusal thereof as evidenced by the carrier's receipt. The rent payable by Tenant hereunder shall be paid to Landlord at the same place where a notice to Landlord is herein required to be directed.

Section 33. Certificates: Either party shall, without charge, at any time and from time to time hereafter, within ten (10) days after written request of the other, certify by written instrument duly executed and acknowledged to any mortgagee or purchaser, or proposed mortgagee or proposed purchaser, or any other person, firm or corporation specified in such request: (i) as to whether this Lease has been supplemented or amended, and, if so, the substance and manner of such supplement or amendment; (ii) as to the validity and force and effect of this Lease, in accordance with its tenor as then constituted; (iii) as to the existence of any default under this Lease; (iv) as to the existence of any offsets, counterclaims or defenses thereto on the part of such other party; (v) as to the commencement and expiration dates of the term of this Lease; and (vi) as to any other matters as may reasonably be so requested. Any such certificate may be relied upon by the party requesting it and any other person, firm or corporation to whom the same may be exhibited or delivered, and the contents of such certificate shall be binding on the party executing same.

Section 34. Governing Law: This Lease and the performance thereof shall be governed, interpreted, construed and regulated by the laws of the State of Alabama.

Section 35. Partial Invalidity: If any term, covenant, condition or provision of this Lease or the application thereof to any person or circumstance shall, at any time or to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term, covenant, condition and provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.

Section 36. Short Form Lease: Provided Tenant has not otherwise terminated this Lease expressly in accordance with the terms set forth herein allowing such termination, Landlord and Tenant shall execute and deliver a short form of lease within ten (10) days after the expiration of the Inspection Period, which will constitute a short form of this Lease. Any and all recording costs required in connection with the recording of such short form of lease shall be paid by Tenant.

Section 37. Interpretation:  Wherever herein the singular number is used, the same shall include the plural, and the masculine gender shall include the feminine and neuter genders, and vice versa, as the context shall require.  The section headings used herein are for reference and convenience only, and shall not enter into the interpretation hereof.  This Lease may be executed in several counterparts, each of which shall be an original, but all of which shall constitute one and the same instrument.  The term "Landlord" whenever used herein shall mean only the owner at the time of Landlord's interest herein, and upon any sale or assignment of the interest of Landlord, its successors in interest and/or assigns shall, during the term of its ownership of its estate herein, be deemed to be Landlord.  The use of the terms "Landlord" and "Tenant" notwithstanding, this Lease creates for all purposes an estate for years and not a usufruct.

Section 38. Entire Agreement:  No oral statement or prior written matter shall have any force or effect.  Landlord and Tenant agree that they are not relying on any representations or agreements other than those contained in this Lease.  This Lease shall not be modified or canceled except by writing executed by Landlord and Tenant.

Section 39. Parties:  Except as herein otherwise expressly provided, the covenants, conditions and agreements contained in this Lease shall bind and inure to the benefit of Landlord and Tenant and their respective heirs, successors, successors in title, administrators and assigns.

Section 40. Determination of Fair Market Value:  (a) The determination of the fair market value of the Demised Premises (excluding improvements) as of the date of any Taking as provided in Section 19(b) hereof shall be made by Landlord and Tenant no later than one (1) month after such Taking.  If Landlord and Tenant are unable to agree on the fair market value of the Demised Premises (excluding Improvements) prior to such applicable deadline, such determination shall be made by appraisal as hereinafter set forth.  Such appraisal procedure shall be commenced by one party delivering to the other a notice appointing its appraiser.  Within fifteen (15) days after receipt of such notice, the other party shall appoint its appraiser and give notice of such appointment to the first party.  Any appraiser appointed hereunder shall be a member of the American Institute of Real Estate Appraisers (or successor organization) having at least five (5) years experience in appraisal of real estate for commercial use in the metropolitan area in which the Land is located.  If the party receiving such first written notice shall fail to appoint its appraiser within fifteen (15) days after receipt of the first written notice, the determination of the value in question by the single appraiser appointed by the party giving such first written notice should be final, binding and conclusive on Landlord and Tenant.  Each appraiser then shall prepare a written appraisal with respect to the determination of the fair market value of the Demised Premises (excluding improvements).  If within thirty (30) days after appointment of the two appraisers, as described above, the two appraisers are unable to agree upon the amount in question, a third independent appraiser shall be chosen within ten (10) days thereafter by the mutual consent of such first two appraisers or, if such first two appraisers fail to agree upon the appointment of a third appraiser within such ten (10) day period, such appointment shall be made by the American Arbitration Association, or any organization successor thereto, from a panel of appraisers having experience in the appraisal of real estate for commercial use in the metropolitan area in which the Land is located.  The decision of the third

appraiser so appointed and chosen shall be given within ten (10) days after the selection of such third appraiser. If three appraisers shall be appointed and the determination of one appraiser is disparate from the median of all three determinations by more than twice the amount by which the other determination is disparate from the median, then the determination of such appraiser shall be excluded, the remaining two determinations shall be averaged and such average shall be binding and conclusive on Landlord and Tenant; otherwise the average of all three determinations shall be binding and conclusive on Landlord and Tenant. The fees and expenses of the appraiser appointed by Tenant shall be paid by Tenant, the fees and expenses of the appraiser appointed by Landlord shall be paid by Landlord and the fees and expenses of the third appraiser shall be divided equally between Tenant and Landlord.

