Page 1

```
 1
 2    UNITED STATES BANKRUPTCY COURT
 3    DISTRICT OF DELAWARE
 4    Case No. 10-14092(CSS)
 5    - - - - - - - - - - - - - - - - - - - -x
 6    In the Matter of:
 7
 8    TOWNSENDS, INC., et al.,
 9
10                   Debtors.
11
12    - - - - - - - - - - - - - - - - - - - -x
13
14                   United States Bankruptcy Court
15                   824 North Market Street
16                   Wilmington, Delaware
17
18                   January 21, 2011
19                   1:09 PM
20
21    B E F O R E:
22    HON. CHRISTOPHER S. SONTCHI
23    U.S. BANKRUPTCY JUDGE
24
25    ECR OPERATOR:  DANA MOORE
```

Page 23

1  collateral, the same million-eight will be available for the
2  503(b)(9) claimants, given their administrative priority status
3  is protected by the Code.
4           Unless Your Honor has any questions of the committee
5  position, that's why we have come to difficult conclusions, and
6  it's been a lot of conversation by the committee including
7  direct conversation between the committee members and the
8  bankers, yesterday, with no professionals on the phone call to
9  discuss these issues.
10          THE COURT:  Okay.
11          MR. BUECHLER:  Thank you.
12          THE COURT:  Thank you, Mr. Buechler.  Anybody else
13 wish to be heard?
14          Let me see if I understand, Mr. Abbott.  Under no
15 scenario will the 503(b)(9) creditors be paid in full?
16          MR. ABBOTT:  Your Honor, technically, it's possible;
17 practically, impossible.  The range of values, given the amount
18 of debt, here, we just don't see a buyer clearing the secured
19 debt.
20          THE COURT:  But other administrative claims will be
21 paid in full?
22          MR. ABBOTT:  Post-petition administrative claims, we
23 expect to be paid in full under this revised budget, Your
24 Honor.
25          THE COURT:  Well, we've got a problem.  Not going to

Page 24

1  run an administratively insolvent estate. There are benefits
2  to the current administrative claims that are accruing. There
3  are benefits to the unsecured creditors. But it can't be done
4  on the back of the 503(b)(9) admin claims, which are admin
5  claims. Congress has made that determination. So certainly I
6  would have a problem running any case that was administratively
7  insolvent. But one that is both administratively insolvent and
8  prefers one set of administrative creditors over another is
9  doubly troubling. So that's -- well, I'm not going to do it.
10          MR. ABBOTT: To clarify --
11          THE COURT: I'm not making -- I'm not making the --
12  this came up on Goody's, for example, Goody's I, and it turned
13  out we were all wrong. But the point there was there had to be
14  a set aside to pay these claims in the plan that the evidence
15  indicated was a reasonable estimate that they would get paid.
16  Turns out, it was wrong. But the point being, I'm not making
17  anyone guarantors or insurers of the fact that the case is
18  administratively solvent. But to go in with a path forward
19  that indicates -- and I certainly appreciate your candor to the
20  Court -- that a certain type of administrative expense claim
21  won't get paid in full but yet others will, I just -- I can't
22  run that kind of case.
23          MR. ABBOTT: I understand that, Your Honor. Could I
24  ask the -- well, is it --
25          THE COURT: Need help? Go ahead.

Page 1

1  UNITED STATES BANKRUPTCY COURT
2  DISTRICT OF DELAWARE
3  Case No. 10-11890-PJW
4  - - - - - - - - - - - - - - - - - - -x
5  In the Matter of:
6
7  NEC HOLDINGS CORP, ET AL.,
8
9        Debtors.
10
11 - - - - - - - - - - - - - - - - - - -x
12
13        U.S. Bankruptcy Court
14        824 North Market Street
15        Wilmington, Delaware
16
17        July 13, 2010
18        9:32 AM
19
20 B E F O R E:
21 HON. PETER J. WALSH
22 HON. CHRISTOPHER S. SONTCHI
23 U.S. BANKRUPTCY JUDGES
24
25 ECR OPERATOR: MICHAEL MILLER/LESLIE MURIN

