

**IT IS ORDERED as set forth below:**

**Date: March 3, 2020**

_____

**Paul W. Bonapfel
U.S. Bankruptcy Court Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| THE KRYSTAL COMPANY, *et al.*,[1] | ) | CASE NO. 20-61065-pwb |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**THIRD INTERIM ORDER (1) AUTHORIZING THE DEBTORS TO USE CASH
COLLATERAL, (2) GRANTING ADEQUATE PROTECTION TO PREPETITION
SECURED PARTIES, (3) MODIFYING THE AUTOMATIC STAY, AND
(4) PROVIDING NOTICE OF FINAL HEARING**

Upon the emergency motion, dated January 20, 2020 (the "**Motion**"),[2] of The Krystal

Company and the other above-captioned debtors and debtors in possession (each a "**Debtor**" and,

---

[1]     The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  The Krystal Company (4140); Krystal Holdings, Inc. (5381); and K-Square Acquisition Co., LLC (8916).  The location of the Debtors' corporate headquarters and service address is:  1455 Lincoln Parkway, Suite 600, Dunwoody, Georgia 30346.

[2]     Unless otherwise specified, all capitalized terms used herein without definition shall have the respective meanings given such terms in the Credit Agreement (as defined below).

collectively, the "**Debtors**") in the above-captioned Chapter 11 cases (the "**Chapter 11 Cases**"),

to use cash collateral of the Agent (as defined below) and other Prepetition Secured Parties (as

defined below) in accordance with the Budget (as defined below); and interim hearings on the

Motion having been held before this Court on January 22, 2020 (the "**First Interim Hearing**"),

February 4, 2020 (the "**Second Interim Hearing**"),  and February 13, 2020 (adjourned to March

3, 2020) (the "**Third Interim Hearing**")(collectively the "**Interim Hearings**"); and pursuant to

Rule 4001 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), Procedure

G of *Amended and Restated General Order 26-2019, Procedures for Complex Chapter 11 Cases,*

dated November 4, 2019 (the "**Complex Cases Procedures**"), notice of the Motion and the relief

sought at the Third Interim Hearing having been given by the Debtors as set forth herein; and this

Court having considered the Budget filed and served by the Debtors on March 2, 2020; and this

Court having considered the Motion, all pleadings related thereto, and the record made by the

Debtors at the Interim Hearings;  and it appearing to this Court that granting the relief sought in

the Motion solely on the terms and conditions contained herein is necessary and essential to

preserve the value of the Debtors' business and assets; and that such relief is fair and reasonable

and that entry of this Order is in the best interests of the Debtors and their respective estates and

creditors and without prejudice to the rights of the Agent and the Prepetition Secured Parties to,

among other things, seek additional adequate protection; and after due deliberation and

consideration, and good and sufficient cause appearing therefor:

THIS COURT HEREBY FINDS, DETERMINES, AND CONCLUDES AS FOLLOWS:[3]

---

[3] Pursuant to Bankruptcy Rule 7052, any findings of fact contained herein that may be construed as matters of law shall be treated as conclusions of law as if set forth below, and vice versa.

A.    Commencement of Cases.  On January 19, 2020 (the "**Petition Date**"), each of the Debtors filed with this Court a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").   The Debtors are operating their business and managing their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  An official committee of unsecured creditors (the "**Creditors' Committee**") was appointed on February 11, 2020.

B.    Jurisdiction; Venue.  This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief sought herein are Sections 105, 361, 362, 363, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014, and Procedure G of the Complex Case Procedures.  Venue of the Chapter 11 Cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Adequate Notice.  On January 20, 2020, the Debtors filed the Motion with this Court.  The Debtors have  provided notice of the Motion and the Interim Hearings by electronic mail, facsimile, hand delivery or overnight delivery to the following parties and/or to their counsel as indicated below:  (i) the Office of the United States Trustee for the Northern District of Georgia (the "**U.S. Trustee**"); (ii) the Debtors' thirty (30) largest unsecured creditors; (iii) counsel to the Agent (as defined below); (iv) counsel to the Creditors' Committee; (v) all parties known to the Debtors to have liens of record on assets of the Debtors as of the Petition Date; (vi) all financial institutions at which the Debtors maintain deposit accounts; (vii) the Internal Revenue Service; (viii) the Georgia Department of Revenue; (ix) the Attorney General for the State of Georgia; (x) the United States Attorney for the Northern District of Georgia; (xi) the state attorneys general for states in which the Debtors conduct business; and (xii) all other parties required to receive notice pursuant to Bankruptcy Rules 2002, 4001 or 9014 or requesting to receive notice prior to the date hereof (collectively, the "**Notice Parties**").   Given the nature of the relief sought in the Motion, this Court concludes that the foregoing notice was sufficient and adequate under the circumstances

- 3

and complies with the Bankruptcy Code, the Bankruptcy Rules, the Complex Case Procedures, and any other applicable law, and no further notice of, or hearing on, the relief sought at the Third Interim Hearing and the relief granted herein is necessary or required.

