UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re:<br><br>THE KRYSTAL COMPANY, *et al.*,[1]<br><br>                  Debtors. | Chapter 11<br><br>Case No. 20-61065 (PWB)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 18, 39, 121, and 218**<br><br>**Hearing Date: April 1, 2020 at 2:30 p.m.** |

**RESERVATION OF RIGHTS OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (1) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL; (2) GRANTING ADEQUATE PROTECTION TO LENDERS; (3) MODIFYING THE AUTOMATIC STAY; (4) SCHEDULING A FINAL HEARING; AND (5) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") of The Krystal Company *et al.*, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby files this reservation of rights (the "ROR") to the *Debtors' Emergency Motion for Entry of Interim and Final Orders (1) Authorizing the Debtors to Use Cash Collateral; (2) Granting Adequate Protection to Lenders; (3) Modifying the Automatic Stay; (4) Scheduling a Final Hearing; and (5) Granting Related Relief* (the "Motion").[2] In support of this ROR, the Committee respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: The Krystal Company (4140); Krystal Holdings, Inc. (5381); and K-Square Acquisition Co., LLC (8916). The location of the Debtors' corporate headquarters and service address is: 1455 Lincoln Parkway, Suite 600, Dunwoody, Georgia 30346.

[2] Docket No. 18. Capitalized terms used but not otherwise defined in this ROR shall have the meanings ascribed to such terms in the Motion.

14831061v1

1.     The Debtors' need for the use of cash collateral as they navigate through these uncertain times is clear.  The Committee supports the Debtors continued use of cash collateral pursuant to a reasonable budget.  Together, the current budget and prior budgets, however, disproportionately allocate the amount available to pay estate retained professionals between the Debtors' primary and local counsel and financial advisor (the "Debtors' Professionals") and the Committee's primary and local counsel and financial advisor (the "Committee's Professionals") to the detriment of the Committee.[3]

2.     The Committee understands that the Debtors are seeking the further interim use of cash collateral.  The Committee reserves all rights to object to the professional fee allocations in any subsequent requests for the use of cash collateral, on an interim or final basis, and any application for the payment of professional fees.

3.     Specifically, for the period from February 1, 2020 through May 17, 2020, the budgets provide a total of $2,385,760 for the Debtors' Professionals and the Committee's Professionals.[4]  Of that $2,385,760, the Debtors have allocated $1,891,608 for the Debtors' Professionals, or approximately 79.3% of the total budget, and only $494,000 for the Committee's

---

[3]     For purposes of this Supplemental Objection, the Debtors' investment banker, Piper Sandler & Co. ("Piper"), and claims' agent, Kurtzman Carson Consultants LLC ("KCC"), have been excluded from the professional fee budget analysis.

[4]     On February 5, 2020, the Court approved a four-week budget ending the week of March 1, 2020, which approved a total of $884,000 for estate retained professionals.  Of the $884,000, the Debtors allocated $760,000 to the Debtors' Professionals and only 14% of that amount, or $124,000, to the Committee's Professionals.

On March 3, 2020, the Court approved a four-week budget ending April 5, 2020, which approve a total of $1,359,000 for estate retained professionals.  Of the $1,359,000, the Debtors allocated $1,100,000 for the Debtors' Professionals and only 19% of that amount, or $259,000, to the Committee's professionals.

On March 27, 2020, the Debtors filed the fourth interim budget for the period ending May 17, 2020 seeking approval of $1,050,000 for estate retained professionals.  Of the $1,050,000, the Debtors allocated $840,000 for the Debtors' Professionals and only 20% of that amount, or $210,000, for the Committee's Professionals.

2

14831061v1

Professionals, or approximately 20.7% of the total budget.[5] The disparity increases when reviewing the budgets from the Petition Date through May 17, 2020, with the Debtors' Professionals receiving $2,424,539 million, or 83.1% of the total budgeted professional fees.[6]

4. Section (G)(vi) of the *Amended and Restated General Order 26-2019* provides that any motion related to the use of cash collateral must highlight disparate treatment in a professional fee carve-out between the professionals retained by the creditors' committee from those retained by the debtors. This is presumably so that the court can evaluate the propriety of any disparate treatment among these professionals that is prejudicial and could impair the committee's ability to fulfill its fiduciary duties.[7] Moreover, where, as here, there is no professional fee carve-out, there is no legal basis for the Debtors to provide disparate treatment to similarly situated administrative fee creditors. While the Committee understands that the Debtors and their lenders control the total amount of the budget, the Debtors' have no right to unilaterally allocate that budget in a way that prevents the Committee from fulfilling its fiduciary duties, or that exposes the Committee's Professionals to a disproportionate risk of non-payment.

5. In sum, the Debtors' allocation of approximately 20% of the total estate retained professional fee budget (excluding Piper and KCC) to the Committee Professionals is unreasonably disproportionate. While the Committee does not expect an equal allocation of fees

---

[5] *Amended and Restated General Order 26-2019, Procedures for Chapter 11 Cases*, dated November 4, 2019 (requiring that debtors disclose disparate treatment between professionals for the debtors and the committee in the cash collateral or financing motion).

[6] The amounts referenced in this paragraph were calculated by subtracting amounts that appear in more than one budget due to timing of payment issues.

[7] *See Westmoreland Human Opportunities, Inc. v. Walsh,* 246 F.3d 233, 256 (3d Cir. 2001*)* ("We have construed § 1103(c) as implying a fiduciary duty on the part of members of a creditor's committee, such as the present Unsecured Creditors Committee, toward their constituent members.") (*citing In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000)); *Value Prop. Trust v. Zim Co. (In re Mortg. & Realty Trust),* 212 B.R. 649, 653 (Bankr. C.D. Cal. 1997) (noting that the committee's has many functions … "it investigates, it appears, it negotiates, it may litigate, and it is at all times intimately involved …").

