**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| THE KRYSTAL COMPANY, *et al.*,[1] | Case No. 20-61065 (PWB) |
| Debtors. | (Jointly Administered) |

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
FOR ENTRY OF AN ORDER GRANTING THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS LEAVE, STANDING, AND AUTHORITY TO
COMMENCE, PROSECUTE, AND IF APPROPRIATE, SETTLE
CERTAIN CAUSES OF ACTION ON BEHALF OF THE DEBTORS' ESTATES**

The Official Committee of Unsecured Creditors (the "Committee") of The Krystal Company *et al.*, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby moves this Court for entry of an order (the "Motion") giving the Committee authority, standing, and leave to commence, prosecute, and if appropriate, settle the Challenges (defined below) of the Debtors and their respective estates against Wells Fargo Bank, National Association, as administrative agent, and various other lenders (collectively, the "Lenders"). For its Motion, the Committee respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: The Krystal Company (4140); Krystal Holdings, Inc. (5381); and K-Square Acquisition Co., LLC (8916). The location of the Debtors' corporate headquarters and service address is: 1455 Lincoln Parkway, Suite 600, Dunwoody, Georgia 30346.

14863695v3

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. § 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested in this Motion are 11 U.S.C. §§ 105(a), 1103(c)(5), 1107(a), and 1109(b).

## BACKGROUND

**A.      General Background.**

3.      On January 19, 2020 (the "Petition Date"), The Krystal Company and its debtor affiliates (collectively, the "Debtors") each filed voluntary petitions for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Northern District of Georgia (Atlanta Division) (the "Court").

4.      Since the Petition Date, the Debtors have remained in possession of their properties and have continued to operate their businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5.      On or about February 11, 2020, pursuant to Section 1102 of the Bankruptcy Code, the United States Trustee for the Northern District of Georgia appointed seven (7) creditors to serve on the Committee in connection with these administratively consolidated Chapter 11 cases. The members of the Committee are: NCR Corporation, Charles Tombras Advertising, Inc., The Coca-Cola Company, Realty Income Corporation, Flowers Foods, Inc., the Pension Benefit Guaranty Corporation, and SLM Waste Recycling Services, Inc.  *See* Docket No. 143.

14863695v3

6.    The Committee selected Kelley Drye & Warren LLP as its lead counsel and Arnall Golden Gregory LLP as its local counsel.  The Committee also selected FTI Consulting, Inc. to serve as its financial advisor.

**B.    The Lenders and the Debtors' Use of Cash Collateral in these Bankruptcy Cases.**

7.    The Debtors are party to the *Third Amended and Restated Credit Agreement* dated as of April 26, 2018 (the "Credit Agreement") with the Lenders.[2]

8.    As of the Petition Date, the Debtors purportedly owed the Lenders approximately $50 million, plus interest and fees under the Credit Agreement (the "Secured Obligations").[3] The Secured Obligations are purportedly secured by security interest or liens (the "Liens") in all or substantially all of the Debtors' assets.[4]

9.    The Debtors initially sought the use of Cash Collateral on a non-consensual basis over the objection of the Lenders.[5]  The Lenders ultimately consented to the use of Cash Collateral on an interim basis and the Debtors' use of Cash Collateral was approved on January 22, 2020, subject to an initial three week budget through February 9, 2020 (the "First Interim Order").[6] The First Interim Order provided the Lenders with replacement liens and superpriority claims as

---

[2]    *See Debtors' Emergency Motion for Entry of Interim and Final Orders (1) Authorizing the Debtors to Use Cash Collateral; (2) Granting Adequate Protection to Lenders; (3) Modifying the Automatic Stay; (4) Scheduling a Final Hearing; and (5) Granting Related Relief* (the "Cash Collateral Motion") at ¶ 7.

[3]    *See Second Interim Order (1) Authorizing the Debtors to Use Cash Collateral, (2) Granting Adequate Protection to Prepetition Secured Parties, (3) Modifying The Automatic Stay, and (4) Providing Notice of Final Hearing* ¶ D.2.

[4]    *See Declaration of Jonathan M. Tibus in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), ¶ 16.

[5]    *See Wells Fargo Bank, National Association's (I) Objection to Debtors' Emergency Motion for Entry of Interim and Final Orders (1) Authorizing the Debtors to Use Cash Collateral; (2) Granting Adequate Protection to Lenders; (3) Modifying the Automatic Stay; (4) Scheduling a Final Hearing; and (5) Granting Related Relief; (II) Limited Objection to Certain First Day Relief; and (III) Request for Adequate Protection.*  Docket No. 28.

[6]    *See Interim Order (1) Authorizing the Debtors to Use Cash Collateral, (2) Granting Adequate Protection to Lenders, (3) Modifying the Automatic Stay, and (4) Providing Notice of Second Interim Hearing.*  Docket No. 39.

14863695v3

adequate protection for any potential diminution in the value of their collateral.[7]  The First Interim Order also provided that the Postpetition Collateral (as defined in the First Interim Order) excluded Avoidance Actions.

10.    The Court held a further hearing on the Cash Collateral Motion on February 5, 2020.  The Court again approved the use of Cash Collateral on an interim basis, subject to a four week budget ending the week of March 1, 2020 (the "Second Interim Order").[8] The Second Interim Order also provided the Lenders with replacement liens and superpriority claims as adequate protection for any potential diminution in the value of their collateral and confirmed that Postpetition Collateral excluded Avoidance Actions.[9]

11.    The Court held a further hearing on the Cash Collateral Motion on March 3, 2020. The Court again approved the use of Cash Collateral on an interim basis, subject to a five week budget ending April 5, 2020 (the "Third Interim Order").[10]

12.    The Court held a further hearing on the Cash Collateral Motion on April 1, 2020. The Court again approved the use of Cash Collateral on an interim basis, subject to a two week budget ending April 19, 2020 (the "Fourth Interim Order").[11]

13.    On April 17, 2020 the Court entered a stipulated order, which approved the use of Cash Collateral on an interim basis, subject to a two week budget ending May 3, 2020

---

[7]      *See* First Interim Order, ¶ 6.

[8]      *See Second Interim Order (1) Authorizing the Debtors to Use Cash Collateral, (2) Granting Adequate Protection to Prepetition Secured Parties, (3) Modifying the Automatic Stay, and (4) Providing Notice of Final Hearing*.  Docket No. 121.

[9]      *See* Second Interim Order, ¶ 6.

[10]     *See Third Interim Order (1) Authorizing the Debtors to Use Cash Collateral, (2) Granting Adequate Protection to Prepetition Secured Parties, (3) Modifying the Automatic Stay, and (4) Providing Notice of Final Hearing*.  Docket No. 218.

[11]     *See Order Authorizing Continued Use of Collateral, Including Cash Collateral, Under Third Interim Order*. Docket No. 305.

4

(the "Fifth Interim Order," and together with the First Interim Order, the Second Interim Order, the Third Interim Order, and the Fourth Interim Order "Interim Orders").[12]

14.     The Third Interim Order provides in pertinent part that "[t]he Debtors shall have waived any right to challenge the amount, scope, validity, enforceability, extent, perfection, priority, or avoidability of any aspect of the Prepetition Indebtedness and Prepetition Liens **unless the Debtors shall have provided to the Agent (with a copy to counsel for the Committee) no later than *April 3, 2020*, a written statement specifying in detail each basis for objection** to the Prepetition Indebtedness and Prepetition Liens."  *See* Third Interim Order, ¶ 8(d) (emphasis added).

