UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | Jointly Administered Under |
| KRYSTAL COMPANY, INC., *et al*., | ) | |
| | ) | Case No. 20-61065 PWB |
| Debtors. | ) | |

**OBJECTION OF PPB&D, INC. TO STATED CURE AMOUNT**

COMES NOW PPB&D, Inc. ("**PPB&D**"), a lessor to, and creditor of, The Krystal Company ("**Krystal**") and, pursuant to this Court's "Notice to Contract Parties to Potentially Assumed Contracts and Unexpired Leases" dated April 7, 2020 (the "**Cure Cost Notice**") [Doc. No. 310], herewith files its objection to the Cure Amount listed by the Debtor in its Cure Cost Notice. In response to the Cure Cost Notice, and in objection thereto, PPB&D states as follows:

**I.    The Lease**

1.    PPB&D is the owner of a Krystal store location at 1015 East Hwy 80, Pooler, GA 31322 (the "**Store**"). The Debtor apparently recognizes the Store on its books as SAV007.

2.    PPB&D leases the Store to the Debtor pursuant to that certain Lease Agreement (the "**Lease**") dated April 11, 2000, as amended from time to time. A true and correct copy of the Lease is attached hereto and incorporated herein by reference as Exhibit "1". The Lease was transferred and assigned to PPB&D pursuant to that that Assignment and Assumption of Lease dated August 23, 2017 (the "**Assignment and Assumption**"). A true and correct copy of the Assignment and Assumption is attached hereto and incorporated herein by reference as Exhibit "2".

3.    The Debtor continues to operate the Store as a Krystal restaurant.

4.    By virtue of, and pursuant to, the Sale Order, the Debtor proposes to sell all of its assets, pursuant to 11 U.S.C. § 363 (a "**Sale**"), and assume and assign the Lease to a Stalking Horse

Bidder, or any other higher and better overbidding entity (collectively, a "**Purchaser**").

## II.    Contractual Amounts Due Under the Lease

5.    The Lease and the referenced Second Amendment to Lease Agreement dated September 29, 2015 (the "**Second Amendment**") provide that, based on certain automatic increases that are part and parcel of the Second Amendment, the Debtor is now obligated to pay Krystal $10,613.63 each month (the "**Rent Due**").  A true and correct copy of the Second Amendment is attached hereto and incorporated herein by reference as Exhibit "3".

6.    In addition to the Rent Due, the Rent Addendum dated on or about April 11, 2000 (the "**Rent Addendum**") provides in Paragraph 7 that PPB&D shall be entitled to a five percent (5%) late fee for any payment that is more than fifteen (15) days past due (a "**Late Fee**").  A true and correct copy of the Rate Addendum is attached hereto and incorporated hereby by reference as Exhibit "4".

7.    In addition to the Rent Due and Late Fees, Paragraph 29 of the Lease provides that upon an event of default, the Debtor shall pay to PPB&D eighteen percent (18%) interest on all sums due from the date they were due to be paid until the date that they are actually paid.

8.    In addition to the Rent Due, the Late Fees and the Interest, under Paragraph 7 of the Lease the Debtor is responsible for paying the Chatham County property taxes associated with the Store (the "**Taxes**").

9.    In addition to the Rent Due, the Late Fees, the Interest and the Taxes, under Paragraph 14(d) of the Lease the Debtor is obligated to pay all of PPB&D's attorneys' fees incurred in enforcing its rights under the Lease.

## III.    The Arrearages Under the Lease and Amendments

10.    As of the Petition Date the Debtor was in arrears on its payments of Rent Due under the Lease, including the monthly Rent Due and the attendant Late Fees, as follows:

60166609_1

| November 2019 | Rent | $10,613.63 |
| November 2019 | Late charge | $530.66 |
| December 2019 | Rent | $10,613.63 |
| December 2019 | Late charge | $530.66 |
| January 2020 | Rent | $10,613.63 |
| January 2020 | Late charge | $530.66 |
| Total Rent Due and Late Fees Pre-Petition | | $33,432.87 |

(collectively, the "**Pre-Petition Rent Arrearage**").  The Debtor has not made any payments to cure this Pre-Petition Rent Arrearage post-petition.

11.     Interest has accrued on the Pre-Petition Arrearage at the rate of 18% per annum, leaving an interest balance due of $2,324.37 (the "**Interest**"), with interest accruing thereon at the per diem rate of $5.30.

12.     As of the date of this objection, the Debtor is in arrears on the property taxes due to Chatham County, Georgia in the amount of $1,153.17 (the "**Pre-Petition Tax Arrearage**").

13.     The total of the Pre-Petition Rent Arrearage, the Interest and the Pre-Petition Tax Arrearage (collectively, the "**Pre-Petition Arrearage**") is $36,910.34, with interest continuing to accrue thereon at the rate of $5.30 per diem.

14.     As of April 1, 2020 PPB&D had incurred $3,068.10 in its enforcement of the Lease, and these fees will continue to accrue through the closing of the Sale.

15.     The Debtor failed to pay its post-petition Rent Due for April 2020.  As a result, the Debtor is in arrears to post-petition for the Rent Due and a Late Fee, totaling $11,144.29 (the "**Post-Petition Rent Arrearage**").  To the extent that the Debtor fails to pay the Rent Due for May, 2020, this amount would be added to the Post-Petition Arrearage.

### IV.    Property Taxes Due for 2020

16.    The 2020 taxes for the Store (the "**Taxes**") are $3,844.61.

17.    As noted above, as of the date of this Objection, the Debtor is in arrears on the property taxes due to Chatham County, Georgia in the amount of $1,153.17, bringing to the total taxes due for 2020 to $4,997.78.  A true and correct copy of the Chatham County Tax Bill is attached hereto and incorporated herein by reference as <u>Exhibit "5"</u>.

18.    The 2020 Taxes for the Store are due on June 1, 2020.  At a closing of any Sale, PPB&D should receive as part of its cure payment an amount equal to the pro-rata portion of the Taxes due for the period from January 1, 2020 to the date of the Sale or adequate assurance from the Purchaser that the Taxes for 2020 and thereafter will be timely paid.

### V.    Relief Requested

19.    The Debtor's proposed Cure Cost Notice lists the Cure Amount for the Lease and the Store at ($37,840.89).

20.    The Pre-Petition Arrearage is $36,910.34, plus additional interest and attorneys' fees to be determined at the closing of the Sale.

21.    The Post-Petition Arrearage is $11,144.29, plus any post-petition Rent Due, interest and Late Fees that may accrue and go unpaid between the date of this Objection and the closing of the Sale.

22.    Any cure payment due to PPB&D must include i) the entire Pre-Petition Arrearage; ii) the entire Post-Petition Arrearage; iii) attorneys' fees that may continue to accrue up to the date of closing; and ii) interest due on the Pre-Petition Arrearage at the rate of 18% per annum, which will continue to accrue up to the date of closing (collectively, the "**Cure Amount**").

23.    By this Objection, PPB&D requests that this Court not allow the Debtor to assume

the Lease and assign it to a Purchaser unless and until the Debtor or the Purchaser, as appropriate,

has paid the Cure Amount, in full, by wire transfer or other immediately available funds at the

closing of the Sale.

Respectfully submitted, this 21st day of April, 2020.

/s/ John A. Thomson, Jr.
JOHN A. THOMSON, JR.
Georgia State Bar No. 706760

ADAMS AND REESE LLP
3424 Peachtree Road, NE
Monarch Tower, Suite 1600
Atlanta, Georgia 30326
(470) 427-3706 – Telephone
(404) 500-5975 – Facsimile
john.thomson@arlaw.com

**Attorney for PPB&D, Inc.**

60166609_1

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:                                    )        CHAPTER 11
                                          )        Jointly Administered Under
THE KRYSTAL COMPANY, *et al.*,            )
                                          )        Case No. 19-65768-WLH
                Debtors.                  )

### CERTIFICATE OF SERVICE

I, John A. Thomson, Jr., of the firm of Adams and Reese LLP, 3424 Peachtree Road, NE, Monarch Tower, Suite 1600, Atlanta, Georgia 30326, certify:

That I am, and at all times hereinafter mentioned, was more than 18 years of age; and

That I served a copy of the foregoing Objection of PPB&D, Inc. to Stated Cure Amount electronically via the Court's CM/ECF System upon registered users and/or via First Class U.S. Mail in the above-styled case upon the following:

Sarah Robinson Borders
King & Spalding LLP
sborders@kslaw.com

Leia Ashlin Clement Shermohammed
King & Spalding LLP
LShermohammed@kslaw.com

Matthew W. Levin
Scroggins & Williamson, P.C.
mlevin@swlawfirm.com

J. Robert Williamson
Scroggins & Williamson, P.C.
One Riverside, Suite 450
rwilliamson@swlawfirm.com

Thomas Wayne Dworschak
Office of the U. S. Trustee
thomas.w.dworschak@usdoj.gov

Eric S. Goldstein
Shipman & Goodwin, LLP
egoldstein@goodwin.com

60166609_1

Jason R. Adams
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178

James S. Carr
Kelley Drye & Warren LLP
jcarr@kelleydrye.com

Sean C. Kulka
Arnall, Golden, Gregory LLP
sean.kulka@agg.com

Darryl S. Laddin
Arnall Golden Gregory LLP
bkrfilings@agg.com

Maeghan J. McLoughlin
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178

Eric R. Wilson
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on **April 21, 2020.**

/s/ John A. Thomson, Jr.
JOHN A. THOMSON, JR.
Georgia State Bar No. 706760

ADAMS AND REESE LLP
3424 Peachtree Road, NE
Monarch Tower, Suite 1600
Atlanta, Georgia 30326
(470) 427-3706 – Telephone
(404) 500-5975 – Facsimile
john.thomson@arlaw.com

**Attorney for PPB&D, Inc.**

60166609_1

EXHIBIT "1"

Krystal SAV-07/Pooler, Chatham County, Georgia

## LEASE AGREEMENT

**THIS LEASE AGREEMENT** is made and entered into as of April ___11___, 2000, by and between:

> (i) **CNL INCOME FUND XII, LTD.,** a Florida limited partnership, with principal office and place of business at CNL Center at City Commons, 450 South Orange Avenue, Orlando, Florida 32801-3336 ("Landlord"), and

> (ii) **THE KRYSTAL COMPANY,** a Tennessee corporation, with a mailing address of One Union Square, Chattanooga, Tennessee 37402 ("Tenant").

### WITNESSETH:

Landlord leases to Tenant, for the purpose of operating a Krystal Restaurant and for no other use or purpose whatsoever and subject to the terms and conditions of the Rent Addendum attached hereto, and Tenant rents from Landlord the following described premises, (hereinafter "Premises") located at 1015 E. Highway 80, Pooler, Chatham County, Georgia and being more particularly described in Exhibit "A" attached hereto and made a part hereof, together with all rights and privileges in and about the Premises as may be necessary or convenient to Tenant's business, inclusive of all easements benefitting the real property described in Exhibit "A". Premises shall include all improvements and structures whether now existing or hereafter constructed thereon.

