**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| In re: | Case No. 20-61065-pwb |
| THE KRYSTAL COMPANY, *et al.*,[1] | Chapter 11 |
| Debtor. | (Jointly Administered) |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF STORE MASTER FUNDING I, LLC; CIVF IV-2, LLC; AND CAPVIEW INCOME & VALUE FUND IV, LP TO THE DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER: (I) APPROVING ENTRY INTO STALKING HORSE AGREEMENT AND AUTHORIZING BREAK-UP FEE AND (II) GRANTING RELATED RELIEF**

STORE Master Funding I, LLC ("STORE"); CIVF IV-2, LLC; and Capview Income & Value Fund IV, LP ("Capview" and together with STORE, the "Landlords"), by and through their undersigned counsel, Ballard Spahr, LLP, hereby file this limited objection and reservation of rights (the "Objection") to the *Debtors' Emergency Motion for Entry of an Order (I) Approving Entry Into Stalking Horse Agreement and Authorizing Break-Up Fee and (II) Granting Related Relief* (the "Stalking Horse Motion") [Docket No. 340], with respect to the Landlords' rights, and the potential assumption and assignment of the Leases (as defined below) to Stalking Horse[2] and respectfully represents as follows:

**I. BACKGROUND FACTS**

1. The above-captioned debtors (collectively, the "Debtors"), filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on January 19,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: The Krystal Company (4140); Krystal Holdings, Inc. (5381); and K-Square Acquisition Co., LLC (8916). The location of the Debtors' corporate headquarters and service address is: 1455 Lincoln Parkway, Suite 600, Dunwoody, Georgia 30346.

[2] Terms not otherwise defined herein shall have the meanings ascribed to them in the Stalking Horse Motion.

2020 (the "Petition Date"). The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[3]

2. The Debtors lease retail space (the "Premises") from the Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease" and together, the "Leases") at the locations set forth in detail on the attached Schedule A. The Leases are leases "of real property in a shopping center" as that term is used in Section 365(b)(3). *See* In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-87 (3d Cir. 1990).

3. On February 12, 2020, the Debtors filed the *Motion for Entry of an Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling Hearings and Objection Deadlines with Respect to the Sale, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief* (the "Bidding Procedures Motion") [Docket No. 148].

4. On March 4, 2020, the Court entered the *Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling Hearings and Objection Deadlines with Respect to the Sale, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief* (the "Bidding Procedures Order") [Docket No. 227].

5. Pursuant to the Bidding Procedures Order, on April 7, 2020, the Debtors served a *Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases* (the "Cure Notice") [Dkt. No. 310]. Objections to the proposed cure amounts listed in the Cure Notice are due on April 27, 2020 at 5:00 p.m. (prevailing Eastern Time).

6. Since receipt of the Cure Notice, Landlords have engaged in discussions regarding the cure amounts listed for their respective Leases and, in the event the

---

[3] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

1

discussions do not resolve the disputes regarding the cure, Landlords intend to file objections to the Cure Notice (each a "Potential Cure Objection").

7. On April 21, 2020, the Debtors filed the Stalking Horse Motion seeking approval of their entry into the Stalking Horse Agreement and related relief. The Debtors sought a hearing on the Stalking Horse Motion on shortened time. *See* Docket No. 342.

8. As set forth in the *Order Shortening Notice and Scheduling Hearing on Debtors' Emergency Motion for Entry of an Order (I) Approving Entry Into Stalking Horse Agreement and Authorizing Break-Up Fee and (II) Granting Related Relief* [Dkt. No. 344], the deadline to object to the relief requested in the Stalking Horse Motion is April 24, 2020 at 5:00 p.m. (prevailing Eastern Time).

9. Landlords generally do not oppose the assumption and assignment of their Leases to a financially capable operator that will continue to run the same business in accordance with the terms of the Leases. Landlords generally do not oppose Debtors' entry into the Stalking Horse Agreement. Nonetheless, certain issues with regard to the Stalking Horse Motion must be resolved before this Court may approve it.

