# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| In re:<br><br>THE KRYSTAL COMPANY, *et al.*,[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 20-61065 (PWB)<br><br>(Jointly Administered)<br><br>**Re: Docket No. 340**<br>**Hearing Date: April 27, 2020 at 10:00 a.m.** |

## LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) APPROVING ENTRY INTO STALKING HORSE AGREEMENT AND AUTHORIZING BREAK-UP FEE AND (II) GRANTING RELATED RELIEF

The Official Committee of Unsecured Creditors (the "Committee") of The Krystal Company, *et al.*, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby files this limited objection (the "Objection") to the *Debtors' Emergency Motion for Entry of an Order (I) Approving Entry Into Stalking Horse Agreement and Authorizing Break-Up Fee and (II) Granting Related Relief* (the "Motion").[2] In support of this Objection, the Committee respectfully states as follows:

## OBJECTION

1. The Committee supports a fair and reasonable sale process designed to foster competitive bidding and maximize value. The Stalking Horse Agreement, however, requests an overly broad $500,000 Break-Up Fee that conceivably prevents the Debtors from soliciting

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: The Krystal Company (4140); Krystal Holdings, Inc. (5381); and K-Square Acquisition Co., LLC (8916). The location of the Debtors' corporate headquarters and service address is 1455 Lincoln Parkway, Suite 600, Dunwoody, Georgia 30346.

[2] Docket No. 340. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

14919939v1

competing bids and would be payable for terminations that arise outside of an Alternative Transaction. The Break-Up Fee, therefore, is not strictly designed to foster competitive bidding and should not be approved.

2. First, the Stalking Horse Agreement obligates the Debtors to terminate the Stalking Horse Agreement and pay the Break-Up Fee for taking actions consistent with their fiduciary duties, which actions arguably include soliciting higher and better offers (the "Fiduciary Out Actions").[3]

3. Second, the Debtors are obligated to pay the Break-Up Fee if the Purchaser terminates the Stalking Horse Agreement due to an uncured breach of the Debtors' representations, warranties, or covenants.[4]

4. The Break-Up should only be payable in the event of, and from the proceeds of, an Alternative Transaction consummated by the Debtors.[5] The Debtors have an affirmative obligation to develop a bid process that will maximize value.[6] Courts have routinely held that procedures with bid protections that will have a chilling effect on the bidding process should not be approved.[7]

---

[3] *See* Stalking Horse Agreement, §§ 7.1, 7.4(b), 12.1(g), and 12.5. The Stalking Horse Agreement defines "Fiduciary Out Actions" as "actions as are required in connection with the discharge of [the Debtors] fiduciary duties during the Bankruptcy Case (including soliciting higher or better offers for the Purchased Assets)" and further provides that "prior to taking any Fiduciary Out Action(s) that would otherwise, but for the preceding proviso, constitute a breach of or violation of this Agreement, Seller shall be required to terminate this Agreement pursuant to Section 12.1(g) and Seller shall pay the Break-Up Fee in accordance with Section 12.5."

[4] *Id.*, §§ 12.1(d), 12.5.

[5] *Id.*, §§ 12.1(f), 12.5.

[6] *In re Mataldyne Corp.*, 409 B.R. 661, 667-68 (Bankr. S.D.N.Y. 2009).

[7] *In re President Casinos, Inc.*, 314 B.R. at 786 (declining to approve procedures that chilled bidding); *In re Jon J. Peterson, Inc.*, 411 B.R. 131, 137 (Bankr. W.D.N.Y. 2009) (unless the bid process remains fair and equitable, competitors will refrain from participating which is necessary to assure the highest possible value); *In re America West Airlines, Inc.*, 166 B.R. 908, 912-13 (Bankr. D. Ariz. 1994) (denying bid procedure that did not induce competitive bidding).

5.  Break-up fees are designed to be paid from the proceeds of an alternative transaction when the stalking horse proposal has been broken up.[8] For that reason, much like in other sale cases, the Bidding Procedures Order requires that competing bidders submit a bid that covers the cost of the Break-Up Fee as part of its bid.[9]

6.  The Stalking Horse Agreement, however, undermines the auction process by obligating the Debtors to pay the Stalking Horse Purchaser $500,000 for pursuing ambiguously defined "Fiduciary Out Actions" or for breaching any representations or warranties. The estates cannot be saddled with this additional expense and the Debtors should not be precluded from actively trying to maximize value by soliciting higher offers or taking any other action consistent with their fiduciary duties.

7.  Lastly, the Committee has shared its concerns with other aspects of the Stalking Horse Agreement with the Debtors. The Committee will continue to negotiate with the Debtors and the Stalking Horse Purchaser and reserves all rights to raise its issues at the sale hearing.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court (i) condition approval of the Motion on modifying the Break-up Fee as provided for in this Objection; and (ii) grant such other and further relief as the Court deems just and proper.

---

[8] *See, e.g.*, *In re Cagle's, Inc., Cagle's Farms, Inc.*, No. 11-80202 (PWB) (Bankr. N.D. Ga. April 4, 2012) (authorizing payment of the break-up fee upon consummation of a sale to a third party with the break-up fee to be paid out of the proceeds of the alternative transaction).

[9] *See* Bidding Procedures, § 6.k, annexed as Exhibit 1 to the Bidding Procedures Order.

Dated: Atlanta, Georgia
April 24, 2020

        ARNALL GOLDEN GREGORY LLP

        */s/ Darryl S. Laddin*
        Darryl S. Laddin
        Sean C. Kulka
        171 17th Street NW, Suite 2100
        Atlanta, GA 30363
        Telephone: (404) 873-8500
        darryl.laddin@agg.com
        sean.kulka@agg.com

        -and-

        KELLEY DRYE & WARREN LLP
        Eric R. Wilson (admitted *pro hac vice*)
        Jason R. Adams
        Maeghan J. McLoughlin (admitted *pro hac vice*)
        101 Park Avenue
        New York, New York 10178
        Telephone: (212) 808-7800
        Facsimile: (212) 808-7897
        Email: ewilson@kelleydrye.com
                jadams@kelleydrye.com
                mmcloughlin@kelleydrye.com

        *Counsel to the Official Committee of*
        *Unsecured Creditors of The Krystal Company*