# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **In re:** | **CASE NO. 20-61065** |
| **THE KRYSTAL COMPANY,** *et al.,* | **CHAPTER 11** |
| Debtors. | **(Jointly Administered)** |

## LIMITED OBJECTION OF CERTAIN LANDLORDS TO DEBTORS' MOTION FOR APPROVAL OF STALKING HORSE AGREEMENT

COME NOW Buckhead 14TH KB, LLC; Fairburn KB Freestanding, LLC; KB Ringgold GA, LLC; Krystal Columbus DT, LLC; Clark/Willmschen Holdings 2, LLC; and Eden Star Properties, LLC (the "**Landlords**") and file this limited objection (this "**Limited Objection**") to the Debtors' Emergency Motion for Entry of an Order (i) Approving Entry Into Stalking Horse Agreement and Authorizing Break-Up Fee and (ii) Granting Related Relief (the "**Stalking Horse Motion**"), in which the Debtors seek approval of an agreement to sell most or all of their assets (the "**Stalking Horse Agreement**") to Krystal Acquisition LLC (the "**Stalking Horse**"), subject to higher and better bids. In support of this Limited Objection, the Landlords respectfully show the Court as follows:[1]

1. In general, the Landlords do not object to the Court granting the Stalking Horse Motion or approving the Stalking Horse Agreement. The Landlords file this Limited Objection simply to assert their rights to timely payment of post-petition amounts due under their respective leases with the Debtors pursuant to Section 365(d)(3) of the Bankruptcy Code.

2. Ordinarily, when a debtor sells substantially all of its assets pursuant to Section 363 of the Bankruptcy Code, the prospective buyer identifies the leases and contracts that it wants to

---

[1] All capitalized terms not defined herein shall have the meanings ascribed to them in the Stalking Horse Motion.

be assigned prior to closing. Here, however, the Debtors propose to enable the Stalking Horse to have an additional 60 days past the closing date to identify which leases will be assumed and assigned to the Stalking Horse (identified as "Designation Rights Assets"). (*See* Stalking Horse Motion at ¶ 10).

3. Given the extraordinary times we currently live in, the Landlords certainly understand that the Debtors and the Stalking Horse (as well as any other prospective purchaser) may require a bit more flexibility than one would expect in less uncertain times.

4. However, the Landlords are concerned about the Debtors' potential continued non-payment of post-petition rent when due, as required under Section 365(d)(3) of the Bankruptcy Code, particularly considering that the Debtors have not yet paid rent for April, and a review of the Stalking Horse Motion and Stalking Horse Agreement reveals that apparently the Debtors contemplate that they may not pay rent for May either. Obviously, this non-compliance with the provisions of the Bankruptcy Code is troubling, and the Landlords reserve all rights related thereto.

5. The Landlords have cause for concern about continued non-payment of rent and mounting super-priority or administrative priority claims. The Stalking Horse Motion indicates that closing would likely occur, and most cure costs would be paid, by mid-May, so with respect to leases that are assumed, assigned, and cured at closing, those landlords would likely be made whole in less than a month.

6. However, if the Stalking Horse does not make a decision regarding whether to take assignment of certain leases prior to closing, certain landlords could conceivably be forced to wait another 60 days for a decision. During that time, if rent is not being paid in a timely manner, that means that up to four months of Section 365(d)(3) claims could accrue, the Stalking Horse may ultimately decide not to take assignment of certain leases, and certain landlords could possibly be

deprived of four months of post-petition rent and have sizeable priority claims against an estate that already appears to be administratively insolvent. For these reasons, the Landlords believe it is important that the Court require the Debtor to pay its post-petition rent in a timely manner.

7. There does appear to be language in the Stalking Horse Agreement requiring the Stalking Horse to pay all costs related to post-petition expenses related to restaurants that the Stalking Horse has not yet decided whether or not to purchase. However, the Landlords believe it is appropriate that the Court order that, to the extent any leases held by any of the Landlords are identified as "Designation Rights Assets," the Debtor bring its post-petition rent payments current and remain current on those payments until such time that the respective leases are assumed and assigned or rejected.

WHEREFORE, the Landlords request that any order entered granting the Stalking Horse Motion specify that, for any leases that are not assumed, assigned, and cured as of the closing date, the Debtor be required to comply with its duties under Section 365(d)(3) of the Bankruptcy Code and to pay the Landlords all post-petition amounts owed at the time of closing and remain current on their post-petition obligations to the Landlords.

Dated: April 24, 2020                Respectfully submitted,

**ROUNTREE LEITMAN & KLEIN, LLC**

*/s/ Benjamin R. Keck*
William A. Rountree, Ga. Bar No. 616503
Benjamin R. Keck, Ga. Bar No. 943504
2987 Clairmont Road, Suite 175
Atlanta, Georgia 30329
(404) 584-1238 Telephone
wrountree@rlklawfirm.com
bkeck@rlklawfirm.com
*Attorneys for the Landlords*

~ 3 ~

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2020, I filed the foregoing pleading using the Court's CM/ECF system, which generates an electronic notice of filing to all parties registered to receive notices thereby.

**ROUNTREE LEITMAN & KLEIN, LLC**

*/s/ Benjamin R. Keck*
William A. Rountree, Ga. Bar No. 616503
Benjamin R. Keck, Ga. Bar No. 943504
2987 Clairmont Road, Suite 175
Atlanta, Georgia 30329
(404) 584-1238 Telephone
wrountree@rlklawfirm.com
bkeck@rlklawfirm.com
*Attorneys for the Landlords*