**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE KRYSTAL COMPANY, *et al.*,[1] | ) | Case No. 20-61065 (PWB) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER DETERMINING THAT DEBTORS SATISFY THE FINANCIAL REQUIREMENTS FOR A DISTRESS TERMINATION OF PENSION PLAN AND APPROVING THE TERMINATION OF PENSION PLAN**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby submit this *Motion for Entry of an Order Determining that Debtors Satisfy the Financial Requirements for a Distress Termination of Pension Plan and Approving the Termination of Pension Plan* (the "Motion"). In support of this Motion, the Debtors respectfully state as follows:

**PRELIMINARY STATEMENT**

1. The Debtors bring this motion for approval of the distress termination of the Pension Plan (defined below). Absent termination of the Pension Plan, the efforts to restructure the Debtors into a viable enterprise, save thousands of jobs, and preserve value for employees, retirees, creditors, investors, and other stakeholders would be in vain.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: The Krystal Company (4140); Krystal Holdings, Inc. (5381); and K-Square Acquisition Co., LLC (8916). The location of the Debtors' corporate headquarters and service address is: 1455 Lincoln Parkway, Suite 600, Dunwoody, Georgia 30346.

2.	In order to terminate an underfunded defined benefit pension plan, a person must satisfy one of the "distress" termination tests set forth under ERISA (defined below).  Under the "reorganization in bankruptcy" test – which is the only option available to the Debtors – a debtor is required to provide an evidentiary showing that, unless its pension plan is terminated, it will be unable to (i) pay its debts pursuant to a plan of reorganization and (ii) continue in business outside of the bankruptcy process.  As demonstrated below, the Debtors satisfy each of the requirements for a distress termination under the "reorganization in bankruptcy" test.

3.	Accordingly, the Debtors respectfully request that this Court enter an order approving the distress termination of the Pension Plan under 29 U.S.C. § 1341(c)(2)(B) and (b) and making the findings required thereunder.

## JURISDICTION AND VENUE

4.	This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334.  Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this proceeding is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.	The statutory predicate for the relief requested herein is section 4041 of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1341 (c)(2)(B)(ii) ("ERISA").

## BACKGROUND

**A.	General Background**

6.	On January 19, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Court.  The Debtors have continued in possession of their properties and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On

January 22, 2020, the Court entered an order [Docket No. 33] authorizing the joint administration and procedural consolidation of the chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). No request has been made for the appointment of a trustee or examiner in these cases.

7.  On February 11, 2020, the United States Trustee for the Northern District of Georgia (the "U.S. Trustee") appointed the official committee of unsecured creditors (the "Committee"). *See Appointment and Notice of Appointment of Committee of Creditors Holding Unsecured Claims* [Docket No. 143].

8.  The factual background relating to the Debtors' commencement of these cases is set forth in detail in the *Declaration of Jonathan M. Tibus in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 17] (the "First Day Declaration") filed on the Petition Date and incorporated herein by reference.

**B.     The Pension Plan**

9.  The Debtors maintain The Krystal Company Pension Savings Plan, dated as of January 1, 1960 (as amended and restated on January 1, 2012, the "Pension Plan"). The Pension Plan is a single-employer defined benefit pension plan providing retirement benefits to approximately 607 participants (109 active employees, 222 inactive employees with deferred benefits, and 385 inactive employees).

10. Pursuant to both the Internal Revenue Code, as amended, 26 U.S.C. §§ 1 *et. seq.* ("IRC") and ERISA, the sponsor of a pension plan incurs certain minimum funding obligations on account of such plan. *See* IRC § 412, 29 U.S.C. § 1082. Accordingly, as the sponsor of the Pension Plan, the Debtor The Krystal Company is required to (i) pay annual insurance premiums to the Pension Benefit Guaranty Corporation (the "PBGC") and (ii) make certain funding

3

contributions to the Plan. The Debtors are current on their annual premium payments, but certain minimum funding contribution amounts remain outstanding.

