**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| In re:<br><br>THE KRYSTAL COMPANY, *et al.*,[1]<br><br>Debtor. | Case No. 20-61065-pwb<br><br>Chapter 11<br><br>(Jointly Administered)<br><br>**Re: Docket No. 310**<br><br>**Objection Deadline: April 27 2020 at 5:00 p.m. E.D.T.** |

**OBJECTION OF STORE MASTER FUNDING I, LLC; CIVF IV-2, LLC; AND CAPVIEW INCOME & VALUE FUND IV, LP TO THE DEBTORS' NOTICE TO CONTRACT PARTIES TO POTENTIALLY ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

STORE Master Funding I, LLC ("STORE"); CIVF IV-2, LLC; and Capview Income & Value Fund IV, LP (together, "Capview" and with STORE, the "Landlords"), by and through their undersigned counsel, Ballard Spahr, LLP, hereby file this objection (the "Objection") to the Debtor's *Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases* (the "Notice") Dkt. No. 310, and respectfully represent as follows:

**I.    BACKGROUND FACTS**

1.    The above-captioned debtors (collectively, the "Debtors"), filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on January 19, 2020 (the "Petition Date"). The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[2]

2.    The Debtors lease retail space (the "Premises") from the Landlords pursuant to an unexpired leases of nonresidential real property (the "Leases") at the locations set forth in detail

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: The Krystal Company (4140); Krystal Holdings, Inc. (5381); and K-Square Acquisition Co., LLC (8916). The location of the Debtors' corporate headquarters and service address is: 1455 Lincoln Parkway, Suite 600, Dunwoody, Georgia 30346.

[2] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

on the attached Schedule A. The Leases are leases "of real property in a shopping center" as that term is used in Section 365(b)(3). *See* In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-87 (3d Cir. 1990).

3. On April 7, 2020, the Debtors filed the Notice, which identifies, *inter alia*, certain unexpired leases that Debtors may assume and assign to the Successful Bidder[3] in connection with the Sale, along with the amount that must be paid to cure any defaults existing under such unexpired leases as of the Petition Date, based on the Debtors' books and records.

4. The amount set forth in the Notice does not accurately reflect all outstanding balances due and owing to Landlords under the Leases, and the proposed cure amounts do not account for accrued but unbilled charges which may come due in the future. The cure amounts set forth by the Debtors must be modified to reflect the charges owing, as well as recognize the liability for accruing charges due under the Leases, as set forth herein.

## II. OBJECTION

### A. The Debtors' proposed cure amounts as set forth in the Notice fail to provide for the payment of all obligations due under the Leases.

#### i. Debtors' Inaccurate Cure Amounts as of Petition Date

5. The Landlord's cure, as compared to the Debtors' cure, is summarized below, and those charges comprising the Landlord's cure are more fully detailed in Exhibits 1 and 2, which are attached hereto and incorporated into this Objection by this reference:

| Landlord | Store No. | Store Location | Debtors' Cure | Landlord's Cure |
|---|---|---|---|---|
| STORE Master Funding I, LLC | | Master Lease locations. *See* Schedule A. | | $86,657.71 |
| | CDR001 | 623 N. Main Street Cedartown GA | $7,060.82 | |
| | ATL026 | ATL026 5235 Old National Hwy. College Park GA | $7,829.35 | |

---
[3] Unless otherwise noted, capitalized terms are used as defined in the Notice.

1

| Landlord | Store No. | Store Location | Debtors' Cure | Landlord's Cure |
|---|---|---|---|---|
|  | DLT002 | 1909 East Walnut Avenue Dalton GA | $8,904.81 |  |
|  | ATL037 | 2223 Lawrenceville Highway Decatur GA | $6,614.77 |  |
|  | ATL052 | 2890 Evans Mill Road Lithonia GA | $9,064.44 |  |
|  | MAC007 | 1140 Gray Hwy. Macon GA | $10,452.55 |  |
|  | ATL057 | 939 Highway 155 S. McDonough GA | $10,886.20 |  |
|  | ATL028 | 6605 Hwy. 85 Riverdale GA | $10,459.02 |  |
|  | SAV002 | 2804 Bee Road Savannah GA | $13,734.82 |  |
| CIVF IV-2, LLC | JCM004 | 4307 North State Street, Jackson, MS 39206 | $32,977.74 | $33,234.45 |
| Capview Income & Value Fund IV, LP | PHC001 | 1006 Highway 280 Byp, Phenix City, AL 36867 | $35,548.82 | $35,548.82 |

6. In addition to the current amounts due under the Leases, in determining what must be paid as cure pursuant to Section 365(b), the charges referenced below must also be taken into consideration and paid by the Debtors, either as cure or when properly billed under the Leases.

### ii. Year-end Adjustments and Reconciliations

7. The Debtors remain responsible for all accrued or accruing charges under the Leases, and must pay such charges when they come due under the Leases. The Debtors (or any successor) assume the Leases subject to their terms, and must assume all obligations owing under the Leases, including obligations that have accrued but may not yet have been billed under the Leases. Any final assumption or confirmation order should clearly state that the Debtors will

2

assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, the assumption of the Leases. In addition, any provision in a final order that purports to release the Debtors of further liability based upon a payment of cure amounts, must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Leases.

