**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| KRYSTAL COMPANY, et al., | ) | Case No. 20-61065-PWB |
| | ) | |
| Debtors. | ) | Chapter 11 |
| _____ | )/ | |

**OBJECTION TO DEBTORS' NOTICE TO CONTRACT PARTIES
TO POTENTIALLY ASSUMED EXECUTORY CONTRACTS
<u>AND UNEXPIRED LEASES BY PIERPONT, LTD.</u>**

Pierpont, Ltd. ("Pierpont"), by undersigned counsel, files this objection to the Debtors'

Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases

("Cure Notice") [D.E. 310], and would show the Court as follows:

1.    Pierpont and debtor, THE KRYSTAL COMPANY ("Debtor"), are parties to a lease

agreement, pursuant to which the Debtor leases the real property commonly known as 3091

Dauphin Street, Mobile, Alabama (the "Leased Premises").  A true and correct copy of the lease

agreement, including all amendments thereto (collectively, the "Lease Agreement"), is attached

hereto as Exhibit A.

2.    The Lease Agreement is identified on page 11 of the Cure Notice as Store MBL003

with a proposed cure amount of $7,986.00.

3.    Pierpont objects to the Cure Notice as it understates the amount currently due

Pierpont under the Lease Agreement.  As of the date and time of filing this objection, past due rent

and late charges due Pierpont under the terms of the Lease Agreement total $8,784.60.  An

itemized statement reflecting these amounts is attached hereto as Exhibit B.  In addition, Pierpont

has incurred, and will continue to incur, attorneys' fees that are recoverable under the terms of the

{M1720218.1}

Lease Agreement and applicable law.  Pierpont objects to any assignment and assumption unless and until all cure costs through the date of such assignment and assumption are paid in full.

4.       Pursuant to the terms of the Lease Agreement, the Debtor is also required to maintain property and general liability insurance covering the Leased Premises and operations thereon and provide proof of the same to Pierpont.  The most recent certificate of insurance supplied to Pierpont reveals that coverage is set to expire on April 30, 2020.  Pierpont objects to any assignment and assumption unless and until the Debtor procures insurance coverage in compliance with the terms of Lease Agreement for the period thereafter and supplies proof of the same to Pierpont.

5.       Finally, neither Debtors nor the proposed stalking horse have provided Pierpont with any information regarding the purchaser's adequate assurances of future performance. Accordingly, Pierpont objects to any assumption or assignment of the Lease Agreement unless and until the Debtors meet their burden of providing adequate assurances of future performance under the Lease Agreement, including, without limitation, establishing that the requirements of 11 U.S.C. § 365(b)(3) have been met.

Dated: April 27, 2020                       Respectfully Submitted,


JONES WALKER LLP
*Attorneys for Pierpont, Ltd.*
One Midtown Plaza
1360 Peachtree St, NE, Suite 1030
Atlanta, GA 30309
Email:  *sdrobny@joneswalker.com*
Telephone:  404.870.7500
Facsimile:  404.870.7501


By:      */s/ Stephen P. Drobny*
         Stephen P. Drobny
         Georgia Bar No. 430447

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| KRYSTAL COMPANY, et al., | ) | Case No. 20-61065-PWB |
| | ) | |
| Debtors. | ) | Chapter 11 |
| _____ | / | |

## CERTIFICATE OF SERVICE

       I certify that on April 27, 2020, I electronically filed the foregoing with the Clerk of the

Court using CM/ECF, at which time all parties authorized to receive Notices of Electronic Filing

were served. In addition, I caused a true and correct copy of the foregoing motion to be served by

First Class U.S. Mail on the following on this same date:

      The Krystal Company
      1455 Lincoln Parkway
      Suite 600
      Dunwoody, GA 30346

                    /s/ *Stephen P. Drobny*
                    Stephen P. Drobny

# EXHIBIT A

This instrument prepared by:

Jere A. Lill, Jr.
1005 Van Antwerp Building
Mobile, Alabama 36602

<u>GROUND LEASE</u>

THIS AGREEMENT, made this 2-7 day of *march*, 1973 1972, by and between WEST DAUPHIN LAND COMPANY, an Alabama corporation, hereinafter sometimes called "Landlord", and THE KRYSTAL COMPANY, a Tennessee corporation, hereinafter sometimes called "Krystal",

W I T N E S S E T H:

**Premises**

Landlord leases and demises to Krystal for use as a restaurant for on and off premises food consumption and parking, and Krystal hereby leases and rents from Landlord the following described premises, hereinafter sometimes referred to as "the premises", located in the City of Mobile, County, Alabama, and more particularly described as follows:

Commencing at a point where the south right of way line of Dauphin Street, if extended eastward, would intersect the west right of way line of Sage Avenye, if extended northward, in Mobile County, Alabama, run N 81° 06' 30" W along said Eastward extension of the south line of Dauphin Street and along said south line of Dauphin Street a distance of 200 ft. thence run S 10° 15'14" E 42.33 ft to a point on the south right of way line of a 40 ft. service road along the south side of Dauphin Street, thence along said south line of service road, run N 81° 06' 30" W 234.39 feet to the T.S. of a spiral curve to the left, thence continuing along said south line of service road run westwardly along said spiral curve to the C.S. of said spiral, said C.S. being N 81° 34' W 147.34 feet from said T.S. of spiral, thence continuing along said south line of service road run westwardly along the arc of a curve to the left having a radius of 2763.79 feet, a distance of 246.58 feet to a point which bears N 85° 09' 30" W 246.50 feet from the last described point, said point being the point of beginning of the property herein described, thence continuing along said line of service road and along the arc of said curve run westwardly 150 feet to a point on the east right of way line of Pierpont Drive West, thence along said east line of Pierpont Drive west, run S 00° 14' E 118.93 feet to the P.C. of a curve to the right, having a radius of 281.93 feet, thence continuing along said east line of Pierpont Drive West run southwestwardly along the arc of said curve 26.07 feet, thence runs S 83° 05' E 135 feet, thence run N 05° 55' 30" E 160 feet to the point of beginning.

together with all incidental rights and privileges in and about the premises as may be necessary or convenient to Krystal's business. (The word "premises" shall also include the building when constructed, as provided hereinbelow.)

The following additional stipulations are hereby declared to be conditions of this lease, shall unless otherwise expressly stated be applicable at all times throughout the term of this lease and any extension or renewal thereof, and are mutually agreed upon:

Term
and
Rental

1.   (a)   The term hereof shall begin immediately upon execution hereof and approval of the plans, specifications and site plans as hereinafter provided and shall expire, unless re- newed or extended, on a date fifteen (15) years after rental becomes payable as provided in paragraph 1 (b) hereinbelow.