(b)    In making the determination of such fair market value, the appraisers shall assume a reasonable time under the then existing market conditions is allowed for exposure of the Demised Premises on the open market, and the appraisers shall deduct the value of any improvements then existing on the Demised Premises.

Section 41. Shopping Center Leases:  Landlord represents and warrants to Tenant that Landlord has obtained all necessary consents of tenants in the Shopping Center, to the execution and delivery by Landlord of this Lease and the construction by Tenant of the improvements contemplated hereunder. Landlord represents and warrants to Tenant that Landlord has reviewed all of the leases in the Shopping Center and all applicable restrictive covenants applicable to the Shopping Center and that the consents obtained by Landlord are the only consents that Landlord must obtain in connection with this Lease with Tenant and Tenant's operation of a Krystal fast-food restaurant. Landlord acknowledges that Tenant shall obtain a leasehold owner's title insurance policy and Landlord agrees to provide evidence satisfactory to the title company issuing the policy in order to delete exceptions with respect to tenant leases or the rights of tenants in the Shopping Center.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF,** the parties have hereunto set their hands and seals the day and year first above written.

"LANDLORD:"

**THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA,** a New York corporation

By: _____

Its: _____
MICHAEL NOULAS
SECOND VICE PRESIDENT, REAL ESTATE
(CORPORATE SEAL)

"TENANT:"

**THE KRYSTAL COMPANY,** a Tennessee corporation

By: _____

Its: V. P. administration

Attest: _____

Its: SR. R.E. Rep.

(CORPORATE SEAL)

Exhibit A  -  Leased Premises
Exhibit B  -  Adjoining Property
Exhibit C  -  Title Exceptions
Exhibit D  -  Subordination, Non-Disturbance and Attornment Agreement
Exhibit E  -  Preliminary Plans

628040.6

26

## EXHIBIT "A"

### Leased Premises

Commencing at the Southeast corner, Lot 1, Westwood Plaza subdivision, as recorded in Map Book 40, Page 29, Office of Probate Records, Mobile County, Alabama; thence run S89°46'38"W, 580.58 feet to a point; thence run N46°47'16"W, 46.41 feet to a point; thence run N89°24'53"W, 10.02 feet to a point on the east line of Schillinger Road; thence run N00°05'45"W, along said east line, 160.55 feet to the point of beginning of the property herein described; thence continue N00°05'45"W, along said east line, 150.00 feet to a point; thence run N89°54'15"E, 200.00 feet to a point; thence run S00°05'45"E, 150.00 feet to a point; thence run S89°54'15"W, 200.00 feet to the point of beginning.

# EXHIBIT "B"

## Adjoining Property



## EXHIBIT "C"

### Title Exceptions

1.      Taxes due in the year 1999 and subsequent years.

2.      Any lien or right to a lien for services, labor or materials heretofore or hereafter furnished, imposed by law and not shown by the public records.

3.      Rights or claims of parties in possession and easements or claims of easements not shown by the public records, boundary line disputes, overlaps, encroachments, and any matters not of record which would be disclosed by an accurate survey and inspection of the premises.

4.      Declaration of restrictions as contained in instrument executed by Schair, Ltd., an Alabama limited partnership, dated August 8, 1985 and recorded in Real Property Book 2797, Page 728 and recorded in Real Property Book 2797, Page 733.

5.      Declaration of drainage easement by Schair, Ltd., an Alabama limited partnership as contained in instrument dated January 15, 1985 and recorded in Real Property Book 2715, page 390.

6.      Declaration of Non-Exclusive easement and agreement executed by Schair, Ltd., an Alabama limited partnership as contained in instrument dated December 13, 1984 and recorded in Real Property Book 2715, Page 403.

7.      Non-exclusive easement and agreement executed by Schair, Ltd., an Alabama limited partnership as contained in instrument dated July 29, 1985 and recorded in Real Property Book 2793, Page 700.

8.      Hold harmless contained in right of way granted to the State of Alabama by International Paper Company by instrument dated March 11, 1954 and recorded in Deed book 595, Page 619.

9.      Hold harmless contained in Right of way granted to the State of Alabama by International Paper Company by instrument dated October 3, 1961 and recorded in Real Property Book 283, Page 913.