Page 108

1  THE COURT: And again, you're not a guarantor.
2  Nobody's a guarantor. But I need some evidence that there's a
3  probability that admin claims are going to get paid in full,
4  including 503(b)(9) claims or I won't approve the financing.
5  MR. ATHANAS: Your Honor, I understand where you
6  stand. Before we convert the case, I'd like --
7  THE COURT: Whoa. What?
8  MR. ATHANAS: -- I'd like to take a brief recess.
9  THE COURT: I didn't say we're converting the case.
10  MR. ATHANAS: Understood, Your Honor, but without
11  financing, it would be inevitable. So I'd ask for just a very
12  brief recess so I can talk to the parties and make sure they
13  really want what they're asking for.
14  MR. FEINSTEIN: We're okay with that, Your Honor.
15  THE COURT: All right. Take a recess.
16  (Recess from 4:08 p.m. until 4:51 p.m.)
17  THE CLERK: All rise.
18  THE COURT: Please be seated.
19  MR. ATHANAS: Your Honor, Joe Athanas on behalf of the
20  debtors. Your Honor, we would ask for a continuance until
21  Friday morning. At that time we'll either put on evidence
22  regarding 503(b)(9) claims or maybe even there'll be a deal.
23  Who know?
24  THE COURT: All right. Let's see what I have. Pretty
25  wide open Friday. Any preference?

                                                                              1

1                      UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF DELAWARE
2
                                        .    Chapter 11
3    IN RE:                             .
                                        .    Case No. 19-10729 (MFW)
4    ORCHIDS PAPER PRODUCTS COMPANY,    .
     *et al.*,                          .    Courtroom No. 4
5                                       .    824 N. Market Street
                                        .    Wilmington, Delaware 19801
6                                       .
                                        .    May 30, 2019
7                       Debtor.         .    2:00 P.M.
     . . . . . . . . . . . . . . . .
8                              EXCERPT
                         TRANSCRIPT OF HEARING
9                 BEFORE HONORABLE MARY F. WALRATH
                   UNITED STATES BANKRUPTCY JUDGE
10

11   APPEARANCES:

12   For the Debtors:              Christopher Ward
                                   Shanti Katona, Esquire
13                                 POLSINELLI PC
                                   222 Delaware Avenue
14                                 Wilmington, Delaware 19801

15                                 - and -

16                                 Jerry Switzer, Jr., Esquire
                                   150 N. Riverside Plaza
17                                 Chicago, Illinois 60606

18   Audio Operator:               BRANDAN J. MCCARTHY

19   Transcription Service:        Reliable
                                   1007 N. Orange Street
20                                 Wilmington, Delaware 19801
                                   Telephone: (302) 654-8080
21                                 E-Mail: gmatthews@reliable-co.com

22   Proceedings recorded by electronic sound recording:
     transcript produced by transcription service.
23

24

25

Case 20-61065-pwb Doc 198 Filed 02/27/20 Entered 02/27/20 15:00:39 Desc Main
Case 19-12193-KBO    Doc 171-1    Filed 11/01/19    Page 21 of 21
Document    Page 7 of 13

186

1  challenge before September 30, do you think?

2          MS. SEYMOUR:  Well, there's the credit bid issue,
3  Your Honor, so we may be here asking for it to be addressed
4  before the closing, because they're asking to -- that's the
5  whole point of our credit bid reservation.

6          THE COURT:  Uh-huh.

7          MS. SEYMOUR:  So, that was our concern, Your
8  Honor.  We don't want to have done what we're supposed to do
9  pursuant to the -- we didn't push for a longer period of time
10 because the debtor is trying to stick to the milestones that
11 we didn't push back on either, but we don't want that to be
12 declared an event of default.

13         MR. MCGUIRE:  Your Honor, I think that's exactly
14 what I said the provision was.  It's the filing by these guys
15 or the winning by them.