      D.      <u>Secured Indebtedness</u>.  The Prepetition Secured Parties (defined below) assert that as of the Petition Date, the Debtors were indebted and bound as described below:

      1.      The Krystal Company, as borrower, Wells Fargo Bank, National Association, as administrative agent (the "**Agent**") and the lenders party thereto from time to time (the "**Lenders**"), are parties to that certain Third Amended and Restated Credit Agreement, dated as of April 26, 2018 (as amended, restated, amended and restated, supplemented, and otherwise modified from time to time, the "**Credit Agreement**"), and together with all Loan Documents (as defined in the Credit Agreement) and the Secured Hedge Agreements and the Secured Cash Management Agreements (both as defined in the Credit Agreement) executed and/or delivered prior to the Petition Date (in each case, as amended and otherwise modified from time to time) (collectively, the "**Credit Documents**"), among The Krystal Company, as borrower, the Guarantors (as defined in the Credit Agreement) and other guarantors party thereto and to the other Credit Documents from time to time (the "**Guarantors**" and together with the Borrower, the "**Loan Parties**"), the Agent, Cadence Bank, N.A., as documentation agent, Regions Bank, as syndication agent, Wells Fargo Securities, LLC and Regions Capital Markets, as joint lead arranger and joint bookrunners, and the Lenders.  The Lenders, the Agent, the documentation agent, the syndication agent, and the joint lead arrangers and bookrunners, collectively referred to herein as, the "**Prepetition Secured Parties**".

      2.      The principal amount of the loans and other obligations owed by the Debtors, on a joint and several basis, to the Agent and the other Prepetition Secured Parties under the Credit Documents, exclusive of accrued but unpaid interest, costs, fees and expenses, premiums (if any), reimbursement obligations, indemnification obligations, continent obligations, other charges of whatever nature and any other obligations under the Credit Agreement, was not less than $49,551,522.00 as of the Petition Date.  All loans and other Secured Obligations (as defined in the Credit Agreement) of the Debtors arising under or in connection with the Credit Agreement or any other Credit Document shall collectively be referred to herein as the "**Prepetition Indebtedness**."

      3.      Pursuant to the Amended and Restated Guaranty, dated as of June 28, 2013 (as amended and otherwise modified from time to time, the "**Guaranty**") and the other applicable Credit Documents, the Debtors each unconditionally guaranteed, on a joint and several basis, to the Agent and the Lenders the punctual and complete performance, payment and satisfaction when due and at all times thereafter of all of the Prepetition Indebtedness.

      4.      Pursuant to the Credit Agreement and the other applicable Credit Documents, the Agent was granted, for its benefit and the benefit of the other Prepetition Secured Parties, continuing liens, mortgages and security interests against, on, and in the Prepetition Collateral (as defined below) to secure the repayment of the Prepetition Indebtedness.  Such liens, mortgages, and security interests of the Agent against, on, and in the Prepetition Collateral are

referred to herein as the "**Prepetition Liens**".  All Collateral (as defined in the Credit Documents) on which the Agent, for its benefit and the benefit of the Prepetition Secured Parties, has a valid, binding and properly perfected lien under applicable law, whether real or personal, tangible or intangible, that existed as of the Petition Date and all Proceeds thereof, whether arising pre-petition or post-petition to the extent permitted by Section 552(b) of the Bankruptcy Code, in all cases wherever located, shall hereafter be referred to as the "**Prepetition Collateral**."

E.     Cash Collateral Defined.  For purposes of this Order, the term "**Cash Collateral**" shall mean and include all "cash collateral" as defined by Section 363(a) of the Bankruptcy Code.

F.     Exigent Circumstances.  The Debtors and their estates will suffer immediate and irreparable harm unless the Debtors are immediately authorized to use Cash Collateral on terms and conditions set forth herein.

G.     Good Faith. The Agent and Prepetition Secured Parties have acted in good faith in consenting or not otherwise objecting to the use of Cash Collateral by the Debtors.

H.     Budget.  Attached hereto as Exhibit A is a budget (the "**Budget**") setting forth on a line item basis the Debtors' anticipated cash receipts and expenditures on a weekly basis and all necessary and required expenses which the Debtors expect to incur during the period covered by the Budget.  The Budget may be amended, modified, or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) prepared by the Debtors and approved by the Agent and the Required Lenders (as defined in the Credit Documents) in writing in their sole discretion (each such additional budget, a "**Supplemental Approved Budget**") without further notice, motion or application to, order of, or hearing before, this Court; provided, however, that the Debtors shall promptly file a copy of any Supplemental Approved Budget at least five (5) business days prior to the effective date of the Supplemental Approved Budget and in the absence of an objection thereto, the Supplemental Approved Budget shall be a Budget.