3

14831061v1

and understands that each case is unique, the allocation to committee professionals in chapter 11 cases is typically around 40%.

6.   Through this ROR, the Committee expressly reserves its right to argue that the court should increase the Committee's allocation from approximately 20% to at least 35% of the total professional fee budget.  Alternatively, rather than allocate the amount budgeted for the estate retained professional fees between the Debtors and the Committee, the Committee reserves the right to argue that the court should require that the total amount budgeted for professionals be unallocated.[8]  In that case, each of the estate retained professionals will share pro rata in the amounts available for such professionals under the budget.  This will ensure that all estate-retained professionals are treated equally and collectively bear the risk of non-payment in the event the budget is insufficient.

---

[8]   *See In re Orchids Paper Products Company, et al.,* Case No. 19-10729 (Bankr. D. Del. May 30, 2019); Hr'g Tr. at 186:18-186:25, an excerpt of which is attached to this ROR as **Exhibit A** ("I have always taken the position that I don't care what a line item is for committee professionals or debtors' professionals. That if there's not sufficient funds to pay professionals, generally, that they will be paid pro rata, regardless of what limits the DIP may place on that. I consider the line items for professionals to be an aggregate and it's inappropriate to have line items."); *In re Channel Master Holdings, Inc.*, 309 B.R. 855 (Bankr. D. Del. 2004) (reallocating fees to the committee's professionals from other miscellaneous category in debtor-in-possession financing budget when committee carve-out was insufficient).

4

14831061v1

Dated: Atlanta, Georgia
March 31, 2020

        ARNALL GOLDEN GREGORY LLP

        */s/ Darryl S. Laddin*
        Darryl S. Laddin
        Georgia Bar No. 460793
        Sean C. Kulka
        Georgia Bar No. 648919
        171 17th Street NW, Suite 2100
        Atlanta, GA 30363
        Telephone: (404) 873-8500
        darryl.laddin@agg.com
        sean.kulka@agg.com

        and

        KELLEY DRYE & WARREN LLP
        Eric R. Wilson (admitted *pro hac vice*)
        Maeghan J. McLoughlin (admitted *pro hac vice*)
        101 Park Avenue
        New York, New York 10178
        Telephone: (212) 808-7800
        Facsimile: (212) 808-7897
        Email: ewilson@kelleydrye.com
                mmcloughlin@kelleydrye.com

        *Counsel to the Official Committee of*
        *Unsecured Creditors of The Krystal Company*

14831061v1

# **EXHIBIT A**

# **TRANSCRIPT EXCERPT**

```
                                                                     1

 1                   UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE
 2
                                       .    Chapter 11
 3   IN RE:                            .
                                       .    Case No. 19-10729 (MFW)
 4   ORCHIDS PAPER PRODUCTS COMPANY,   .
     et al.,                           .    Courtroom No. 4
 5                                     .    824 N. Market Street
                                       .    Wilmington, Delaware 19801
 6                                     .
                                       .    May 30, 2019
 7                   Debtor.           .    2:00 P.M.
     . . . . . . . . . . . . . . . . . .
 8                              EXCERPT
                         TRANSCRIPT OF HEARING
 9             BEFORE HONORABLE MARY F. WALRATH
                  UNITED STATES BANKRUPTCY JUDGE
10

11   APPEARANCES:

12   For the Debtors:              Christopher Ward
                                   Shanti Katona, Esquire
13                                 POLSINELLI PC
                                   222 Delaware Avenue
14                                 Wilmington, Delaware 19801

15                                 - and -

16                                 Jerry Switzer, Jr., Esquire
                                   150 N. Riverside Plaza
17                                 Chicago, Illinois 60606

18   Audio Operator:               BRANDAN J. MCCARTHY

19   Transcription Service:        Reliable
                                   1007 N. Orange Street
20                                 Wilmington, Delaware 19801
                                   Telephone: (302) 654-8080
21                                 E-Mail: gmatthews@reliable-co.com

22   Proceedings recorded by electronic sound recording:
     transcript produced by transcription service.
23

24

25
```

Case 20-61065-pwb Doc 299 Filed 03/31/20 Entered 03/31/20 13:03:51 Desc Main Document Page 21 of 21
Case 19-12193-KBO Doc 171-1 Filed 11/01/19 Page 8 of 8

186

1 challenge before September 30, do you think?

2     MS. SEYMOUR: Well, there's the credit bid issue,
3 Your Honor, so we may be here asking for it to be addressed
4 before the closing, because they're asking to -- that's the
5 whole point of our credit bid reservation.

6     THE COURT: Uh-huh.

7     MS. SEYMOUR: So, that was our concern, Your
8 Honor. We don't want to have done what we're supposed to do
9 pursuant to the -- we didn't push for a longer period of time
10 because the debtor is trying to stick to the milestones that
11 we didn't push back on either, but we don't want that to be
12 declared an event of default.

13     MR. MCGUIRE: Your Honor, I think that's exactly
14 what I said the provision was. It's the filing by these guys
15 or the winning by them.

16     THE COURT: Yeah. No, I know.

17     Well, let me also give you my thoughts on one of
18 the other issues, and that is the committee. I have always
19 taken the position that I don't care what a line item is for
20 committee professionals or debtors' professionals. That if
21 there's not sufficient funds to pay professionals, generally,
22 that they will be paid *pro rata*, regardless of what limits
23 the DIP may place on that. I consider the line items for
24 professionals to be an aggregate and it's inappropriate to
25 have line items.