15.     As to the Committee, the Third Interim Order further provides that "[t]he Committee shall have waived any right to challenge the amount, scope, validity, enforceability, extent, perfection, priority, or avoidability of any aspect of the Prepetition Indebtedness and Prepetition Liens **unless the Committee shall have filed with the Court a motion for standing no later than *April 21, 2020***, which contains a written statement specifying in detail each basis for objection to the Prepetition Indebtedness and Prepetition Liens.  Any such motion for standing shall toll the Committee's rights with respect to any challenge to the Prepetition Agent's and Prepetition Lenders' Prepetition Indebtedness and Prepetition Liens."  *See* Third Interim Order, ¶ 8(d) (emphasis added).

### C.     The Debtors' and the Committee's Challenges to the Secured Obligations and the Liens.

16.     On April 3, 2020, the Debtors sent a timely written statement and accompanying Exhibit 1 and Schedules (the "Statement") to counsel for the Lenders, which, *inter alia*, specified

---

[12]     *See Stipulated Order Authorizing Continued Use of Cash Collateral, including Cash Collateral, Under Third Interim Order.*  Docket No. 321.

14863695v3

in detail at least ten (10) independent bases on which the Debtors' bankruptcy estates may object to the extent, validity, and priority of the Secured Obligations owed to, and Liens asserted by, the Lenders (the "Debtor Identified Challenges").  A true and correct copy of the Statement is attached to this Motion as **Exhibit A** and expressly incorporated by reference.   A chart of the items identified in the Statement is set forth below.

| Item | Description of Challenge in Item |
|:---:|---|
| 1 | Funds held by the Debtors that were necessary to pay trust fund taxes, such as sales taxes, are not property of the estate. |
| 2 | The Lenders do not have a perfected security interest in commercial tort claims. |
| 3 | The Lenders do not have a perfected security interest in certain of the Debtors' real property leases and franchise agreements. |
| 4 | The Lenders do not have a perfected security interest in the funds that were in certain of the Debtors' deposit accounts. |
| 5 | Any valuation of the Debtors' assets as of the filing date should not attribute any value to the Lenders' pre-petition security interest in general intangibles. |
| 6 | The Lenders do not have a security interest in the Debtors' post-petition inventory by virtue of 11 U.S.C. § 552(a), and the appropriate method for determining the value of the Lenders' pre-petition security interest in the Debtors' inventory and equipment is a liquidation valuation method. |
| 7 | The Lenders do not have a perfected security interest in certain insurance claims where the Lenders were not identified as loss payees. |
| 8 | The Lenders do not have a perfected security interest in the Debtors' intellectual property rights that are not identified on Schedule 2 of the Statement. |
| 9 | The Lenders do not have a perfected lien or security interest in the Debtors' real property located on Alabama Highway located in Catoosa County, Georgia. |

| 10 | The Lenders do not have a security interest in any property that the Debtors acquired after the Petition Date by virtue of 11 U.S.C. § 552(a) unless such property constitutes proceeds of the Lenders' collateral under 11 U.S.C. § 552(b).<br><br>To the extent that the Debtors have a security interest in proceeds such interest should be invalidated based on the "equities of these bankruptcy cases." |

17.     Notably, the Statement states that "[t]he Debtors believe that it is incumbent upon the Prepetition Secured Parties to file an adversary proceeding in the Chapter 11 case (the "**Case**") to establish the amount, scope, validity, enforceability, extent, perfection, priority, or avoidability of the Prepetition Indebtedness and Prepetition Liens pursuant to 11 U.S.C. § 506(b).  In the context of any such adversary proceeding, the issues set forth on Exhibit 1 attached hereto could be raised as a challenge to such asserted claims and interests and would need to be adjudicated by the Court."

18.     In addition to the Debtor Identified Challenges, the Committee identifies the following potential challenges to the Secured Obligations and the Liens (the "Committee Identified Challenges"; and together with the Debtor Identified Challenges, the "Challenges"):

a.      All Debtor Identified Challenges as supplemented in this Motion; and

b.      The Refunds, as defined below, are not subject to the Liens.  More specifically, the Debtors had taxable income in tax years 2013, 2015, 2016, and 2017.  The Debtors have net operating losses ("NOLs") for tax years 2018 and 2019[13] and have not yet applied such NOLs.  In the end of March 2020, President Trump signed into law the Coronavirus Aid, Relief, and Economic Security Act or ("CARES Act").  The CARES Act, *inter alia*, amended the Internal Revenue Code to allow for the carryback of losses arising in taxable

---

[13]     The Debtors have not yet filed their 2019 tax returns.

14863695v3

years beginning after December 31, 2017, and before January 1, 2021, to each of the five

taxable years preceding the applicable taxable year of such loss.  The CARES Act also

amended the limitation that NOLs could only be used to offset up to 80% of taxable

income.  Because any refunds that may result from the Debtors' 2018 and 2019 NOLs

carried back to tax years 2013, 2015, and 2016 (the "Refunds") did not come into existence

until the date that the CARES Act passed into law in March 2020 (at the earliest), the

Refunds constitute post-petition property, and are not subject to the Liens by virtue of

11 U.S.C. § 552(a).[14]

## RELIEF REQUESTED

19.     The Committee seeks an order pursuant to Sections 105(a), 1103(c)(5), 1107(a),

and 1109(b) of the Bankruptcy Code granting the Committee standing to commence, prosecute

and, if appropriate, settle the Challenges.

## BASIS FOR RELIEF

20.     A debtor-in-possession has the rights and performs the functions and duties of a

trustee serving in chapter 11 reorganization, including the right and duty to sue and be sued.

*See* 11 U.S.C. §§ 323(b) and 1107(a).

21.     As the Court of Appeals for the Third Circuit confirmed in *Official Comm. Of*

*Unsecured Creditors of Cybergenics Corp. v. Chinery*, a bankruptcy court may grant a committee

standing to litigate claims on behalf of a debtor's bankruptcy estate pursuant to Sections 105(a),

1103(c)(5) and 1109(b) of the Bankruptcy Code.  *See Official Comm. Of Unsecured Creditors of*

*Cybergenics Corp. v. Chinery (In re Cybergenics)*, 330 F.3d 548, 575 (3d Cir. 2003); *see also In re*

---

[14]     The Committee further expressly reserves the right to assert any additional basis for the Refunds not being subject to the Liens.

14863695v3

*iCPS, Inc.*, 297 B.R. 283, 289-90 (Bankr. N.D. Ga. 2003) (granting Committee standing to pursue estate claims where debtor in possession had consented to relief, reasoning in part "[t]he Court is persuaded most by the reasoning employed by the majority of the Third Circuit Court of Appeals in the *Cybergenics* decision.").

22.    Section 1103 of the Bankruptcy Code sets forth the powers and duties of committees and provides that a committee may investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of such business, and any other matter relevant to the case or to the formulation of a plan.  *See* 11 U.S.C. § 1103(c)(2).  Section 1103 of the Bankruptcy Code further provides a committee may "perform such other services as are in the interest of those represented."  *See* 11 U.S.C. § 1103(c)(5).  Similarly, Section 1109 of the Bankruptcy Code provides any party in interest, including a committee, with the right to "appear and be heard on any issue in a case under this chapter."  *See* 11 U.S.C. § 1109(a).

23.    Taken together, these Sections of the Bankruptcy Code "evince a Congressional intent for committees to play a robust and flexible role representing the bankruptcy estate, even in adversarial proceedings."  *Cybergenics*, 330 F.3d at 566.  The possibility of a derivative suit "provides a critical safeguard against lax pursuit" of claims by the parties initially charged with pursuing them.  *Id.* at 573-74.  Congress consciously built a measure of flexibility into the scope of a committee's services to empower a bankruptcy court to authorize a committee to represent the estate where the usual representative is unable or unwilling to act.  *Id.* at 563.