The following additional stipulations are hereby declared to be covenants of this Lease and shall, unless otherwise expressly stated, be applicable at all times throughout the term of this Lease and any extension or renewal thereof:

1. **Definitions.**

For purposes of this Lease, the following terms are hereby defined to mean:

"Effective Date" shall mean the first date set forth at the beginning of this Lease.

"Landlord" shall mean CNL Income Fund XII, Ltd., a Florida limited partnership, its successors and assigns.

"Lease" shall include this Lease Agreement and all amendments hereto, if any, entered into from time to time hereafter.

"Lease Year" shall mean a fiscal period beginning on the Effective Date (and each anniversary thereof) and expiring twelve (12) months thereafter.

"Rent" shall mean the Rent payable under this Lease as set forth in the Rent Addendum attached hereto and incorporated herein, and shall include Interim Rent, Annual Rent and Percentage Rent (all as defined in the Rent Addendum).

2.    **Term and Rent.**

(a)    Term.  The term of this Lease shall begin on the Effective Date and shall expire on a date fifteen (15) years thereafter unless previously terminated or renewed or extended as provided herein.

(b)    Rent.  Rent shall be due and payable as provided in the Rent Addendum attached hereto and incorporated herein.

3.    **Alterations and Improvements, Investment Tax Credit, Mechanic's Liens, Landlord's Disclaimer.**

(a)    Alterations and Improvements.

(i)    Tenant's Property.  Tenant shall be permitted to install, use on and about, and remove from the Premises at any time and from time to time all trade fixtures and other personal property (exclusive of lighting, electrical, heating and air conditioning improvements) which are not a component of the building located or to be located on the Premises (hereinafter referred to as the "Tenant's Property"), all of which at all times shall remain the property of Tenant with the right of removal (subject to paragraph (d) below) at the expiration of this Lease.  Trade fixtures shall include:  (1) removable decor items and office equipment; (2) building lettering, signs, sign posts and sign standards; (3) unattached food and customer service equipment; and (4) food and customer service equipment attached to the building by bolts and screws and/or by utility connections, including without limitation, walk-in refrigerators and freezers, remote refrigeration systems, exhaust systems and hoods.

(ii)    Subsequent Improvements.  Tenant shall also have the right to make any additions, alterations, changes and improvements, structural and nonstructural, including but not limited to construction of additional buildings and additions to the then existing buildings, as Tenant shall desire; provided, however, (i) Tenant shall submit plans of all structural changes to Landlord at least thirty (30) days in advance of the proposed construction date, (ii) Tenant shall provide Landlord with evidence of Tenant's financial ability to pay for such changes, (iii) if the cost of structural changes exceeds FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00) for the Premises, Tenant shall post payment and performance bonds for such work naming Landlord and Tenant as dual obligees, (iv) all such construction shall be completed in a workmanlike manner and in full compliance with all building laws and ordinances applicable thereto, at Tenant's expense, and (v) such additions, alterations, changes and improvements shall not reduce the fair market value of the Premises.

914097/72106/346985.1-Krystal/SAV-07
Pooler, Chatham County, Georgia

(iii)    Improvements Upon Termination, Subletting or Assignment. Tenant shall have the right, at its option and expense, to redecorate or otherwise remodel the Premises upon any termination hereof or upon subletting or assignment in such manner as will, without reducing the fair market value thereof, avoid the appearance of the Krystal Restaurant operated under this Lease; provided, however, Tenant shall not impair the structural condition of the Premises or reduce the size thereof.

All such Subsequent Improvements, Improvements Upon Termination, Subletting or Assignment, or other additions, alterations, changes and improvements of any type shall be deemed to be a part of the Premises.

(b)    <u>Investment Tax Credit</u>. Landlord hereby grants Tenant the right and privilege of applying for and receiving all investment tax credits, if any, under the Internal Revenue Code which may be available with respect to the building and other improvements to be constructed. To this end, Landlord agrees to execute all such further documents and supply such additional information as may be required to make such election effective.

(c)    <u>Mechanic's Liens</u>. Tenant shall not do or suffer anything to be done whereby the Premises, or any part thereof, may be encumbered by a mechanic's lien or similar lien, and, if whenever and as often as any mechanic's lien or similar lien is filed against the Premises, or any part thereof, purporting to be for or on account of any labor done, materials or services furnished in connection with any work in or about the Premises, done by, for or under the authority of Tenant, or anyone claiming by, through or under Tenant, Tenant shall discharge the same of record within ten (10) days after service upon Tenant of notice of the filing thereof; provided, however, Tenant shall have the right to remove the lien by bonding same in accordance with applicable law and to contest any such lien; provided further that Tenant shall diligently prosecute any such contest, at all times effectively staying or preventing any official or judicial sale of the Premises under execution or otherwise, and, if unsuccessful, satisfy any final judgment against Tenant adjudging or enforcing such lien or, if successful, procuring record satisfaction or release thereof.

(d)    <u>Landlord's Disclaimer</u>. All of Tenant's Property placed in or upon the Premises by Tenant shall remain the property of Tenant with the right to remove the same at any time during the term of this Lease. Landlord, if requested by Tenant, agrees to execute such documentation subordinating its lien rights (vis a vis any equipment lender or landlord) to Tenant's personalty and to all rights of levy for distraint for rent against same as shall be reasonably required by any equipment lender or lessor of Tenant; provided any damage caused by, or resulting from the removal of any trade fixtures, equipment or other personal property shall be promptly repaired by Tenant or the party entitled to remove same.

4.    <u>Destruction of Premises; Insurance</u>.

(a)    If the Premises are damaged or destroyed by fire, flood, tornado or other element, or by any other casualty and such damage or destruction does not occur within the last twenty-four (24) months of the original or of any extended or renewed term of this Lease, this Lease shall continue in full force and effect and Tenant shall, as promptly as possible, restore, repair or rebuild the Premises to substantially the same condition as it existed before the damage or

914097/72106/346985.1-Krystal/SAV-07
Pooler, Chatham County, Georgia

3

destruction, including any improvements or alterations required to be made by any governmental body, county or city agency, due to any changes in code or building regulations.  Tenant shall for this purpose use all, or such part as may be necessary, of the insurance proceeds received from insurance policies required to be carried under the provision of subparagraph 4(b) hereinbelow, and Landlord agrees that such insurance proceeds shall be made available to Tenant for the purpose of repairing and restoring the Premises.  If such insurance proceeds are not sufficient to pay such costs, Tenant shall pay such deficit.

Should the Premises be damaged or destroyed by any of the foregoing described casualties within the last twenty-four (24) months of the original term or of any extended or renewed term of this Lease, then to the extent that the Premises are untenantable or unsuitable, in Tenant's reasonable opinion, for continued use in the normal conduct of Tenant's business, Tenant shall have the right, exercisable by written notice to Landlord given within thirty (30) days after the date of such damage or destruction, to terminate this Lease effective upon the date of such damage or destruction.  If Tenant terminates this Lease as thus provided Landlord shall be entitled to all of the insurance proceeds on the Premises, but not to the proceeds of insurance carried by Tenant on Tenant's Property; provided, however, Tenant shall not have the right to terminate this Lease unless (i) the damage or destruction of the Premises was caused by a peril which was insured against as required by the provisions of subparagraph 4(b) of this Lease; (ii) at the time of such damage and destruction the said insurance policies to be carried by Tenant were in the amount of the full replacement cost of such improvements (without deduction or co-insurance) and in full force and effect; and (iii) the insurer has confirmed coverage and its obligation to pay.  If Tenant defaults in its obligation to carry insurance in the amounts required under subparagraph 4(b), then, prior to Tenant's termination of this Lease and in addition to the requirements set forth in the preceding sentence, Tenant shall be obligated to pay toward said reconstruction or to Landlord the difference between the amount of insurance actually carried and the amount required to be carried under this paragraph 4.

(b)    Tenant, at its expense and as additional rent hereunder, shall throughout the term of this Lease and any extension or renewal thereof, keep the Premises insured with (i) "Special Form Causes of Loss" coverage (as such term is used in the insurance industry), at least as broad as ISO Special Form Causes of Loss, CP0030, including coverage for glass breakage, and vandalism and malicious mischief for one hundred percent (100%) insurable replacement value with no co-insurance penalty, with any deductible in excess of Fifty Thousand Dollars ($50,000.00) to be approved by Landlord and, (ii) "Ordinance and Law Coverage" with a maximum liability of not less than $100,000.00.

Tenant shall maintain throughout the term of this Lease and any extension thereof, at its own expense and as additional Rent, Commercial General Liability insurance including Product Liability and Liquor Liability (if liquor is served) covering the Premises at least as broad as the most commonly available ISO Commercial General Liability policy form CG0001 (occurrence basis) covering bodily injury, property damage and personal and advertising injury, for the joint benefit of and insuring Tenant and Landlord, each with coverage of not less than One

Million Dollars ($1,000,000.00) per occurrence, with a General Aggregate of not less than Two Million Dollars ($2,000,000.00) and a "following form" Umbrella Liability policy or Excess Liability policy to include Product Liability and Liquor Liability (if liquor is served), in an amount of not less than Ten Million Dollars ($10,000,000.00) per occurrence, with any deductible in excess of One Hundred Thousand Dollars ($100,000.00) to be approved by Landlord.

(d)     In the event the Premises are located in an area identified by the National Flood Insurance Program as an area having "special flood hazards" (zones beginning with "A" or "V," Tenant shall maintain throughout the term of this Lease and any extension thereof, flood insurance for the full replacement value of the Premises, with any deductible in excess of Fifty Thousand Dollars ($50,000.00) to be approved by Landlord.

(e)     In the event the Premises are located in a major earthquake damage area and earthquake insurance is available, Tenant shall maintain throughout the term of this Lease and any extension thereof, earthquake insurance for the full replacement value of the Premises, with any deductible in excess of Fifty Thousand Dollars ($50,000.00) to be approved by Landlord.

(f)     All insurance companies providing the coverage required under this paragraph 4 shall be selected by Tenant and shall be rated B plus (B+) or better by Best's Insurance Rating Service, shall be licensed to write insurance policies in the state in which the Premises is located, and shall be acceptable to Landlord in Landlord's reasonable discretion. Tenant shall provide Landlord with copies of all policies or certificates of such coverage for the insurance coverages referenced in this paragraph 4, and all Commercial General Liability and Umbrella or Excess Liability policies shall name Landlord (and if Landlord is either a general or limited partnership, all general partners) and any mortgagee designated by Landlord as an additional insured. Any such coverage for additional insureds shall be primary and non-contributory with any insurance carried by Landlord or any other additional insured hereunder. All property insurance policies shall name Landlord as a loss payee as Landlord's interests may appear, and shall provide that all losses shall be payable as herein provided. All such policies of insurance shall provide that the amount thereof shall not be reduced and that none of the provisions, agreements or covenants contained therein shall be modified or canceled by the insuring company or companies without thirty (30) days prior written notice being given to Landlord; and that all insurance proceeds shall be paid by check payable to Landlord. Such policy or policies of insurance may also cover loss or damage to Tenant's Property, and the insurance proceeds applicable to Tenant's Property shall not be paid to Landlord or any mortgagee but shall accrue and be payable solely to Tenant. In the event of a casualty, Tenant shall be responsible for any deficiency between the replacement cost of the Premises and the amount actually paid by the insurance company.