## II.   LIMITED OBJECTIONS AND RESERVATION OF RIGHTS

### A.   Landlords Reserve All Rights to Their Potential Cure Objection

10. As set forth above, Cure Notice objections are not due until April 27, 2020 i.e., the same day as the hearing on the Stalking Horse Motion.

11. As may be set forth more fully in STORE's Potential Cure Objection, STORE disputes the Debtors' listing of cure amounts on a per Premises basis for the eight Premises owned by STORE. The STORE-owned Premises are subject to a unitary master lease under which a single base monthly rental payment is due for all eight Premises. STORE does not consent to Debtors' allocation of the proposed cure amounts to the eight individual properties and reserves its right to file an objection to the Cure Notice if the issue cannot be resolved with Debtors.

2

12. Landlords reserve the right to file Potential Cure Objections on the basis that the cure amount proposed by Debtors is incorrect or insufficient based on Debtors' failure to include attorneys' fee due under the Leases.

13. Landlords further reserve the right to object on the basis that all cure amounts should be paid immediately upon the assumption of the Leases in accordance with the prompt cure requirement under Section 365(b)(1)(A). To the extent there is a dispute over the total cure obligation for the Leases, all undisputed cure amounts should be paid immediately upon the assumption of the Leases. The Debtors should escrow disputed amounts, and the Court should set a status conference within thirty (30) days of the assumption of the Leases to deal with any disputes that remain unresolved after such period. Landlords reserve all of their claims and rights to payment of cure.

### B. Any Sale Must Not Be Free and Clear of Obligations to Pay All Charges Due under the Leases, Including Unbilled Year-end Adjustments and Reconciliations.

14. Any sale, including a sale to the proposed Stalking Horse, should not be free and clear of obligations under the Leases, including the obligation to satisfy unbilled taxes, reconciliations, percentage rent, or other year-end adjustments or unbilled charges that may have accrued under the Leases prior to the assignment of the Leases, but which have not yet been billed. The Debtors continue to be responsible for all such unbilled charges as they come due under the Leases, and the Debtors, or any successful bidder, must continue to satisfy all charges due under the Leases, including charges which have not yet been billed, reconciled and/or adjusted from pre-petition (or even post-petition) periods. Any assumption and assignment of the Leases cannot cut off the Landlord's right to recover unbilled charges that have accrued, or are accruing, under the Leases. If the sale is not subject to these reconciliation and adjustment claims, it is unlikely that these legitimate lease charges will ever be paid to the Landlords.

3

15. In addition, the Leases provide that the Debtors must indemnify and hold the Landlord harmless with respect to any existing claims which may not become known until after the assumption and assignment of the Leases, examples of which may include such claims as personal injuries at the Premises and damage to the Premises by the Debtors or their agents. Any order approving the Stalking Horse Motion, and or the assumption and assignment of the Leases, must provide that the assumption and assignment is pursuant to the terms of the Leases, including that any assignee continues to be responsible for all such indemnification obligations, regardless of when they arose. In the alternative, the Debtors must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Lease for any such claims that relate to the period prior to any assumption and assignment of the Leases.

### C. Any designation rights must protect Landlord's rights under the Lease.

16. Landlords do not generally object to designation rights in connection with the Debtors' proposed sale. However, any such designation rights should include a reasonable process for noticing any request for the assumption and assignment of the Leases, including that any motion or other designation notice should provide Landlords with no less than 14-days' notice to object to any changes in the cure amount or based on any change in circumstances of the proposed Stalking Horse or any other successful bidder.

17. In addition, any assumption and assignment of the Leases is not effective until ordered by the Court. Accordingly, a separate assumption and assignment order must be entered to approve the assumption and assignment of any designated Lease or Leases at the time of the assignment.

18. Finally, appropriate procedures must be established for the operation of the stores during any designation period, including the guaranty of the payment of all Section 365(d)(3) obligations of the Debtors during that period, the continuation of all insurance coverage as required by the affected Leases, the assumption of the Lease obligations by the proposed stalking horse bidder or any other successful bidder if it is operating the stores,

and a written agreement governing the operation of the stores if the Leases are still with the Debtors but operated by another party.