11. The Pension Plan was frozen for participation and benefit accruals effective October 1, 2003. Generally, until the Pension Plan was frozen, salaried employees were eligible to participate in the Pension Plan upon meeting the Pension Plan's age and service requirements. Participants vested after five years of covered service.

12. The Pension Plan's actuary, Findley, Inc. ("Findley"), has determined that as of December 31, 2019, the Pension Plan had approximately $25,000,000 in assets. On an ongoing basis, the Pension Plan has approximately $44,000,000 in liabilities. Accordingly, the Pension Plan is approximately $16,000,000 underfunded.

13. The Pension Plan is covered by the pension plan termination insurance program established under Title IV of ERISA and administered by the Pension Benefit Guaranty Corporation (the "PBGC"), a wholly-owned United States government corporation. Under this insurance program, when an underfunded pension plan properly is terminated, the PBGC generally becomes trustee of such plan and, subject to certain statutory limitations, defrays the plan's unfunded benefits from PBGC's insurance funds.

14. Findley has determined that the monthly amount of pension benefits that participants are currently receiving will not be affected by termination of the Pension Plan.

15. The Company is pursuing a sale of its assets as a going concern pursuant to the terms and conditions of a bid procedures order entered by the Court. *See Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling Hearings and Objection Deadlines with Respect to the Sale, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and*

*Assignment Procedures, and (VI) Granting Related Relief* [Docket No. 227]. Pursuant to that order, the Company has made available to all interested bidders the opportunity to assume the Pension Plan. No bidder has expressed any interest in assuming the Pension Plan.

## RELIEF REQUESTED

16. By this Motion, the Debtors seek entry of an order determining that the financial requirements for a distress termination are satisfied and approving the termination of the Pension Plan under 29 U.S.C. § 1341(c)(2)(B).

## BASIS FOR RELIEF

A. **Applicable Authority**

17. The Debtors are permitted to terminate the Plan if the contributing sponsor meets any of the four statutory distress termination tests set forth in section 4041(c) of ERISA.[2] *See* 29 U.S.C. § 1341.

18. By this Motion, the Debtors seek to satisfy the "reorganization in bankruptcy" test, which is satisfied if:

---

[2] The four tests for distress termination are:

1) Liquidation in Bankruptcy Test – The requirements of this test are satisfied if the person at issue liquidates;

2) Reorganization in Bankruptcy Test – The requirements of this test are set forth herein;

3) Inability to Continue in Business Test – This test requires a showing, to the satisfaction of the PBGC, that unless the pension plan is terminated, the person at issue will be unable to pay its debts when due and continue in business; and

4) Unreasonably Burdensome Pension Costs Test – This test is met if a person demonstrates to the PBGC that the costs of providing pension coverage have become unreasonably burdensome solely as a result of declining covered employment under all single-employer plans for which such person is a contributing sponsor.

5

(a) An entity has filed, or had filed against it, as of the proposed termination date, a petition seeking reorganization in a case under the Bankruptcy Code;

(b) Such case has not, as of the proposed termination date, been dismissed;

(c) Such entity timely submits a copy of any requests for the approval of the bankruptcy court of the plan termination to the PBGC at the time the request is made; and

(d) The bankruptcy court determines that, unless the plan is terminated, such entity will be unable to (i) pay all of its debts pursuant to a plan of reorganization and (ii) continue in business outside the chapter 11 reorganization process and approves the termination.

*See* 29 U.S.C. § 1341(c)(2)(B)(ii)(O); ERISA § 4041(c)(2)(b)(ii)(I)