8. In addition, the Leases require the Debtors to indemnify and hold the Landlords harmless with respect to any existing claims which may not become known until after the assumption of the Leases, examples of which may include such claims as personal injuries at the Premises and damage to the Premises by the Debtors or their agents. Any assumption of the Leases must be subject to the terms of the Leases, including the continuation of all indemnification obligations, regardless of when they arose.[4] In the alternative, the Debtors must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Leases for any claims that relate to the period prior to assumption of the Leases. Nothing in any assumption or confirmation order should preclude the Landlords from pursuing the Debtors, their insurance, or any other party that may be liable under the Leases, and the Landlords request that any such order specifically preserve its right to pursue such rights irrespective of any resolution of cure amounts herein.

### iii. Attorneys' Fees, Costs, and Interest

9. The Leases contain provisions for recovery of attorneys' fees, costs, and interest in the event the Landlords are required to take legal action in the context of the Debtors' bankruptcy case to protect their interests. The Debtors are obligated to cure all defaults under the Leases, and compensate the Landlords for the actual pecuniary losses as a result of defaults under the Leases. *See* 11 U.S.C. § 365(b)(1)(A) and (B). The principle is well-recognized. In re LCO Enterprises, 12 F.3d 938, 941 (9th Cir. 1993); Elkton Associates v. Shelco Inc. (Matter of Shelco), 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured *all pre-petition defaults*). The Debtors' cure numbers do not include amounts for estimated attorneys' fees, and

---

[4] Any ability to assume the Lease is subject to the protections provided by Section 365(b) and (f). Therefore, any assumption must be in accordance with all provisions of the Lease.

3

the total cure for the Lease should include attorneys' fees incurred by Landlords in enforcing its rights under the Leases, which must be paid as part of the cure and any assumption of the Leases. Presently, Landlords seek attorneys' fees in the amount of **$5,000.00** for STORE and **$2,500.00** for Capview.

10. The Debtors take the Leases *cum onere* – subject to existing burdens.[5] The Debtors cannot assume the favorable portions, and reject the unfavorable provisions, of the Leases. In re Washington Capital Aviation & Leasing, 156 B.R. 167,172 (Banks. E.D. Va. 1993). If forced to continue in the performance of the Leases, the Landlords are entitled to the full benefit of the bargain under the Leases with the Debtors. *See* Matter of Superior Toy and Mfg. Co., Inc., 78 F.3d 1169 (7th Cir. 1996). The "full benefit of the bargain" principle has been held to require payment of interest. "The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a contract obligation than it is to a claim in bankruptcy. One of the purposes of Section 365 is to permit debtors to continue in a beneficial contract; provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of the contract." In re Entertainment, Inc., 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citation omitted; bankruptcy court allowed interest at 18%). Interest on pre-petition lease charges continues to run from the filing of the Debtors' petition and must be paid as a condition of the assumption of the Leases. *See* In re Skylark Travel, Inc., 120 B.R. 352055 (Bankr. S.D.N.Y. 1990). Interest calculations are therefore not cut short by the automatic stay, and payment of such interest is required to fully compensate Landlords for the Debtors' default under the Leases, and thus to properly assume the Leases. Finally, post-petition interest is allowable where such interest is provided for under the terms of the Leases. Cukierman v. Uecker (In re Cukierman), 265 F.3d 846, 853 (9th Cir. 2001).

11. Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are also proper components of a cure claim, and the Debtors must satisfy these lease charges as part of the assumption or assumption and assignment of the Leases.

---

[5] This includes assumption of Master Lease in total and only as a unitary master lease.

4

Entertainment, Inc., 223 B.R. at 152 (citation omitted). There is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. Id. 154. The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay). *Id*., *see also*, In re Crown Books Corporation, 269 B.R. 12 (Bankr. D. Del. 2001) (Landlords' fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); Urban Retail Properties v. Loews Cineplex Entertainment Corporation, et al., 2002 WL 5355479 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition . . . . ."); Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Incorporated), 167 F.3d 843, 850 (4th Cir. 1999). The Supreme Court has upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law. Travelers Casualty & Surety Co. Of America v. Pacific Gas & Electric, 127 S. Ct. 1199, 1206 (2007).

### iv. The Cure Amounts Serve Only As An Estimate

12. Landlords can only provide the information presently available regarding amounts owing by the Debtors, while reserving their right to amend the Objection as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorneys' fees, costs, interest, and year-end adjustments and reconciliations. There is no basis to impose upon the Landlords the equivalent of an administrative bar date, limiting their recourse to recover charges to which they are entitled under the Leases.

### v. The Debtors Must Pay Undisputed Cure Amounts Immediately

13. Section 365(b)(1)(A) requires that the Debtors promptly cure outstanding balances due under the Leases upon assumption. To the extent there is a dispute over the total cure obligation for the Leases, all undisputed cure amounts should be paid immediately upon the

5

assumption of the Leases. The Debtors should escrow disputed amounts, and the Court should set a status conference within thirty days of the assumption of the Leases to deal with any disputes that remain unresolved after such period.