(b)   Beginning on the first day of the calendar month next succeeding the date on which Krystal completes construction of its restaurant building on the premises but in no event later than six (6) months after the date of this lease (unless this lease is terminated under the provisions of paragraph 6 herein- below), Krystal shall pay for the premises rent of Eight Thousand Dollars ($8,000.00) per annum, payable in twelve (12) equal monthly installments of six Hundred Sixty-six and 67/100 Dollars ($666.67) per month, all such rental to be payable in advance on the first day of each month during the then remain- ing term of this lease.

(c)   All rental payments to Landlord shall be payable and sent to Landlord's agent, Cummings & White-Spunner, Inc. at P. O. Drawer 6527, Mobile, Alabama 36606, or to such other place or places as Landlord may from time to time designate in writing.

(d)   Krystal shall pay any and all rentals when due without demand.

- 2 -

Installation
and Removal
of Personal
Property
and
Buildings

2.   Krystal will construct the necessary buildings and

make the necessary improvements to the demised premises for

the operation of its said restaurant, which improvements will

be made at the expense of Krystal, including fees and costs

such as water and sewer connection fees, building permits,

insurance, architect and engineering fees, construction interest

and other fees and charges incident to said construction.   The

improvements, buildings, paved parking area and other construction

made on the leased premises shall be made only after approval

by Landlord's Agent of prototype plans, specifications, and

site plans, (showing distances from all property lines and

exterior signs), describing and relating to said improvements,

such plans and specifications to be furnished by Krystal within

thirty (30) days from the date hereof.   This lease shall not

be effective until such plans, specifications and site plans

have been approved by the Landlord's agent, Cummings &

White-Spunner, Inc.   If such plans, specifications and site

plans shall not be approved by said Landlord's agent within

15 days from the date on which they shall be furnished to such

agent, then Krystal may cancel and terminate this lease within

15 days thereafter by giving written notice to Landlord.   Krystal

agrees to complete said building and other improvements with

due diligence and open its restaurant upon the leased premises

not later than six (6) months after the date on which the require-

ments and conditions of paragraphs 3, 4 and 5 are met and

satisfied.   Krystal will save Landlord harmless of all liens,

claims, and damages of every nature and kind which may result

from the said construction and/or work being performed on the

premises, and keep said leased premises free and clear of all

materialman's liens.

Krystal shall be responsible for the repair and mainte-

nance of all improvements on the leased premises of every nature

and kind including any improvements which may hereinafter be

placed upon said premises during the term of this lease, and

-3-

Krystal agrees to keep said improvements in a good state of repair and maintenance.

Krystal shall be permitted to install and use on and about, and remove from the premises at any time or times all equipment, exterior and interior signs, trade fixtures, and other personal property, and make such alterations and improvements in and about the premises as it may desire, provided the same do not adversely affect the structure of the building or increase its size or height, nor shall any exterior signs be erected upon the premises except those shown on the said plans, specifications, and site plans without the prior written consent of Landlord's agent, Cummings & White-Spunner, Inc.  At the end of the lease term or any extension thereof, Krystal shall be permitted to redecorate or otherwise remodel the premises in such manner as will avoid their continuing to resemble a Krystal unit.  At the end of the lease term or any extension thereof, Krystal shall be permitted to remove from the premises all buildings, additions and improvements to the leased premises, provided that such removal shall be completed within 60 days after the end of the lease term or any such extension thereof.

Zoning and Permits

3.  It is a condition to Krystal's obligation that the premises are zoned for use as a restaurant for on and off premises food consumption and parking, and that there are no deed restrictions, ordinances, regulations, easements, rights, or other legal requirements, or any deficiencies in or lack of access, ingress, egress, utilities, curb cuts or sewers which prohibit or in any way would impair the full use of the premises by Krystal for restaurant purposes, including the construction of all improvements and parking facilities therefor, and that Krystal is able to obtain, within four (4) months after the execution hereof, all rights and privileges necessary or

reasonably desirable for the construction of all contemplated
improvements on the premises according to the plans and specifi-
cations of Krystal, and for Krystal's proposed use of the
premises for its said restaurant business, including but not
limited to all needed licenses, zoning or zoning changes, building
permits, and other permits.  It is a further condition to
Krystal's obligations hereunder that all access, ingress,
egress, utilities, curb cuts, sewers and drainage are as shown
on the survey hereinafter mentioned.

Title
Insurance
    4.  Krystal, at Landlord's expense, shall procure a lease-
hold title insurance binder from Lawyers Title Insurance Corpora-
tion to issue a valid title insurance policy on American Land
Title Association's marketability form, or on such other form
as shall be acceptable to Krystal, agreeing to insure Krystal's
leasehold interest to the extent of One Hundred Forty Thousand
Dollars ($140,000.00).  Said title binder shall show that such
title is free, clear and unencumbered and subject to no liens
or exceptions other than current real estate taxes not delinquent,
and except as to reservation of subsurface minerals but such
title insurance shall affirmatively insure Krystal's right of
full use of the surface, including construction and operation of
a restaurant facility without disturbance or interference not-
withstanding such mineral reservation, and that Krystal has a
valid and binding leasehold interest without exception other than
as aforesaid.  Without in any way limiting the generality of the
foregoing, said title binder shall contain no exceptions for
(i) rights or claims of parties in possession not shown by the
public record, (ii) boundary line disputes, encroachments or
other exceptions to be covered by the survey and surveyor's
certificate required hereinbelow, (iii) easements or claims of
easements not shown by the public records, (iv) any lien or right
to a lien for services, labor or material furnished, imposed by law
and not shown by the public record, and (v) taxes or special assess-
ments which are not shown as existing liens by the public records.

urvey

5.  It is a condition to Krystal's obligation that
Krystal, at Landlord's expense, is able to obtain surveys from
a local surveyor in accordance with the following requirements;
The survey shall be a current topographical survey of the
property on a sheet whose overall dimensions are 35 inches by
22 inches, drawn to a scale of 1 inch equals 20 feet, showing
magnetic north and containing the information hereinafter set
out.  Such survey shall show contours at 5 foot intervals
(including contours of 25 feet onto adjacent properties if
permission to take measurements can be obtained);  The bearings
and distances of the property lines; all improvements of the
property by general exterior outline and the street numbers of
such improvements  all trees of 12 inch caliper or larger; the
lines of the street or streets, the names and numbers of all
roads, streets and highways which appear on the drawing, width
of such roads, streets and highways and their rights-of-way;
railroads, easements, other rights-ofway, curbs, walks, drives,
lamp posts, utility poles, fire hydrants, manholes, catch
basins, fences, walls and pits, and if such information is
available without excavation, exact locations, size and depth
of sewers and culverts and water and gas mains and street
connections to them showing the source of such information,
and with the beginning point referenced to the nearest street
intersection or permanent landmark or monument.  The surveyor
shall put in iron pipes at each corner of the property and flag
them.  To said survey shall be attached the signed certificate
of the surveyor or engineer stating that such survey is accurate
and complete as of the date thereof, shows the correct boundaries
of the premises, that all the improvements, if any, on the
property are within the lot lines, that there are no encroach-
ments, easements or  third parties in possession other than as
shown on such survey, and that the survey indicates or reflects

- 6 -

all matters required to be thereon pursuant to the provisions
hereof, and in addition such survey shall be in form sufficiently
satisfactory to such title insurance company that it will waive
any exception in the title binder and the title insurance policy
for matters of survey.  If there is a state surveyor's law in
the state where the property is located, the surveyor shall be
licensed thereunder, and if there is no such law, then the
surveyor must be a licensed engineer.