10.     Reservation of all oil, gas and other minerals and rights in connection therewith as contained in deed from International Paper Realty Corporation, a Delaware corporation, to Schair, Ltd., an Alabama limited partnership dated March 25, 1979 and recorded in Real Property Book 1966, page 620.

11.     Ten foot gas line easement across the West side, 15 foot sanitary sewer easement and power lines and poles as shown on plat of survey by Polysurveying of Mobile dated April 20, 1999.

### EXHIBIT "D"

### SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:


The Guardian Life Insurance Company
  of America
201 Park Avenue South, 6th Floor
New York, New York  10003

Attention:            «guardianattorney»
                      Legal Department


------------SPACE ABOVE THIS LINE FOR RECORDER'S USE------------


SUBORDINATION, NON-DISTURBANCE AND
ATTORNMENT AGREEMENT

Dated:_____, 19_

THIS SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT
AGREEMENT, made as of this «closingdateday» day of «closingdatemonth» by and between
«BORROWERNAME», a «borrowerstateentity», having an address at «borrowerstreetsuite»,
«borrowercity», «borrowerstatezip» ("Landlord"), «TENANT», a «tenantstateentity», having an
address at «tenantaddress» ("Tenant"), and THE GUARDIAN LIFE INSURANCE COMPANY
OF AMERICA, a New York corporation having an address at 201 Park Avenue South, New
York, New York 10003 ("Lender") is made with reference to the following:

Lender intends to make a certain loan to Landlord (the "Loan") to be secured by a
first lien on that certain real property (the "Land") described in Exhibit "A" annexed hereto
together with the improvements thereon (collectively the "Property") which lien shall be
perfected by the recordation of either a mortgage, deed of trust or consolidation, modification
and extension agreement (such document being referred to hereinafter as the "Security
Document"); and

Landlord and Tenant have executed a certain lease dated «leasedate», as amended
«leaseamendmentdate» «leasecommencementdate» (the "Lease") pursuant to which Landlord
leased a portion of the Property to Tenant (the "Leased Premises") for a term of
«leasetermyearsspelled» («leasetermyearsnumerical») years commencing on the lease
commencement date all as more fully described in the Lease; and

Lender is making the Loan to Landlord in reliance, among other things, upon the
agreements set forth herein; and

Landlord, Tenant and Lender are willing to agree and covenant that the Lease

[, including Tenant's purchase option set forth in Section ___ of the Lease,] shall be subject and subordinate to the Security Document as more particularly hereinafter set forth.

NOW THEREFORE, the parties hereto agree as follows:

1.      So long as Tenant is not in Default, the right of possession of Tenant to the Leased Premises as provided in the Lease shall not be affected or disturbed by Lender in the exercise of any of its rights under the Security Document or any note secured thereby and any sale of the Property pursuant to the exercise of any rights and remedies under the Security Document or otherwise shall be made subject to Tenant's right of possession of the Leased Premises under the Lease.

2.      Tenant shall attorn to Lender or any purchaser of the Property and the Lease shall continue, in accordance with its terms, between Tenant and Lender or such purchaser (Lender or such purchaser being hereinafter sometimes called "Successor Landlord") except that (a) the provisions of the Security Document shall be deemed to survive and govern with respect to the disposition of insurance proceeds or condemnation or eminent domain awards, and (b) Paragraphs 3, 9, 10, 11 and 12 hereof shall modify the Lease.

3.      Successor Landlord shall not be (a) liable for any act or omission of any prior landlord (including Landlord), (b) liable for the return of any security deposit not actually received by Successor Landlord, (c) subject to any offsets or defenses which Tenant might have against any prior landlord (including Landlord), (d) bound by any advance payment of rent or additional rent made by Tenant to Landlord except for rent or additional rent applicable to the then current month, (e) bound by any amendment or modification of the Lease made without the written consent of Lender, or (f) bound to effect or pay for any construction for Tenant's occupancy of the Leased Premises.

4.      The Lease [including Tenant's purchase option set forth in Section ___ thereof] shall be subject and subordinate to the lien of the Security Document and to all the terms, conditions and provisions thereof, to all advances made or to be made thereunder, to the lien thereof and to any renewals, extensions, modifications or replacements thereof, including any increases therein or supplements thereto.

5.      The foregoing provisions shall be self operative. Tenant, however, agrees to execute and deliver to Lender, or to any person to whom Tenant herein agrees to attorn, such other instrument as either shall request in order to further confirm the foregoing provisions.

6.      Tenant certifies that there are no known defaults on the part of Landlord, that the Lease is a complete statement of the agreement of the parties thereto with respect to the letting of the Leased Premises, that the Lease is in full force and effect and that all conditions to the effectiveness or continuing effectiveness thereof required to be satisfied at the date hereof have been satisfied.