16         THE COURT:  Yeah.  No, I know.

17         Well, let me also give you my thoughts on one of
18 the other issues, and that is the committee.  I have always
19 taken the position that I don't care what a line item is for
20 committee professionals or debtors' professionals.  That if
21 there's not sufficient funds to pay professionals, generally,
22 that they will be paid *pro rata*, regardless of what limits
23 the DIP may place on that.  I consider the line items for
24 professionals to be an aggregate and it's inappropriate to
25 have line items.

```
                  UNITED STATES BANKRUPTCY COURT
                      DISTRICT OF DELAWARE

                               .      Chapter 11
IN RE:                         .
                               .      Case No. 16-10527 (MFW)
SPORTS AUTHORITY HOLDINGS,     .
INC., et al,                   .      Courtroom No. 4
                               .      824 Market Street
                               .      Wilmington, Delaware 19801
                    Debtors.   .
                               .      Tuesday, April 26, 2016
. . . . . . . . . . . . . . . .
                            EXCERPT
                      TRANSCRIPT OF HEARING
              BEFORE THE HONORABLE MARY F. WALRATH
                  UNITED STATES BANKRUPTCY JUDGE
APPEARANCES:

For the Debtors:           Michael R. Nestor, Esq.
                           Andrew L. Magaziner, Esq.
                           YOUNG, CONAWAY, STARTGATT
                            & TAYLOR, LLP
                           Rodney Square
                           1000 North King Street
                           Wilmington, Delaware 19801

For the Debtors:           Robert A. Klyman, Esq.
                           GIBSON, DUNN & CRUTCHER, LLP
                           333 South Grand Avenue
                           Los Angeles, California 90071




     (Appearances Continued)

     Audio Operator:           Electronically Recorded
                               by Brandon McCarthy, ECRO

     Transcription Company:    Reliable
                               1007 N. Orange Street
                               Wilmington, Delaware 19801
                               (302)654-8080
                               Email:  gmatthews@reliable-co.com

     Proceedings recorded by electronic sound recording, transcript
     produced by transcription service.
```

1    Thank you.

2            THE COURT:  All right.  Well, let me tell you what my

3    problems are with the proposed DIP.

4            While I agree with the debtor we can't use hindsight

5    to decide that the debtor should have only sought use of cash

6    collateral.  I accept that the debtor did not have much

7    leverage.  I -- without any other DIP loans available.  I do

8    think this DIP is -- I won't use the word "outrageous."  But it

9    really does not fall within the zone of reasonable DIPs.

10           And first and foremost, both from day one and

11   certainly it's been proven today, it's clear that while they

12   said that they were providing new money based on the formula,

13   there was no real ability for new money unless they were paid

14   down.  And it's clear that what has now occurred is that this

15   is a sale case.  And it's clear, I think, in all my prior

16   rulings, that if a case is being run for the benefit of the

17   lenders in order to foreclose upon their collateral, the

18   lenders are going to have to pay the cost of that.  And that

19   includes all administrative.  It includes the rent.  It

20   includes professional fees.  Whether or not the debtor is

21   correct, and I don't think the debtor is, there is no

22   commitment right now under the carveout language or otherwise

23   to pay accrued fees that accrue after May 28th.

24           There is no commitment to pay the stub rent.  There's

25   a commitment to escrow $8 million, a fraction of the stub rent

1    for the GOB leases.  But there's no commitment to allow that

2    payment to be made.  And I assume that the lenders are going to

3    retain a security interest in that cash escrow agreement.  Even

4    if they don't, that's clearly insufficient.

5            The debtor is correct under Montgomery Ward, you don't

6    have to pay the stub rent on the first day of the case.  But in

7    a case where the landlords and other administrative claims are

8    clearly not budgeted or being paid while the landlord -- excuse

9    me, while the secured lenders' collateral is being liquidated

10   and their secured claim is being paid, I have a serious problem

11   with that.

12           I think the fix is no 506(c) waiver for anybody.  And

13   to the extent that administrative claims are not paid at the

14   end of this case, there will be a claim against the lenders for

15   those costs under 506(c) to the extent they were necessary for

16   the preservation or realization of their collateral.