I.     Bid Procedures.  The Agent and the Required Lenders deem entry of this Court's order ("**Bid Procedures Order**") approving the bidding procedures agreed to by the Debtors, Committee and Agent ("**Bid Procedures**") to be an essential element of protection for the use of

- 5 -

cash collateral, and necessary to their consent to the use of cash collateral during this period.

J.    <u>Immediate Entry of this Order</u>.  The Debtors have requested immediate entry of this Order pursuant to, and have complied with, Bankruptcy Rule 4001(b), and the Complex Case Procedures and have an immediate need to obtain the use of the Prepetition Collateral, including the Cash Collateral (in the amount and in the manner set forth in the Budget) in order to, among other things, preserve and maintain the value of their assets and businesses.  Absent entry of this Order, the Debtors' estates and reorganization efforts will be immediately and irreparably harmed. For the reasons stated above and as stated on the record at the Interim Hearings, this Court concludes that immediate entry of this Order is in the best interests of the Debtors' estates and creditors.

Based upon the foregoing findings, stipulations, and conclusions, and upon the record made before this Court at the hearing on the Motion, and good and sufficient cause appearing therefore:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    <u>Motion Granted</u>.  The Motion is granted on an interim basis in accordance with the terms and conditions of this Order.  Subject to the terms hereof, this Order is valid immediately and is fully effective upon its entry.  All objections to the entry of this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.    <u>Authorization</u>.  The Debtors are authorized to use Cash Collateral from the date hereof until the earlier of (a) the Termination Date (subject to the Limited Use Period (both as defined herein) or (b) April 5, 2020 (the "**Cash Collateral Period**"); provided that use of Cash Collateral shall be solely in accordance with and pursuant to the terms and provisions of this Order and the Budget, and solely to the extent required to pay the expenses necessary to avoid immediate and irreparable harm to the estate and contained in the Budget.  For each week set forth in the

Budget, the aggregate expenditures for each week shall not exceed the total budgeted expenses in the Budget for such week; provided, however, that the Debtors shall be entitled to pay Operating Disbursements in excess of the Budget provided that such amounts do not exceed ten percent (10%) of the budgeted amounts for aggregate Operating Disbursements on a cumulative basis for the four week Budget period tested on a weekly basis (the "**Permitted Variance**"). Notwithstanding anything to the contrary in this Order, each Debtor shall be deemed to have expended any unencumbered cash that was available to it as of or after the Petition Date before expending any Cash Collateral.

3.    <u>Accounting of Cash Collateral; Access to Books and Records</u>.  The Debtors shall, pursuant to Section 363(c)(4) of the Bankruptcy Code, account for all Cash Collateral which is now, and which may hereafter be, in their possession, custody or control, and shall not, without further order of this Court, transfer any of such Cash Collateral to any of their non-Debtor affiliates or subsidiaries.  Without further order of this Court, the Debtors shall not make any changes and shall continue to collect, deposit and utilize funds in accordance with the Debtors' prepetition Cash Management System (as described more fully in the Debtors' First Day Cash Management Approval Motion which shall be approved on a final basis in a form acceptable to the Agent on the date hereof). The Debtors shall provide to the Agent and counsel to the Creditors' Committee, so as to be actually received within four (4) business days following the end of each week, weekly line-by-line certified variance reports for the preceding weekly period and on a cumulative basis from the Petition Date to the report date, comparing actual cash receipts and disbursements to amounts projected in the Budget.  The Prepetition Liens against, on and in the Prepetition Collateral shall continue to attach to the Cash Collateral irrespective of the commingling of the Cash Collateral with other cash of the Debtors.  Any failure by the Debtors on or after the Petition

Date to comply with the segregation requirements of Section 363(c)(4) of the Bankruptcy Code in respect of any Cash Collateral shall not be used as a basis to challenge the Prepetition Indebtedness (or any Obligations under (and as defined in) the Credit Agreement), or the extent, validity, enforceability or perfected status of the Prepetition Liens.

4.    <u>Postpetition Collateral Defined</u>.  As used in this Order, the term "**Postpetition Collateral**" means all real and personal property, tangible and intangible property and assets of each of the Debtors of any kind or nature whatsoever, wherever located, whether now existing or hereafter acquired or arising, including, without limitation, all cash (including all Cash Collateral, wherever held), and in each case the proceeds, products, offspring, rents, and profits of all of the foregoing, including insurance proceeds, and all proceeds of Sections 544, 545, 547, 548, 550, and 553 of the Bankruptcy Code (the "**Avoidance Actions**"); <u>provided</u> that in no event shall the Postpetition Collateral include the Avoidance Actions themselves; and provided, further however, that any liens granted in this Order with respect to real property interests shall not attach to the Debtors' leasehold interests, but shall attach to any proceeds of any such leasehold interests.