24.    To grant derivative standing, a bankruptcy court must determine (i) whether a colorable claim exists; (ii) that the debtor has unjustifiably refused to pursue such claim; and (iii) that the committee has obtained permission to initiate the action on behalf of the

bankruptcy estate.  *See La. World Exposition v. Federal Ins. Co.*, 858 F.2d 233, 247 (5th Cir. 1988); *Infinity Inv. Ltd. v. Kingsborough (In re Yes! Entm't. Corp.)*, 316 B.R. 141, 145 (D. Del. 2004) (*citing Valley Media,* 2003 WL 21956410 at * 2)).  Subject to Court approval of this Motion, each of these elements has been satisfied.

### A.    The Challenges are Colorable Claims or Requests for Relief.

25.    First, in order for the Court to determine whether derivative standing is appropriate it must determine that the Committee asserts "a colorable claim or claims for relief that on appropriate proof would support a recovery."  *See G-1 Holdings, Inc. v. Those Parties Listed on Exhibit A (In re G-1 Holdings, Inc.),* 313 B.R. 612, 631 (Bankr. D. N.J. 2004) (*quoting In re STN Enters., Inc.*, 779 F.2d at 905).

26.    The Statement identified at least ten Debtor Identified Challenges.  The first of these items identifies a colorable claim that the proceeds of the Debtors' pre-petition accounts receivables that are attributable to sales taxes are *not* property of the Debtors' bankruptcy estates.

27.    The second of these items identifies a colorable claim that the Lenders failed to perfect their security interest in commercial tort claims.  The Committee supplements this item by stating that the Credit Agreement does not specifically identify any commercial tort claims, and therefore, the Lenders do not have a perfected security interest or lien in the Debtors' commercial tort claims.

28.    The third of these items identifies a colorable claim that the Lenders failed to perfect their security interest in certain of the Debtors' leases and franchise agreements.  The Committee supplements this item by stating that in order to perfect an interest in a real property lease, a filing must be made in the applicable real property recording office.  Further, the Credit Agreement excludes from its definition of collateral any lease or contract if the grant of a security

14863695v3

interest or lien would result in a breach, termination, or default, under the subject lease or contract. Accordingly, any of the Debtors' real property leases that contains anti-encumbrance language falls outside of the definition of collateral in the Credit Agreement, and would not be subject to the Liens. Moreover, the Lenders have not provided the Committee with evidence that they perfected security interests in the Debtors' leasehold interests or fixtures, with the exception of a UCC filing in DeKalb County, Georgia, covering buildings, leases, fixtures or other improvements at real property located at 2068 North Druid Hills Road in Atlanta (the "DeKalb Filing"). Accordingly, the Debtors and the Committee state a colorable claim that, with the exception of the DeKalb Filing, the Lenders do not have a perfected security interest in any of the Debtors' real property leases and related fixtures for which it did not file a leasehold mortgage.

29.    The fourth of these items identifies a colorable claim that the Lenders failed to perfect their security interest in certain deposit accounts, and that the funds of those accounts are not property of the estate. The Committee supplements this item by stating that cash held in a deposit account is perfected by control, either (a) by executing a control agreement, or (b) by possession, if a lender is the depository bank. The Committee has identified approximately two dozen store level accounts maintained by the Debtors at banks other than Wells Fargo or Regions Bank for which no control agreements exist. Accordingly, the Debtors and the Committee state a

14863695v3

colorable claim that the Lenders do not have a perfected lien or security interest in any cash held at banks other than Wells Fargo or Regions Bank for which no control agreement exists.

30.    The fifth of these items identifies a colorable claim that any valuation of the Debtors' assets should not attribute any value to the Lenders' pre-petition lien in general intangibles.

31.    The sixth of these items identifies a colorable claim that the Lenders do not have a security interest or lien in the Debtors' post-petition inventory by virtue of 11 U.S.C. § 552(a), and that the appropriate method for determining the value of the Lenders' pre-petition lien in the Debtors' inventory and equipment is a liquidation valuation method.

32.    The eighth of these items identifies a colorable claim that the Lenders do not have a perfected security interest in the Debtors' intellectual property rights that are not identified on Schedule 2 of the Statement.

33.    The ninth of these items identifies a colorable claim that the Lenders do not have a perfected security interest in the Debtors' real property located on Alabama Highway located in Catoosa County, Georgia.

34.    The tenth of these items identifies a colorable claim that the Lenders do not have a security interest or lien in any property that the Debtors acquired after the Petition Date by virtue of 11 U.S.C. § 552(a) unless such property constitutes proceeds of the Lenders' collateral under 11 U.S.C. § 552(b).  This item also identifies a colorable claim that to the extent that any property the Debtors acquired after the Petition Date constitutes proceeds of the Lenders' collateral that any

12

such security interest or lien in proceeds should be invalidated based on the "equities of these bankruptcy cases."

35.  The Committee Identified Challenges identifies a colorable claim that the Lenders do not have a security interest or lien in the Debtors' 2018 and 2019 NOLs by virtue of the CARES Act and 11 U.S.C. § 552(a).[15]

36.  The Challenges all represent colorable claims or requests for relief related to the extent, validity, of priority of the Secured Obligations and the Liens, and the first factor has been satisfied.

**B.  Given the Deadlines Set Forth in the Interim Orders the Debtors have Effectively Refused to Assert the Challenges.**

37.  Second, the Court must consider whether the debtor in possession or trustee has refused to bring the subject claims.  The Third Interim Order required the Debtors to send the Lenders a written statement specifying in detail each basis for objection to the Secured Obligations and the Liens no later than April 3, 2020, and required the Committee to file this Motion no later than April 21, 2020.  On April 3, 2020, the Debtors sent the Statement to the Lenders, which indicates that the Debtors do not believe that they are required to file a motion or adversary proceeding to assert the Debtor Identified Challenges.  Further, although the Statement contains a reservation of rights clause, the Debtors failed to expressly identify the Committee Identified Challenges.  Accordingly, in the context of the deadlines set forth in the Interim Orders, the Statement is tantamount to the Debtors unjustifiably refusing to pursue the Challenges for purposes of this Motion.  Therefore, the second factor has been satisfied.

---

[15]    The Debtors may also assert that the Committee's challenge to the Lender's lien in the Refunds is subsumed within the tenth of the Debtor Identified Challenges.

**C.      The Committee is Seeking Authority to Assert the Challenges.**

38.      Third, the Court must consider is whether the Committee has obtained prior Court approval to assert the Challenges on behalf of the Debtors' bankruptcy estates.  The Committee is seeking such approval through this Motion.  The Committee is the proper party to litigate the Challenges whether by motion or adversary proceeding because it is the entity charged with safeguarding the interests of the bankruptcy estates and maximizing value of the estates for all general unsecured creditors.  *See In re Enron Corp.*, 279 B.R. 671, 689 (Bankr. S.D.N.Y. 2002) (quoting Collier on Bankruptcy ¶ 1103.05[1][a] at 1103-22 (15th ed. rev. 2002) ("the primary purpose of a committee . . . is to maximize the return to the constituency represented by the committee and all actions undertaken by the committee should be with that goal in mind."). Section 1103(c) of the Bankruptcy Code sets forth the Committee's duties, including performing such services as are in the interest of the general unsecured creditors.

39.      Given the Debtors' position that it is the Lenders' responsibility[16] to initiate a legal action to determine the extent, validity, and priority of their asserted secured claim, and the Committee's April 21 deadline to file this Motion, the Committee's request for standing is both timely and necessary to enable the Committee to fulfill its fiduciary duties.  Accordingly, the third factor has been satisfied.

---

[16]      The Committee does not at this time take a position as to whether the Debtors are correct in this assertion or whether the Lenders would be required to file a motion or adversary proceeding to validate the extent, validity or priority of its asserted secured claim.