5.     **Maintenance and Repair.**

(a)     Tenant shall maintain the Premises and all buildings and improvements thereon (interior and exterior, structural and otherwise) in good order and repair and, subject to the provisions of paragraph 4(a) with respect to damage within the last twenty-four (24) months of the Lease, and paragraph 6 herein, return the Premises and all buildings and improvements thereon at the expiration of the term of this Lease or any extension thereof in as reasonably as good condition as when received, ordinary wear and tear excepted.

(b)    Tenant agrees that Landlord shall have no obligation under this Lease to make any repairs or replacements (including the replacement of obsolete components) to the Premises or the buildings or improvements thereon, or any alteration, addition, change, substitution or improvement thereof or thereto, whether structural or otherwise. The terms "repair" and "replacement" include the replacement of any portions of the Premises which have outlived their useful life during the term of the Lease (or any extensions thereof). Landlord and Tenant intend that the rent received by Landlord shall be free and clear of any expense to Landlord for the construction, care, maintenance (including common area maintenance charges and charges accruing under easements or other agreements relating to the Premises), operation, repair, replacement, alteration, addition, change, substitution and improvement of or to the Premises and any building and improvement thereon. Upon the expiration or earlier termination of this Lease, Tenant shall remain responsible for, and shall pay to Landlord, any cost, charge or expense for which Tenant is otherwise responsible for hereunder attributable to any period (prorated on a daily basis) prior to the expiration or earlier termination of this Lease.

6.    **Condemnation.**

(a)    In the event that the whole or any material part of the building on the Premises or such a material portion of the land (for purposes hereof, "material" shall mean (i) more than 20% of the building on the Premises; or (ii) more than 40% of the land; or (iii) more than twenty percent (20%) of the existing parking spaces on the Premises, provided that there are not sufficient parking spaces currently existing adjacent to the Premises that Tenant has the right to use or Landlord is unable to provide alternate parking spaces adjacent to the Premises at no cost to Tenant and acceptable to Tenant in its reasonable business judgment; or (iv) loss or impairment of Tenant's ability to provide, maintain and operate drive-through service in the manner planned and intended by Tenant for the Premises; or (v) such other taking as the Landlord agrees, in it sole and absolute discretion, renders the Premises unusable for the purpose of operating a Krystal Restaurant thereon) shall be taken during the term of this Lease or any extension or renewal thereof for any public or quasi-public use under any governmental law, ordinance, regulation or by right of eminent domain, or shall be sold to the condemning authority under threat of condemnation with the result that the Premises cannot continue to be operated as the type of restaurant contemplated herein, or if all reasonable access to the adjacent roadways from the existing or comparable curb cuts shall be taken (any of such events being hereinafter referred to as a "taking"), Tenant shall have the option of terminating this Lease as of a date no earlier than the date of such taking, such termination date to be specified in a notice of termination to be given by Tenant to Landlord not fewer than fourteen (14) days prior to the date on which possession of the Premises, or part thereof, must be surrendered to the condemning authority or its designee.

(b)    In the event of any taking which does not give rise to an option to terminate or in the event of a taking which does give rise to an option to terminate and Tenant does not elect to terminate, Landlord shall make its award available to Tenant and Tenant shall, to the extent of the award from such taking (which word "award" shall mean the net proceeds after deducting expenses of any settlement, or net purchase price under a sale in lieu of condemnation but shall exclude the value of Landlord's reversionary interest), promptly restore or repair the Premises and all improvements thereon (except the items which Tenant is entitled to remove) to the same condition as existed immediately prior to such taking insofar as is reasonably possible. If the

914097/72106/346985.1-Krystal/SAV-07
Pooler, Chatham County, Georgia

estimated cost of restoration or repair shall exceed the amount of Landlord's award, Tenant shall deposit with Landlord the amount of such excess. The award and any excess shall be held in trust by Landlord and used, to the extent required, for the purpose of such restoration or repair. A just and proportionate part of the Rent payable hereunder shall be abated from the date of such taking until ten (10) days after Tenant has restored same and thereafter the Rent shall be reduced in proportion to the reduction in the then rental value of the Premises after the taking in comparison with the rental value prior to the taking. If the award shall exceed the amount spent or to be spent promptly to effect such restoration, repair or replacement, such excess shall unconditionally belong to Landlord and shall be paid to Landlord.

(c)    In the event of any partial taking where this Lease is not terminated, Tenant shall not be entitled (except for use in reconstruction) to any part of the compensation or award given Landlord for the taking of the fee of the Premises, but Tenant shall have the right to recover from the condemning authority such compensation as is specifically awarded to Tenant (i) to reimburse Tenant for any cost which Tenant may incur in removing Tenant's Property from the Premises and (ii) for loss of Tenant's business.

(d)    If this Lease is terminated by reason of a taking, then Landlord shall be entitled to receive the entire award in any such condemnation or eminent domain proceedings or purchase in lieu thereof and Tenant hereby assigns to Landlord all of its right, title and interest in and to all and any part of such award, provided, however, Tenant shall be entitled to receive any award specifically made to reimburse Tenant.

7.    **Taxes, Assessments, and Escrows.**

(a)    Tenant shall pay prior to delinquency all taxes and assessments which may be levied upon or assessed against the Premises and all taxes and assessments of every kind and nature whatsoever arising in any way from the use, occupancy or possession of the Premises or assessed against the improvements situated thereon, together with all taxes levied upon or assessed against Tenant's Property. To that end, Landlord shall not be required to pay any taxes or assessments whatsoever which relate to or may be assessed against this Lease, the Rent and other amounts due hereunder, the Premises, improvements and Tenant's Property. Provided, however, that any taxes or assessments which may be levied or assessed against the Premises for a period ending after the termination hereof shall be prorated between Landlord and Tenant as of such date. Upon Landlord's request, Tenant shall furnish to Landlord copies of the paid receipted tax bills. Tenant may, at its option, contest in good faith and by appropriate and timely legal proceedings any such tax and assessment; provided, however, that Tenant shall indemnify and hold harmless Landlord from any loss or damage resulting from any such contest, and all expenses of same (including, without limitation, all attorneys' fees, court and other costs) shall be paid solely by Tenant.

(b)    In the event Tenant is delinquent in the timely payment of insurance premiums, taxes or any assessments which may be levied or assessed against the Premises, and such delinquency constitutes a Default under this Lease, then at Landlord's request and in Landlord's sole discretion, Tenant shall escrow funds for insurance, taxes and assessments in the following manner:

914097/72106/346985.1-Krystal/SAV-07
Pooler, Chatham County, Georgia

7

(i)    Tenant shall pay to Landlord a sum (the "Initial Yearly Escrow Payment") equal to one-fourth of the Yearly Premium (as defined below), or such greater amount as is deemed necessary by Landlord to be in position to pay the first annual payment of insurance and taxes when due. Thereafter, Tenant shall pay to Landlord on the first day of each month (or on another day designated in writing by Landlord), a sum (herein, together with the Initial Yearly Escrow Payment, the "Escrow Funds") equal to one-twelfth of (a) the yearly taxes and assessments which may be levied on the Property, and (b) the yearly premium installments for fire and other hazard insurance, and such other insurance covering the Premises as Landlord may require pursuant to Paragraph 4 hereof (together the "Yearly Premium"), all as reasonably estimated initially and from time to time by Landlord on the basis of assessments and tax bills and reasonable estimates thereof. Any waiver by Landlord of a requirement that Tenant pay such Escrow Funds may be revoked by Landlord, in Landlord's sole discretion, at any time upon notice in writing to Tenant. Landlord shall apply the Escrow Funds to pay said insurance, taxes and assessments, so long as Tenant is not in Default. No interest shall be payable by Landlord on monies so paid unless required by applicable law, in which event all such interest shall be applied by Landlord to pay such insurance, taxes and assessments. Landlord shall give to Tenant, at Tenant's expense, an annual accounting of the Funds in Landlord's normal format showing credits and debits to the Funds and the purpose for which each debit to the Funds was made.

(ii)    If the amount of the Escrow Funds held by Landlord at the time of the annual accounting thereof shall exceed the amount deemed necessary by Landlord to provide for the payment of insurance, taxes and assessments as they become due, such excess shall be credited to Tenant on the next monthly installment or installments of Escrow Funds due. If at any time the amount of the Escrow Funds held by Landlord shall be less than the amount deemed necessary by Landlord to pay the insurance, taxes and assessments as they become due, Tenant shall pay to Landlord any amount necessary to make up the deficiency within thirty (30) days after notice from Landlord to Tenant requesting payment thereof.

(iii)    Upon Tenant's Default, Landlord may apply, in any amount and in any order as Landlord shall determine in Landlord's sole discretion, any Escrow Funds held by Landlord at the time of application to pay insurance, taxes and assessments which are now or will hereafter become due. Upon the termination of the Lease (except for termination as a result of Tenant's Default), Landlord shall promptly refund to Tenant any Escrow Funds held by Landlord applicable to the Property.

8.    **Compliance, Utilities, Surrender**.

(a)    Tenant at its expense shall promptly comply with all governmental requirements, whether or not compliance therewith shall require structural changes in the Premises; will procure and maintain all permits, licenses and other authorizations required for the use of the Premises or any part thereof then being made and for the lawful and proper installation, operation and maintenance of all equipment and appliances necessary or appropriate for the operation and maintenance of the Premises, and shall comply with all easements, restrictions, reservations and other instruments of record applicable to the Premises. Tenant shall indemnify and save Landlord

harmless from all expenses and damages by reason of any notices, orders, violations or penalties filed against or imposed upon the Premises, or against Landlord as owner thereof, because of Tenant's failure to comply with this paragraph.

(b)    Tenant shall pay all charges for heat, water, gas, sewage, electricity and other utilities used or consumed on the Premises and shall contract for the same in its own name. Landlord shall not be liable for any interruption or failure in the supply of any such utility service to the Premises.

(c)    Tenant shall peacefully surrender possession of the Premises, the buildings and other improvements thereon, to Landlord at the expiration, or earlier termination, of the original term or any extended or renewed term of this Lease.

9.    **Quiet Enjoyment**.

Landlord covenants and warrants that Landlord has full power and authority to make this Lease, and that Tenant shall have and enjoy full, quiet and peaceful possession of the Premises, their appurtenances and all rights and privileges incidental thereto during the term hereof and any renewals or extensions, subject to the provisions of this Lease and any easements, restrictions, reservations and other instruments of record applicable to the Premises and in existence at the time of the conveyance of the Premises to Landlord by Tenant.