19. In the event of operation by a party other than the Debtors during a designation period, such party must comply with all terms of the Leases during any such period in all respects. In addition, said party must be responsible for all obligations during the time that it controls the Leases, consistent with Section 365(d)(3), in addition to Debtors' joint liability therefor. There is no direct relationship between anyone other than Debtors and the Landlords prior to the assumption and assignment of the Leases. Therefore, any final order approving the Stalking Horse Agreement must protect the Landlords during any proposed designation period.

### D.   Cure Costs Must Be Paid in Full By Either the Debtors or Purchaser

20. The Stalking Horse Agreement provides that the Stalking Horse will pay Unpaid Post-Petition Rent and Cure Costs. *See* Stalking Horse Agreement § 2.3.

21. Pursuant to the Stalking Horse Agreement, the Assumed Liabilities are capped to the extent the Assumed Lease Liabilities, including Unpaid Post-Petition Rent and Cure Costs, exceed $8,840,000.00. *Id.* § 2.3(h).

22. It is not clear from the Stalking Horse Agreement or the Bidding Procedures Order who will pay Cure Costs in the event the Assumed Lease Liabilities exceed $8.84 million.

23. All Cure Costs for any assumed Leases must be paid in full, and the Stalking Horse Agreement or any final sale order must provide for their payment.

### III.   **JOINDER IN OTHER LANDLORD OBJECTIONS**

24. To the extent consistent with the objections expressed herein, Landlord also joins in the objections of other landlords to the relief requested by the Debtors.

### IV.   **CONCLUSION**

Landlord respectfully requests that any order approving the Stalking Horse Motion: (i) provide that any sale should not be free and clear of obligations due under the Leases;

5

(ii) protect the Landlords during any proposed designation period; and (iii) provide that, regardless of any cap on Assumed Liabilities, either Debtors or eventual purchaser pay the full amount of Cure Costs for the assumed Leases. Landlords further request the Court grant such further relief as the Court deems proper.

| | |
|---|---|
| Dated this 24th of April, 2020. | BALLARD SPAHR LLP<br><br>By: */s/ Sarah T. Reise*<br>Sarah T. Reise (Bar No. 181567)<br>999 Peachtree Street, Suite 1000<br>Atlanta, GA 30309<br>Email:  reiset@ballardspahr.com<br><br>and<br><br>Craig Solomon Ganz (*pro hac vice*)<br>Michael A. DiGiacomo (*pro hac vice*)<br>1 East Washington Street, Suite 2300<br>Phoenix, AZ  85004-2555<br>Email:  ganzc@ballardspahr.com<br>Email:  digiacomom@ballardspahr.com<br><br>*Counsel for STORE Master Funding I, LLC; CIVF IV-2, LLC; and Capview Income & Value Fund IV, LP* |

6

## SCHEDULE A

| STORE Master Funding I, LLC ||
|---|---|
| Second Amended and Restated Master Land and Building Lease by and between STORE Master Funding I, LLC and The Krystal Company dated October 16, 2019 ||
| Store No. | Address |
| CDR001 | 623 N. Main Street Cedartown GA |
| ATL026 | 5235 Old National Hwy. College Park GA |
| DLT002 | 1909 East Walnut Avenue Dalton GA |
| ATL037 | 2223 Lawrenceville Highway Decatur GA |
| ATL052 | 2890 Evans Mill Road Lithonia GA |
| MAC007 | 1140 Gray Hwy. Macon GA |
| ATL057 | 939 Highway 155 S. McDonough GA |
| ATL028 | 6605 Hwy. 85 Riverdale GA |
| SAV002 | 2804 Bee Road Savannah GA |

| CIVF IV-2, LLC ||
|---|---|
| Store No. | Address |
| JCM004 | 4307 North State Street, Jackson, MS 39206 |

| Capview Income & Value Fund IV, LP ||
|---|---|
| Store No. | Address |
| PHC001 | 1006 Highway 280 Byp, Phenix City, AL 36867 |

7

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on April 24, 2020 by this Court's CM/ECF System on all parties receiving electronic notice in the case.

                                        */s/ Sarah T. Reise*
                                        Sarah T. Reise