19. This Court's role in a distress termination under the "reorganization in bankruptcy" provision of ERISA is to determine: (i) whether termination of the pension plan is necessary for the Debtors to emerge successfully from bankruptcy; and (ii) whether to approve termination of the pension plan. *See, e.g., In re Wire Rope Corp. of America, Inc.*, 287 B.R. 771, 777-78 (Bankr. W.D. Mo. 2002) ("It is not for this Court to determine whether the Debtor has satisfied or will satisfy, as of the termination date, the first three criteria of § 1341(c)(2)(B)(ii). Those are determinations to be made by the PBGC. The only question for this Court is whether the debtor has satisfied the requirements of § 1341(c)(2)(B)(ii)(IV)."); *In re Sewell Mfg. Co.*, 195 B.R. 180, 185 (Bankr. N.D. Ga. 1996) ("Here, however, the Court does not find itself faced with the ultimate question of the Debtor's entitlement to the termination of its pension plan. Instead, the Court simply must perform one narrow factual determination, the satisfaction of which will compose a single element in the Debtor's individual case for reorganizational 'distress.'"). This Court's determinations on those two issues are binding upon the PBGC. *See* 29 C.F.R. § 4041.41(d).

20. In evaluating whether pension plan termination is necessary to a debtor's successful reorganization, courts have considered whether the debtor would be able to submit a

6

confirmable plan of reorganization in the absence of such termination. For example, the courts in the *Wire Rope* and *US Airways* bankruptcy cases held that if the development of a confirmable plan of reorganization requires pension plan termination, court approval of distress termination is warranted. *Wire Rope*, 287 B.R. at 777-78 (holding that "[i]f the Debtor cannot obtain confirmation of a plan of reorganization in the first place, then it clearly cannot pay its debts under a plan of reorganization, and the Court's approval of a distress termination of the Retirement Plans would be warranted"); *In re US Airways Group, Inc.*, 296 B.R. 734, 743-46 (Bankr. E.D. Va. 2003) (holding that distress termination criterion is satisfied where the only realistic plan of reorganization required termination of pension plan). The debtor need not already have submitted a plan of reorganization prior to seeking a distress termination finding under § 1341(c)(2)(B)(ii)(IV). *See In re Sewell Mfg.*, 195 B.R. at 184.

**B.    Termination of the Plan is Warranted**

21.    The Debtors satisfy each prong of the "reorganization in bankruptcy" test. The first two prongs are satisfied because each Debtor currently is (and is expected to be on the proposed termination date) a debtor under chapter 11 of the Bankruptcy Code. The third prong is satisfied because the PBGC was timely served with a copy of this Motion.

22.    The Debtors meet the fourth and final prong of the "reorganization in bankruptcy" test, which requires a finding that, unless the debtor's pension plan is terminated, the debtor: (i) will be unable to pay its debts pursuant to a plan of reorganization; and (ii) will be unable to continue its business outside of the bankruptcy process.

23.    Since the Petition Date, the Debtors have considered the underfunding exposure, the cost of maintaining the Pension Plan, and the projections of their post-emergence operations.

7

After carefully considering these matters, the Debtors determined that terminating the Pension Plan is required to successfully emerge from chapter 11 and to continue operating.

24. The Debtors are currently conducting a process for the sale of substantially all of their assets. The Debtors and their advisors have determined such a sale is necessary to the Debtors' successful reorganization. The only parties willing to purchase the Debtors' assets have expressly conditioned their willingness to do so on the elimination of the Debtor's underfunding obligation to the Pension Plan. Consequently, unless the Debtors are allowed to terminate the Pension Plan, the Debtors will not be able to emerge from chapter 11 and continue operating and providing jobs to their employees.

25. If the Pension Plan is not terminated, the Debtors will be forced to liquidate. In such event, the Pension Plan will still be terminated, but all of the Debtors' employees will lose their jobs in the process and the Debtors' secured creditors would recover only a portion of their claims while the Debtors' unsecured creditors may not recover any portion of their claims at all. To avoid this result, the Pension Plan must be terminated.

26. While the Debtors have no choice but to seek relief under this Motion, they are fortunate in that the plan participants will not be affected adversely by the termination of the Pension Plan. Subject to certain conditions and limitations, upon the termination of the Pension Plan, the PBGC will assume all of the obligations owing thereunder and resume timely payments to all eligible retirees.