### B. Debtors Must Assume the Master Lease in Toto

14. STORE leases its Premises to Debtors pursuant to an enforceable, unitary master lease. In the Notice, Debtors list separate proposed cure amounts for each Premises rather than one cure amount due under the Master Lease. STORE objects to any implication that Premises leased pursuant to the STORE's master lease may be separately assumed or rejected.

15. A debtor cannot assume the benefits and reject the unfavorable aspects of the same contract. *See Three Sisters Partners*, 167 F.3d at 849 ("When the debtor assumes its unexpired lease, however, it assumes it *cum onere*—the debtor must accept obligations of the executory contract along with the benefits."); *Stewart Title Guar. Co. v. Old Republic Nat. Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996); *In re Buffets Holdings, Inc.*, 387 B.R. 115, 121-23 (Bankr. D. Del. 2008).

16. Where the parties intend for the contract to be non-severable, a court cannot rewrite the contract in a manner that would undermine the parties' bargain. *See Ginett v. Computer Task Grp., Inc.*, 962 F.2d 1085, 1099 (2d Cir. 1992) ("We would, in short, be writing a new contract for these people if we broke this single promise up into separate deals; and the new contract so written by us might be, for all we know, most unjust to one or the other party.") (citing *New Era Homes Corp. v. Forster*, 299 N.Y. 303, 306 (1949)); *Buffets*, 387 B.R. at 124 ("To allow the Debtors to reject one of the leases without continuing to pay the total rent would be to destroy the essence of [the landlord's] bargain"); *E. Hampton Sand & Gravel Co., Inc.*, 25 B.R. 193, 199 (Bankr. E.D.N.Y. 1982) ("Severance of the note from the lease would deny the creditor the benefit of his bargain and would result in an unjust windfall for the debtor."); *see also In re United Air Lines, Inc.*, 453 F.3d 463, 472 (7th Cir. 2006) ("While the parties could have separated this complex arrangement into two contracts, they did not, and their decision . . . cannot now be undone after the fact . . . .").

6

17. STORE's master lease must be assumed or rejected in its entirety. The Notice, which lists proposed cure amounts for each Premises must not be construed as effecting a severance of any Premises from the Master Lease.

## II. JOINDER IN OBJECTIONS RAISED BY OTHER LANDLORDS

18. To the extent consistent with the objections expressed herein, Landlords also join in the objections of other lessors to the Debtors' proposed relief.

## III. CONCLUSION

The Landlords respectfully request that any final order approving the assumption of the Leases (i) allow the cure (subject to adjustment by the Landlords) in the amounts set forth by the Landlords, (ii) order immediate payment of all undisputed cure, with an escrow established and that is sufficient to pay any remaining disputed cure, when resolved by the parties or this Court, and (iii) grant such further relief as the Court deems proper.

Dated: April 27, 2020

Respectfully submitted,

*/s/ Sarah T. Reise*
Sarah T. Reise (Bar No. 181567)
999 Peachtree Street, Suite 1000
Atlanta, GA 30309
Email: reiset@ballardspahr.com

and

Craig Solomon Ganz (*pro hac vice*)
Michael A. DiGiacomo (*pro hac vice*)
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Email: ganzc@ballardspahr.com
Email: digiacomom@ballardspahr.com

*Counsel for STORE Master Funding I, LLC; CIVF IV-2, LLC; and Capview Income & Value Fund IV, LP Counsel to STORE Master Funding I, LLC; CIVF IV-2, LLC; and Capview Income & Value Fund IV, LP*

## SCHEDULE A

| STORE Master Funding I, LLC ||
|---|---|
| Second Amended and Restated Master Land and Building Lease by and between STORE Master Funding I, LLC and The Krystal Company dated October 16, 2019 ||
| Store No. | Address |
| CDR001 | 623 N. Main Street Cedartown GA |
| ATL026 | 5235 Old National Hwy. College Park GA |
| DLT002 | 1909 East Walnut Avenue Dalton GA |
| ATL037 | 2223 Lawrenceville Highway Decatur GA |
| ATL052 | 2890 Evans Mill Road Lithonia GA |
| MAC007 | 1140 Gray Hwy. Macon GA |
| ATL057 | 939 Highway 155 S. McDonough GA |
| ATL028 | 6605 Hwy. 85 Riverdale GA |
| SAV002 | 2804 Bee Road Savannah GA |

| CIVF IV-2, LLC ||
|---|---|
| Store No. | Address |
| JCM004 | 4307 North State Street, Jackson, MS 39206 |

| Capview Income & Value Fund IV, LP ||
|---|---|
| Store No. | Address |
| PHC001 | 1006 Highway 280 Byp, Phenix City, AL 36867 |

8

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on April 27, 2020 by this Court's CM/ECF System on all parties receiving electronic notice in the case.

                                                     */s/ Sarah T. Reise*
                                                      Sarah T. Reise

9