**Cancellation**          6.  In the event the requirements and conditions contained
in paragraphs 3, 4 and 5 are not met and satisfied within
four (4) months from the date of this lease, Krystal shall give
Landlord written notice specifying the requirements and conditions
which have not been met and satisfied and Landlord shall have sixty
(60) days from the date of such notice to cure same, failing
which Krystal may terminate this lease by notice  given to
Landlord no later than fifteen (15) days following said sixty (60)
day period, but if Krystal elects not to terminate, Krystal's
requirements and conditions shall be deemed satisfied and met.

**Maintenance**          7.  Krystal shall maintain the premises and improvements
thereon, keep same in good order and repairs; and, subject to
the provisions of paragraphs 2, 8 and 20, return the premises
at the expiration of the term hereof in as good condition as
when received.

**Condemnation**          8.  (a) In the event that all of the premises or twenty
percent (20%) or more of the parking space area or any portion
of the building or so much of the premises as renders the
remainder unusable for Krystal's business use, shall be taken
during the term of this lease or any extension or renewal thereof
for any public or quasi-public use under any governmental law,
ordinance, regulation or by right of eminent domain, or shall
be sold to the condemning authority under threat of condem-
nation (any of such events being hereinafter referred to as a
"taking"), Krystal shall have the option of terminating this lease
by notice given to Landlord no later than 30 days after the
effective date of such taking, but not thereafter.

(b) Landlord shall not agree to any award without the prior written consent of Krystal, which will not be unreasonably withheld.

(c) Nothing herein shall affect Krystal's right to any award for the building and all improvements to the premises, its leasehold estate and for moving or similar expenses, for loss of its business, or for business inconvenience.

**Taxes**

9. After the commencement of rental and during the term, Krystal shall pay all real property ad valorem taxes levied or assessed against the premises prior to the date such taxes become delinquent. All such taxes for the first and last years of this lease shall be prorated between the parties as of the date of inception of rental and termination of this lease, respectively.

**Utilities and Regulations**

10. Krystal shall pay for all public utility services consumed by it, obey all applicable laws, governmental regulations and ordinances relating to the premises that are enforced, and promptly remove all trash or refuse from the exterior of the building and keep the premises at all times in a neat, clean and orderly condition, and Krystal shall use reasonable efforts to prevent and/or eliminate nuisances upon the premises, and will peacefully surrender possession thereof to Landlord at the end of the initial term hereof, or at the end of the last extension or renewal of such term, if same is extended or renewed.

**Warranties of Title and Possession**

11. Landlord covenants and warrants that Landlord has fee simple title in and to the premises, free, clear and unencumbered except for those exceptions shown on the said title insurance binder and accepted by Krystal, (being the same exceptions as those shown in Section 4 hereinabove), and that Landlord has full power and authority to make this lease and that Krystal shall have and enjoy full, quiet and peaceful possession of the premises, their appurtenances and all rights and privileges incidental thereto during the term hereof and any renewals or extensions. Landlord further covenants and warrants that sewer and water lines suitable for Krystal's use are available at the property line of the premises.

**Default**

12. In the event of any failure of Krystal to pay any rental due hereunder within ten (10) days after the same shall be due, or any failure of either Landlord or Krystal to perform

-8-

any other of the terms, conditions or covenants of this lease to be observed or performed by either of said parties for more than thirty (30) days after written notice of such default shall have been given to the party in default; or if Krystal shall become bankrupt or insolvent, or file any debtor proceeding or take or have taken against Krystal in any court pursuant to any statute either of the United States or of any State a petition in bankruptcy or insolvency or for reorganization or for the appointment of a receiver or trustee of all or a portion of Krystal's property, or if Krystal makes an assignment for the benefit of creditors, or petitions for or enters into an arrangement, or suffers this lease to be taken under any writ of execution; then such party shall, if any such action is not dismissed within sixty (60) days from the date of its occurrence, be deemed to be in default hereunder and to have committed a breach hereof; and, in the event of any such default by Krystal, Landlord, besides other rights or remedies it may have, shall have the immediate right of re-entry and may remove all persons and property from the leased premises and such property may be removed and stored in a public warehouse or elsewhere at the cost of, and for the account of Krystal, all without service of notice or resort to legal process and without being deemed guilty of trespass, or becoming liable for any loss or damage which may be occasioned thereby.

Should Landlord elect to re-enter, as herein provided, or should it take possession pursuant to legal proceedings or pursuant to any notice provided for by law, it may either terminate this lease or it may from time to time without terminating this lease, make such alterations and repairs as may be necessary in order to relet the premises, and relet said premises or any part thereof for such term or terms (which may be for a term extending beyond the term of this lease) and at such rental or rentals and upon such other terms and conditions as Landlord in

its sole discretion may deem advisable; upon each such reletting all rentals received by the Landlord from such reletting shall be applied, first, to the payment of any indebtedness other than rent due hereunder from Krystal to Landlord; second, to the payment of any costs and expenses of such reletting, including brokerage fees and attorney's fees and of costs of such alterations and repairs; third, to the payment of rent due and unpaid hereunder, and the residue, if any, shall be held by Landlord and applied in payment of future rent as the same may become due and payable hereunder.  If such rentals received from such reletting during any month be less than that to be paid during that month by Krystal hereunder, Krystal shall pay any such deficiency to Landlord.  Such deficiency shall be calculated and paid monthly. No such re-entry or taking possession of said premises by Landlord shall be construed as an election on its part to terminate this lease unless a written notice of such intention be given to Krystal or unless the termination thereof be decreed by a court of competent jurisdiction.  Notwithstanding any such reletting without termination, Landlord may at any time thereafter elect to terminate this lease for such previous breach.  Should Landlord at any time terminate this lease for any breach, in addition to any other remedies it may have, it may recover from Krystal all damages it may incur by reason of such breach, including the cost of recovering the leased premises, reasonable attorney's fees and including the worth at the time of such termination of the excess, if any, of the amount of rent and charges equivalent to rent reserved in this lease for the remainder of the stated term over the then reasonable rental value of the leased premises for the remainder of the stated term, all of which amounts shall be immediately due and payable from Krystal to Landlord.  Without limitation of Landlord's other rights and remedies, and regardless of whether or not Landlord shall have re-entered, relet