7.      Landlord and Tenant will each notify Lender of any default of Tenant or Landlord or any circumstance or other event arising under the Lease which would entitle or

permit Landlord or Tenant to cancel the Lease or abate any rent payable thereunder. Tenant further agrees that notwithstanding any provision of the Lease, no notice, cancellation or termination thereof shall be effective unless Lender shall have received such notice and have failed within thirty (30) days after the expiration of the cure period provided to Landlord under the Lease, if any, to cure or commence to cure such default and thereafter diligently prosecute same to completion

8.    Any notice, request, demand, consent, approval or other communication required or desired to be given or delivered under this Agreement or other instrument contemplated hereby shall be in writing, signed by the party giving such notice and shall be given by hand delivery to the other party or parties or addressed to the party or parties for whom it is intended at the address or addresses set forth below and sent by United States certified or registered mail, postage prepaid, return receipt requested or by a nationally recognized overnight courier (but not United Parcel Service) or by facsimile accompanied by (i) a contemporaneous telephone call to the addressees set forth below; and (ii) overnight delivery of such notice, by an approved means described above. Notices sent to Lender shall be handed or addressed to the following persons:

> The Guardian Life Insurance Company
> of America
> 201 Park Avenue South
> New York, New York 10003
> Attention:      «guardiancontact»
>                 Investment Officer
>                 Real Estate
> T:  (212) 598-«guardiancontactextension»
> F:  (212) 677-1008

> with a copy of said
> notice to:
>
> > Vice President, Investment and Real Estate Counsel
> > Law Department
> > at the address immediately above written
> > T:  (212) 598-1985
> > F:  (212) 677-4240

and notices sent to Landlord, shall be addressed as follows:

> «BORROWERNAME»
> «borrowerstreetsuite»
> «borrowercity», «borrowerstatezip»
> Attention: «borrowerprincipal»
>            «borrowertitle»
> T:  «borrowerphone»

-3-

F: «borrowerfax»

and if to be given to Tenant, shall be addressed as follows:

«TENANT»
«tenantaddress»
Attention: _____
T: (    ) _____
F: (    ) _____

The addresses set forth above may be changed by notice given in accordance with the provisions of this Paragraph 8. If notice is given in accordance with the provision of this Paragraph 8, it shall be deemed given upon receipt thereof, upon refusal of the addressee to accept delivery thereof, or upon inability to effect delivery thereof.

9.      Tenant agrees that notice from Lender shall have the same effect under the Lease as notice to Tenant from the Landlord thereunder and Tenant agrees to be bound by such notice notwithstanding the existence or nonexistence of a default under the Security Document, provided that Landlord shall release Tenant from any liability under the Lease to the extent Tenant complies with Lender's notice. By executing this Agreement, Landlord agrees that Tenant shall be released from any liability under the Lease to the extent Tenant complies with Lender's notice.

10.     Anything herein or in the Lease to the contrary notwithstanding, in the event that Lender or purchaser shall acquire title to the Property and become a Successor Landlord, such Successor Landlord shall have no obligation, nor incur any liability, beyond Successor Landlord's then interest, if any, in the Property and Tenant shall look exclusively to such interest, if any, of Successor Landlord in the Property for the payment and discharge of any obligation imposed upon Lender hereunder or upon Successor Landlord under the Lease, and Successor Landlord is hereby released or relieved of any other liability hereunder and under the Lease. Tenant agrees that, with respect to any money judgment which may be obtained or secured by Tenant against Successor Landlord, Tenant shall look solely to the estate or interest owned by Successor Landlord in the Property, and Tenant will not collect or attempt to collect any such judgment out of any other assets of Successor Landlord.

11.     The following provision shall be deemed inserted in the Lease, retroactively effective as of the commencement of the term of the Lease, and shall prevail in the event of any conflicts with other provisions of the Lease:

"Tenant covenants and agrees not to use, introduce or maintain in, on, under or about any portion of the Leased Premises for any activity or activities involving, directly or indirectly, the use, generation, treatment, storage, disposal or release of any hazardous or toxic chemical, material, substance or waste and Tenant and the Leased Premises shall not be in violation of any applicable local, state, or federal environmental laws, statutes, or ordinances (or the rules and regulations promulgated thereunder)*. Tenant indemnifies Landlord and its lenders and shall

-4-

hold them harmless from and against any loss, cost, damage, liability, and expense arising in connection with any breach by Tenant of any of the covenants and agreements set forth in the preceding sentence. The provisions of this paragraph shall survive the expiration or earlier termination of this Lease."

[*ADDITIONAL LANG FOR MEDICAL AND INDUSTRIAL PROPERTIES]

"Tenant hereby certifies, represents and warrants to Mortgagee and Landlord that Tenant uses, stores and disposes of no hazardous or toxic chemicals, materials, substances or wastes, except those customarily and currently used in Tenant's normal business operations and identified in Exhibit "B" to this Agreement and will use no others without Landlord's and Lender's prior written consent. In any event, Tenant agrees that all such hazardous or toxic chemicals, materials, substances or wastes will only be used in the leased premises (a) in non-reportable quantities and (b) in compliance with all applicable environmental laws. Furthermore, Tenant shall submit Material Safety Data Sheets (MSDS's) to Landlord or Lender upon request.