17           With respect to the DIP fees and interest, I accept

18   the debtors' testimony that the interest and other fees are

19   simply what were otherwise due to the lenders under the pre-

20   petition claims with the exception of the one six-million-

21   dollar fee.  I am not as outraged by that as the committee is,

22   and I don't think that that was unreasonable because I can't

23   look at it in hindsight.  I have to look at it from the

24   debtors' perspective at the day they entered into this DIP

25   loan, and given the terms and the amount, I'm not -- my

Case 20-61065-nwb Doc 199 Filed 02/27/20 Entered 02/27/20 15:00:39 Desc Main
Case 16-10527-MFW Doc 1463 Filed 04/28/16 Page 196 of 214 Document Page 11 of 13

196

1 conscious is not horrified by that.

2 With respect to the consignors, I think the fix is
3 that the interim order will govern, notwithstanding any other
4 language of the DIP. The interim and any final order I may
5 enter on the consignment motion will govern, notwithstanding
6 any other language in the DIP.

7 And I agree that there should not be a grant of a
8 security interest in any of the consigned goods under the DIP
9 to the DIP lenders or to the term lenders that would otherwise
10 interfere with their rights as set forth in those orders. But
11 I think that that's a wordsmithing.

12 With respect to the landlords, I think the denial of a
13 506(c) waiver should provide some protection to them. I'm just
14 not going to grant it either for landlords' fees, for
15 503(b)(9), for professional fees or for the stub rent. If
16 we're going to proceed with this case, through a sale process,
17 we'll see what happens after the sale. If the lenders won't
18 agree, then I'm prepared to convert the case today because I
19 just -- they can go to State Court and liquidate their
20 collateral, but you can't do it in bankruptcy without paying
21 the freight, as was argued.

22 I think I hit my issues. So I'm going to give the
23 parties some time to talk and then we'll come back and talk
24 scheduling. We'll stand adjourned.

25 (Recess taken at 5:08 p.m.)

```
                   UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE


       IN RE:                          .    Chapter 11
                                       .
       MORTGAGE LENDERS NETWORK USA,   .    Case No. 07-10146(PJW)
       INC.,                           .    (Jointly Administered)
                                       .
                    Debtor.            .    March 20, 2007 (2:06 p.m.)
                                       .    (Wilmington)
```

                                EXCERPT
                       TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE PETER J. WALSH
                  UNITED STATES BANKRUPTCY COURT JUDGE




           Proceedings recorded by electronic sound recording;
                 transcript produced by transcription service.

Case 20-61065-rwb71 Doc 108 Filed 02/27/20 Entered 02/27/20 15:00:39 Desc Main
Case 19-12366-BLS Doc 461 Filed 03/20/19 Page 13 of 21
Document      Page 13 of 13

21

1   financing to get some sort of a surcharge waiver.  I think
2   they're less standard in the context of a cash collateral use
3   request which is what we have here.
4           THE COURT: Well, I don't think they're standard in
5   a conventional DIP facility, not in my Court anyway.
6           MR. GODSHALL: Well, all right, well then -
7           THE COURT: Well, let me tell you what the law in
8   this Court's been for at least the last five years.  If the
9   Committee doesn't agree with the waiver, it doesn't happen.
10  I've had a couple of cases where the Committee has agreed to
11  it because of exigent circumstances, but absent the
12  Committee's approval I can't remember the last time I
13  approved such a waiver, if I ever did.
14          MR. GODSHALL: All right, well, then, in that case,
15  Your Honor, RFC's going to have a decision to make, and this
16  wasn't, obviously, something that the debtor negotiated for.
17  This is something that RFC has required.  Third objection I
18  heard, Your Honor, was RFC's control of the budget process
19  and this is maybe where your numbering and mine diverge
20  because under that heading I heard two separate objections,
21  and the first objection, Your Honor, is that this order only
22  permits professional fees to be paid in accordance with the
23  budget, and the budget has an amount of professional fees for
24  the Committee running through April 28 that is, I believe,
25  $210,000 for Committee counsel and $90,000, I believe, for