5.    <u>Prior Lien Defined</u>.  As used in this Order, the term "**Prior Liens**" means only valid, enforceable, continuing, and non-avoidable liens and security interests in the Prepetition Collateral or any other property or assets of the Debtors in existence on the Petition Date that were properly perfected prior to the Petition Date (or properly perfected on or after the Petition Date to the extent permitted by Section 546(b) of the Bankruptcy Code), which are not subject to avoidance, disallowance, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and which are senior in priority to the Prepetition Liens under applicable law and after giving effect to any lien release, subordination or inter-creditor agreements.  The right of a seller of goods to reclaim goods under section 546(c) of the Bankruptcy Code is not a Prior Lien.

For the avoidance of doubt, the Prior Liens shall not include, or be deemed to include, any or all of the Prepetition Liens or Adequate Protection Liens (as defined in <u>paragraph 6</u> below). All parties retain and reserve all their rights to dispute the validity, priority, enforceability, perfection, avoidability, or extent of any asserted Prior Lien.

6.      <u>Adequate Protection to Agent and the other Prepetition Secured Parties</u>. As adequate protection for the Prepetition Secured Parties' respective interests in the Prepetition Collateral, the Agent and the other Prepetition Secured Parties are hereby granted the following (but only to the extent of any Adequate Protection Obligations as defined in <u>Paragraph 6(c)</u> below):

a.      <u>Replacement Liens</u>. Pursuant to Sections 361(2), 362, 363(c)(2), and 363(e) of the Bankruptcy Code, the Agent, for its benefit and the benefit of the Prepetition Secured Parties, is hereby granted by each Debtor continuing valid, binding, enforceable and perfected first priority liens and security interests against, in, and on all of the Postpetition Collateral (the "**Adequate Protection Liens**"). The Adequate Protection Liens shall be subordinate only to the (i) Prepetition Liens and (ii) Prior Liens, but only to the extent they were valid, enforceable, perfected, non-avoidable, and senior in priority and only to the extent of the property subject to such liens.

b.      <u>Adequate Protection Claim</u>. Pursuant to Sections 503(b) and 507(a) of the Bankruptcy Code, the Agent, for its benefit and the benefit of the Prepetition Secured Parties, shall have an allowed superpriority administrative expense claim under Section 507(b) of the Bankruptcy Code (the "**Adequate Protection Claim**") against each Debtor and its respective estate on a joint and several basis, whether in these Chapter 11 Cases or any other subsequent proceedings under the Bankruptcy Code, including, without limitation, any Chapter 7 proceeding (collectively, the "**Successor Case**").

c.    <u>Adequate Protection Obligations Defined; Other Priority Matters</u>.    The Adequate Protection Liens and Adequate Protection Claim shall secure the payment of the Prepetition Indebtedness in an amount equal to any diminution in the value of the Agent's, Lenders' and other Prepetition Secured Parties' respective interests in the Prepetition Collateral from and after the Petition Date (the "**Adequate Protection Obligations**"), including, without limitation, any such diminution resulting from the following:  (i) the use by the Debtors of the Prepetition Collateral, including, without limitation, the Cash Collateral, (ii) the imposition of the automatic stay pursuant to Section 362(a) of the Bankruptcy Code, or (iii) the physical deterioration, consumption, use, sale, lease, disposition, or shrinkage of the Prepetition Collateral.

d.    <u>Perfection</u>.  The Adequate Protection Liens shall be, and hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the Petition Date, and no notice, filing, mortgage recordation, control, possession, further order, or other act, shall be required to effect such perfection.  The Agent may, but shall not be required to, file a certified copy of this Order in any filing or recording office in any state, county or other jurisdiction in which any Debtor has real or personal property and such filing or recording shall be accepted and shall constitute sufficient evidence of perfection of such party's interests in the Postpetition Collateral as of the Petition Date, but with the priorities as set forth herein.  All filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.  The Adequate Protection Liens shall be deemed legal, valid, binding, enforceable, and perfected liens, not subject to subordination, impairment or avoidance, for all purposes in the Chapter 11 Cases and any Successor Case.

7.    <u>Preservation of Value</u>.  The Debtors' use of Cash Collateral shall be conditioned upon the Debtors' observance of, and timely performance with, the terms, provisions, covenants,

and agreements specified in the Credit Documents pertaining to the maintenance, insurance, preservation and inspection of the Collateral, <u>provided</u>, that the Debtors shall not be in violation of this Order for failing to comply with the maintenance, preservation or inspection covenants to the extent they are using their good faith best efforts to comply.