14

WHEREFORE, the Committee respectfully requests that this Court enter an order: (i) granting the Motion, (ii) providing the Committee authority, standing, and leave to commence, prosecute, and if appropriate, settle all of the Challenges against the Lenders, and (iii) granting the Committee such other relief as the Court deems just and appropriate.

Dated:    Atlanta, Georgia
          April 20, 2020

                            ARNALL GOLDEN GREGORY LLP

                            */s/ Darryl S. Laddin*
                            Darryl S. Laddin
                            Georgia Bar No. 460793
                            Sean C. Kulka
                            Georgia Bar No. 648919
                            171 17th Street NW, Suite 2100
                            Atlanta, GA 30363
                            Telephone: (404) 873-8500
                            darryl.laddin@agg.com
                            sean.kulka@agg.com

                            *Counsel to the Official Committee of*
                            *Unsecured Creditors of The Krystal Company*

14863695v3

# **EXHIBIT A**

## **STATEMENT**

16

LAW OFFICES

## Scroggins & Williamson, P.C.

4401 NORTHSIDE PARKWAY

SUITE 450

ATLANTA, GEORGIA 30327

(404) 893-3880 · TELEPHONE
(404) 893-3886 · FACSIMILE

WWW.SWLAWFIRM.COM

J. ROBERT WILLIAMSON
ASHLEY REYNOLDS RAY
J. HAYDEN KEPNER, JR.
MATTHEW W. LEVIN

FRANK W. SCROGGINS (1933-2010)

April 3, 2020

**By E-Mail and First Class Mail**

Jennifer Feldsher, Esq.
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
jennifer.feldsher@morganlewis.com

Rufus T. Dorsey
Parker, Hudson, Rainer & Dobbs LLP
303 Peachtree Street, N.E.
Suite 3600
Atlanta, GA 30308
rdorsey@phrd.com

RE:    **In re: The Krystal Company, et al., Chapter 11, Case No. 19-59440
United States Bankruptcy Court Northern District of Georgia, Atlanta Div.**

Dear Jennifer and Rufus:

As you know, this firm represents The Krystal Company, Krystal Holdings, Inc., and K-Square Acquisition Co., LLC (collectively, the "**Debtors**") in the above-referenced case. Paragraph 8(d) of the *Third Interim Order (1) Authorizing the Debtors to Use Cash Collateral, (2) Granting Adequate Protection to Lenders, (3) Modifying the Automatic Stay, and (4) Providing Notice of Final Hearing* [Dkt. No. 218] (the "**Third Interim Order**")[1], provides in part as follows:

> The Debtors shall have waived any right to challenge the amount, scope, validity, enforceability, extent, perfection, priority, or avoidability of any aspect of the Prepetition Indebtedness and Prepetition Liens unless the Debtors shall have provided to the Agent (with a copy to counsel for the Committee) no later than April

---

[1] Capitalized terms used herein but not defined shall have the meaning ascribed to such term in the Third Interim Order.

Jennifer Feldsher, Esq.
Rufus Dorsey, Esq.
April 3, 2020
Page 2

       3, 2020, a written statement specifying in detail each basis for
       objection to the Prepetition Indebtedness and Prepetition Liens.

This letter shall constitute the Debtors' written statement referenced therein. The Debtors believe that it is incumbent upon the Prepetition Secured Parties to file an adversary proceeding in the Chapter 11 case (the "**Case**") to establish the amount, scope, validity, enforceability, extent, perfection, priority, or avoidability of the Prepetition Indebtedness and Prepetition Liens pursuant to 11 U.S.C. § 506. In the context of any such adversary proceeding, the issues set forth on Exhibit 1 attached hereto could be raised as a challenge to such asserted claims and interests and would need to be adjudicated by the Court.

       Should you have any questions regarding the foregoing, please do not hesitate to contact me.

       Very Truly Yours,

       J. Robert Williamson
       Counsel for the Debtors

Encl.

Cc:    Darryl Laddin, Esq. (via email - darryl.laddin@agg.com)
       Sean Kulka, Esq. (via email - sean.kulka@agg.com)
       Eric Wilson, Esq. (via email – ewilson@kellydrye.com)

EXHIBIT 1

**Schedule of Potential Issues with Prepetition Indebtedness and/or Prepetition Liens**

| Collateral Type | Basis for Deficiency |
|---|---|
| 1.  Accounts Receivable | The proceeds of pre-petition accounts receivable included sales tax collections which were not property of the estate and/or were impressed with a trust in favor of the applicable taxing authorities. To that extent the funds would not be cash collateral of the Prepetition Secured Parties. |
| 2.  Commercial Tort Claims | It does not appear that any commercial tort claims were specifically identified in the applicable loan documents, or subsequently; therefore, the Prepetition Secured Parties do not have a properly perfected security interest in any commercial tort claims. |
| 3.  Contract Rights/Leases | **Leases**:  It appears that the Prepetition Secured Parties only have a handful of agreements with various lessors that would allow the Prepetition Secured Parties to enter into the premises and take possession of personalty, but there are no leasehold mortgages or other agreements which would allow the Prepetition Secured Parties to assume the Debtor's interest in the leases.  Therefore, under applicable law the Prepetition Secured Parties would not have a perfected security interest in the Debtors' real estate leases.<br><br>**Franchise Agreements:**  The Franchise Agreements contain provisions limiting the ability to assign these.  Likewise, applicable law may restrict the franchisor's ability to assign the agreement without notice to and/or consent of the franchisee.  *See, e.g.,* Tennessee Code Annotated 47-9-408.  Therefore, the Prepetition Secured Parties may not have a perfected security interest in some or all of the franchise agreements. |
| 4.  Deposit Accounts | All funds in deposit accounts for which there were not Deposit Account Control Agreements ("**DACAs**") in place or for which DACAs were executed within 90 days of the Petition Date, including but not limited to the accounts identified on Schedule 1 attached hereto, (a) are not subject to a properly perfected security interest if commingled with sales tax collections and/or other cash not constituting collateral proceeds (see §10 below), and/or (b) the security interests could be avoided for DACAs executed within 90 days prior to the Petition Date.  Funds in the Debtors |

EXHIBIT 1

| | |
|---|---|
| | accounts as of the Petition Date equal to the total amount of the Debtors' accrued liability for sales taxes (or other trust fund taxes) should be excluded from the Prepetition Secured Parties' collateral -- such funds would not constitute property of the Debtors or their estates under applicable law, and thus would not be considered "cash collateral" of the Prepetition Secured Parties. *See, e.g.,* O.C.G.A. 48-8-1 *et seq.* (retailer is dealer required to collect sales taxes for state); *See also,  Begier v. Internal Revenue Serv.*, 496 U.S. 53, 57-60 (1990) (trust fund taxes are not the debtor's property); *In Re Integrated Health Servs., Inc.*, 344 B.R. 262, 270 (Bankr. D. Del. 2006) (constructive trust may be imposed on collected taxes where there exists a reasonable nexus between the funds and the taxes in question); *In re Shank*, 792 F.2d 829, 830-32 (9th Cir. 1986) (sales tax required by state law to be collected by sellers from their customers is "trust fund" tax); *DeChiaro v. N.Y. State Tax Comm'n*, 760 F.2d 432, 433-34 (2d Cir. 1985) (same).  In the event that the Prepetition Secured Parties assert a right of set-off under 11 U.S.C. §553 and/or applicable law, the Debtors reserve the right to oppose such assertion based on equitable considerations. *See In re Photo Mechanical Servs.*, 179 B.R. 604 (Bankr. D. Minn. 1995) |
| 5.   General Intangibles | In valuing the Debtors' assets for purposes of establishing the amount of the Prepetition Secured Parties allowed secured claim, there should be no value attributed to goodwill to the extent that the Debtors were  insolvent as of the Petition Date. |
| 6.   Goods (inventory, equipment) | **Inventory:**  This will have to be valued as of the Petition Date to determine the Prepetition Secured Parties' interest in cash collateral and allowed secured claim.  Debtors assert that liquidation value would be the appropriate measure for that purpose.  Moreover, the Prepetition Secured Parties' pre-petition security interest in inventory would not extend to post-petition inventory (or other goods acquired post-petition) under 11 U.S.C. § 552.