10.    **Option to Renew; Economic Infeasibility and Substitution**.

(a)    Tenant shall have two (2) successive five (5) year options to extend this Lease for up to an additional ten (10) years upon the same terms, covenants, conditions and rental as set forth herein provided that Tenant is not in default hereunder at the commencement of such option period. Tenant may exercise each such five (5) year option by giving written notice to Landlord not less than six (6) months prior to the expiration of the then current term of this Lease. Should Tenant fail to give Landlord such timely written notice during the required period, all remaining rights of renewal shall automatically expire.

(b)    In the event the Tenant and the Landlord mutually agree, in their reasonable business discretion, exercised in good faith, that the Premises is inadequate or unprofitable for the purposes for which the same are then used pursuant to this Lease, then Tenant may, at Tenant's option, during the term of this Lease or any extensions thereof, give written notice to the Landlord of its intention to substitute another improved premises having a Krystal Restaurant located thereon. Such substitute premises shall have a value no less than the then current value of the Premises as established by a qualified independent appraiser (who is a member of the American Institute of Real Estate Appraisers) selected and paid for by Tenant. Such other restaurant shall be subject to Landlord's approval and, in the event the Premises has been sold to a non-affiliate of the Landlord, shall be subject to the approval of the then mortgagee having an interest in the Premises. Mortgagee shall use it's reasonable business discretion, exercised in good faith, in determining whether or not to approve the substitution. The terms of the related lease for such substitute premises shall be identical to this Lease, except that the term shall be for the then remainder of the Term of this Lease. Tenant shall pay all reasonable costs associated with the closing to effect the

914097/72106/346985.1–Krystal/SAV-07
Pooler, Chatham County, Georgia

9

substitution. Upon Landlord's and any non-affiliate mortgagee's approval of the substitution of the Premises, a closing of title shall take place as soon as reasonably practical thereafter, but in no event later than sixty (60) days after Tenant is notified that the Landlord has approved the substitution. If the Landlord and the non-affiliate mortgage (if applicable) do not approve such substitute premises, Tenant may submit other properties to the Landlord for the Landlord's (and the non-affiliate's mortgagee, if applicable) approval. If no properties are accepted by the Landlord, then Tenant shall continue to operate the Premises in accordance with the provisions of this Lease.

11. **First Right of Refusal to Purchase.**

So long as Tenant is not in default under this Lease, Tenant shall have a first right of refusal to purchase the Premises in accordance with the terms of this paragraph. If Landlord receives and desires to accept a bona fide offer to purchase (excluding (i) any transfer or assignment to an affiliate of Landlord and (ii) any assignments and transfers made by Landlord in connection with any securitization of this Lease) the Premises during the term of this Lease or any extension or renewal thereof, Landlord shall deliver a notice to Tenant stating the name of such offeror with a copy of the terms and conditions of such offer attached and Tenant shall have the right to purchase the Premises on the same terms and conditions set forth in Landlord's notice, provided that Tenant delivers written notice to Landlord of its election to do so within twenty (20) days after receipt of such notice from Landlord. If Tenant does not elect to exercise its right to purchase as aforesaid, Landlord may sell the Premises, provided the sale is consummated with the offeror and on substantially the terms and conditions set forth in Landlord's notice to Tenant. The foregoing preemptive right shall remain in existence notwithstanding its non-exercise in respect to any sale and shall be binding upon Landlord's successors in title.

Tenant's rights and options granted above shall be subject and subordinate to any rights or options currently of record or those existing in favor of Franchisor, pursuant to any Franchise Agreements, if any, between Tenant and Franchisor.

12. **Non-Compete.**

**[INTENTIONALLY DELETED]**

13. **Default.**

(a) If any one or more of the following events occur, said event or events shall hereby be classified as a "Default":

(i) If Tenant fails to pay Interim Rent (if applicable), Annual Rent, Percentage Rent, any additional rent, or any other charges required hereunder or under any other lease with Landlord or an affiliate of Landlord when same shall become due and payable, and such failure continues for ten (10) days after written notice from Landlord.

(ii) If Tenant shall fail to perform or observe any term, condition, covenant, agreement, or obligation of this Lease or any other lease with Landlord or an affiliate of Landlord, and such failure continues for thirty (30) days after written notice

914097/72106/346985.1-Krystal/SAV-07
Pooler, Chatham County, Georgia

10

from Landlord (except that such thirty (30) day period shall be automatically extended for such additional period of time as is reasonably necessary to cure such Default, if such Default cannot be cured within such period, provided Tenant is in the process of diligently curing the same).

      (iii)    **[INTENTIONALLY DELETED.]**

      (iv)    If Tenant fails to continuously operate its business within the Premises except for temporary periods of closure caused by casualty, or temporary and reasonable periods of remodeling, not to exceed ninety (90) days in any Lease Year without first obtaining Landlord's written approval.

      (v)    If Tenant shall make an assignment for the benefit of creditors or file a petition, in any federal or state court, in bankruptcy, reorganization, composition, or make an application in any such proceedings for the appointment of a trustee or receiver for all or any portion of its property.

      (vi)    If any petition shall be filed under federal or state law against Tenant in any bankruptcy, reorganization, or insolvency proceedings, and said proceedings shall not be dismissed or vacated within thirty (30) days after such petition is filed.

      (vii)    If a receiver or trustee shall be appointed under federal or state law for Tenant, or any guarantor of Tenant's obligations hereunder, for all or any portion of the property of either of them, and such receivership or trusteeship shall not be set aside within thirty (30) days after such appointment.

      (b)    Upon the happening of any one or more of the aforementioned Defaults which are not cured within the cure period applicable thereto, if any, Landlord shall have the right, in addition to any other rights and remedies, to terminate this Lease by giving written notice of same to Tenant. Upon such notice, this Lease shall cease and expire, and Tenant shall surrender the Premises to Landlord. Notwithstanding such termination, Tenant's liability and obligation under all provisions of this Lease, including the obligation to pay Rent and any and all other amounts due hereunder shall survive and continue. In addition, in the event of Tenant's Default under this Lease, Landlord may, by notice to Tenant, accelerate the monthly installments due hereunder for the remaining term of this Lease, in which event such amount, together with any sums then in arrears, shall immediately be due and payable to Landlord. Tenant hereby expressly agrees that its occupation of the Premises after default constitutes forcible detainer (or equivalent) as is defined by the law in force in the jurisdiction in which the Premises are located.

      (c)    If this Lease shall terminate as provided hereinabove, Landlord may re-enter the Premises and remove Tenant, its agents and sub-tenants, together with all or any of Tenant's Property, by suitable action at law, or by force. Tenant waives any right to the service of any notice of Landlord's intention to re-enter and Landlord shall not be liable in any way in connection with any action it takes pursuant to this paragraph. Notwithstanding such re-entry or removal, Tenant's liability under the provision of this Lease shall survive and continue.

914097/72106/346985.1-Krystal/SAV-07
Pooler, Chatham County, Georgia

(d)    In case of re-entry, repossession or termination of this Lease, Tenant shall remain liable for Rent (with any Percentage Rent described in the Rent Addendum to be paid at the rate paid during the prior Lease Year), any additional rent and all other charges provided for in this Lease for the otherwise remaining term of this Lease, and any and all expenses which Landlord may have incurred in re-entering the Premises including, but not limited to, allocable overhead, alterations to the building, leasing, construction, architectural, legal and accounting fees. In addition, Tenant shall pay to Landlord any and all attorneys' fees, legal costs and expenses incurred with respect to enforcement of the provisions hereof. Landlord shall have the right, but not the obligation, to relet the whole or part of the Premises upon terms which Landlord, in its sole discretion, deems appropriate and Tenant shall be responsible for all expenses incurred by Landlord in re-letting or attempting to re-let and all rent collected for reletting shall be credited against all of Tenant's obligations hereunder.

(e)    The rights and remedies of Landlord set forth herein shall be in addition to any other right and remedy now or hereinafter provided by law, and all such rights and remedies shall be cumulative. No action or inaction by Landlord shall constitute a waiver of a Default, and no waiver of Default shall be effective unless it is in writing, signed by Landlord.

14.    **Holding Over**.

In the event Tenant remains in possession of the Premises after the expiration of this Lease, without executing a new lease, Tenant shall occupy the Premises as a tenant from month to month subject to all the terms hereof, but such possession shall not limit Landlord's rights and remedies by reason thereof nor constitute a holding over.

15.    **Waiver of Subrogation**.

Notwithstanding anything in this Lease to the contrary, other than Tenant's obligations to repair, restore or rebuild described in paragraph 4 hereinabove, neither party shall be liable to the other for any damage or destruction of the property of the other resulting from fire or other casualty covered by insurance required of either party hereunder, whether or not such loss, damage or destruction of property is caused by or results from the negligence of such party (which term includes such party's officers, employees, agents and invitees), and each party hereby expressly releases the other from all total liability for or on account of any said loss, damage or destruction, whether or not the party suffering the loss is insured against such loss, and if insured whether fully or partially. Each party shall procure all endorsements of insurance policies carried by it necessary to protect the other from any right of subrogation and/or liability in the event of such loss.

16.    **Lien for Rents**.

**[INTENTIONALLY DELETED]**

17.    Assignment and Subletting.

(a)    Tenant shall have the right to sublet, assign, or otherwise transfer its interest in the Lease and the premises described therein, without Landlord's approval, written or otherwise to (i) an approved Krystal Company franchisee; (ii) a corporation with which it may merge or consolidate, or in connection with the sale of all its assets; or (iii) any parent or subsidiary of Tenant, or a subsidiary of Tenant's parent; provided, however, that the Premises shall be used only as it was used prior to such transfer event. The sale or transfer of stock by Tenant or by any shareholder or Tenant shall not constitute an assignment.

Tenant shall not have the right to sublease the Premises or assign its rights under the Lease, except as expressly set forth above, unless it obtains Landlord's prior written approval, which shall not be unreasonably withheld. Landlord, without being deemed unreasonable, may withhold its consent to any proposed assignment or subletting where (i) the financial capacity of such assignee or subtenant is materially less than that of Tenant or (ii) such assignee or subtenant does not intend to operate a national or regionally recognized restaurant on the Premises. No assignment or subletting shall relieve Tenant of its liability for the continued performance of all terms, covenants and conditions of this Lease, including without limitation the payment of all rent, additional rent and other charges thereunder. Likewise, as a condition of any such assignment by Tenant, the assignee shall be required to execute and deliver to Landlord, upon the effective date of such assignment, an agreement, in recordable form, whereby such assignee assumes and agrees to discharge all obligations of Tenant under this Lease.

(b)    In the event of the subletting of the Premises or the assignment of this Lease, and in addition to payment of Annual Rent, additional rent and other charges as provided for under this Lease, Tenant shall pay to Landlord, on a monthly basis, as received, fifty percent (50%) of any monetary consideration obtained from an assignee or subtenant as a consequence of such assignment or subletting plus fifty percent (50%) of any rental payable to Tenant in an amount greater than what is due Landlord under this Lease.