## NOTICE

27. The Debtors have provided notice of this motion to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) counsel to the administrative agent for the Debtors' prepetition credit facilities; (d) the Internal Revenue Service; (e) the Georgia Department of Revenue; (f) the

Attorney General for the State of Georgia; (g) the United States Attorney for the Northern District of Georgia; (h) the state attorneys general for states in which the Debtors conduct business; (i) the PBGC; (j) all known participants under the Plan; and (ik) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

## **NO PRIOR REQUEST**

28.    No prior request for the relief sought in the motion has been made to this or any other court.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that this Court enter an order in the form attached hereto as **Exhibit A** granting the relief requested herein and such other and further relief as may be warranted and just.

*[Remainder of Page Intentionally Blank]*

|  |  |
|---|---|
| Date: April 25, 2020<br>Atlanta, GA | Respectfully submitted,<br><br>KING & SPALDING LLP<br><br><u>/s/ Sarah R. Borders</u><br>Sarah R. Borders<br>Georgia Bar No. 610649<br>Jeffrey R. Dutson<br>Georgia Bar No. 637106<br>Leia Clement Shermohammed<br>Georgia Bar No. 972711<br>**KING & SPALDING LLP**<br>1180 Peachtree Street NE<br>Atlanta, Georgia 30309<br>Telephone: (404) 572-4600<br>Email: sborders@kslaw.com<br>Email: jdutson@kslaw.com<br>Email: lshermohammed@kslaw.com<br><br>*Counsel for the Debtors in Possession* |

# EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE KRYSTAL COMPANY, *et al.*,[3] | ) | Case No. 20-61065 (PWB) |
| | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER GRANTING DEBTORS' MOTION FOR ENTRY
OF AN ORDER DETERMINING THAT DEBTORS SATISFY
THE FINANCIAL REQUIREMENTS FOR A DISTRESS TERMINATION OF
PENSION PLAN AND APPROVING THE TERMINATION OF PENSION PLAN**

This matter is before the Court on the *Motion for Entry of an Order Determining that Debtors Satisfy the Financial Requirements for a Distress Termination of Pension Plan and Approving the Termination of Pension Plan* (the "Motion") [Docket No. __] of the above-

---

[3] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: The Krystal Company (4140); Krystal Holdings, Inc. (5381); and K-Square Acquisition Co., LLC (8916). The location of the Debtors' corporate headquarters and service address is: 1455 Lincoln Parkway, Suite 600, Dunwoody, Georgia 30346.

captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>").  All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

The Court has considered the Motion and the matters reflected in the record of the hearing held on the Motion on _____, 2020.  It appears that the Court has jurisdiction over this proceeding; that this is a core proceeding; that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; that the relief sought in the Motion is in the best interests of the Debtors, their estates, and their creditors; and that good and sufficient cause exists for such relief.

Accordingly, it is hereby ORDERED as follows:

1. The Motion is GRANTED as set forth herein.

2. The financial requirements set forth in 29 U.S.C. § 1341(c)(2)(B)(ii)(IV) for a distress termination of the Pension Plan have been met.  In particular, unless the Pension Plan is terminated, the Debtors will be unable to pay all of their debts pursuant to a plan of reorganization and will be unable to pay their debts and continue in business outside the chapter 11 reorganization process.

3. The termination of the Pension Plan is hereby approved.

4. The Pension Plan shall be deemed terminated as of May 13, 2020.

5. Notwithstanding any provision contained in the Federal Rules of Bankruptcy Procedure to the contrary, the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

6. The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

7. Counsel for the Debtors is directed to serve a copy of this Order on the parties that received service of the Motion within three (3) days of the entry of this Order and to file a certificate of service with the Clerk of Court.

[END OF DOCUMENT]

**Prepared and presented by:**

*/s/ Sarah R. Borders*
Sarah R. Borders
Georgia Bar No. 610649
Jeffrey R. Dutson
Georgia Bar No. 637106
Leia Clement Shermohammed
Georgia Bar No. 972711
**KING & SPALDING LLP**
1180 Peachtree Street NE
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Email: sborders@kslaw.com
Email: jdutson@kslaw.com
Email: lshermohammed@kslaw.com

*Counsel for the Debtors in Possession*