or terminated this lease, in the event of any default or breach by Krystal, at the election of Landlord, Landlord may proceed for past due installments and indebtedness, reserving Landlord's right to proceed later for the remaining installments and subsequently maturing indebtedness.  In the event of any breach of this lease by Landlord, Krystal may, without being judged in default hereunder, withhold payment of rents or any other sums due from Krystal to Landlord, and apply such rents and sums to cure any such default of Landlord.  All rights and remedies of both Landlord and Krystal as set forth in this lease, shall be in addition to such other rights and remedies as each party may have under any applicable law.

**Legal Expenses**    13.  In case suit shall be brought for recovery of possession of the leased premises, for the recovery of rent or any other amount due under the provisions of this lease by Landlord, or because of the breach by either Landlord or Krystal of any other covenant herein contained on the part of either party to be kept or performed, and a breach shall be established, the party so breaching this lease shall pay to the other party all expenses incurred therefor, including a reasonable attorney's fee.

**Governmental Regulations**    14.  Landlord, shall without unreasonable cost or expense to Landlord, fully cooperate with Krystal throughout the term of this lease to secure or maintain proper zoning and compliance with all applicable such laws, and the like described hereinabove, and shall execute all such petitions, requests and the like as Krystal shall reasonably request for such purposes.

**Notices**    15.  All notices herein provided for shall be in writing and sent by registered or certified mail, postage fully prepaid, return receipt requested, to Krystal at 701 Cherry Street, Chattanooga, Tennessee 37204, if directed to is, or if directed to Landlord, to the place provided above for the payment of rental.

Any party may change its address for notices by written notice in like manner as provided in this paragraph 15. Notice for purposes of this lease shall be deemed given when it shall have been deposited in the mail by the party who is giving such notice with sufficient postage prepaid.

**Renewal Options**    16. This lease may be renewed or extended at the option of Krystal, for two (2) additional periods of five (5) years each, upon the same terms, covenants and conditions as in this lease, provided that Krystal is not in default hereunder at the commencement of the respective additional periods. During the first additional period, if any, Krystal shall pay as rental Six Hundred Sixty-six and 67/100 ($666.67) Dollars per month and during the second period, if any, Krystal shall pay as rental Six Hundred Sixty-six and 67/100 ($666.67) Dollars per month. Krystal shall exercise such options by giving written notice to Landlord not less than six (6) months prior to the respective expirations of the initial term of this lease and each additional period, if any.

**Holding Over**    17. Any holding over by Krystal of the premises after the expiration of this lease shall operate and be construed as a tenancy from month to month only.

**Inability to Perform**    18. If either party hereto is delayed or prevented from performing any of their respective obligations under this lease (other than the payment of rental and taxes) by reason of strike or labor troubles or any outside cause whatsoever beyond such party's reasonable control, the period of such delay or such prevention shall be deemed added to the time herein provided for the performance of any such obligation.

**Casualty Damage**    19. If the buildings and other permanent improvements to be constructed upon the leased premises pursuant to the terms of this lease shall be damaged or destroyed by fire or other casualty to an extent of not more than 50%, Krystal shall proceed with due

- 12 -

diligence to repair such damage or destruction and restore the said buildings and improvements to their condition immediately prior to such fire or casualty. However, if the buildings or other permanent improvements to be constructed upon the leased premises pursuant to the terms hereof shall be damaged or destroyed by fire or other casualty to an extent in excess of 50%, then Krystal shall have the option of either: (a) proceeding with due diligence to repair such damage or destruction, and restore the said buildings and improvements to their condition immediately prior to such fire or casualty; or (b) removing all buildings and other improvements placed upon the leased premises by Krystal and restoring the leased premises to its condition at the time of execution of this lease. Krystal shall exercise such option within thirty (30) days after such fire or other casualty by giving written notice of its election to Landlord. In no event shall any such fire or other casualty entitle either party hereto to cancel or terminate this lease.

Non-Liability of either Party in Case of Fire, etc.

20. Notwithstanding anything in this lease to the contrary, neither party shall be liable to the other for damage to or destruction of the property of the other resulting from fire, explosion or other hazard coverable by fire insurance with extended coverage, however caused, whether or not by the negligence of such party (which term includes such party's officers, employees, agents and invitees) and each party hereby expressly releases the other from all liability for or on account of any such damage or destruction, whether or not the party suffering the loss is insured against such loss, and if insured, whether fully or partially. Each party shall attempt to procure if necessary all such endorsements to any such insurance carried by it as will fully protect the other from any right of subrogation and liability in the event of such loss.

**Successors Bound**

21.   The covenants, conditions and agreements contained in this lease shall bind and inure to the benefit of Landlord and Krystal and their respective successors and assigns.

**Entire Agreement**

22.   This lease contains all the agreements between the parties hereto and may not be modified in any other manner than by agreement in writing signed by all the parties hereto or their successors in interest.

**Assignment and Subletting**

23.   This lease may be assigned or the premises sublet, in whole or in part, by Krystal provided that the premises shall not be used by any subtenant or assigned for any purpose which shall be in conflict with the uses of any of the Tenants in Mid-Town Mart Shopping Center, which is adjacent to the leased premises.   In the event of any assignment or subletting, Krystal shall remain liable for the performance of all the terms and conditions of this lease.

**Abandonment**

24.   In the event that Krystal shall cease to conduct its business at the demised premises and shall remain closed for business for any period of 180 consecutive days during the term of this lease or any extensions thereof, Landlord may, at its option, cancel this lease upon giving 30 days notice in writing to Krystal, and all rents shall be paid through the effective date of such cancellation.

**Insurance**

25.   Krystal shall maintain, at its own expense, public liability insurance covering the premises for the joint benefit of Krystal and Landlord, with coverage of not less than $500,000.00. $1,000,000.00 for personal injury, including death, and $100,000.00 for property damage.   Said policy of insurance may be in the form of a general coverage or floater policy covering these and other premises, provided that Landlord is therein specifically covered. A copy of the policy or certificate of such insurance shall be delivered to Landlord.   Such liability insurance shall also cover and include all exterior signs maintained by Krystal.   Also

Krystal shall furnish Landlord with a copy of all fire insurance
policies which it carries on the buildings and other permanent
improvements upon the demised premises.