12. This Agreement shall inure to the benefit of and be binding upon Tenant and any successor or assignee of Tenant which pursuant to the provisions of the Lease is entitled to succeed to Tenant's interest therein without consent of Landlord, but not to any other successor or assignee unless such successor or assignee has been previously approved by Lender. This Agreement shall inure to the benefit of and be binding upon Lender and its successors and assigns, including any person or entity which shall become the owner of the Property by reason of a foreclosure of the Security Document or acceptance of a deed in lieu of foreclosure or otherwise.

13. This Agreement may be executed by the parties hereto in any number of counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and the same agreement.

14. This Agreement shall be governed by, and construed and interpreted in accordance with the laws of the state in which the Property is located.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

"LANDLORD"

«BORROWERNAME», a «borrowerstateentity»

By_____
    Name: «borrowerprincipal»
    Title:   «borrowertitle»

"TENANT"

«TENANT», a «tenantstateentity»

By_____
    Name:
    Title:

"LENDER"

THE GUARDIAN LIFE INSURANCE COMPANY
OF AMERICA, a New York corporation

By_____
    Name:
    Title:

## EXHIBIT A

## LEGAL DESCRIPTION OF THE PREMISES

STATE OF             )
                                 ) SS:
COUNTY OF        )

On _____, ___, before me, _____, a Notary Public of the State of _____, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
NOTARY PUBLIC

SEAL

STATE OF             )
                                 ) SS:
COUNTY OF        )

On _____, ___, before me, _____, a Notary Public of the State of _____, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
NOTARY PUBLIC

SEAL

STATE OF NEW YORK    )
                     ) SS:
COUNTY OF NEW YORK)

On this ___day of ____, __ before me, the undersigned, a Notary Public in and for said State, personally appeared _____, who resides at _____ _____, personally known to me or proved to me on the basis of satisfactory evidence to be the person who executed the within instrument as the _____ of THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, the Corporation that executed the within instrument and acknowledged to me that such Corporation executed the within instrument pursuant to its by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.

_____

SEAL

[ALTERNATE PROVISION WHEN OWNER AND TENANT ARE RELATED PARTIES]

NOW THEREFORE, the parties hereto agree as follows:

1.    In Lender's sole discretion, Lender shall have the right to evict or otherwise affect or disturb the Tenant's right of possession to the Leased Premises or to allow Tenant to remain in possession of the Leased Premises should Lender exercise any of its rights under the Security Document or any note secured thereby.  In addition any sale of the Property pursuant to the exercise of any rights or remedies under the Security Document or otherwise shall, in Lender's sole discretion, either affect Tenant's rights or be subject to Tenant's right of possession of the Leased Premises.

2.    Should Lender elect not to disturb the right of possession of Tenant of the Leased Premises,

EXHIBIT "E"


**Preliminary Plans**

## FIRST LEASE AMENDMENT

This First Lease Amendment (the "First Amendment") is entered into as of this 5th day of September, 2018 (the "Effective Date"), by and among WESTWOOD OUTPARCELS, LLC, an Alabama limited liability company, as assigned from WESTWOOD PLAZA, LLC, an Alabama limited liability company, as assigned from THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, a New York mutual insurance company (individually and collectively "Landlord"), whose address is 41 West I-65 Service Road North, Suite 310, Mobile, AL 36608 and THE KRYSTAL COMPANY, a Tennessee corporation ("Tenant"), whose address is The Krystal Building, ATTN: Real Estate Department, 1455 Lincoln Parkway, 6th Floor, Dunwoody, GA 30346.

### WITNESSETH:

**WHEREAS**, Landlord and Tenant entered into that certain Ground Lease dated July 12, 1999 (the "Lease"), whereby Tenant leased from Landlord certain property located at 475 Schillinger Road S., Mobile, Alabama 36695, which property is more particularly described therein (the "Premises"); and

**WHEREAS**, the parties desire to amend the Lease in certain respects, as more particularly described herein;

**NOW, THEREFORE**, for and in consideration of Ten Dollars ($10.00) and other good and valuable consideration as provided herein, the receipt and sufficiency of which are hereby acknowledged, the parties agree that such Lease shall be and is hereby amended and modified as follows:

1.      This First Amendment is made and entered into with reference to the following:

        (a)     The Parties have agreed to amend the Lease, in accordance with the provisions and conditions in this First Amendment. This First Amendment shall be deemed effective as of the Effective Date.

        (b)     The obligations contained in the Lease shall continue in accordance with the Lease until such time as the obligations set forth herein shall commence.

        (c)     Unless otherwise defined herein, all capitalized terms used in this First Amendment shall have the meanings attributed to them in the Lease.