8.    <u>Rights Reserved; No Waiver</u>.

a.    The entry of this Order is without prejudice to, and does not expressly or implicitly constitute a waiver of, the right of the Agent and any other Prepetition Secured Party to seek any other or supplemental relief in respect of any Debtor, including the right to seek additional adequate protection.  The rights of the Agent and the other Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of Section 362 of the Bankruptcy Code and (ii) request dismissal of any of the Chapter 11 Cases or a Successor Case, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, are expressly reserved.  Except as specifically set forth herein regarding the use of Cash Collateral, nothing contained in this Order shall be in lieu of, or limit, prejudice or otherwise affect, any rights, claims, liens, security interests or priorities of the Agent, the Lenders or other Prepetition Secured Parties under the Credit Documents or applicable law, and all such rights, claims, liens, security interests and priorities are reserved.  The rights of parties asserting a valid trust fund interest in property in the Debtors' possession are expressly reserved along with any objections and defenses thereto.  Nothing in this Order, including without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding or conclusion of law that the interests of the Agent and the Prepetition Secured Parties are, can be, or will be adequately protected or impair, limit or modify (i) the right of the Agent and

any of the Prepetition Secured Parties to request additional adequate protection during the Chapter 11 Cases or any Successor Cases, or (ii) the right of the Debtors, the Creditors' Committee or any other party in interest to oppose such request.

b.      The rights of any secured party (including the Agent and the other Prepetition Secured Parties) to credit bid under Sections 363(k) of the Bankruptcy Code and other applicable law in connection with any proposed sale, transfer, lease or disposition of Prepetition Collateral, or to object to such proposed transaction, are preserved; provided, however, that nothing in this Order shall waive, restrict or limit the rights of the Debtors or the Creditors' Committee from being heard with respect to any issues under Sections 363(k) of the Bankruptcy Code.

c.      Nothing in this Order shall constitute a finding as to the extent, validity, priority, perfection or amount of the Prepetition Indebtedness or Prepetition Liens.

d.      The Debtors shall have waived any right to challenge the amount, scope, validity, enforceability, extent, perfection, priority, or avoidability of any aspect of the Prepetition Indebtedness and Prepetition Liens unless the Debtors shall have provided to the Agent (with a copy to counsel for the Committee) no later than April 3, 2020, a written statement specifying in detail each basis for objection to the Prepetition Indebtedness and Prepetition Liens.  The Committee shall have waived any right to challenge the amount, scope, validity, enforceability, extent, perfection, priority, or avoidability of any aspect of the Prepetition Indebtedness and Prepetition Liens unless the Committee shall have filed with the Court a motion for standing no later than April 21, 2020, which contains a written statement specifying in detail each basis for objection to the Prepetition Indebtedness and Prepetition Liens.  Any such

motion for standing shall toll the Committee's rights with respect to any challenge to the Prepetition Agent's and Prepetition Lenders' Prepetition Indebtedness and Prepetition Liens.

9.    <u>Survival</u>.  The provisions of this Order and any actions taken pursuant hereto shall: (a) survive the Termination Date and entry of any order:  (i) converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code; (ii) substantively consolidating any of the Debtors or their respective estates; (iii) confirming a Chapter 11 plan in any of the Chapter 11 Cases; or (iv) dismissing or closing any of the Chapter 11 Cases; and (b) shall continue in full force and effect notwithstanding the Termination Date or entry of any such order described above.

10.    <u>Effect of Modification or Appeal</u>.  Any subsequent stay, modification, reversal, amendment or vacation of this Order shall not alter, modify, impair or affect the validity, priority, perfection or enforceability of any claim, lien, or security interest of the Prepetition Secured Parties authorized, created or granted pursuant to this Order and outstanding or existing immediately prior to the actual receipt of written notice by the Agent of the effective date of such stay, modification, reversal, amendment or vacation.  Notwithstanding any such stay, modification, reversal, amendment or vacation, all uses of Cash Collateral and other Prepetition Collateral by the Debtors prior to the actual receipt of written notice by the Agent of the effective date of such stay, modification, reversal, amendment or vacation, shall be governed in all respects by the original provisions of this Order and the Prepetition Secured Parties shall be entitled to all of the rights, privileges, remedies, protections and benefits granted herein and all rights provided by the Bankruptcy Code.

11.    <u>No Liability to Third Parties</u>.  In making decisions to permit the Debtors to use Cash Collateral, in approving any budget or in taking any actions permitted by this Order, the Prepetition Secured Parties shall not (i) be deemed to be in control of the operations of any Debtor

or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of any Debtor, and/or (ii) owe any fiduciary duty to any Debtor, its respective creditors or its respective estate (or have any duty of trust or confidence with any of the foregoing), and their relationship with each Debtor shall not constitute or be deemed to constitute a joint venture or partnership with such Debtor.