**Equipment:**  This will have to be valued as of the Petition Date to determine the Prepetition Secured Parties' allowed secured claim.  Debtors assert that liquidation value would be the appropriate measure. |

EXHIBIT 1

| | |
|---|---|
| 7. Insurance Claims | The Prepetition Secured Parties may not have a nonavoidable perfected security interest in insurance claims under policies where the Prepetition Secured Parties are not listed as loss payees on the policies. |
| 8. Intellectual Property | The Prepetition Secured Parties would only have security interests in the trademarks, copyrights and/or patents reflected on Schedule 2 attached hereto. |
| 9. Real Estate | The Debtors scheduled an ownership interest in the following real property: .62 Acre Parcel of Land, # 0039B-041-00A, Alabama Highway, Catoosa County GA. There does not appear to be a valid Security Deed of record for this property; therefore, it is unencumbered. |
| 10. Valuation of Assets/Determination of Extent of Security Interests | The Prepetition Secured Parties do not have a properly perfected, nonavoidable security interest in all of the Debtors' assets, as discussed above. Moreover, any assets acquired by the Debtors post-petition would not be subject to the pre-petition security interests held by the Prepetition Secured Parties unless and only to the extent that the Prepetition Secured Parties can show that post-petition assets constitute proceeds of pre-petition collateral in accordance with 11 U.S.C. § 552(b). *See In re Strix Chex Columbus Two LLC*, 542 B.R. 914 (Bankr. N.D.Ga. 2015) (Drake, B.J.) (holding that only a portion of post-petition revenues generated from debtor restaurant's food sales should be considered proceeds of the food inventory). And even then, the Debtors reserve the right to request that the Court decline to allow the pre-petition security interests to attach to post-petition proceeds under the "equities of the case" exception set forth in Section 552(b). For purposes of credit bidding and/or disposition of proceeds of a sale of all or substantially all of the Debtors' assets, the Court will need to determine the relative value of assets in which the Prepetition Secured Parties do have a properly perfected security interest versus all other assets. The Debtors reserve all rights with respect to such issues. |
| 11. Reservation of Rights | The Debtors reserve the right to amend or supplement this statement. |

Schedule 1

| x | Bank Name | Bank Account Number | DACA Account? | Sun, Jan 19 |
|---|---|---|---|---|
| 1 | Krystal Funding Account | 4122366495 | Yes* | $    1,461,032 |
| 2 | Credit Card Account | 4122366503 | Yes* | - |
| 3 | Franchise Depository | 4122366511 | No | 1,007,882 |
| 4 | Krystal Trademark | 4122366529 | No | 14,295 |
| 5 | Pension Savings | 4122381957 | No | 59,295 |
| 6 | THE KRYSTAL COMPANY | 4122586282 | Yes* | - |
| 7 | Restaurant Depository | 4122815822 | Yes* | - |
| 8 | THE KRYSTAL COMPANY | 4124926304 | Yes* | - |
| 9 | THE KRYSTAL COMPANY | 4124926312 | Yes* | 461,892 |
| 10 | THE KRYSTAL COMPANY | 4414104919 | Yes* | - |
| 11 | Krystal | 4871907218 | No | - |
| 12 | Accounts Payable | 9600168928 | No | - |
| 13 | Payroll | 9600168932 | No | - |
| 14 | THE KRYSTAL COMPANY | 9632000429 | No | - |
| 15 | Utilities Account | 4870423274 | No | - |
| 16 | AMERIS BANK - ALB005 | 2048770248 | Yes | 7,291 |
| 17 | AMERIS BANK - TIF001 | 2048565812 | Yes | 9,634 |
| 18 | BB&T BANK - AUB003 | 125427820 | Yes | 9,233 |
| 19 | BB&T BANK - BGK002 | 5180626516 | Yes | 7,528 |
| 20 | BB&T BANK - CHN029 | 5297306911 | Yes | 608 |
| 21 | BB&T BANK - MAC003 | 5247352084 | Yes | 8,486 |
| 22 | BB&T BANK - MAC004 | 5247352092 | Yes | 9,228 |
| 23 | BB&T BANK - MAC007 | 5247352130 | Yes | 13,001 |
| 24 | BB&T BANK - MAC012 | 5245235412 | Yes | 7,873 |
| 25 | BB&T BANK - SAV008 | 5243983047 | Yes | 7,146 |
| 26 | BB&T BANK MAC008 | 5245235366 | Yes | 9,465 |
| 27 | CITIZENS BANK (PEOPLES BANK - KIM001) | 5325624237 | Yes | 11,251 |
| 28 | FIRST FEDERAL BANK | 22160523 | Yes | 5,126 |
| 29 | FIRST FEDERAL BANK JAX029 | 22160531 | Yes | 6,154 |
| 30 | FIRST TENNESSEE CONCENTRATION | 9761654 | No | 119,403 |
| 31 | NATIONAL BANK OF TENNESSEE-NTN001 | 23709 | Yes | 12,898 |
| 32 | PLANTERS FIRST - WRG003 | 50172759 | Yes | 6,890 |
| 33 | REGIONS CONCENTRATION ACCOUNT | 7887001185 | No | 251,263 |
| 34 | SUNTRUST BANK - LWG001 | 1.00015E+12 | Yes | 7,420 |
| 35 | TENNESSEE STATE BANK-KNX010 | 401069566 | Yes | 4,934 |
| 36 | THE BANK OF DADE - CHN019 | 25452 | Yes | 8,420 |
| 37 | HANCOCK BANK | 720230713 | Yes | 45,215 |
| 38 | META Bank | 5.53001E+18 | No | 5,669 |
| 39 | HARBOR COMMUNITY BANK | 1023950 | Yes | 450 |
| 40 | Wells Fargo Restaurant Depository Account | 4945760999 | No | - |
| 41 | Wells Fargo Restaurant Depository Account | 4945768042 | No | - |
| 42 | Wells Fargo Restaurant Depository Account | 4945761005 | No | - |
| 43 | Wells Fargo Restaurant Depository Account | 4945761013 | No | - |
| 44 | Wells Fargo Restaurant Depository Account | 4945761039 | No | - |
| 45 | Wells Fargo Restaurant Depository Account | 4945761047 | No | - |
| 46 | Wells Fargo Restaurant Depository Account | 4945761054 | No | - |
| 47 | Wells Fargo Restaurant Depository Account | 4943035287 | No | - |
| 48 | Wells Fargo Restaurant Depository Account | 4945761062 | No | - |
| 49 | Wells Fargo Restaurant Depository Account | 4945761070 | No | - |
| 50 | Wells Fargo Restaurant Depository Account | 4945761088 | No | - |
| 51 | Wells Fargo Restaurant Depository Account | 4945761096 | No | - |
| 52 | Wells Fargo Restaurant Depository Account | 4945761112 | No | - |
| 53 | Wells Fargo Restaurant Depository Account | 4945761138 | No | - |
| 54 | Wells Fargo Restaurant Depository Account | 4945761146 | No | - |
| 55 | Wells Fargo Restaurant Depository Account | 4945761153 | No | - |