(c)    Prior to any assignment allowed hereunder, Tenant shall deliver to Landlord (i) a copy of the assignment documents (including copies of any recorded documents), and (ii) the name, address and telephone number of such assignee and a designated contact person for such assignee, and (iii) a new insurance policy and binder complying with the terms of this Lease and naming such assignee as the tenant of the Premises. Notwithstanding anything herein to the contrary, in the event of any assignment of this Lease or subletting of the Premises, Tenant shall not be released from its obligations under this Lease unless specifically released by virtue of a separate written instrument executed by Landlord, which may be withheld in Landlord's sole discretion.

(d)    The Landlord shall have the right without limitation (subject to paragraph 11 hereof) to sell, convey, transfer or assign its interest in the Premises or its interest in this Lease, and upon such conveyance being completed all covenants and obligations of Landlord under this Lease accruing thereafter shall cease, but such covenants and obligations shall run with the land and shall be binding upon the subsequent landlord or owners of the Premises or of this Lease.

914097/72106/346985.1-Krystal/SAV-07
Pooler, Chatham County, Georgia

13

18.    **Subordination, Non-Disturbance, Attornment, Estoppel Certificate.**

(a)    Upon written request of the holder of any mortgage (which term "mortgage" shall also include deeds of trust) now or hereafter relating to the Premises, Tenant will subordinate its rights under this Lease to the lien thereof and to all advances made or hereafter to be made upon the security thereof, and Tenant shall execute, acknowledge and deliver an instrument in the form customarily used by such encumbrance holder to effect such subordination; provided, however, as a condition of all such subordinations, the holder of such mortgage shall be first required to agree with Tenant that, notwithstanding the foreclosure or other exercise of rights under any such first or other mortgage, Tenant's possession and occupancy of the Premises and the improvements and its leasehold estate shall not be disturbed or interfered with nor shall Tenant's rights and obligations under this Lease be altered or adversely affected thereby so long as Tenant is not in default hereunder.

(b)    Notwithstanding anything set out in subparagraph (a) above to the contrary, in the event the holder of any such mortgage elects to have this Lease be superior to its mortgage, then upon Tenant's being notified to that effect by such encumbrance holder, this Lease shall be deemed prior to the lien of said mortgage, whether this Lease is dated prior or subsequent to the date of said mortgage, and Tenant shall execute, acknowledge and deliver an instrument, in the form customarily used by such encumbrance holder, effecting such priority.

(c)    In the event proceedings are brought for the foreclosure of, or in the event of the exercise of the power of sale under any mortgage made by Landlord covering the Premises, or in the event of delivery of a deed in lieu of foreclosure under such a mortgage Tenant will attorn to the purchaser upon any such foreclosure or sale and recognize such purchaser as Landlord under this Lease, and upon the request of the purchaser, Tenant shall execute, acknowledge and deliver an instrument, in form and substance satisfactory to such purchaser, evidencing such attornment.

(d)    Each party agrees, within seven (7) days after written request by the other, to execute, acknowledge and deliver to and in favor of any proposed mortgagee or purchaser of the Premises, an estoppel certificate, in the form customarily used by such proposed mortgagee or purchaser, stating, among other things (i) whether this Lease is in full force and effect, (ii) whether this Lease has been modified or amended and, if so, identifying and describing any such modification or amendment, (iii) the date to which Rent and other charges have been paid, and (iv) whether the party furnishing such certificate knows of any default on the part of the other party or has any claim against such party and, if so, specifying the nature of such default or claim.

(e)    Upon written demand by the holder of any mortgage covering the Premises, Tenant shall forthwith execute, acknowledge and deliver an agreement in favor of and in the form customarily used by such encumbrance holder, by the terms of which Tenant will agree to give prompt written notice to such encumbrance holder in the event of any casualty damage to the Premises or in the event of any default on the part of Landlord under this Lease, and will agree to allow such encumbrance holder a reasonable length of time after notice to cure or cause the curing of such default before exercising Tenant's rights under this Lease, or terminating or declaring a default under this Lease.

19. <u>Cooperation</u>.

Landlord shall fully cooperate with Tenant throughout the term of this Lease to secure or maintain proper zoning, building and other permits and compliance with all applicable laws. Landlord shall execute any petitions, requests, applications and the like as Tenant shall reasonably request in order to obtain any permit, license, variances and approvals which, in the reasonable judgment of Tenant, are necessary for the lawful construction and/or operation of Tenant's business on the Premises, provided, however, that Tenant shall indemnify and save Landlord harmless from any and all expenses, costs, charges, liabilities, losses, obligations, damages and claims of any type which may be imposed upon, asserted against or incurred by Landlord by reason of same.

20. <u>Notices</u>.

All notices and other communications required or permitted to be given hereunder shall be in writing and shall be delivered by a nationally recognized overnight courier or mailed by registered or certified mail, postage prepaid, return receipt requested, addressed as follows:

If to Landlord: CNL INCOME FUND XII, LTD.
P.O. Box 1711
Orlando, Florida  32802-1711

with copy to: DALE A. BURKET, ESQUIRE
Lowndes, Drosdick, Doster, Kantor & Reed, P.A.
215 North Eola Drive
Post Office Box 2809
Orlando, Florida 32802

If to Tenant: THE KRYSTAL COMPANY
One Union Square
Chattanooga, Tennessee  37402

Any party may change its address for notices by written notice in like manner as provided in this paragraph and such change of address shall be effective seven (7) days after the date notice of such change of address is given. Notice for purposes of this Lease shall be deemed given when it shall have been deposited in the mail, or with a nationally recognized over-night courier, by the party who is giving such notice with sufficient postage prepaid.

21. <u>Indemnification</u>.

Tenant does hereby indemnify and exonerate Landlord against and from all liabilities, losses, obligations, damages, penalties, claims, costs, charges and expenses, including reasonable architects' and attorneys' fees, which may be imposed upon or asserted against or incurred by Landlord by reason of any of the following occurring, unless caused by the acts, negligence or neglect of Landlord, its employees or its authorized representatives:

914097/72106/346985.1-Krystal/SAV-07
Pooler, Chatham County, Georgia

(a)    any work or thing done in respect of construction of, in or to the Premises or any part of the improvements now or hereafter constructed on the Premises;

(b)    any use, possession, occupation, operation, maintenance or management of the Premises or any part hereof;

(c)    any failure to, or to properly, use, possess, occupy, operate, maintain or manage the Premises or any part thereof;

(d)    the condition, including environmental conditions, of the Premises or any part thereof;

(e)    any negligence on the part of Tenant or any of its agents, contractors, servants, employees, licensees or invitees;

(f)    any accident, injury or damage to any person or property occurring in, on or about the Premises or any part thereof including any sidewalk adjacent thereto; or

(g)    any failure on the part of Tenant to perform or comply with any of the covenants, agreements, terms or conditions contained in this Lease on its part to be performed or complied with.

22.    **Hold Harmless.**

Tenant agrees to hold Landlord harmless against any and all claims, damages, accidents and injuries to persons or property caused by or resulting from or in connection with anything in or pertaining to or upon the Premises during the term of this Lease or while Tenant is occupying the Premises, except if such claim, damage, accident or injury shall be caused by the negligence or acts of Landlord or its agents. Landlord shall not be liable to Tenant, Tenant's employees, agents, invitees, licensees or any other person whomsoever for any injury to person or damage to property on or about the Premises caused by the negligence or misconduct of Tenant, its agents, servants or employees or of any other person entering the building under expressed or implied invitation by Tenant or due to any other cause whatsoever, unless caused by the acts, negligence or neglect of Landlord, its employees or its authorized representatives.

23.    **Landlord's Liabilities.**

The term "Landlord" as used in this Lease means the owner from time to time of the Premises. Neither Landlord nor any partner, shareholder or beneficiary thereof shall have any personal liability with respect to any of the provisions of this Lease and if Landlord is in default with respect to its obligations hereunder Tenant shall look solely to the equity of Landlord in the Premises.

24. **Successors**.

The covenants, conditions and agreements contained in this Lease shall bind and inure to the benefit of Landlord and Tenant and their respective heirs, legal representatives, successors and assigns.

25. **Entire Agreement/Memorandum of Lease**.

This Lease contains the entire agreement between the parties hereto and may not be modified in any manner other than in writing signed by the parties hereto or their successors in interest. A memorandum of this Lease shall be executed by the parties and shall be recorded in the official records of the county where the Premises are located.

26. **Gender**.

Whenever the context hereof permits or requires, words in the singular may be regarded as in the plural and vice-versa, and personal pronouns may be read as masculine, feminine and neuter.

27. **Brokerage Fees**.

It is understood and agreed that neither party has incurred any real estate brokerage fees or commissions arising out of this Lease and each party agrees to hold the other harmless from and against all such fees and commissions incurred, and costs related thereto including legal fees, as a result of its own conduct or alleged conduct.

28. **Captions**.

The captions of this Lease are for convenience only, and do not in any way define, limit, disclose, or amplify terms or provisions of this Lease or the scope or intent thereof.

29. **Landlord's Right to Cure**.

In the event Tenant shall fail, refuse or neglect to perform, observe or comply with any term, condition, covenant, agreement or obligation contained in the Lease on its part to be performed or complied with, then Landlord may, at its sole option, enter upon the Premises, if deemed necessary by Landlord in its sole discretion, and/or do whatever may be deemed necessary by Landlord in its sole discretion to cure such failure by Tenant. Tenant shall pay to Landlord within five (5) days of Landlord's request, all costs incurred by Landlord in connection with Landlord's curing of such failure by Tenant including, but not limited to, reasonable attorney and paralegal fees whether or not judicial proceedings are involved. In addition to the above costs, in the event Landlord does not receive payment from Tenant when due hereunder, interest at the rate of eighteen percent (18%) per annum or, if less, the highest rate allowable by law shall be due and payable with respect to such payment from the due date thereof until Landlord receives such payment.

914097//72106/346985.1-Krystal/SAV-07
Pooler, Chatham County, Georgia

30. **Commitment Letter**.

That certain commitment letter dated December 14, 1998 is hereby incorporated herein by reference and the terms and conditions thereof shall survive closing with respect to the transaction contemplated by this Lease. In the event any terms of the commitment letter are inconsistent with the terms contained in this Lease, the terms of this Lease shall control.

31. **Not a Security Arrangement**.

The parties hereto agree and acknowledge that this transaction is not intended as a security arrangement or financing secured by real property, but shall be construed for all purposes as a true lease.