**Indemnifi-cation of Landlord**

26.   Krystal will indemnify Landlord and save it harmless
from and against any and all claims, actions, damages, liability
and expense in connection with loss of life, personal injury and/or
damage to property arising from or out of any occurrence in, upon
or at the leased premises, or the occupancy or use by Krystal of
the leased premises or any part thereof, or occasioned wholly or
in part by any act or omission of Krystal, its agents, contract-
ors, employees, servants, lessees or concessionaires.  In case
Landlord shall, without fault on its part, be made a party to
any litigation commenced by or against Krystal, then Krystal
shall protect and hold Landlord harmless and shall pay all costs,
expenses and reasonable attorney's fees incurred or paid by
Landlord in connection with such litigation.

**Captions, Pronouns, etc.**

27.   The captions in the margin of this lease are for con-
venience only and are not a part of this lease and do not in any
way limit or amplify the terms and provisions of this lease.
Whenever the context hereof admits or requires, words in the
singular may be regarded as in the plural and vice-versa, and
personal pronouns may be read as masculine, feminine and neuter.

**Krystal's Agent and Commissions**

28.  As consideration for procuring this lease, Krystal
agrees to pay Southern Development Company, of *Casselberry,*
*Florida*        , (Agent herein) a commission of Eighty-three
and 33/100 Dollars ($83.33), payable monthly and payable in addi-
tion to the rental provided for in paragraph 1 (b).

- 15 -

IT WITNESS WHEREOF, the parties hereto have executed and sealed this instrument the day and date first above written.

WEST DAUPHIN LAND COMPANY

By _George K. Graf_
Its _President_

ATTEST:

By _Marl M. Cummings_
Its _Secretary_

THE KRYSTAL COMPANY

By _Rev J. Phenes_
Its _Vice President and Counsel_

ATTEST:

By _Richard C. Kruger_
Its _Vice President Treasurer_

STATE OF ALABAMA

COUNTY OF MOBILE

I, _Reba E. Benton_, a Notary Public in and for said County in said State, hereby certify that Marl M. Cummings, Jr. and George K. Graf, whose names as Secretary and President, respectively, of West Dauphin Land Company, a corporation, are signed to the foregoing instrument, and who are known to me, acknowledged before me on this day that, being informed of the contents of the instrument, they, as such officers and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand and official seal this the _21_ day of _December_, 19_72_.

_Reba E. Benton_
Notary Public, Mobile County Alabama

STATE OF TENNESSEE )

COUNTY OF HAMILTON )

I, _Barbara Hooper_, a notary public in and for
said county in said state, hereby certify that _R. G. Sherrill_
and _R. A. Kwapil_, whose names as _Vice-President_
and _Vice President_, respectively, of The Krystal Company,
a corporation, are signed to the foregoing conveyance, and who are
known to me, acknowledged before me on this day that, being informed
of the contents of the conveyance, they, as such officers and with
full authority, executed the same voluntarily for and as the act
of said corporation.

Given under my hand and seal of office this _20th_ day of
_March_, A.D., 1972

_Barbara Hooper_
Notary Public

My Commission expires:

_4-6-75_

STATE OF ALABAMA

COUNTY OF MOBILE

### SHORT-FORM LEASE

THIS LEASE, made and entered into on this the 20th
day of March, 1973, by and between WEST DAUPHIN LAND COMPANY,
(Landlord), of 1704 Government Street, Mobile, Alabama, and
THE KRYSTAL COMPANY, a Tennessee Corporation (lessee), whose
business address is 701 Cherry St. Chattanooga, Tennessee, 37204,

### W I T N E S S E T H

This short-form lease constitutes a memorandum of
that certain unrecorded lease between the parties hereto dated
March 20th, 1973 and entitled "Ground Lease" covering the leased
property hereinafter described, said lease being hereinafter
referred to as the "Lease Agreement".

Lessor hereby leases and lets to lessee and lessee
rents from lessor the following described property located
in the City of Mobile, County of Mobile, State of Alabama,
more particularly described as follows:

Commencing at a point where the south right of way
line of Dauphin Street, if extended eastward, would
intersect the west right of way line of Sage Avenue,
if extended northward, in Mobile County, Alabama, run
North 81 degrees 06 minutes 30 seconds West along said
eastward extension of the south line of Dauphin Street
and along said South line of Dauphin street, a distance
of 200 feet, thence run South 10 degrees 15 minutes 14
seconds East 42.33 feet to a point on the south right
of way line of a 40 foot service road along the south
side of Dauphin Street, thence along said south line of
service road, run North 81 degrees 06 minutes 30 second
West 234.39 feet to the T. S. of a spiral curve to the
left, thence continuing along said south line of service
road run westwardly along said spiral curve to the C. S.
of said spiral, said C. S. being North 81 degrees 34
minutes West 147.34 feet from said T. S. of spiral,
thence continuing along said south line of service
road run westwardly along the arc of a curve to the
left having a radius of 2763.79 feet, a distance of
246.58 feet to a point which bears North 85 degrees 09
minutes 30 seconds West 246.50 feet from the last des-
cribed point, said point being the point of beginning
of the property herein described, thence continuing along
said line of service road and along the arc of said
curve run westwardly 150 feet to a point on the east
right of way line of Pierpont Drive West, thence along
said east line of Pierpont Drive West, run South 00 de-
grees, 14 minutes East 118.93 feet to the P. C. of a
curve to the right having a radius of 281.93 feet,
thence continuing along said east line of Pierpont Drive
West run southwestwardly along the arc of said curve
26.07 feet, thence run South 83 degrees 05 minutes
East 135 feet thence run North 05 degrees 55 minutes 30
seconds East 160 feet to the point of beginning.

-2-

TOGETHER with all easements, rights, privileges
and appurtenances thereunto belonging or in any manner connected
therwith;

TO HAVE AND TO HOLD the same for a term of fifteen
(15) years beginning on the 1ˢᵗ day of October , 1973 and
ending on the 30ᵗʰ day of September , 1988 , unless sooner
terminated as in the "lease agreement" provided or permitted.
And for the consideration stated in said "lease agreement" the
lessor has granted and does hereby grant unto the lessee,
subject to the conditions, provisions and stipulations as
set forth in said "lease agreement" the right and option of
extending said term for two (2) successive terms of five (5)
years each.

The consideration for said lease and options to ex-
tend the same is more fully set out in the said "lease agree-
ment" between the parties hereto dated March 20, 1973.

The parties hereto ADOPT by reference and made a
part of this agreement as fully as though set out herein in
toto, all of the terms and conditions, obligations, duties,
covenants, agreements and rent provisions contained in that
certain document entitled "Ground Lease" by and between West
Dauphin Land Company, an Alabama Corporation, as Landlord
and The Krystal Company, a Tennessee Corporation, as lessee,
dated March 20th, 1973 by which the above and foregoing property
is leased.