2.      For and in consideration of the covenants, agreements, and promises contained herein, and mutual benefits to accrue, the parties hereby agree to amend the Lease as follows:

        (a)     Notwithstanding anything in the Lease to the contrary, Tenant has requested and Landlord has agreed to certain Property Improvements, subject to Section 7 herein, in order for Tenant to receive The Proceeds (as defined below) upon completion of new construction on the Premises. The following definitions shall apply:

104778591_4

a.  "Property Improvements" means all Tenant's improvement activities pursuant to this First Amendment, such as building improvements and land improvements, submitted and approved by Landlord pursuant to Section 7 hereof.

b.  "The Proceeds" means that certain amount, not to exceed Seven Hundred Fifty Thousand Dollars and No Cents ($750,000.00), to be paid to Tenant as reimbursement for the Property Improvements cost, provided, however, that Tenant submits Proceed Support in excess of $750,000.00.

c.  "Proceed Support" shall mean the reasonable documentation, such as vendor invoices and payment evidence, provided by Tenant evidencing the costs paid for the Property Improvements.

(b)    Upon Tenant completing the Property Improvements, restaurant reopening for customers, delivering to Landlord a copy of the certificate of occupancy, release of liens for contractor and/or subcontractor work in excess of Five Thousand and No/100 Dollars ($5,000.00) and receipt of evidence of Proceed Support with payments for the Property Improvements in excess of Seven Hundred Fifty Thousand and No/100 Dollars ($750,000.00), Landlord shall pay The Proceeds to Tenant within thirty (30) days; provided Tenant is current in all its obligations under the Lease and not in default past any applicable cure period.

3.    Notwithstanding anything to the contrary for one hundred forty-five (145) days following the Effective Date of this First Amendment, Tenant shall have the right to perform due diligence on the Premises with regards to the Property Improvements ("Due Diligence Period"). Landlord will reasonably cooperate regarding due diligence questions. Should Tenant conclude that it will be unable to obtain (i) approvals to make the Property Improvements, (ii) obtain a resolution to the parking issue that is satisfactory to Landlord and Tenant, or (iii) Tenant is not satisfied with the Premises for any reason (including, but not limited to any environmental issues), then Tenant shall have the right to terminate all the provisions of this First Amendment with written notice to Landlord prior to the expiration of the Due Diligence Period. Upon timely submission of that termination notice, this First Amendment shall be null and void. The parties recognize that the Tenant's current term is set to expire on October 24, 2019, which is within the Due Diligence Period. If Tenant elects to terminate this First Amendment, Landlord will allow the Tenant to exercise its next option in the Lease on the terms and conditions stated therein, provided Tenant includes its exercise of such option in its notice of termination, such notice is received before the expiration of the Due Diligence Period and the current Lease shall continue pursuant to the terms, covenants and conditions thereof, including the effective date of the option term and rent accruing from the date set forth in the Lease had the option been timely exercised.

4.    Tenant shall be responsible for all costs and obligations associated with the Property Improvements. Tenant shall commence its work on the Premises upon the earlier of (i) fifteen (15) days upon receipt of its permits/approvals, or (ii) expiration of the Due Diligence Period.

5.    The term of the Lease will be for fifteen (15) years ("New Term") with five (5) renewal options of five (5) years each at the rent set forth herein. Landlord and Tenant agree to execute a rent commencement letter acknowledging the start and ending of the New Term and the rent for

the New Term and renewal options.  The New Term shall commence on the earlier to occur of i) three hundred sixty (360) days from the Effective Date or ii) the first day of the month following completion of the Property Improvements and the restaurant reopening for customers.  In the event Tenant exercises one, any, or all of the renewal options, Tenant shall provide one hundred eighty (180) days advance written notice of Tenant's intent to exercise said option.  This replaces Section 2(b) of the Lease.

6.      Section 3(a) of the Lease is amended and replaced with the following:

"(a) Tenant covenants and agrees to pay Landlord for the Demised Premises without notice or demand, and without offset or deduction, basic rent at the amount hereinafter set forth from the Effective Date and throughout the term of the Lease.  All basic rent shall be payable by Tenant in equal monthly installments on the first day of each and every calendar month throughout the term of this Lease.  The current annual basic rent under the Lease is Fifty Thousand Eight Hundred Twenty and No/100 Dollars ($50,820.00) or Four Thousand Two Hundred Thirty-Five and No/100 Dollars ($4,235.00) monthly and shall be payable until the New Term commencement date. Upon the commencement of the New Term, Tenant will pay annual aggregate rent in the amount of One Hundred Ten Thousand Five Hundred and No/100 Dollars ($110,500.00) annually or Nine Thousand Two Hundred Eight Dollars and 33/100 ($9,208.33) monthly. After the first year of the New Term, the basic rent will increase two percent (2%) annually as set forth in Exhibit A attached hereto and said increase shall not include the Additional Rent as set forth on Exhibit A.