12.    <u>Termination</u>:

a.    Upon the occurrence and during the continuation of a Termination Event (as defined in <u>sub-paragraph (b)</u> below), the Agent may give notice by email to counsel for the Debtors and Committee specifying with particularity the occurrence of any Termination Event.  The Debtor shall have three (3) business days to cure such Termination Event.  If the Termination Event is not timely cured within such period, the authority and approval of the Debtors to use Cash Collateral pursuant to this Order shall automatically terminate (the date of such termination is referred to herein as the **"Termination Date"**) and any proposed use of Cash Collateral on and after the Termination Date shall be only pursuant to further order of this Court, with the rights, objections and defenses of all persons, entities, and parties-in-interest (including the Prepetition Secured Parties) reserved with respect thereto; provided that the Debtors shall be permitted to use Cash Collateral for a five (5) business day period after the Termination Date (the "**Limited Use Period**") but solely to meet ordinary course payroll, payroll tax and sales and use tax obligations and to pay expenses in accordance with the Budget (including any Permitted Variance) that are necessary to avoid immediate and irreparable harm to the

- 14

Debtors' estates (on notice to the Agent), pending an emergency hearing before the

Court.

b.      As used in this Order, the term "**Termination Event**" shall mean any of the

following events:

(1)     any Debtor fails to comply with the Budget or a
Supplemental Approved Budget (including Permitted Variance);

(2)     the failure by any of the Debtors to comply with the terms,
covenants or conditions of this Order;

(3)     any modification, change, or amendment to the Debtors'
cash management system without consent from the Agent; or

(4)     any modification, change or amendment to the Bid
Procedures, and the dates therein, without consent of the Agent and the Required Lenders.

12.    <u>Reporting; Access to Books and Records</u>.  The Debtors shall continue to comply

with the reporting obligations and requirements set forth in the Credit Documents (other than with

respect to any compliance certificates and audited financial statements) and, upon written request

of the Agent, shall provide the Agent (and its professionals) with such other reporting and financial

information as may be reasonably requested by the Agent from time to time and reasonably prompt

access to the Debtors' books and records.  In addition to, and without limiting whatever rights to

access the Agent and the other Prepetition Secured Parties have under the Credit Documents, upon

reasonable notice and at reasonable times during normal business hours, the Debtors shall permit

the Agent and the other Prepetition Secured Parties (and their respective representatives, agents,

and professionals) (i) to have access to and inspect the Debtors' properties, (ii) to examine the

Debtors' books and records and (iii) to discuss the Debtors' affairs and finances with the Debtors'

Chief Restructuring Officer and retained professionals.  The Debtors and the Prepetition Secured

Parties agree to continue  weekly teleconferences (or at such other times as the parties may agree)

to discuss, as requested by the Agent or the other Prepetition Secured Parties the Budget, the

Debtors' operations, the sale process, the status of the Chapter 11 Cases, or any other matters agreed to by the parties. Nothing in this Order shall be construed to require the Debtors to provide information or documents protected by an applicable privilege.

13.     <u>Successors and Assigns</u>.  The provisions of this Order (including all findings contained herein) shall be binding upon, and inure to the benefit of, the Agent, the Lenders, the other Prepetition Secured Parties, and the Debtors and their respective estates, and their respective successors and assigns, including, without limitation, any trustee, examiner, or other fiduciary hereafter appointed as a legal representative of any of the Debtors or their estates, whether in these Chapter 11 Cases or any Successor Case. Except as expressly provided for herein, this Order does not create any rights for the benefit of any creditor, equity holder, or other person or entity, or any direct, indirect, or incidental beneficiary, other than the Agent, the Lenders, and the other Prepetition Secured Parties. For all adequate protection and stay relief purposes throughout the Chapter 11 Cases or any Successor Case, the Prepetition Secured Parties shall be deemed to have requested adequate protection as of the Petition Date with respect to all Prepetition Collateral, which request shall be deemed to survive the Termination Date.

14.     <u>Jurisdiction</u>.  This Court shall retain exclusive jurisdiction to enforce the terms of this Order and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Order.

15.     <u>Findings of Fact and Conclusions of Law</u>.  This Order constitutes, where applicable, findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry hereof. The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. To the extent any findings of fact constitute conclusions of law, they are adopted as such. To the extent any

conclusions of law constitute findings of fact, they are adopted as such.  Notwithstanding Bankruptcy Rules 4001, 6004, 7062 or 9024, any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

16.    <u>No Impact on Certain Contracts/Transactions</u>.  No rights of any person or entity under Sections 555, 556, 559, 560, 561, and 562 of the Bankruptcy Code shall be affected by the entry of this Order as to any contract or transaction of the kind listed in such Sections of the Bankruptcy Code.

17.    <u>Controlling Effect of Order</u>.  To the extent any provision of this Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Order shall control and govern to the extent of such conflict.  In the event of any inconsistency between the provisions of this Order and any "First Day" order in the Chapter 11 Cases, the provisions of this Order shall govern and control, and any payments to be made under such "First Day" order shall be made in accordance with and subject to this Order and the Budget.  Unless otherwise specified herein or the context requires otherwise, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to this Order.