| 56 | Wells Fargo Restaurant Depository Account | 4945761161 | No | - |
|----|-------------------------------------------|------------|----|---|
| 57 | Wells Fargo Restaurant Depository Account | 4942124124 | No | - |
| 58 | Wells Fargo Restaurant Depository Account | 4945761179 | No | - |
| 59 | Wells Fargo Restaurant Depository Account | 4945761187 | No | - |
| 60 | Wells Fargo Restaurant Depository Account | 4945761195 | No | - |
| 61 | Wells Fargo Restaurant Depository Account | 4945761203 | No | - |
| 62 | Wells Fargo Restaurant Depository Account | 4945761229 | No | - |
| 63 | Wells Fargo Restaurant Depository Account | 4945761237 | No | - |
| 64 | Wells Fargo Restaurant Depository Account | 4945761252 | No | - |
| 65 | Wells Fargo Restaurant Depository Account | 4945761260 | No | - |
| 66 | Wells Fargo Restaurant Depository Account | 4945761278 | No | - |
| 67 | Wells Fargo Restaurant Depository Account | 4943035295 | No | - |
| 68 | Wells Fargo Restaurant Depository Account | 4945761286 | No | - |
| 69 | Wells Fargo Restaurant Depository Account | 4945761294 | No | - |
| 70 | Wells Fargo Restaurant Depository Account | 4945761302 | No | - |
| 71 | Wells Fargo Restaurant Depository Account | 4940085186 | No | - |
| 72 | Wells Fargo Restaurant Depository Account | 4940451313 | No | - |
| 73 | Wells Fargo Restaurant Depository Account | 4945761328 | No | - |
| 74 | Wells Fargo Restaurant Depository Account | 4945761336 | No | - |
| 75 | Wells Fargo Restaurant Depository Account | 4942975566 | No | - |
| 76 | Wells Fargo Restaurant Depository Account | 4945761344 | No | - |
| 77 | Wells Fargo Restaurant Depository Account | 4943035303 | No | - |
| 78 | Wells Fargo Restaurant Depository Account | 4941104648 | No | - |
| 79 | Wells Fargo Restaurant Depository Account | 4945761351 | No | - |
| 80 | Wells Fargo Restaurant Depository Account | 4945761377 | No | - |
| 81 | Wells Fargo Restaurant Depository Account | 4945761393 | No | - |
| 82 | Wells Fargo Restaurant Depository Account | 4943035311 | No | - |
| 83 | Wells Fargo Restaurant Depository Account | 4945761427 | No | - |
| 84 | Wells Fargo Restaurant Depository Account | 4940073307 | No | - |
| 85 | Wells Fargo Restaurant Depository Account | 4945761450 | No | - |
| 86 | Wells Fargo Restaurant Depository Account | 4945761468 | No | - |
| 87 | Wells Fargo Restaurant Depository Account | 4945761476 | No | - |
| 88 | Wells Fargo Restaurant Depository Account | 4945761492 | No | - |
| 89 | Wells Fargo Restaurant Depository Account | 4945761500 | No | - |
| 90 | Wells Fargo Restaurant Depository Account | 4945761518 | No | - |
| 91 | Wells Fargo Restaurant Depository Account | 4945761526 | No | - |
| 92 | Wells Fargo Restaurant Depository Account | 4945780484 | No | - |
| 93 | Wells Fargo Restaurant Depository Account | 4945761542 | No | - |
| 94 | Wells Fargo Restaurant Depository Account | 4945761559 | No | - |
| 95 | Wells Fargo Restaurant Depository Account | 4941050049 | No | - |
| 96 | Wells Fargo Restaurant Depository Account | 4945761583 | No | - |
| 97 | Wells Fargo Restaurant Depository Account | 4945763431 | No | - |
| 98 | Wells Fargo Restaurant Depository Account | 4945761633 | No | - |
| 99 | Wells Fargo Restaurant Depository Account | 4945761641 | No | - |
| 100 | Wells Fargo Restaurant Depository Account | 4940709355 | No | - |
| 101 | Wells Fargo Restaurant Depository Account | 4945761658 | No | - |
| 102 | Wells Fargo Restaurant Depository Account | 4945761674 | No | - |
| 103 | Wells Fargo Restaurant Depository Account | 4945761682 | No | - |
| 104 | Wells Fargo Restaurant Depository Account | 4943035329 | No | - |
| 105 | Wells Fargo Restaurant Depository Account | 4945761690 | No | - |
| 106 | Wells Fargo Restaurant Depository Account | 4945761708 | No | - |
| 107 | Wells Fargo Restaurant Depository Account | 4941104655 | No | - |
| 108 | Wells Fargo Restaurant Depository Account | 4945985059 | No | - |
| 109 | Wells Fargo Restaurant Depository Account | 4945761716 | No | - |
| 110 | Wells Fargo Restaurant Depository Account | 4945985083 | No | - |
| 111 | Wells Fargo Restaurant Depository Account | 4942711292 | No | - |
| 112 | Wells Fargo Restaurant Depository Account | 4945761724 | No | - |

| 113 | Wells Fargo Restaurant Depository Account | 4945761732 | No | - |
|-----|-------------------------------------------|------------|----|---|
| 114 | Wells Fargo Restaurant Depository Account | 4945761740 | No | - |
| 115 | Wells Fargo Restaurant Depository Account | 4940793060 | No | - |
| 116 | Wells Fargo Restaurant Depository Account | 4945761765 | No | - |
| 117 | Wells Fargo Restaurant Depository Account | 4943215053 | No | - |
| 118 | Wells Fargo Restaurant Depository Account | 4945761773 | No | - |
| 119 | Wells Fargo Restaurant Depository Account | 4945761781 | No | - |
| 120 | Wells Fargo Restaurant Depository Account | 4941164998 | No | - |
| 121 | Wells Fargo Restaurant Depository Account | 4945761799 | No | - |
| 122 | Wells Fargo Restaurant Depository Account | 4945761807 | No | - |
| 123 | Wells Fargo Restaurant Depository Account | 4945761815 | No | - |
| 124 | Wells Fargo Restaurant Depository Account | 4945761823 | No | - |
| 125 | Wells Fargo Restaurant Depository Account | 4942975582 | No | - |
| 126 | Wells Fargo Restaurant Depository Account | 4942975590 | No | - |
| 127 | Wells Fargo Restaurant Depository Account | 4945761849 | No | - |
| 128 | Wells Fargo Restaurant Depository Account | 4945761856 | No | - |
| 129 | Wells Fargo Restaurant Depository Account | 4945761864 | No | - |
| 130 | Wells Fargo Restaurant Depository Account | 4945761872 | No | - |
| 131 | Wells Fargo Restaurant Depository Account | 4945761880 | No | - |
| 132 | Wells Fargo Restaurant Depository Account | 4945761906 | No | - |
| 133 | Wells Fargo Restaurant Depository Account | 4945761914 | No | - |
| 134 | Wells Fargo Restaurant Depository Account | 4945761930 | No | - |
| 135 | Wells Fargo Restaurant Depository Account | 4945761948 | No | - |
| 136 | Wells Fargo Restaurant Depository Account | 4128775202 | No | - |
| 137 | Wells Fargo Restaurant Depository Account | 4983368416 | No | - |
| 138 | Wells Fargo Restaurant Depository Account | 4945761989 | No | - |
| 139 | Wells Fargo Restaurant Depository Account | 4945761997 | No | - |
| 140 | Wells Fargo Restaurant Depository Account | 4942982067 | No | - |
| 141 | Wells Fargo Restaurant Depository Account | 4945761369 | No | - |
| 142 | Wells Fargo Restaurant Depository Account | 4942141243 | No | - |
| 143 | Wells Fargo Restaurant Depository Account | 4945761401 | No | - |
| 144 | Wells Fargo Restaurant Depository Account | 4943035337 | No | - |
| 145 | Wells Fargo Restaurant Depository Account | 4943035279 | No | - |
| 146 | Wells Fargo Restaurant Depository Account | 4940289432 | No | - |
| 147 | Regions Bank Restaurant Depository Account | 7880068187 | No | - |
| 148 | Regions Bank Restaurant Depository Account | 7880067903 | No | - |
| 149 | Regions Bank Restaurant Depository Account | 7880067717 | No | - |
| 150 | Regions Bank Restaurant Depository Account | 7880046728 | No | - |
| 151 | Regions Bank Restaurant Depository Account | 7880046647 | No | - |
| 152 | Regions Bank Restaurant Depository Account | 7880025194 | No | - |
| 153 | Regions Bank Restaurant Depository Account | 7880003352 | No | - |
| 154 | Regions Bank Restaurant Depository Account | 7880003271 | No | - |
| 155 | Regions Bank Restaurant Depository Account | 7880003247 | No | - |
| 156 | Regions Bank Restaurant Depository Account | 7880003204 | No | - |
| 157 | Regions Bank Restaurant Depository Account | 7880003182 | No | - |
| 158 | Regions Bank Restaurant Depository Account | 7880003158 | No | - |
| 159 | Regions Bank Restaurant Depository Account | 7880003131 | No | - |
| 160 | Regions Bank Restaurant Depository Account | 196819065 | No | - |
| 161 | Regions Bank Restaurant Depository Account | 161876216 | No | - |
| 162 | Regions Bank Restaurant Depository Account | 161876119 | No | - |
| 163 | Regions Bank Restaurant Depository Account | 161876100 | No | - |
| 164 | Regions Bank Restaurant Depository Account | 161876097 | No | - |
| 165 | Regions Bank Restaurant Depository Account | 161876070 | No | - |
| 166 | Regions Bank Restaurant Depository Account | 161876038 | No | - |
| 167 | Regions Bank Restaurant Depository Account | 161876011 | No | - |
| 168 | Regions Bank Restaurant Depository Account | 161875996 | No | - |
| 169 | Regions Bank Restaurant Depository Account | 161875953 | No | - |