32. **Net Lease.**

It is the intention of the parties hereto that this Lease is and shall be treated as a triple net lease. Any present or future law to the contrary notwithstanding, this Lease shall not terminate (except as expressly provided in paragraphs 4(a) and 6(a)) nor shall Tenant be entitled to any abatement, suspension, deferment, reduction (except as expressly provided in paragraph 6(b) hereof), setoff, counterclaim, or defense with respect to the rent, nor shall the obligations of Tenant hereunder be affected by reason of: any damage to or destruction of the Premises or any part thereof; any taking of any Premises or any part thereof or interest therein by Condemnation or otherwise (except as expressly provided in paragraph 6(b) hereof); any prohibition, limitation, restriction or prevention of Tenant's use, occupancy or enjoyment of the Premises or any part thereof, or any interference with such use, occupancy or enjoyment by any person or for any other reason; any title defect or encumbrance or any matter affecting title to the Premises or any part thereof; any eviction by paramount title or otherwise; any default by Landlord hereunder; any legal proceeding relating to Landlord; the impossibility or illegality of performance by Landlord, Tenant or both; any action of governmental authority; any breach of warranty or misrepresentation; any defect in the condition, quality or fitness for use of the Premises or any part thereof; or any other cause whether similar or dissimilar to the foregoing and whether or not Tenant shall have notice or knowledge of any of the foregoing. The parties intend that the obligations of Tenant hereunder shall be separate and independent covenants and agreements and shall continue unaffected unless such obligations shall have been modified or terminated in accordance with an express provision of this Lease.

33. **Waiver**.

No waiver by Landlord of any provision hereof shall be deemed a wavier of any other provision hereof or of any subsequent breach by Tenant of the same or any other provision. Landlord's consent to, or approval of, any act shall not be deemed to render unnecessary the obtaining of Landlord's consent to or approval of any subsequent act by Tenant. The acceptance of rent hereunder by Landlord shall not be a waiver of any preceding breach by Tenant of any provision hereof, other than the failure of Tenant to pay the particular rent so accepted, regardless of Landlord's knowledge of such preceding breach at the time of acceptance of such rent.

914097/72106/346985.1-Krystal/SAV-07
Pooler, Chatham County, Georgia

34. **Time of the Essence.**

Landlord and Tenant agree that time shall be of the essence of all terms and provisions of this Lease.

35. **Governing Law.**

This Lease shall be construed in accordance with the laws of the state in which the Premises is located.

36. **Lease Securitization.**

Landlord reserves the right (provided Tenant's possession and occupancy of the Premises and the Improvements and its leasehold estate shall not be disturbed or interfered with and provided further that Tenant's rights and obligations under this Lease shall not be altered or adversely affected) to assign, transfer, participate, pledge, hypothecate or encumber, or any combination thereof, all or any part of Landlord's interest in this Lease or any of the collateral and documents mentioned herein without Tenant's consent. Without limiting the generality of the foregoing, Tenant acknowledges that this Lease may be securitized, and Tenant agrees to cooperate in good faith with Landlord's reasonable requests relating to the securitization program process and requirements, and agrees and acknowledges that all information relating to Tenant and this Lease may be made available by Landlord to the other participants in the lease securitization, and Tenant agrees to assist Landlord in completing any documents necessary to accomplish any such transfer and/or securitization transaction. Tenant hereby authorizes Landlord to provide any information regarding Tenant in all reports required as part of a lease securitization program or by any governmental body regulating Landlord. Landlord agrees that all costs incurred by Tenant in connection with Tenant's compliance with its obligations under this Paragraph 36 (other than minor incidental expenses) shall be paid by Landlord.

**[Signatures on Next Page]**

IN WITNESS WHEREOF, the parties hereto have caused this Lease Agreement to be executed the day and date first above written.

Signed, Sealed and Delivered
in the presence of:

"LANDLORD"

CNL INCOME FUND XII, LTD., a Florida
limited partnership

BY:     CNL REALTY CORPORATION, a
Florida corporation, as General Partner

Name: Mary Lee Stallings

Name: Rhonda Powell

By: _____
Robert A. Bourne, as President

Name: Mary Lee Stallings

Name: Rhonda Powell

BY: _____
Robert A. Bourne, as General Partner

Name: ALISON HODGES

BY: _____
James M. Seneff, Jr., as General
Partner

Name: Mary Lee Stallings

914097/72106/346985.1-Krystal/SAV-07
Pooler, Chatham County, Georgia

20

STATE OF FLORIDA
COUNTY OF ORANGE

I, **Mary Lee Stallings**, a Notary Public residing in the county and state aforesaid, do certify that
Robert A. Bourne, as President of CNL REALTY CORPORATION, a Florida corporation, on behalf said
corporation, as General Partner of CNL INCOME FUND XII, LTD., a Florida limited partnership, who is personally
known to me, this day appeared before me personally and did acknowledge that he did sign, seal and deliver the
foregoing instrument of his own free will and accord, for the purposes therein named and expressed.

In witness whereof, I have hereunto set my hand and official seal, this ____ day of April, 2000.

Mary Lee Stallings
My Commission CC840527
Expires July 6, 2003

Notary Public, State of Florida

Printed Name: _____
Notary Commission No. _____
My Commission Expires: _____

STATE OF FLORIDA
COUNTY OF ORANGE

I, Mary Lee Stallings, a Notary Public residing in the county and state aforesaid, do certify that Robert
A. Bourne, as General Partner of CNL INCOME FUND XII, LTD., a Florida limited partnership, who is personally
known to me, this day appeared before me personally and did acknowledge that he did sign, seal and deliver the
foregoing instrument of his own free will and accord, for the purposes therein named and expressed.

In witness whereof, I have hereunto set my hand and official seal, this ____ day of April, 2000.

Notary Public, State of Florida

Printed Name: _____
Notary Commission No. _____
My Commission Expires: _____

Mary Lee Stallings
My Commission CC840527
Expires July 6, 2003

914097/72106/346985.1-Krystal/SAV-07
Pooler, Chatham County, Georgia

21

STATE OF FLORIDA
COUNTY OF ORANGE

I, *Alison L. Hodges*, Notary Public residing in the county and state aforesaid, do certify that **James M. Seneff, Jr.**, as General Partner of **CNL INCOME FUND XII, LTD.**, a Florida limited partnership, who is personally known to me, this day appeared before me personally and did acknowledge that he did sign, seal and deliver the foregoing instrument of his own free will and accord, for the purposes therein named and expressed.

In witness whereof, I have hereunto set my hand and official seal, this ___6___ day of April, 2000.

Notary Public, State of Florida

Printed Name: ALISON HODGES
Notary Commission No.
My Commission Expires:

Alison Zaner
My Commission CC803720
Expires January 21, 2003

914097/72106/346985.1-Krystal/SAV-07
Pooler, Chatham County, Georgia

22

"TENANT"

**THE KRYSTAL COMPANY**, a Tennessee corporation

Name: _GARY S. GREVE_

Name: _MICHAEL C. BASS_
**V.P. OF ADMINISTRATION**

By: _Larry O Bentley_
Name: _LARRY O BENTLEY_
As Its: _VP & CFO_

(CORPORATE SEAL)

STATE OF TENNESSEE
COUNTY OF _Hamilton_

I, _Angela C. Marickis_, a Notary Public residing in the county and state aforesaid, do certify that _Larry B. Bentley_, as _V.P. & CFO_ of **THE KRYSTAL COMPANY**, a Tennessee corporation, who is personally known to me, this day appeared before me personally and did acknowledge that he did sign, seal and deliver the foregoing instrument of his own free will and accord, for the purposes therein named and expressed.

In witness whereof, I have hereunto set my hand and official seal, this _10th_ day of _April_ _____, 2000.

_Angela C. Marickis_
Notary Public, State of Tennessee

Printed Name: _Angela C. Marickis_
Notary Commission No.
My Commission Expires: _My Commission Expires Oct 16, 2001_

Exhibit "A" - Legal Description

EXHIBIT "2"

## ASSIGNMENT AND ASSUMPTION OF LEASE

THIS ASSIGNMENT AND ASSUMPTION OF LEASE is made and entered into as of the _23rd_ day of August, 2017, by MICROMONT HOLDINGS 4 LLC, a Texas limited liability company ("Assignor"), and PPB&D, Inc., a California corporation("Assignee").

## W I T N E S S E T H :

WHEREAS, the Assignor is the current lessor under the Lease Agreement dated April 11, 2000 (as may have been amended and/or assigned) between CNL INCOME FUND XII, LTD., a Florida limited partnership and THE KRYSTAL COMPANY, a Tennessee corporation ("the "Lease"), which Lease affects the real property described in Exhibit A attached hereto and made a part hereof for all purposes and the improvements thereon (the "Property"); and

WHEREAS, Assignor is selling its interest under the Lease to Assignee.

NOW THEREFORE, Assignor, for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged and confessed, hereby agrees as follows:

1.      Assignor has ASSIGNED, and by these presents does hereby ASSIGN to Assignee, its successors and assigns all of its right, title and interest in and to the Lease, and any funds or other collateral of the tenant deposited with Assignor as security deposit pursuant to the Lease.

2.      Assignee hereby assumes the obligations of Assignor as lessor under the Lease and settlement order accruing from and after the date hereof.  Assignee agrees to hold Assignor harmless from and against any and all claims, loss, damages, liability, cost and expense (including attorneys fees) with respect to the Lease arising or accruing from and after the date hereof.  Assignor agrees to hold Assignee harmless from and against any and all claims, loss, damages, liability, cost and expense (including attorney's fees) with respect to the Lease arising or accruing prior to the date hereof.

3.      This Assignment and Assumption of Lease shall be binding upon, and shall inure to the benefit of, all of the parties hereto, their successors and assigns.

4.      This Assignment and Assumption of Lease may be executed in multiple counterparts, each of which shall constitute an original and all of which when taken together shall constitute one instrument.  Facsimile and electronic copies of this Assignment and Assumption of Lease, bearing the parties' respective signatures, shall be enforceable as originals.

*[SIGNATURES ON FOLLOWING PAGES]*

Assignment and Assumption of Lease
Pooler, GA

EXECUTED by Assignor as of the day and year first above written.

ASSIGNOR:

MICROMONT HOLDINGS 4 LLC

By:_____
Name:  Matthew Laatsch
Title:  Manager

Assignment and Assumption of Lease
Pooler, GA

EXECUTED by Assignee as of the day and year first above written.

ASSIGNEE:

PPB&D, Inc., a California corporation

By: _Douglas Newman_____
Name: _Douglas GROSSman_____
Title: _President - owner_____

Assignment and Assumption of Lease
Pooler, GA

EXHIBIT A

Out Parcels #3 and 4, Tract 1, Pooler Square Subdivision, located in the City of Pooler, Chatham County, Georgia containing 1.026 Acres.