It is agreed that if there is any conflict between
this document and the "lease agreement" that the terms and
conditions set forth in the "lease agreement" shall control.

The unrecorded "lease agreement" may be examined at
the above mentioned offices of the Landlord or Lessee.

It is agreed that the recording of this document shall
bind the parties hereto, their legal representatives, heirs,
successors, and assigns, as fully complying with the provisions
of Title 47, Section 18 of the Code of Alabama, of 1940, as
Recompiled, 1958, as last amended, and the parties hereto each

-3-

covenant and agree with the other to execute and deliver, from time to time, for recording, any necessary documents ratifying, confirming and adopting said "lease agreement" for the purpose of preventing the terms, conditions, covenants and agreements contained in said "lease agreement" from becoming void or unenforceable under the provisions of said Title 47, Section 18 of the Code of Alabama.

IN WITNESS WHEREOF, the parties have caused this Short-Form lease to be executed and their respective corporate seals to be affixed hereto and attested by their respective officers, all heretofore duly authorized.

WEST DAUPHIN LAND COMPANY,
an Alabama Corporation (LANDLORD)

BY: _George K. Graf_ (SEAL)
        PRESIDENT

ATTEST _Marl M. Cummings_ (SEAL)
        SECRETARY

(CORPORATE SEAL)

THE KRYSTAL COMPANY, a Tennessee
Corporation (LESSEE)

BY _Carl G. Sherrill_ _Vice-President Real Estate_ (SEAL)
        AUTHORIZED OFFICIAL

ATTEST _Roger E. Hudlow_ (SEAL)
        SECRETARY

(CORPORATE SEAL)

THE STATE OF ALABAMA

COUNTY OF MOBILE

I, the undersigned, a Notary Public, in and for said State and County, do hereby certify that George K. Graf and Marl M. Cummings, Jr., whose names as President and Secretary, respectively of West Dauphin Land Company, an Alabama Corporation, are signed to the foregoing instrument and who are known to me, acknowledged before me on this day, that being informed of the contents of said instrument, they executed the same voluntarily, for and as the act of said corporation on the day the same bears date.

-4-

GIVEN UNDER my hand and seal this *20th* day of *March* ~~September~~ , 1973.

*Reba E. Benton* ~~Louise Odom~~                                   NOTARY PUBLIC.

STATE OF ~~ALABAMA~~ *Tennessee*
COUNTY OF ~~MOBILE~~ *Hamilton*

    I, the undersigned, a Notary Public, in and for said State and County, do hereby certify that *Rodolph S Sherrill* and *Roy E Dudlow* , whose names as *Vice President Real Estate* and *Secretary* , respectively of THE KRYSTAL COMPANY, a Tennessee Corporation, are signed to the foregoing instrument and who are known to me, acknowledged before me on this day, that being informed of the contents of said instrument, they, as such officers and with full authority, executed the same voluntarily, for and as the act of said corporation on the day the same bears date.

    GIVEN UNDER my hand and seal this *4th* day of *September* , 1973.

*Louise Odom*                                   NOTARY PUBLIC.

My Commission Expires April 4, 1977

THIS INSTRUMENT WAS PREPARED BY:

JERE AUSTILL, JR.

ATTORNEY AT LAW

1004-5 Van Antwerp Building

Mobile, Alabama   36602

## LEASE EXTENSION AND AMENDMENT

THIS AGREEMENT is made this _10th_ day of ~~December, 1997~~ *February* 1998, by and between PIERPONT, LTD. An Alabama limited partnership, successor in interest to WEST DAUPHIN LAND COMPANY (hereinafter "Landlord") and THE KRYSTAL COMPANY, a Tennessee corporation (hereinafter "Tenant").

### BACKGROUND

Landlord and Tenant entered into a certain lease agreement on December 20, 1972 regarding premises located at 3091 Dauphin Street in the city of Mobile, Alabama and more particularly described therein (the "Lease"). Capitalized terms used herein and not otherwise defined shall be defined as provided in the Lease. The parties desire to amend the Lease as provided herein.

NOW, THEREFORE, for and in consideration of the premises, the covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree to amend the Lease as follows:

1.      The present term of the Lease expires on September 30, 1998. Landlord and Tenant hereby agree to extend the term of the Lease for a period of ten (10) years beginning on October 1, 1998 and expiring at midnight on September 30, 2008. In consideration for this extension, Tenant hereby agrees to pay, and Landlord hereby agrees to accept, an annual minimum rental payment for the Premises of $30,000.00 for the first five years of this extension and an annual minimum rental payment for the Premises of $36,000.00 of the final five years of this extension, such rental to be paid monthly in advance as provided in the Lease.

2.      Landlord and Tenant hereby agree that all improvements made upon the Premises, whether such improvements were made by Tenant or otherwise, shall be deemed the property of the Landlord at the expiration of the then existing term of the Lease, provided, however, that Tenant may remove its trade fixtures, signage and other movable items of personalty prior to the expiration of the term of the Lease or within ten (10) days thereafter so long as it repairs any damage to the restaurant building or parking lot caused by such removal.

3.      Tenant hereby agrees to maintain, repair, and replace, if necessary, all portions of the Premises including, but not limited to, the building and its components, parking lots, landscape areas, service areas, utility lines serving the Premises and sidewalks. Tenant further agrees to maintain, repair and replace if necessary during the term of the Lease the portion of the sanitary sewer line currently leading from the restaurant building on the Premises to the clean out located on the adjacent property belonging to Landlord.

4.      Tenant hereby agrees to provide and maintain at all times during the term of the Lease general liability insurance covering the Premises in the amount of at least $2,000,000.00 including property damage to third persons in the amount of $100,000.00. Tenant further agrees to provide property insurance and other extended coverage insurance for the Premises during the term of the Lease in the amount of at least eighty percent (80%) of the replacement cost or such higher amount as required to avoid coinsurance requirements. All liability policies shall name Landlord as an "additional insured" and shall provide that coverage shall not be modified or terminated without at least thirty (30) days prior written notice to Landlord. Landlord shall be named a certificate holder on the Property insurance which shall also provide that coverage cannot be modified or terminated without at least thirty (30) days prior written notice to Landlord.

5.      Anything to the contrary contained in this lease notwithstanding, it is specifically understood and agreed that there shall be absolutely no personal liability on the part of the Landlords individually or collectively with respect to any of the terms, covenants, conditions and provisions of this lease, and Tenant shall look solely to the equity of Landlord, their respective heirs, personal representatives, successors and assigns in the Premises for the satisfaction of each and every remedy of Tenant in the event of any breach by Landlord, or in the event of any liability on the part of Landlord, their respective heirs, personal representatives, successors and assigns under any of the terms covenants, conditions and provisions of this lease, such exculpation of personal liability being absolute and without exception whatsoever.