7.      Tenant shall deliver Tenant's civil and building plans ("Tenant Plans") for Tenant's Property Improvements on or before the date that is thirty (30) days after the Effective Date of this First Amendment for Landlord's review and approval.  Landlord shall have ten (10) days to review and approve Tenant's Plans.  In the event that Landlord does not respond regarding Tenant's Plans, Tenant's Plans shall be deemed approved.  If Landlord requires adjustment to Tenant's Plans, then Tenant shall resubmit within fifteen (15) days and Landlord shall review within ten (10) days. This process shall repeat until approval is granted or finally denied.

8.      During the construction of the Tenant's Property Improvements, Tenant shall ensure that its contractors do not park, damage or otherwise interfere with the Adjoining Property, as described in Section 28 of the Lease.  Tenant shall be responsible for sweeping and/or cleaning any portion of the Adjacent Property as necessary to maintain the first-class status thereof due to Tenant's construction activity.  Tenant shall require all contractors performing work at the Premises to carry and maintain, at no expense to the Landlord:  comprehensive general liability insurance, including contractor's liability coverage, contractual liability coverage, broad form property damage endorsement and contractor's protective liability coverage, providing protection with limits of not less than $1,000,000 per occurrence; and worker's compensation insurance as required by law. Tenant to furnish Landlord with a certificate from their contractor evidencing the coverages required by this Lease.

9.      Except as expressly modified or amended herein, the Lease shall remain unmodified and in full force and effect. In the event of any inconsistencies between the provisions and conditions of the Lease and this First Amendment, the provisions and conditions of this First Amendment shall govern.

10.    This First Amendment may be executed in counterparts, all of which when taken together shall constitute one original document.

IN WITNESS WHEREOF, the parties hereto have caused this First Amendment to be executed as of the Effective Date.

**LANDLORD:**

**WESTWOOD OUTPARCELS, LLC,** an Alabama limited liability company

By:_____
Phillip G. Burton, Authorized Signatory

**TENANT:**

**THE KRYSTAL COMPANY,** a Tennessee corporation

By:_____
Mike Wood, Vice President and Chief Real Estate Officer

104778591_4

## EXHIBIT A

| Lease Year | Basic Annual Rent | Additional Rent | Annual Aggregate Rent | Monthly Aggregate Rent |
|---|---|---|---|---|
| 1 | $52,375.00 | $58,125.00 | $110,500.00 | $ 9,208.33 |
| 2 | $53,422.50 | $58,125.00 | $111,547.50 | $ 9,295.63 |
| 3 | $54,490.95 | $58,125.00 | $112,615.95 | $ 9,384.66 |
| 4 | $55,580.77 | $58,125.00 | $113,705.77 | $ 9,475.48 |
| 5 | $56,692.38 | $58,125.00 | $114,817.38 | $ 9,568.12 |
| 6 | $57,826.23 | $58,125.00 | $115,951.23 | $ 9,662.60 |
| 7 | $58,982.76 | $58,125.00 | $117,107.76 | $ 9,758.98 |
| 8 | $60,162.41 | $58,125.00 | $118,287.41 | $ 9,857.28 |
| 9 | $61,365.66 | $58,125.00 | $119,490.66 | $ 9,957.56 |
| 10 | $62,592.97 | $58,125.00 | $120,717.97 | $ 10,059.83 |
| 11 | $63,844.83 | $58,125.00 | $121,969.83 | $ 10,164.15 |
| 12 | $65,121.73 | $58,125.00 | $123,246.73 | $ 10,270.56 |
| 13 | $66,424.16 | $58,125.00 | $124,549.16 | $ 10,379.10 |
| 14 | $67,752.65 | $58,125.00 | $125,877.65 | $ 10,489.80 |
| 15 | $69,107.70 | $58,125.00 | $127,232.70 | $ 10,602.73 |