18.    <u>Section 507(b) Reservation</u>.  Nothing in this Order shall impair, limit, or modify the application of Section 507(b) of the Bankruptcy Code in the event that the adequate protection provided hereunder to the Agent or any of the Lenders or other Prepetition Secured Parties is insufficient to compensate for any Adequate Protection Obligations arising during the Chapter 11 Cases or any Successor Cases.

19.    <u>Good Faith Deposits</u>.  The Debtors shall be permitted to open and establish a new account with Wells Fargo Bank, National Association (the "Good Faith Deposit DIP Account")

for the sole purpose of depositing any good faith deposits ("**Good Faith Deposits**") received by the Debtors in connection with any *Bidding Procedures Order* entered by this Court. Notwithstanding anything to the contrary contained in this order or otherwise, no liens or security interests shall attach to the funds in the Good Faith Deposit DIP Account unless and until released to the Debtors.

20.     <u>Notice of Final Hearing; Service of Order</u>.  A final hearing on the Motion will be held at 1:45 p.m. on April 1, 2020, at Courtroom 1401, United States Bankruptcy Court, Russell Federal Building, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303 (the "**Final Hearing**"). Promptly after the entry of this Order, the Debtors shall serve a copy of this Order, upon the parties identified on the Limited Service List as provided in the Procedures for Complex Chapter 11 Cases pursuant to General Order 26-2019, and the Debtors shall file a certificate of service regarding same with the Clerk of the Court.  Such service shall constitute good and sufficient notice of the Final Hearing.  Nothing in this Order shall be construed to prejudice the rights of the Agent or any Prepetition Secured Party to file additional pleadings prior to the Final Hearing, which are expressly reserved. All objections previously filed or made at the Interim Hearings by the Agent and/or the Prepetition Secured Parties shall be deemed reserved until the Final Hearing. The Debtors shall file any proposed budget for the further use of Cash Collateral no later than March 27, 2020.

21.     Debtors' authority to use Collateral, including Cash Collateral, may be extended beyond April 5, 2020, and the hearing scheduled for April 1, 2020 at 1:45 p.m. adjourned to a later date, on such terms, conditions, modifications and Supplemental Budget as are agreeable to the Debtors, Agent and Committee by written stipulations ("**Extension Stipulation"**) without further notice, motion or application to, order of, or hearing before, this Court; provided, however, that

the Debtors shall promptly file a copy of the Extension Stipulation and any Supplemental

Approved Budget at least two (2) business days prior to the hearing scheduled for April 1, 2020 at

1:45 p.m.  In such event, the Cash Collateral Period shall be extended to the date specified in the

Extension Stipulation.

**END OF DOCUMENT**


[Signature of counsel on next page]

**Prepared and presented by:**

SCROGGINS & WILLIAMSON, P.C.

By: */s/ J. Robert Williamson*
      J. ROBERT WILLIAMSON
      Georgia Bar No. 765214
      ASHLEY REYNOLDS RAY
      Georgia Bar No. 601559
      MATTHEW W. LEVIN
      Georgia Bar No. 448270

4401 Northside Parkway
Suite 450
Atlanta, GA 30327
T: (404) 893-3880
F: (404) 893-3886
E: rwilliamson@swlawfirm.com
   aray@swlawfirm.com
   mlevin@swlawfirm.com