| 170 | Regions Bank Restaurant Depository Account | 161875937 | No | - |
| 171 | Regions Bank Restaurant Depository Account | 161875929 | No | - |
| 172 | Regions Bank Restaurant Depository Account | 161875910 | No | - |
| 173 | Regions Bank Restaurant Depository Account | 161875902 | No | - |
| 174 | Regions Bank Restaurant Depository Account | 161875899 | No | - |
| 175 | Regions Bank Restaurant Depository Account | 161875880 | No | - |
| 176 | Regions Bank Restaurant Depository Account | 161875856 | No | - |
| 177 | Regions Bank Restaurant Depository Account | 161875848 | No | - |
| 178 | Regions Bank Restaurant Depository Account | 161875821 | No | - |
| 179 | Regions Bank Restaurant Depository Account | 101860178 | No | - |
| 180 | Regions Bank Restaurant Depository Account | 101859005 | No | - |
| 181 | Regions Bank Restaurant Depository Account | 94865574 | No | - |
| 182 | Regions Bank Restaurant Depository Account | 92364748 | No | - |
| 183 | Regions Bank Restaurant Depository Account | 92364713 | No | - |
| 184 | Regions Bank Restaurant Depository Account | 92364594 | No | - |
| 185 | Regions Bank Restaurant Depository Account | 92364586 | No | - |
| 186 | Regions Bank Restaurant Depository Account | 92364578 | No | - |
| 187 | Regions Bank Restaurant Depository Account | 92364543 | No | - |
| 188 | Regions Bank Restaurant Depository Account | 92364535 | No | - |
| 189 | Regions Bank Restaurant Depository Account | 92364527 | No | - |
| 190 | Regions Bank Restaurant Depository Account | 92364519 | No | - |
| 191 | Regions Bank Restaurant Depository Account | 92364500 | No | - |
| 192 | Regions Bank Restaurant Depository Account | 92364497 | No | - |
| 193 | Regions Bank Restaurant Depository Account | 92364489 | No | - |
| 194 | Regions Bank Restaurant Depository Account | 92364462 | No | - |
| 195 | Regions Bank Restaurant Depository Account | 74544705 | No | - |
| 196 | Regions Bank Restaurant Depository Account | 54206413 | No | - |
| 197 | Regions Bank Restaurant Depository Account | 54206405 | No | - |
| 198 | Regions Bank Restaurant Depository Account | 54206383 | No | - |
| 199 | Regions Bank Restaurant Depository Account | 54206359 | No | - |
| 200 | Regions Bank Restaurant Depository Account | 53596838 | No | - |
| 201 | Regions Bank Restaurant Depository Account | 53596439 | No | - |
| 202 | Regions Bank Restaurant Depository Account | 53596404 | No | - |

**Total Bank Account Balance**      $   3,578,980

*DACA executed within 90 days prior to Petition Date.

Debtor Name: The Krystal Company                                Case Number: 20-61065 (PWB)

Assets - Real and Personal Property

Schedule 2

Part 10, Question 60: Patents, copyrights, trademarks, and trade secrets

| Trademark Name | Country Name | Trademark Status | File Date | App. Number | Reg. Date | Reg Number | Next Renewal Date | Class | Goods |
|---|---|---|---|---|---|---|---|---|---|
| CHIK | U.S. | Registered | 02/07/2012 | 85536255 | 09/11/2012 | 4205762 | 09/11/2022 | 30 | Specially prepared sandwiches |
| CHILI CHEESE PUP | U.S. | Registered | 02/07/2012 | 85536153 | 10/02/2012 | 4217196 | 10/02/2022 | 30 | Frankfurter sandwiches containing chili and cheese, for consumption on or off the premises |
| CORN PUP | U.S. | Registered | 02/07/2012 | 85536127 | 09/11/2012 | 4205755 | 09/11/2022 | 30 | Miniature frankfurters, encased in a bread crust on a stick |
| HASH BROWN KRYSPERS | U.S. | Registered | 10/05/1998 | 75563773 | 08/20/2002 | 2610061 | 08/20/2022 | 29 | Hash brown potatoes for consumption on or off the premises |
| KRYSTAL | U.S. | Registered | 06/29/1998 | 75510205 | 09/28/1999 | 2281199 | 09/28/2029 | 41 | Education services, namely, conducting classes, conferences and workshops in the field of restaurant management and operations, and distributing course material in conjunction therewith, entertainment services in the nature of athletic competitions |
| KRYSTAL | U.S. | Registered | 09/05/1997 | 75352556 | 10/05/1999 | 2282541 | 10/05/2029 | 09 | Computer software for use in restaurant management applications, namely, transferring data from point of sale devices, for inventory and time and attendance management, for data base management, and for supporting restaurant operations |
| KRYSTAL | U.S. | Registered | 07/16/1984 | 73490050 | 04/09/1985 | 1330234 | 04/09/2025 | 42 | Restaurant Services |
| KRYSTAL | U.S | Registered | 12/07/1992 | 74337580 | 08/10/1993 | 1787005 | 08/10/2023 | 35 | Franchising services, namely, offering technical assistance, business consulting, data processing, and training in the establishment and operation of restaurants |
| KRYSTAL | U.S | Registered | 04/25/1994 | 74516549 | 01/28/1997 | 2033261 | 01/28/2027 | 25 | Clothing, namely, T-shirts, golf shirts, polo shirts, hats, visors, shorts, sweaters, sweatshirts, sweatpants, jackets, wind breakers, and aprons |
| KRYSTAL | U.S | Registered | 04/25/1994 | 74516536 | 12/26/1995 | 1943491 | 12/26/2025 | 21 | Drinking glasses and bowls, not of leaded glass, coffee cups, mugs, paper cups, plastic cups, thermal insulated containers for beverages, squeeze bottles, ice chests and ice buckets distributed through 'Krystal and Krystal Kwik' restaurants |
| KRYSTAL | U.S | Registered | 01/31/1994 | 74484271 | 01/31/1995 | 1876821 | 01/31/2025 | 32 | Light beverages, namely soft drinks, fruit juices, vegetable juices and aerated fruit juices |