Commencing at the point where the eastern right-of-way of Continental Boulevard intersects the southern right-of-way of U. S. Highway #80 and proceeding thence along the southern right-of-way of U.S. Highway #80 and along a curve to the right having a radius of 3669.72 feet and an arc length of304.96 feet, being subtended by a chord of South 60 degrees 18 minutes 34 seconds East a distance of304.84 feet to a concrete monument, The Point of Beginning;

Thence continuing along said right of way along a curve to the right having a radius of 3669.72 feet and an arc length of 232.00 feet, being subtended by a chord of South 55 degrees 54 minutes 01 seconds East for a distance of 231.96 feet to a 5/8" rebar;

Thence South 34 degrees 11 minutes 10 seconds West for a distance of 194.92 feet to a 5/8 inch rebar;

Thence North 61 degrees 38 minutes 53 seconds West for a distance of 200.78 feet to a 5/8 inch rebar;

Thence North 25 degrees 39 minutes 39 seconds East for a distance of 217.38 feet to a concrete monument The Point of Beginning.

Together With all easements appurtenant to the foregoing property and subject to all easements affecting the foregoing property as established by the following documents:

Easement and Operation Agreement, dated April 20, 1996, between RDC Pooler Limited Partnership, a Florida Limited Partnership, and SN2-144-Savannah, L.L.C., filed for record May 6, 1996, recorded in Deed Book 178-N, Page 560, in the Office of the Clerk of the Superior Court of Chatham County, Georgia.

Assignment and Assumption of Lease
Pooler, GA

EXHIBIT "3"

## SECOND AMENDMENT TO LEASE AGREEMENT

Krystal
1015 E. Highway 80
Pooler, GA 31322

This Second Amendment ("Second Amendment") is made and entered into as of this 29th day of _____ Sept _____, 2015, by and between MICROMONT HOLDINGS 4 LLC, a Texas limited liability company, whose address is 8140 Walnut Hill Lane, Suite 400, Dallas, TX 75231, successor to CNL APF PARTNERS, LP, ("**Landlord**"), and THE KRYSTAL COMPANY, a Tennessee corporation, whose address is 1455 Lincoln Pkwy E., Suite 600, Atlanta, GA 30346 ("**Tenant**"), collectively the "Parties".

### WITNESSETH:

**WHEREAS**, Landlord is landlord and Tenant is tenant pursuant to that certain Lease Agreement dated April 11, 2000, as subsequently supplemented by the First Amendment on June 1, 2012 (collectively, the "Lease") originally by and between CNL APF PARTNERS, LP, a Delaware limited partnership, and THE KRYSTAL COMPANY, as assigned by that certain Assignment and Assumption of Lease Agreement dated June 6, 2013 to MICROMONT HOLDINGS 4 LLC, as assignee;

**WHEREAS**, the Lease is of the real property located at 1015 E. Highway 80, Pooler, GA 31322 and more particularly and legally described in the Lease (the "Premises");

**WHEREAS**, Tenant utilizes the Premises for the operation of a Krystal's restaurant;

**WHEREAS**, the Parties desire to execute this Second Amendment in order to reflect and evidence their understandings; and

**NOW, THEREFORE**, in consideration of the mutual covenants and promises contained herein and other good and valuable consideration as provided herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant agree as follows:

1.      The Parties have agreed to amend the Lease, in accordance with the provisions and conditions in this Second Amendment. This Second Amendment shall be deemed effective as of the latest date of final execution hereof by Landlord and Tenant.

2.      For and in consideration of the covenants, agreements, and promises contained herein, and mutual benefits to accrue, the parties hereby agree to amend the Lease as follows:

(a)    **Term and Rent**.
1) <u>Term</u>.  The Second Extension Period of the Lease shall begin upon the effective date of this Second Amendment and continue for a fifteen (15) year period and thereupon expire, except as otherwise set forth herein. Annual Rent shall be as set forth below.

SECOND AMENDMENT

2) <u>Additional Option to Extend</u>. Upon expiration of the Second Extension Period of the Lease, four successive five (5) year extension options ("New Options") are added to the Lease under Section 10(a) of the Lease, which options shall be exercisable on the terms and conditions set forth in Section 10(a) of the Lease. The New Options are and shall be the only remaining extension options of the Lease. If Tenant properly exercises such extension options, such extension periods shall be subject to the terms and conditions of the Lease, as amended.

3) <u>Annual Rent</u>. Beginning on the effective date of this Second Amendment, Tenant covenants and agrees to pay to Landlord Annual Rent in the annual amount of One Hundred Twenty Thousand and 00/100 Dollars ($120,000.00), payable to Landlord in equal monthly installments in the amount of Ten Thousand and 00/100 Dollars ($10,000.00) monthly in advance on the first (1st) day of each month.

4) <u>Increases in Annual Rent</u>. The parties have agreed to delete Section 3(b) of the Rent Addendum to Lease Agreement such that beginning on the one year anniversary of the effective date of this Second Amendment and on each anniversary thereafter during the term of this Lease (and any extension thereof), Annual Rent shall be increased by an amount equal to One and One-Half Percent (1.5%) of the Annual Rent payable during the immediately preceding Lease Year.

(b) **<u>Alterations and Improvements, Landlord Contribution</u>**.

1) <u>Subsequent Improvements</u>. Subject to the Lease, including but not limited to Section 3, Tenant shall remodel the Premises ("Remodel") and complete the Remodel within eighteen (18) months of the effective date of this Second Amendment.

2) <u>Landlord Contribution</u>. Upon the Tenant's completion of the Remodel and upon providing Landlord the following information: (i) lien waivers from the general contractor and those subcontractors who will agree to provide lien waivers; (ii) architect's certificate of substantial completion; (iii) certificate of occupancy; (iv) UCC lien search showing no liens against the Premises; (v) Tenant's certificate as to the amount of the following allowed construction costs ("Construction Costs"): purchase price of the materials and hard and soft construction costs (all soft costs shall be third-party expenses and may be for, but not limited to, reasonable labor charges, architectural and engineering services, attorney's fees and/or insurance costs), Landlord shall reimburse Tenant one-half (50%) of the Construction Costs, not to exceed One Hundred Thousand and 00/100 Dollars ($100,000.00). Tenant shall pay the additional premium required to endorse Landlord's title insurance policy for the Premises in the amount of the Construction Costs, the expense of which shall be included within the Construction Costs.

3. <u>Tenant Financial Statements</u>. The parties have agreed to modify Section 5 of the Rent Addendum to Lease Agreement such that, (i) Tenant, shall only upon written request from Landlord, provided it is not more than once per calendar quarter, provide the sales and other financial reports set forth in Section 5 of the Rent Addendum to Lease Agreement; and (ii) Tenant shall provide its unaudited financial

SECOND AMENDMENT

2

statement, including operating statements and balance sheets, within the later of sixty (60) days after (a) Landlord's written request; or (b) the end of Tenant's then-current fiscal quarter end.

4. <u>Right of First Refusal</u>. Notwithstanding Section 1(c) of the First Amendment, the parties have agreed to reinsert, as if fully incorporated herein, Section 11 of the Lease; provided that the parties also have agreed that, notwithstanding the current language of Section 11 of the Lease, Tenant shall deliver written notice to Landlord of its election to purchase the Property within ten (10) days after receipt of such notice from Landlord.

5. <u>No Brokers</u>. Tenant represents that no broker, finder, or other person entitled to compensation was involved in this Second Amendment, and that no conversations or prior negotiations were had with any broker, finder or other possible claimant concerning the extension or the lease of the Leased Premises. Tenant shall defend, indemnify and hold Assignee harmless against any claims for compensation (including legal fees incurred by Assignee) arising out of any conversations or negotiations had by Tenant with any broker.

6. <u>Notice</u>.

Assignee and Tenant agree to the following additional modifications to the Lease:

> To Tenant:    The Krystal Company
> Attn: Real Estate
> 1455 Lincoln Pkwy E., Suite 600
> Dunwoody, GA  30346
> Facsimile: (770) 351-4740
>
> with a copy to: Argonne Capital Group, LLC
> 3060 Peachtree Rd NW, Suite 400
> Atlanta, GA 30305
> Attn: Karl Jaeger
> Facsimile: (404) 364-2985
>
> and a copy to: McGuire Woods LLP
> 1230 Peachtree St NE, Suite 1230
> Atlanta, GA  30309
> Attn: John T. Grieb, Esq.
> Facsimile: (404) 443-5762
>
> To Landlord:  Micromont Holdings 4, LLC
> 8140 Walnut Hill Lane, Suite 400
> Dallas, TX  75231
> Attn: CFO
> Facsimile: (214) 420-5920
>
> with a copy to: Wilensky & Jones, LLP
> 3109 Carlisle St., Suite 100

SECOND AMENDMENT

Dallas, TX  75204
Attn.: Donald R. Jones
Facsimile: (214) 220-2131

7.  <u>General Provisions</u>. Capitalized terms used herein and not defined herein shall have the meanings ascribed to them in the Lease. This Second Amendment constitutes an amendment to the Lease, which will be binding upon the Parties' mutual execution. This Second Amendment may be executed in one or more counterparts, each of which shall constitute an original and all of which shall be the same. For purposes hereof, facsimile or electronic copy of a signature shall constitute an original of such signature. The Parties hereby acknowledge that all terms and conditions of the Lease except as amended by this Second Amendment shall remain in full force and effect.  Except as expressly modified or amended herein, the Lease shall remain unmodified and in full force and effect.  In the event of any inconsistencies between the provisions and conditions of the Lease and this Second Amendment, the provisions and conditions of this Second Amendment shall govern.  The obligations contained in the Lease and the Rent Addendum shall continue in accordance with the Lease until such time as the amendments set forth herein shall commence.

**IN WITNESS WHEREOF**, the parties hereto have caused this Second Amendment to be executed as of the day and year shown opposite their respective signatures.

*[SIGNATURE PAGES TO FOLLOW]*

SECOND AMENDMENT

Signed, Sealed and Delivered in the
Presence of:

Name: Michael Gorham

Name: Girish Shrestha

**LANDLORD:**

**MICROMONT HOLDINGS 4 LLC**

By:

Name: James H Kropp
Its: CFO

STATE OF      §
         §
COUNTY OF     §

   BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this ___ day personally appeared James H. Kropp, CFO of MICROMONT HOLDINGS 4 LLC, a Texas limited liability company, known to me to be the person and officer whose name is subscribed to the foregoing instrument, and acknowledged to me that ___ executed the same for the purposes and consideration therein expressed, in the capacity therein stated, and as the act and deed of said company.

   GIVEN UNDER MY HAND AND SEAL OF OFFICE this 16 day of September, 2015.

[SEAL]

Notary Public, State of Texas

**ELISE TITUS**
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
APRIL 13, 2016

5

Signed, Sealed and Delivered in the
Presence of:

Name: _Christie L. Davis_

Name: _Christy Wilson_

**TENANT:**

**THE KRYSTAL COMPANY**

By: _Brian Blosser_
Name: _Brian Blosser_
Title: _VP of Development & Construction_

> LEGAL DEPT.
> APPROVED

STATE OF _GA_    §
                        §
COUNTY OF _Cobb_    §

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared _Brian Blosser, VP_ of _Development & Construct_ of The Krystal Company, a Tennessee corporation, known to me to be the person and officer whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed, in the capacity therein stated, and as the act and deed of said _VP_ .