6.      Landlord represents and warrants to Tenant that it is the owner of the Premises and has full power and authority to effect this Amendment without the consent of any other party.

Except as herein expressly modified or amended, all terms of the Lease shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the date first above written.

LANDLORD

PIERPONT, LTD.
AN ALABAMA LIMITED PARTNERSHIP

BY: _____

TITLE:  GENERAL PARTNER


TENANT

THE KRYSTAL COMPANY
A TENNESSEE CORPORATION

BY: _____

TITLE: _____

## LEASE MODIFICATION AGREEMENT

WITNESSETH:

WHEREAS, the undersigned parties now being Landlord and Tenant, respectively, under the terms of a lease dated March 20, 1973 and thereafter modified by one (1) separate modification agreement, and primarily covering a Krystal Restaurant located at 3091 Dauphin St., City of Mobile, County of Mobile, State of Alabama, do now desire to modify and amend such lease, and

WHEREAS, Pierpont, Ltd., an Alabama Limited Partnership is the Successor in Interest to West Dauphin Land Company.

NOW THEREFORE, for and in consideration of Ten Dollars ($10.00) and other good and valuable considerations, the receipt and sufficiency of which is hereby acknowledged, and of the promises and undertakings hereinafter set forth, the parties agree that such lease shall be and is hereby amended and modified as follows:

Landlord and Tenant agree that this lease is hereby extended for a term of ten (10) years beginning October 1, 2008 and ending September 30, 2018. The rent for this term shall be $39,600 for years 1-5 and $43,560 for years 6-10.

Provided the Tenant is not in default, the Landlord grants to Tenant two (2) five (5) year Options to Renew provided Tenant gives Landlord one hundred eight (180) days advance written notice of Tenant's intent to exercise said Option. The first Option term shall commence October 1, 2018 and end September 30, 2023. The annual minimum rental for the first Option will be $47,916 per year. The second Option term shall commence October 1, 2023 and end September 30, 2028. The annual minimum rental for the second Option term will be $52,707 per year.

All other terms and conditions of said lease and of any previous modification thereof shall remain unchanged.

The provisions of this Lease Modification Agreement shall bind and inure to the benefit of the parties hereto, their heirs, executors, administrators, successors and assigns.

THIS AGREEMENT is made this _18_ day of _April_, 2005.

Lease Modification Agreement
MBL-03
Page Two


Signed and acknowledged in triplicate in the presence of:

**Landlord: Pierpont, Ltd., an Alabama Limited Partnership**

By: _____  Date: _____4 - 12 - 0 ___

Title: _____

Witness: _____


**Tenant: The Krystal Company**
By: _____  Date: _____4 - 18 - 05___
Larry D. Bentley
Senior Vice President and CFO

Witness: _____Kathy Joyner_____

## THIRD LEASE MODIFICATION AGREEMENT

This Third Lease Modification Agreement (the "Third Modification") is entered into as of this ⁊⁊ᗑ day of June, 2019 (the "Effective Date"), by and among PIERPONT, LTD., an Alabama limited partnership ("Landlord") as successor in interest to West Dauphin Land Company (individually and collectively "Original Landlord") and THE KRYSTAL COMPANY, a Tennessee corporation ("Tenant").

### WITNESSETH:

**WHEREAS**, Original Landlord and Tenant entered into that certain Ground Lease dated March 20, 1972, as amended by that certain Lease Extension and Amendment dated February 10, 1998 and that certain Lease Modification Agreement dated April 18, 2005 (individually and collectively, the "Lease"), where by Tenant leased from Landlord certain property located at 3091 Dauphin Street, City of Mobile, County of Mobile, State of Alabama, which property is more particularly described therein (the "premises"); and

**WHEREAS**, the parties desire to further amend the Lease in certain respects, as more particularly described herein;

**NOW, THEREFORE**, for and in consideration of Ten Dollars ($10.00) and other good and valuable consideration as provided herein, the receipt and sufficiency of which are hereby acknowledged, the parties agree that such Lease shall be and is hereby amended and modified as follows:

1.     This Third Modification is made and entered into with reference to the following:

(a)     The Parties have agreed to amend the Lease, in accordance with the provisions and conditions in this Third Modification. This Third Modification shall be deemed effective as of the Effective Date.

(b)     The obligations contained in the Lease shall continue in accordance with the Lease until such time as the obligations set forth herein shall commence.

(c)     Unless otherwise defined herein, all capitalized terms used in this Third Modification shall have the meanings attributed to them in the Lease.

2.     For and in consideration of the covenants, agreements, and promises contained herein, and mutual benefits to accrue, the parties hereby agree to amend the Lease as follows:

(a)     Notwithstanding anything to the Lease to the contrary, Tenant has requested and Landlord has agreed to certain Property Improvements in order for Tenant to receive The Proceeds (as defined below) on the premises. The following definitions shall apply:

a.     "Property Improvements" means all Tenant's improvement activities pursuant to this Third Modification relating to the remodeling costs of the building and the premises; excluding any fixtures, equipment, furnishings,

116415316_2.docx

personal property, signage, and soft costs which shall include but not be limited to permitting, design fees, and recording fees.

b.   "The Proceeds" means that certain amount, not to exceed Three Hundred Thousand Dollars and No Cents ($300,000.00).

c.   "Proceed Support" shall mean the reasonable documentation, such as vendor invoices and release of liens, provided by Tenant for the costs paid for the Property Improvements.

(b)    Upon Tenant completing the Property Improvements and the restaurant reopening for customers, as evidenced by the appropriate certificate of occupancy, Landlord shall pay The Proceeds to Tenant within ten (10) business days of receipt of the Proceed Support, as referenced above, provided Tenant is current in all its obligations under the Lease and not in default past any applicable cure period.