Renewal Options

| Lease Year | Basic Annual Rent | Additional Rent | Annual Aggregate Rent | Monthly Aggregate Rent |
|---|---|---|---|---|
| 16 | $70,489.85 | $58,125.00 | $128,614.85 | $10,717.90 |
| 17 | $71,899.65 | $58,125.00 | $130,024.65 | $10,835.39 |
| 18 | $73,337.64 | $58,125.00 | $131,462.64 | $10,955.22 |
| 19 | $74,804.40 | $58,125.00 | $132,929.40 | $11,077.45 |
| 20 | $76,300.49 | $58,125.00 | $134,425.49 | $11,202.12 |
| 21 | $77,826.49 | $58,125.00 | $135,951.49 | $11,329.29 |
| 22 | $79,383.02 | $58,125.00 | $137,508.02 | $11,459.00 |
| 23 | $80,970.69 | $58,125.00 | $139,095.69 | $11,591.31 |
| 24 | $82,590.10 | $58,125.00 | $140,715.10 | $11,726.26 |
| 25 | $84,241.90 | $58,125.00 | $142,366.90 | $11,863.91 |
| 26 | $85,926.74 | $58,125.00 | $144,051.74 | $12,004.31 |
| 27 | $87,645.27 | $58,125.00 | $145,770.27 | $12,147.52 |
| 28 | $89,398.18 | $58,125.00 | $147,523.18 | $12,293.60 |
| 29 | $91,186.14 | $58,125.00 | $149,311.14 | $12,442.60 |
| 30 | $93,009.87 | $58,125.00 | $151,134.87 | $12,594.57 |
| 31 | $94,870.06 | $58,125.00 | $152,995.06 | $12,749.59 |
| 32 | $96,767.46 | $58,125.00 | $154,892.46 | $12,907.71 |
| 33 | $98,702.81 | $58,125.00 | $156,827.81 | $13,068.98 |
| 34 | $100,676.87 | $58,125.00 | $158,801.87 | $13,233.49 |
| 35 | $102,690.41 | $58,125.00 | $160,815.41 | $13,401.28 |
| 36 | $104,744.22 | $58,125.00 | $162,869.22 | $13,572.43 |
| 37 | $106,839.10 | $58,125.00 | $164,964.10 | $13,747.01 |
| 38 | $108,975.88 | $58,125.00 | $167,100.88 | $13,925.07 |
| 39 | $111,155.40 | $58,125.00 | $169,280.40 | $14,106.70 |
| 40 | $113,378.51 | $58,125.00 | $171,503.51 | $14,291.96 |

## ASSIGNMENT AND ASSUMPTION OF LEASE

STATE OF ALABAMA

COUNTY OF MOBILE

For valuable consideration, the receipt and sufficiency of which are hereby acknowledged, WESTWOOD OUTPARCELS, LLC, an Alabama limited liability company ("Assignor"), does hereby transfer, assign and deliver unto 182 EMERSON LLC, a New Jersey limited liability company (the "Assignee"), all of Assignor's right, title and interest in, to and under the lease dated July 12, 1999, between Assignor, as landlord, and The Krystal Company ("Krystal"), as tenant, as modified by the First Amendment to Lease dated September 5, 2018 (collectively, the "Lease"), and relating to that certain real property located in Mobile County, Alabama and described as follows:

Lot D, Burton Addition to Westwood Plaza according to plat thereof recorded in Plat Book 129, Page 16, Probate Court Records of Mobile County, Alabama.

TO HAVE AND TO HOLD unto Assignee, its successors and assigns, forever.

Subject to the terms of the Post Closing Escrow Agreement relating to the payment of the "Proceeds," as defined in the Lease, being executed simultaneous herewith, Assignee hereby assumes, and covenants and agrees that Assignee shall perform, all obligations of the landlord under the Lease arising solely from acts, omissions or events occurring on and after the date hereof, and Assignee shall indemnify and hold Assignor harmless from and against any and all losses, costs, damages and expenses, including attorneys' fees, suffered or incurred by Assignor as a result of or arising from (i) Assignee's and/or the landlord's obligations under the Lease arising solely

Exhibit

B

from acts, omissions or events occurring on or after the date hereof and/or (ii) Assignee's breach of this Assignment.

Assignor hereby covenants and agrees that Assignor shall perform all obligations of the landlord under the Lease arising from acts, omissions or events occurring prior to the date hereof, and Assignor shall indemnify and hold Assignee harmless from and against any and all losses, costs, damages and expenses, including attorneys' fees, suffered or incurred by Assignee as a result of or arising from (i) Assignor's and/or the landlord's obligations under the Lease arising from acts, omissions or events occurring prior to the date hereof and/or (ii) Assignor's breach of this Assignment.

IN WITNESS WHEREOF, the undersigned have entered into this Assignment and Assumption on the _____3rd_____ day of _____July_____, 2019.

**[SIGNATURES ON FOLLOWING PAGES]**

2

**[SIGNATURE PAGE TO ASSIGNMENT AND ASSUMPTION OF LEASE
BETWEEN WESTWOOD OUTPARCELS, LLC AND 182 EMERSON, LLC]**

WESTWOOD OUTPARCELS, LLC,
an Alabama limited liability company

By: _____

Kathy P. Sherman
Authorized Representative

STATE OF ALABAMA:
COUNTY OF MOBILE:

I, the undersigned notary public in and for said county in said state, hereby certify that Kathy P. Sherman, whose name as Authorized Representative of Westwood Outparcels, LLC, an Alabama limited liability company, is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he, as such said Authorized Representative and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and official seal this __3rd__ day of ___July___, 2019.

[SEAL]

NOTARY PUBLIC
My Commission Expires

CYNTHIA A. STILES
My Commission Expires
May 24, 2022

3