*Counsel to the Debtors*

# <u>EXHIBIT A</u>

**Budget**

6415120.v2

EXHIBIT A

**The Krystal Company**
**Weekly Cash Flow Forecast**
*Cash Collateral Budget*

| | Actual / Estimate | | | | | | | Forecast | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Reporting Period & Week: | W4 P01 2020 | W1 P02 2020 | W2 P02 2020 | W3 P02 2020 | W4 P02 2020 | W1 P03 2020 | | W2 P3 2020 | W3 P3 2020 | W4 P3 2020 | W1 P4 2020 | W2 P4 2020 | |
| Projected Week | A1 | A2 | A3 | A4 | A5 | Est 6 [1] | Period | 1 | 2 | 3 | 4 | 5 | Period |
| Week Ending | 1/26/2020 | 2/2/2020 | 2/9/2020 | 2/16/2020 | 2/23/2020 | 3/1/2020 | Total | 3/8/2020 | 3/15/2020 | 3/22/2020 | 3/29/2020 | 4/5/2020 | Total |
| **Operating Receipts** | | | | | | | | | | | | | |
| Restaurant Receipts | $ 4,205 | $ 3,933 | $ 5,255 | $ 4,408 | $ 4,251 | $ 4,729 | $ 26,780 | $ 4,712 | $ 4,712 | $ 4,712 | $ 4,612 | $ 4,612 | $ 23,359 |
| Franchisee and Royalty Receipts | - | 86 | 90 | - | 91 | 45 | 311 | 144 | 48 | 144 | 48 | 142 | 526 |
| Other Receipts | - | 47 | 3 | 0 | - | - | 50 | - | - | - | - | - | - |
| **Total Operating Receipts** | **4,205** | **4,066** | **5,347** | **4,408** | **4,342** | **4,773** | **27,142** | **4,856** | **4,760** | **4,856** | **4,659** | **4,754** | **23,885** |
| | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | |
| Payroll & Benefits | 1,997 | 1,113 | 2,015 | 993 | 2,121 | 1,151 | 9,389 | 1,981 | 939 | 2,014 | 808 | 2,328 | 8,071 |
| G&A (Non-Payroll) | 29 | 140 | 94 | 169 | 16 | 11 | 458 | 115 | 115 | 115 | 115 | 115 | 575 |
| Food & Paper Costs | - | - | 160 | 1,366 | 1,197 | 1,325 | 4,049 | 1,425 | 1,425 | 1,425 | 1,399 | 1,399 | 7,072 |
| Marketing Costs | - | 201 | 205 | 190 | 250 | 445 | 1,292 | 169 | 169 | 180 | 186 | 186 | 889 |
| Restaurant Operating Expenses | 31 | 145 | 146 | 683 | 349 | 257 | 1,612 | 638 | 773 | 773 | 620 | 695 | 3,499 |
| Sales Taxes | 1,571 | - | - | - | 1,323 | - | 2,894 | - | - | 1,370 | - | - | 1,370 |
| Occupancy | - | - | 1,534 | - | - | 1,567 | 3,101 | 22 | 22 | 22 | 1,594 | 26 | 1,686 |
| **Total Operating Disbursements** | **3,628** | **1,599** | **4,154** | **3,402** | **5,257** | **4,756** | **22,795** | **4,350** | **3,443** | **5,899** | **4,722** | **4,749** | **23,163** |
| **Operating Cash Flow** | **578** | **2,467** | **1,194** | **1,007** | **(915)** | **17** | **4,347** | **506** | **1,317** | **(1,043)** | **(63)** | **5** | **722** |
| | | | | | | | | | | | | | |
| **Non-Operating Disbursements/(Receipts)** | | | | | | | | | | | | | |
| Tax Payments/(Refunds) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Board Fees | - | 8 | - | - | - | - | 8 | - | - | - | - | 8 | 8 |
| **Total Non-Operating Disbursements/(Receipts)** | **-** | **8** | **-** | **-** | **-** | **-** | **8** | **-** | **-** | **-** | **-** | **8** | **8** |
| **Net Cash Flow** | **578** | **2,460** | **1,194** | **1,007** | **(915)** | **17** | **4,340** | **506** | **1,317** | **(1,043)** | **(63)** | **(3)** | **714** |
| | | | | | | | | | | | | | |
| **Chapter 11 Related Cash Flows** | | | | | | | | | | | | | |
| Utility Deposits into Escrow | - | - | - | 254 | - | - | 254 | - | - | - | - | - | - |
| Vendor Support Fees | - | 100 | - | - | 19 | - | 119 | 6 | 6 | 56 | 6 | 6 | 81 |
| Debtor Professional Fees | - | - | - | - | - | 178 | 178 | 279 | 13 | 1,350 | - | - | 1,642 |
| UCC Professional Fees | - | - | - | - | - | - | - | - | - | 259 | - | - | 259 |
| US Trustee Fees | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Chapter 11 Related Cash Flows** | **-** | **100** | **-** | **254** | **19** | **178** | **551** | **285** | **20** | **1,665** | **6** | **6** | **1,982** |
| **Net Cash Flow** | **578** | **2,360** | **1,194** | **753** | **(934)** | **(161)** | **3,789** | **221** | **1,297** | **(2,708)** | **(69)** | **(9)** | **(1,268)** |
| | | | | | | | | | | | | | |
| **Beginning Book Cash[2]** | **2,460** | **3,038** | **5,398** | **6,592** | **7,344** | **6,410** | **2,460** | **6,250** | **6,471** | **7,767** | **5,060** | **4,991** | **6,250** |
| Change in Cash | 578 | 2,360 | 1,194 | 753 | (934) | (161) | 3,789 | 221 | 1,297 | (2,708) | (69) | (9) | (1,268) |
| **Ending Book Cash** | **$ 3,038** | **$ 5,398** | **$ 6,592** | **$ 7,344** | **$ 6,410** | **$ 6,250** | **$6,250** | **$6,471** | **$7,767** | **$5,060** | **$4,991** | **$4,982** | **$4,982** |

(1) Preliminary estimate pending weekly reconciliation of bank accounts.
(2) Beginning Cash for the week ending 3/08/2020 is a preliminary estimate.