Debtor Name: The Krystal Company                                                                                          Case Number: 20-61065 (PWB)

Assets - Real and Personal Property

Part 10, Question 60: Patents, copyrights, trademarks, and trade secrets

| Trademark Name | Country Name | Trademark Status | File Date | App. Number | Reg. Date | Reg. Number | Next Renewal Date | Class | Goods |
|---|---|---|---|---|---|---|---|---|---|
| KRYSTAL | U.S. | Registered | 01/31/1994 | 74484253 | 12/16/1997 | 2120676 | 12/16/2027 | 28 | Toys, namely toy balloons, plastic toy animals, plush toys, toy vehicles, inflatable bath toys, and inflatable play toys |
| Krystal (logo) | U.S. | Registered | 07/23/1984 | 73491387 | 04/09/1985 | 1330251 | 04/09/2025 | 42 | Restaurant Services |
| Krystal (logo) | U.S. | Registered | 07/23/1984 | 73491385 | 04/16/1985 | 1331146 | 04/16/2025 | 30 | Various Fast Food Items-Namely, Hamburger and Cheeseburger Sandwiches for Consumption On or Off the Premises |
| Krystal (logo) | U.S. | Registered | 10/04/2018 | 88142904 | 05/21/2019 | 5756748 | 05/21/2025 | 25, 29, 30, 32, 43 | 25: Clothing, namely, T-shirts, golf shirts, polo shirts, vests, hats, visors, head bands, shorts, sweaters, sweatshirts, sweatpants, jackets, wind breakers, and aprons<br><br>29: Specially prepared entree consisting primarily of eggs, meat and cheese, and also containing grits, for consumption on or off the premises; French fries; Corn dogs; Prepared chicken wings, sold through applicant's restaurants<br><br>30: Cheeseburger sandwiches; Hamburger sandwiches; Hot dog sandwiches; Specially prepared sandwiches; Specially prepared sandwiches served on a square bun; Various Fast Food Items-Namely, Hamburger and Cheeseburger Sandwiches for Consumption On or Off the Premises; Coffee and tea<br><br>32: Light beverages, namely, soft drinks, fruit juices, vegetable juices and aerated fruit juices<br><br>43: Fast-food restaurant services; Restaurant services; Restaurant services, including sit-down service of food and take-out restaurant services; Restaurant services, namely, providing of food and beverages for consumption on and off the premises; Food and drink catering |

Debtor Name: The Krystal Company                                          Case Number: 20-61065 (PWB)

Assets - Real and Personal Property

Part 10, Question 60: Patents, copyrights, trademarks, and trade secrets

| Trademark Name | Country Name | Trademark Status | File Date | App. Number | Reg. Date | Reg. Number | Next Renewal Date | Class | Goods |
|---|---|---|---|---|---|---|---|---|---|
|  | U.S. | Registered | 10/04/2018 | 88142894 | 07/23/2019 | 5810997 | 07/23/2025 | 25, 29, 30, 32, 43 | 25: Clothing, namely, T-shirts, golf shirts, polo shirts, vests, hats, visors, head bands, shorts, sweaters, sweatshirts, sweatpants, jackets, wind breakers, and aprons<br><br>29: Specially prepared entree consisting primarily of eggs, meat and cheese, and also containing grits, for consumption on or off the premises; French fries, Corn dogs; Prepared chicken wings, sold through restaurants<br><br>30: Cheeseburger sandwiches; Hamburger sandwiches; Hot dog sandwiches; Specially prepared sandwiches; Specially prepared sandwiches served on a square bun; Various Fast Food Items-Namely, Hamburger and Cheeseburger Sandwiches for Consumption On or Off the Premises; Coffee and tea<br><br>32: Light beverages, namely, soft drinks, fruit juices, vegetable juices and aerated fruit juices<br><br>43: Fast-food restaurant services; Restaurant services; Restaurant services, including sit-down service of food and take-out restaurant services; Restaurant services, namely, providing of food and beverages for consumption on and off the premises, Food and drink catering |
| KRYSTAL BREAKFAST SCRAMBLER | U.S. | Registered | 06/04/2003 | 78266532 | 05/22/2007 | 3243487 | 05/22/2027 | 29 | Specially prepared entree consisting primarily of eggs, meat and cheese, and also containing grits, for consumption on or off the premises |
|  | U.S. | Registered | 07/02/2010 | 85077131 | 05/31/2011 | 3971926 | 05/31/2021 | 29 | Prepared chicken wings, sold through applicant's restaurants |

Debtor Name: The Krystal Company                                        Case Number: 20-61065 (PWB)

Assets - Real and Personal Property

Part 10, Question 60: Patents, copyrights, trademarks, and trade secrets

| Trademark Name | Country Name | Trademark Status | File Date | App. Number | Reg. Date | Reg. Number | Next Renewal Date | Class | Goods |
|---|---|---|---|---|---|---|---|---|---|
|  | U.S. | Registered | 10/09/2014 | 86419132 | 08/30/2016 | 5032462 | 08/30/2022 | 35 | Administration of a customer loyalty program which provides incentive awards to customers through a loyalty card program for the purpose of promoting and rewarding loyalty |
|  | U.S. | Registered | 10/09/2014 | 86419147 | 05/26/2015 | 4743522 | 05/26/2021 | 30, 43 | 30: Cheeseburger sandwiches; Hamburger sandwiches  43: Fast-food restaurant services; Restaurant services; Restaurant services, including sit-down service of food and take-out restaurant services; Restaurant services, namely, providing of food and beverages for consumption on and off the premises |
| KRYSTAL JUNKYARD FRIES | U.S. | Registered | 10/07/2016 | 87196450 | 05/09/2017 | 5199848 | 05/09/2023 | 29 | French fries |
| KRYSTAL LOVERS | U.S. | Registered | 08/11/2005 | 78690927 | 01/09/2007 | 3197634 | 01/09/2027 | 43 | Restaurant services |
| KRYSTAL SUNRISER | U.S. | Registered | 10/13/1995 | 75005549 | 11/05/1996 | 2013581 | 11/05/2026 | 30 | Specially prepared sandwiches served on a square bun |
| LITTLE FOOD, BIG TASTE | U.S. | Registered | 07/17/2001 | 76286901 | 12/31/2002 | 2670133 | 01/03/2023 | 42 | Restaurant services |
| SHUN THE HO-HUM | U.S. | Registered | 03/08/2016 | 86932967 | 09/13/2016 | 5041170 | 09/13/2022 | 43 | Restaurant services; Restaurant services, namely, providing of food and beverages for consumption on and off the premises; Fast-food restaurant services; Fast-food restaurant services, Take-out restaurant services |
| TAKE ALONG A SACKFUL | U.S. | Registered | 05/20/1999 | 75710783 | 07/03/2007 | 3257380 | 07/03/2027 | 43 | Restaurant services |
|  | U.S. | Registered | 06/27/2014 | 86322773 | 03/15/2016 | 4916524 | 03/15/2022 | 32 | Soft drink beverages sold in quick serve restaurants for consumption on or off the premises |
|  | U.S. | Registered | 10/04/2018 | 88142899 | 12/31/2019 | 5951212 | 12/31/2025 | 35, 39 | 35: On-line ordering services in the field of restaurant take-out and delivery  39: Delivery of food by restaurants |
|  | U.S. | Registered | 10/04/2018 | 88142907 | 12/31/2019 | 5951213 | 12/31/2025 | 35, 39 | 35: On-line ordering services in the field of restaurant take-out and delivery  39: Delivery of food by restaurants |