GIVEN UNDER MY HAND AND SEAL OF OFFICE this _29th_ day of _Sept_ , 20 _15_ .

[SEAL]

Notary Public, State of _GA_

MEREDITH N. DONOHUE
MY COMMISSION EXPIRES
NOTARY
PUBLIC
JUNE 11, 2018
COBB COUNTY, GEORGIA

6

EXHIBIT "4"

Krystal SAV-07/Pooler, Chatham County, Georgia

<h1 style="text-align:center">RENT ADDENDUM<br>to<br>LEASE AGREEMENT</h1>

**THIS RENT ADDENDUM** dated April _____, 2000, by and between **CNL INCOME FUND XII, LTD.**, a Florida limited partnership as "Landlord", and **THE KRYSTAL COMPANY**, a Tennessee corporation, as "Tenant", for Krystal SAV-07, Pooler, Chatham County, Georgia, is attached to and made a part of that certain Lease Agreement by and between Landlord and Tenant of even date herewith (the "Lease"). Notwithstanding any other provision to the contrary which may be contained in said Lease, it is specifically agreed by and between Landlord and Tenant as follows:

1.    **Commencement of Rent.**  On the date hereof, Landlord has simultaneously entered into the Lease with Tenant pursuant to which Tenant has agreed to lease from Landlord the Premises and all improvements now or hereafter constructed thereon.  Payment of Interim Rent (if applicable), Annual Rent and Percentage Rent shall commence as of the Effective Date as provided herein, notwithstanding that the improvements may not be constructed or complete at that time.

2.    **Interim Rent.**  The terms and provisions of this paragraph 2 shall apply only if a Construction Addendum is attached to and incorporated in the Lease.  From and after the Effective Date until Annual Rent shall first become due and payable pursuant to subparagraph 3 below, Interim Rent shall be due and payable in advance monthly installments on the first day of each month.  If the Effective Date falls on a day other than the first day of a calendar month, then the Interim Rent for the partial month shall be prorated on a per diem basis on the Effective Date and shall be paid by Tenant to Landlord for such month.  For purposes of this Lease, the term "Interim Rent" shall mean an amount equal to the product of (i) ten and 375/100 percent (10.375%) per annum, multiplied by (ii) the amounts theretofore funded by Landlord under the terms of the Construction Addendum and/or are otherwise included in the calculation of Total Cost (as hereinafter defined).  Interim Rent for partial months shall be prorated on a per diem basis.

3.   **Annual Rent.**

(a)    Beginning on the Effective Date, Tenant covenants and agrees to pay to Landlord annual rent ("Annual Rent") in the annual amount of One Hundred Four Thousand Six Hundred Ninety and 66/100 Dollars ($104,690.66), payable to Landlord in equal monthly installments in the amount of Eight Thousand Seven Hundred Twenty-Four and 22/100 Dollars ($8,724.22) monthly in advance, on the first (1st) day of each month.

(b)    **Increases in Annual Rent.**  Commencing at the end of the fifth (5th) Lease Year after the Effective Date, and on each fifth (5th) anniversary of such date thereafter during the term of this Lease (and any extension thereof), Annual Rent shall be increased by an amount

equal to ten percent (10%) of the Annual Rent payable during the immediately preceding Lease Year.

      (c)    <u>Partial Months</u>.  If the date on which Annual Rent shall be first due and payable shall fall on a day other than the first day of a calendar month, then rent for the partial rental month shall be prorated on a per diem basis on the first Annual Rent payment and shall be paid by Tenant to Landlord for such month.

    4.    <u>Percentage Rent</u>.  [INTENTIONALLY DELETED]

    5.    <u>Sales and Other Financial Reports</u>.  Tenant shall, during the term of this Lease and any extensions thereto:  (i) keep books and records reflecting its financial condition including, but not limited to, the operation of the Premises in accordance with generally accepted accounting principles consistently applied; (ii) furnish to Landlord within forty-five (45) days after the end of each fiscal quarter of Tenant an unaudited financial statement of Tenant, including operating statements and balance sheets; and (iii) provide, for Tenant, fiscal year-end audited current signed financial statements of Tenant (including an annual balance sheet, a profit/loss statement, statement of cash flow and footnotes, and form 10-K's and 10-Q's) within ten (10) days after they are generated for Tenant, together with a copy of all reports submitted to Franchisor.  Tenant hereby authorizes Franchisor to release to Landlord any and all inspection reports issued by Franchisor to Tenant relating to the Premises.  Further, in the event Landlord seeks to securitize or otherwise transfer the Lease, then (upon Landlord's request), Tenant agrees to cooperate with Landlord in providing such information as would be reasonably required for the transaction, including but not limited to income and expense statements for the Premises.

    6.    <u>Sales/Use Tax</u>.  Tenant shall also pay to Landlord any sales and use tax imposed on any Rents payable hereunder from time to time by state law or any other governmental entity, which sums are due monthly as to monthly rent payments and annually as to Percentage Rent on the due date of the rent payment under this Lease.

    7.    <u>Late Charges</u>.  In the event any installment of rent due hereunder (including Interim Rent, Annual Rent and Percentage Rent) is not received by Landlord within fifteen (15) days of its respective due date, there shall be an automatic late charge due to Landlord from Tenant in the amount of five percent (5%) of such delinquent installment of rent.  All such late charges due hereunder shall be deemed additional Rent, and are not penalties but rather are charges attributable to administrative and collection costs arising out of such delinquency.  In addition to such late charge, in the event Landlord does not receive Rent when due hereunder, interest at the rate of the maximum rate allowable by law shall be due and payable with respect to such payment from the due date thereof until Landlord receives such payment.

8.    **Payments of Rents.** Rent payments shall be made by electronic funds transfer to Landlord to the account and in accordance with the procedures designated by Landlord, or in other such other manner as Landlord or its successors or assigns, respectively, may from time to time designate in writing.

9.    **No Abatement.** Unless otherwise stated in the Lease, no abatement, offset, diminution or reduction (a) of Rent, charges or other compensation, or (b) of Tenant's other obligations under this Lease shall be allowed to Tenant or any person claiming under Tenant, under any circumstances or for any reason whatsoever.

**Initialed for Identification:**

By Landlord                                By Tenant

914097/72106/346985.1-Krystal/SAV-07
Pooler, Chatham County, Georgia

3

8.    **Payments of Rents.** Rent payments shall be made by electronic funds transfer to Landlord to the account and in accordance with the procedures mutually agreed to by Landlord and Tenant, or in other such other manner as Landlord or its successors or assigns, respectively, may from time to time designate in writing.

9.    **No Abatement.** Unless otherwise stated in the Lease, no abatement, offset, diminution or reduction (a) of Rent, charges or other compensation, or (b) of Tenant's other obligations under this Lease shall be allowed to Tenant or any person claiming under Tenant, under any circumstances or for any reason whatsoever.

**Initialed for Identification:**

By Landlord _____

By Tenant _____ Lonny Bentley, VP & CFO

914097/72106/346985.1–Krystal/SAV-07
Pooler, Chatham County, Georgia

EXHIBIT "5"

Case 20-33665-pwb Doc 389 Filed 04/21/20 Entered 04/21/20 15:18:50 Desc Main Document Page 50 of 50

# 2020 PROPERTY TAX STATEMENT

CHATHAM COUNTY TAX COMMISSIONER
WWW.CHATHAMTAX.ORG
P.O. BOX 9827
SAVANNAH, GA 31412



*ADDRESS SERVICE REQUESTED*

| Bill No | Desc | *TOTAL DUE* |
|---|---|---|
| 2020-3018912 | RE | $4,997.78 |

| | Due Date | |
|---|---|---|
| | 06/01/2020 | |

Map: 50023 01003
Location: 1015 E US HIGHWAY 80 31322

Printed: 03/05/2020

## Total Amount Enclosed

**MAKE CHECK OR MONEY ORDER PAYABLE TO:**
**Chatham County Tax Commissioner**

*********AUTO**MIXED AADC 373   334   208   80310   1 MB 0.439
50023 01003
PPB & D INC
1270 LINCOLN AVE STE 400
PASADENA CA 91103-2468

CHATHAM CO TAX COMM PYMT LOCKBOX
PO BOX 117037
ATLANTA, GA 30368-7037

0220203018912900000384461000000499778 87

**RETURN THIS PORTION WITH PAYMENT**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHATHAM COUNTY TAX COMMISSIONER
WWW.CHATHAMTAX.ORG
P.O. BOX 9827
SAVANNAH, GA 31412
Phone:  (912) 652-7100      Fax:  (912) 652-7101



**Tax Payer:** PPB & D INC
**Map Code:** 50023 01003      REAL
**Description:** OUT PARCELS 3 & 4 POOLER SQUARE
**Location:** 1015 E US HIGHWAY 80 31322
**Bill No:** 2020-3018912
**District:** 050   POOLER

| Building Value | Land Value | STEPHENS / DAY | STEPHENS/ DAY CPI | Fair Market Value | Due Date | Billing Date | Payment Good Through | Exemptions |
|---|---|---|---|---|---|---|---|---|
| 203,500 | 358,900 | 0 | 0 | 562,400 | 06/01/2020 | 03/05/2020 | 06/01/2020 | |

| Entity | Adjusted FMV | Net Assessment | Exemptions | Taxable Value | Millage Rate | Gross Tax | Credit | Net Tax |
|---|---|---|---|---|---|---|---|---|
| COUNTY M&O | 562,400 | 224,960 | | 224,960 | 6.4270 | 1,445.82 | | 1,298.46 |
| COUNTY SALES TAX CREDIT | | | | | -.6551 | | -147.36 | |
| COUNTY SCHOOL M&O | 562,400 | 224,960 | | 224,960 | 9.4410 | 2,123.85 | | 2,123.85 |
| CITY OF POOLER | 562,400 | 224,960 | | 224,960 | 4.2920 | 965.53 | | 422.30 |
| POOLER SALES TAX CREDIT | | | | | -2.4148 | | -543.23 | |
| TOTALS | | | | | 17.0902 | 4,535.20 | -690.59 | 3,844.61 |



Pay online at www.chathamtax.org at your convenience using your checking account, MasterCard, Visa,
American Express or Discover. Available 24 hours a day. Applicable Convenience Fees apply.

Our website provides the same real time information that is used in our office. You may also print copies of
your tax bill or verify that your payment has been posted.

The "Payment Good Through" date is for the tax year indicated above only. If an amount appears in the
"Back Taxes" column, a different due date is applicable.

All taxes, including Appeal bills become delinquent if not paid in full by the Due Date. Delinquent taxes are
charged interest and penalty as applicable in accordance with O.C.G.A. 48-2-40 and 48-2-44.

| | |
|---|---|
| Current Due | $3,844.61 |
| Penalty | .00 |
| Interest | .00 |
| Other Fees | .00 |
| Previous Payment | .00 |
| Back Taxes | 1,153.17 |
| **TOTAL DUE** | **$4,997.78** |

Printed:   03/05/2020