(c)    Upon Tenant's receipt of the Proceeds:

a.   The term of the Lease will be for fifteen (15) years ("New Term") with five (5) year renewal terms.  Landlord and Tenant agree to execute a rent commencement letter acknowledging the start and ending of the New Term which shall commence on the first day of the month following receipt of The Proceeds.  In the event Tenant exercises one, any, or all of renewal terms, Tenant shall provide one hundred eighty (180) days advance written notice of Tenant's intent to exercise said option.  The rent for the New Term shall be as follows:

| YEARS | ANNUAL MINIMUM RENT | MONTHLY RENT |
|-------|---------------------|--------------|
| 1-5   | $80,268.00          | $6,689.00    |
| 6-10  | $82,664.00          | $6,888.67    |
| 11-15 | $85,179.00          | $7,089.25    |

The Property Improvements as referenced in Section 2(a)(a) above shall be amortized over the New Term at seven percent (7%) interest.  Included in the rents stipulated above, the portion representing the amortization of The Proceeds shall be $2,696.00 per month or $32,352.00 annually ("Additional Proceeds Rent").  Notwithstanding the foregoing, Tenant shall have the right to pay the Additional Proceeds Rent or any remaining Additional Proceeds Rent in full at any time during the New Term without penalty, contingent on such Additional Proceeds Rent including all outstanding principal amount plus amortized interest due and owing through the pay-off date.  After the Additional Proceeds Rent has been paid in its entirety, Tenant shall revert to paying annual/monthly rent as set forth above less the Additional Proceeds Rent.

b.    The rent during the option terms shall be as follows:

| OPTION TERM | ANNUAL MINIMUM RENT | MONTHLY RENT |
|---|---|---|
| 1 | $58,110.00 | $4,842.50 |
| 2 | $63,921.00 | $5,326.75 |
| 3 | $70,313.00 | $5,859.42 |
| 4 | $77,345.00 | $6,445.42 |
| 5 | $85,079.00 | $7,089.92 |

3.    The parties to this Third Modification agree that Tenant will pay the rent under the current terms of the Lease, including the rent due and owing under the option term ending on September 30, 2023. The parties to this Third Modification agree that upon completion of the Property Improvements and payment of The Proceeds that the rent will be paid pursuant to the terms of this Third Modification.

4.    In the event that Tenant has not completed construction of the Property Improvements to the premises by May 31, 2021 or in the event that Tenant cannot get all necessary permits, platting, and all approvals for Tenant's intended use of the premises, then the parties to this Third Modification agree that Tenant shall pay the rent as described in the Lease and Section 3 of this Third Modification. Landlord agrees to cooperate (at no cost to Landlord) with Tenant regarding any permitting, platting, and approvals that may be necessary to develop the premises for Tenant's intended use.

5.    The parties acknowledge that the City of Mobile may require the premises to be subdivided into a legal lot of record. At no expense to Landlord, Landlord agrees to fully cooperate with Tenant in Tenant's efforts to secure a subdivided lot that may be required by the City of Mobile. In the event that a subdivision plat and/or encumbrances of the premises or surrounding development is required, Tenant shall provide such documentation to the Landlord for its reasonable review and approval. Additionally, if Tenant makes changes to the site, ingress/egress to the site, or relocates or changes the pylon signage, then Tenant shall provide such documentation for Landlord's reasonable review and approval. Landlord shall have ten (10) days to review such documentation and provide a response to Tenant. In the event that Landlord does not respond within the time frame described above said documentation shall be deemed approved by Landlord. If Landlord provides a response within the timeframe, the time described above shall be restarted until said documentation is approved or Tenant decides to stop the subdivision process.

6.    Except as expressly modified or amended herein, the Lease shall remain unmodified and in full force and effect. In the event of any inconsistencies between the provisions and conditions of the Lease and this Third Modification, the provisions and conditions of this Third Modification shall govern.

7.    This Third Modification may be executed in counterparts, all of which when taken together shall constitute one original document.

116415316_2.docx

IN WITNESS WHEREOF, the parties hereto have caused this Third Modification to be executed as of the day and year shown opposite their respective signatures.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**LANDLORD:**

**PIERPONT, LTD.,** an Alabama limited partnership

By: _____

Name: _Blacksher White-Spinne_____

Title: _General manager_____

**TENANT:**

**THE KRYSTAL COMPANY**, a Tennessee corporation

By: _____

    Mike Wood, Vice President and
    Chief Real Estate Officer

# EXHIBIT B

4/27/2020                                Cummings & Associates, Inc.                              8:58:26AM
User:  JACKIE                                                                                     Page 1 of 1

## OCCUPANT LEDGER

| | | |
|---|---|---|
| Unit Reference Number : 511-3091 | Occupant Name/Type : Krystal / CURRENT | |
| Property Name : Pierpont, Ltd. | Tenant Id : ▮▮▮0148 | Bldg: |
| Co. Name   Krystal | Phone Number : 478-4974 | Floor: 0 |
| Address1 : 3091 Dauphin Street | Cell Number : (423) 757-1550 | |
| Address2 : | Fax Number : | |
| City, State, Zip : Mobile, AL 36606 | Unit Number : 3091 | |
| D/B/A Name : The Krystal Com | | |
| Email Address : | | |

### Forwarding Address

| | |
|---|---|
| Name : | Correspondence Email : |
| Address1 : | Billing Email : |
| Address2 : | |
| City, State, Zip : | |

### Chronological History

| Date | Charge Code | Charge Description | Amount | Balance |
|---|---|---|---|---|
| 10/01/2019 | RNT | Monthly Rent | 3,993.00 | 3,993.00 |
| 10/07/2019 | RNT | Pymt. Batch 016 Check 481474 | -3,993.00 | 0.00 |
| 11/01/2019 | RNT | Monthly Rent | 3,993.00 | 3,993.00 |
| 11/13/2019 | RNT | Pymt. Batch 062 Check 481988 | -3,993.00 | 0.00 |
| 12/01/2019 | RNT | Monthly Rent | 3,993.00 | 3,993.00 |
| 12/18/2019 | RNT | Pymt. Batch 110 Check 482340 | -3,993.00 | 0.00 |
| 01/01/2020 | RNT | Monthly Rent | 3,993.00 | 3,993.00 |
| 01/17/2020 | LAT | Late Charge | 199.65 | 4,192.65 |
| 02/01/2020 | RNT | Monthly Rent | 3,993.00 | 8,185.65 |
| 02/10/2020 | RNT | Pymt. Batch 170 Check 482667 | -3,993.00 | 4,192.65 |
| 02/19/2020 | LAT | Billing Adjustments | -199.65 | 3,993.00 |
| 03/01/2020 | RNT | Monthly Rent | 3,993.00 | 7,986.00 |
| 03/05/2020 | RNT | Pymt. Batch 201 Check 482864 | -3,993.00 | 3,993.00 |
| 04/01/2020 | RNT | Monthly Rent | 3,993.00 | 7,986.00 |
| 04/03/2020 | LAT | Late Charge - Jan 2020 | 199.65 | 8,185.65 |
| 04/03/2020 | LAT | Late Charge - Feb 2020 | 199.65 | 8,385.30 |
| 04/03/2020 | LAT | Late Charge - March | 199.65 | 8,584.95 |
| 04/27/2020 | LAT | Late Charge - April 2020 | 199.65 | 8,784.60 |

There are no comments for this occupant.