

**IT IS ORDERED as set forth below:**

**Date: May 13, 2020**

_____

**Paul W. Bonapfel
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE KRYSTAL COMPANY, *et al.*,[1] | ) | Case No. 20-61065 (PWB) |
| | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (A) APPROVING SALE MOTION AND ASSET PURCHASE AGREEMENT,
(B) AUTHORIZING THE SALE OF ASSETS OUTSIDE THE ORDINARY COURSE OF
BUSINESS AND FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES,
AND INTERESTS, (C) AUTHORIZING THE ASSUMPTION AND SALE AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES, AND (D) GRANTING RELATED RELIEF**

Upon the motion [Docket No. 148] (the "Sale Motion") of The Krystal Company (the

"Debtor" or "Seller") for the entry of an order pursuant to Sections 105, 363, and 365 of title 11

of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, and 9014 of the

---

[1] The "Debtors" in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: The Krystal Company (4140); Krystal Holdings, Inc. (5381); and K-Square Acquisition Co., LLC (8916). Debtor's corporate headquarters and service address is: 1455 Lincoln Parkway, Suite 600, Dunwoody, Georgia 30346.

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the Debtor to: (a) enter into that certain Asset Purchase Agreement, dated as of May 6, 2020, between DB KRST Investors LLC (the "Purchaser") and the Debtor, as amended by that certain First Amendment to Asset Purchase Agreement, dated as of May 12, 2020 between Purchaser and the Debtor (as further amended, supplemented, or otherwise modified from time to time and including all related instruments, documents, exhibits, schedules, and agreements thereto, collectively, the "Agreement"),[2] (b) sell substantially all of its assets as set forth in the Agreement, including the Purchased Assets, free and clear of all Claims and Liens (as defined below and each as defined in the Agreement), with such sale to be in accordance with the terms and conditions of the Agreement; (c) assume and sell and assign certain executory contracts and unexpired leases to the Purchaser; and (d) granting related relief; and this Court having entered an order on March 4, 2020 [Docket No. 227] (the "Bidding Procedures Order") authorizing the Debtor to conduct, and approving the terms and conditions of, an auction as set forth in the Bidding Procedures Order (the "Auction") to consider higher or otherwise better offers for the Purchased Assets, establishing a date for the Auction, and approving, among other things: (i) certain bidding procedures (the "Bidding Procedures") to be used in connection with the Auction; (ii) the form and manner of notice of the Auction and Bidding Procedures; and (iii) procedures relating to certain unexpired leases and executory contracts, including notice of proposed cure amounts; and the Court having established the date of the hearing on the Sale Motion (the "Sale Hearing"); and the Court having jurisdiction to consider the Sale Motion and the relief requested therein in

---

[2] Terms used herein with an initial capital not required by standard capitalization rules are defined terms, and each such term not parenthetically defined herein shall have the meaning ascribed to it in the Agreement, and terms not otherwise defined herein or in the Agreement but defined in the Bankruptcy Code shall have the meanings set forth therein.

accordance with 28 U.S.C. §§ 157(b)(1)–(2) and 1334; and in consideration of the Sale Motion, the relief requested therein, and the responses thereto being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties and all responses and objections to the Sale Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, and all other pleadings and proceedings in these chapter 11 cases, including the Sale Motion, the affidavits of service regarding the Sale Motion [Docket Nos. 175, 290], and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their stakeholders and all other parties in interest; and after due deliberation and sufficient cause appearing therefore;

**IT IS HEREBY FOUND, DETERMINED, AND CONCLUDED THAT**:[3]

A.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.  The Court has jurisdiction over this matter and over the property of the Debtors' estates, including the Purchased Assets to be sold, transferred, or conveyed pursuant to the Agreement, pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a "core proceeding" pursuant

---

[3] All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are incorporated herein to the extent not inconsistent herewith.

to 28 U.S.C. § 157(b)(2). Venue of these chapter 11 cases and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.  This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein and the closing of all transactions contemplated hereby without regard to any stay or delay in its implementation.

E.  The statutory and legal predicates for the relief requested in the Sale Motion and for the approvals and authorizations herein are (i) Sections 101, 102, 105, 363, and 365 of the Bankruptcy Code, and (ii) Bankruptcy Rules 2002, 6004, 6006, 7052, and 9014.

F.  On January 19, 2020 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code, which are being jointly administered under Case No. 20-61065 (PWB). Since the Petition Date, the Debtors have continued in possession and management of their business and properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. On February 11, 2020, the United States Trustee for Region 21 appointed the Official Committee of Unsecured Creditors for Debtor (the "Committee").

G.  As evidenced by the certificates of service filed with the Court [Docket Nos. 175, 267, 290, 329, 330, and 331], proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, and the Sale Hearing have been provided in accordance with Sections 102(1) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006, and 9014, the local rules of

4

the Court, the procedural due process requirements of the United States Constitution, and in compliance with the Bidding Procedures Order. The Debtors also gave due and proper notice of the assumption, sale, and assignment of each contract or lease listed on the notice of assumption, sale, and assignment of designated unexpired leases and executory contracts filed on April 7, 2020, [Docket No. 310] (the "Assigned Contracts") to each non-debtor party under each such Assigned Contract. Such notice was good and sufficient and appropriate under the particular circumstances. Moreover, to provide additional notice, on or about May 10, 2020, the Debtors published the Notice of Sale and Deadline for Filing Proofs of Claim in the following newspapers and media outlets: (i) the Wall Street Journal, Southeastern Region; (ii) the Atlanta Journal Constitution (Atlanta, Georgia); (iii) The Tennessean (Nashville, Tennessee); (iv) The Birmingham News (Birmingham, Alabama); (v) The State (Columbia, South Carolina); (vi) The Charlotte Observer (Charlotte, North Carolina); and (vii) The Florida Times–Union (Jacksonville, Florida). Debtors also posted a notice entitled Chapter 11 Information to the Krystal website, whereby parties in interest were directed to the claims agent's website regarding, among other things, how to file a proof of claim located at https://krystal.com/security/ (the "Additional Notice"). No other or further notice of the Sale Motion, the Bidding Procedures, the Auction, the Sale Hearing, the assumption and assignment of the Assigned Contracts and related Designation Rights Period, or of the entry of this Order is necessary or shall be required.

H.   A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities, including, without limitation, (i) the Debtor's thirty (30) largest unsecured creditors, (ii) the Committee, (iii) counsel to the First Lien Prepetition

Agent, (iv) all entities that claim any interest in, lien upon, or other encumbrances related to the Purchased Assets, (v) all non-debtor parties to Assigned Contracts assumed and sold and assigned pursuant to this Order, (vi) all governmental taxing authorities that have, or as a result of the sale of the Purchased Assets may have, Claims, contingent or otherwise, against the Debtors or their estates, (vii) all parties that filed requests for notices under Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002, (viii) all creditors (whether their Claims are liquidated, contingent, or unmatured) of the Debtors, (ix) all interested governmental, pension and environmental authorities, including, without limitation, the Pension Benefit Guaranty Corporation ("PBGC"), which is a member of the Committee, and the Internal Revenue Service, (x) the Office of the United States Trustee for the Northern District of Georgia, (xi) the Attorney General for the State of Georgia, (xii) the United States Attorney for the Northern District of Georgia, (xiii) the state attorneys general for states in which the Debtor conducts business, (xiv) other parties in interest by the publication of the Additional Notice, and (xv) all entities that heretofore expressed to the Debtors a serious interest in purchasing the Purchased Assets. Other parties interested in bidding on the Purchased Assets were provided, pursuant to the Bidding Procedures Order, sufficient information to make an informed judgment on whether to bid on the Purchased Assets.

I.    The Purchased Assets are property of the Debtor's estate and title thereto is vested in the Debtor's estate within the meaning of Section 541(a) of the Bankruptcy Code.

J.    The Debtor has demonstrated a sufficient basis and the existence of reasonable and appropriate circumstances requiring it to enter into the Agreement, sell the Purchased Assets, agree to the Designation Rights Period, and assume and assign the Assigned Contracts under

Sections 363 and 365 of the Bankruptcy Code, and such actions are appropriate exercises of the Debtor's business judgment and in the best interests of the Debtors, their estates, parties in interest, and other stakeholders.

K.  The Bidding Procedures set forth in the Bidding Procedures Order were non-collusive and substantively and procedurally fair to all parties and parties in interest.

L.  The Debtors and their professionals have complied, in good faith, in all respects with the Bidding Procedures Order. As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, through marketing efforts and a competitive sale process conducted in accordance with the Bidding Procedures Order, the Debtors (a) afforded interested potential purchasers a full, fair, and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase all of the Debtor's assets, (b) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Purchased Assets, and (c) considered any bids submitted on or before the deadline to submit bids as set forth in the Bidding Procedures (the "Bid Deadline").

M.  On April 29, 2020, the Debtors, the Committee and the Purchaser, as purchaser under the Agreement and in its capacity as sub-agent on behalf of all lenders under the Third Amended and Restated Credit Agreement, dated as of April 26, 2018 (the "Credit Agreement"), by and among the Debtor, Wells Fargo Bank, National Association, as Administrative Agent, Issuing Bank and Swing Line Lender, Regions Bank, as Syndication Agent, and the other lenders party thereto (the "Prepetition First Lien Lenders"), entered into a Settlement Agreement (the "Settlement") under which Debtors, on behalf of themselves and their respective estates,

stipulated and agreed that they were indebted to the Prepetition First Lien Lenders in the aggregate amount of not less than $51,076,402.17 and that such amounts are secured by valid, binding, enforceable, nonavoidable. and property perfected, first priority liens on and security interests in the Collateral (as defined in the Credit Agreement) granted to the Administrative Agent for the benefit of the Secured Parties. The Settlement, which provides additional consideration to Debtors and their estates, including funding the winddown of these chapter 11 cases, is also a material part of the consideration provided by Purchaser and is incorporated herein by reference. The Purchaser is the sub-agent under the Credit Agreement and is authorized to consummate the Credit Bid equal to the Credit Bid Amount and, in accordance with the Agreement, the Prepetition First Lien Obligations equal to the Credit Bid Amount shall be automatically extinguished on the Closing Date, with the remaining Prepetition First Lien Obligations to remain outstanding.

N.  On or about April 29, 2020, the Purchaser delivered the Agreement to the Debtor and other required notice parties per the Bidding Procedures, which constituted a Qualifying Bid for the purchase of the Purchased Assets from Debtor. No other Qualifying Bid was received for such Purchased Assets. Thus, on May 6, 2020, the Debtors filed the Notice of No Auction and Filing of Asset Purchase Agreement [Docket No. 425], noting that Purchaser was the only entity that had submitted a Qualifying Bid.

O.  The offer of the Purchaser, upon the terms and conditions set forth in the Agreement, including the form and total consideration to be realized by the Debtors pursuant to the Agreement, including the Credit Bid in the Credit Bid Amount and the assumption of the Assumed Liabilities as more particularly set forth in the Agreement, as well as the consideration

provided in the Settlement, (i) is the highest or best offer received by the Debtors, (ii) is fair and reasonable, (iii) is in the best interests of the Debtors' estates, parties in interest, and other stakeholders, (iv) constitutes full and fair consideration and reasonably equivalent value for the Purchased Assets, (v) was not entered into to hinder, delay, or defraud creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, and (vi) will provide a greater recovery for the Debtor's creditors, shareholders, and other interested parties, as a whole, than would be provided by any other practically available alternative.

P. The Purchaser is not an "insider" or "affiliate" of the Debtors as those terms are defined in the Bankruptcy Code and the decisions thereunder. The Purchaser is a purchaser in "good faith," as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of Section 363(m) and (n) of the Bankruptcy Code with respect to the Agreement and all of the Purchased Assets thereunder. The Agreement was proposed, negotiated, and entered into in good faith, based upon arm's length bargaining, and without collusion, fraud of any kind, or an improper purpose. Neither the Debtors nor the Purchaser have engaged in any conduct that would prevent the application of Section 363(m) of the Bankruptcy Code or cause the application of, or implicate, Section 363(n) of the Bankruptcy Code to the Agreement, the Bidding Procedures, the Auction, or to the consummation of the sale transaction and transfer of the Purchased Assets and Assigned Contracts to the Purchaser. The Purchaser is purchasing the Purchased Assets (including the Assigned Contracts) in good faith and is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code and is, therefore, entitled to the protection of that provision, and otherwise has proceeded in good faith in

all respects in connection with these cases and this proceeding in that: (i) the Purchaser complied with the provisions in the Bidding Procedures Order, (ii) all consideration to be paid by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the sale have been disclosed, (iii) the Purchaser has not violated Section 363(n) of the Bankruptcy Code by any action or inaction, and (iv) the negotiation and execution of the Agreement and any other agreements or instruments related thereto was in good faith. The Court also finds that no evidence was offered or proffered in support of any cause under Section 363(k) of the Bankruptcy Code to limit, modify, or otherwise restrict the right of Purchaser, as sub-agent under the Credit Agreement, to Credit Bid in the Credit Bid Amount, and the Purchaser is hereby authorized and entitled to offset the Prepetition First Lien Obligations equal to the Credit Bid Amount as purchase price consideration under the Agreement.

Q.  The Debtor has full corporate power and authority to execute the Agreement (and all other documents contemplated thereby) and consummate the transaction contemplated therein, and the sale of the Purchased Assets has been duly and validly authorized by all necessary corporate actions on the part of by the Debtor. No consents or approvals, other than as may be expressly provided for in the Agreement, are required by the Debtor to consummate such transactions.

R.  The Debtor has advanced sound business reasons for seeking to enter into the Agreement and to sell and/or assume and sell and assign the Purchased Assets, as more fully set forth in the Sale Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise of the Debtor's business judgment to sell the Purchased Assets and to consummate the transactions contemplated by the Agreement. Notwithstanding any requirement for approval or

consent by any Person or entity, the transfer of the Purchased Assets to the Purchaser and the assumption and assignment of the Assigned Contracts is a legal, valid, and effective transfer of the Purchased Assets (including the Assigned Contracts).

S.   The terms and conditions of the Agreement, including the consideration to be realized by the Debtor and its estate pursuant to the Agreement, including the Credit Bid in the Credit Bid Amount and the Assumed Liabilities, are fair and reasonable, and the transactions contemplated by the Agreement are in the best interests of the Debtors' estates, their creditors, and other parties in interest.

T.   Other than the Assumed Liabilities, in accordance with Sections 105(a) and 363(f) of the Bankruptcy Code, and to the fullest extent available under the Bankruptcy Code or any other applicable law or in equity, the Purchased Assets shall be sold free and clear of any and all liens (statutory, contractual, or otherwise, including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens), hypothecations, encumbrances, security interests, encroachments, reservations, infringements, adverse rights of interest, mortgages, security deeds, debts, levies, indentures, pledges, restrictions (whether on voting, sale, transfer, disposition, or otherwise), charges, instruments, preferences, priorities, security agreements, conditional sales agreements, title retention contracts, options, Claims, judgments, offsets, rights of recovery, rights of pre-emption, rights of first refusal or other third party rights, Claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, employment-related claims, employee pension or benefit plan claims and any withdrawal liability thereunder, including any claims of or debts owing to the PBGC, multiemployer benefit plan claims, retiree healthcare or life insurance claims, COBRA coverage

claims, ERISA Affiliate plan (including any pension or retirement plan), Tax (including Claims for any and all foreign, federal, state and local Taxes or any other amounts owing by any of the Debtors under the Code), decrees of any court or foreign or domestic governmental entity, orders of any Governmental Authority, of any kind or nature, reclamation Claims, obligations, liabilities, demands, guaranties, Excluded Liabilities, and other claim or interest of any kind or nature whatsoever, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising before or after the Petition Date, and whether imposed by agreement, understanding, law, equity, or otherwise (each of the foregoing, together with any Liens (as defined in the Agreement), collectively, the "Excluded Claims and Liens"). Thus, consistent with Section 363(f) of the Bankruptcy Code, Purchaser shall have no liability for any Excluded Claims and Liens.

U. The transfer of the Purchased Assets to the Purchaser will be a legal, valid, and effective transfer of the Purchased Assets and shall vest Purchaser with all right, title, and interest of the Debtor to the Purchased Assets free and clear of any and all Excluded Claims and Liens. Except as specifically provided in the Agreement or this Order, the Purchaser shall not assume or become liable for any Excluded Claims and Liens relating to the Purchased Assets being sold by the Debtor.

V. The transfer of the Purchased Assets to the Purchaser free and clear of all Excluded Claims and Liens will not result in any undue burden or prejudice to any holders of any Excluded Claims and Liens, because all such Excluded Claims and Liens of any kind or nature

12

whatsoever shall attach to the net proceeds, if any, of the sale of the Purchased Assets received by the Debtor in the order of their priority, with the same validity, force, and effect which they now have as against the Purchased Assets and subject to any claims and defenses the Debtor or other parties may possess with respect thereto. All Persons and entities having Excluded Claims and Liens of any kind or nature whatsoever against or in any of the Debtors or the Purchased Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Excluded Claims and Liens against the Purchaser, any of its assets, property, successors or assigns, or the Purchased Assets.

W. The Debtor may sell the Purchased Assets free and clear of all Excluded Claims and Liens of any kind or nature whatsoever because, in each case, one or more of the standards set forth in Section 363(f) of the Bankruptcy Code has been satisfied. Those (i) holders of Excluded Claims and Liens and (ii) non-debtor parties to the Assigned Contracts, who did not object, or who withdrew their objections, to the sale of the Purchased Assets and the Sale Motion are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code. Except as set forth herein, all objections to the Sale Motion, including objections by non-debtor parties to the Assigned Contracts, have been overruled or resolved.

X. Not selling the Purchased Assets free and clear of all Excluded Claims and Liens would adversely impact the Debtors' estates, and the sale of Purchased Assets other than one free and clear of all Excluded Claims and Liens would be of substantially less value to the Debtors' estates.

Y. The Debtor and the Purchaser have, to the extent necessary, satisfied the requirements of Section 365 of the Bankruptcy Code, including Subsections 365(b)(1)(A), (B) and 365(f), in

connection with the sale and the assumption and assignment of the Assigned Contracts. The Purchaser has demonstrated adequate assurance of future performance with respect to the Assigned Contracts pursuant to Section 365(b)(1)(C) of the Bankruptcy Code. The assumption and assignment of the Assigned Contracts pursuant to the terms of this Order is integral to the Agreement and is in the best interests of the Debtors, their estate, stakeholders and other parties in interest, and represents their exercise of sound and prudent business judgment.

Z. The Assigned Contracts are assignable notwithstanding any provisions contained therein to the contrary. The Purchaser shall have sole responsibility for paying all Cure Costs required to assume and assign the Assigned Contracts to the Purchaser. Pursuant to Section 2.5 of the Agreement, the Purchaser shall maintain certain rights to modify the list of Assigned Contracts after the date of this Order and up to July 2, 2020 as set forth in such section. Such modification rights include, without limitation, the right of the Purchaser, before the expiration of the Designation Rights Period, to designate certain Designation Right Assets for assumption by the Debtor and assignment to the Purchaser. The Purchaser would not have agreed to the transactions set forth in the Agreement without such modification rights. The notice and opportunity to object provided to the contract counterparties to such contracts and to other parties in interest, as set forth in the Bidding Procedures Order and Agreement, fairly and reasonably protects any rights that such contract counterparties and other parties in interest may have with respect to such contracts. Thus, the Designation Rights Period and related designation rights of Purchaser under the Agreement are approved.

AA. The Purchaser will be acting in good faith, pursuant to Section 363(m) of the Bankruptcy Code, in closing the transactions contemplated by the Agreement at any time on or

after the entry of this Order and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

BB.    The transactions contemplated under the Agreement do not constitute or amount to a consolidation, merger, or de facto merger of Purchaser, its affiliates, or subsidiaries and the Debtors. No substantial continuity between Purchaser, its affiliates, or subsidiaries, and the Debtors exists; no substantial identity of ownership between the Debtor and the Purchaser exists; no continuity of enterprise between the Debtors and Purchaser, its affiliates, or subsidiaries exists; neither Purchaser, its affiliates, nor its subsidiaries are a mere continuation of the Debtors or their estates; and neither Purchaser, its affiliates, nor its subsidiaries constitute a successor to the Debtors or their estates. Except as otherwise set forth in the Agreement, the transfer of the Purchased Assets to Purchaser, its affiliates, or subsidiaries will not subject Purchaser, its affiliates, or subsidiaries to any liability for any Excluded Claims and Liens against the Debtors or the Purchased Assets existing as of Closing by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, based, in whole or in part, directly or indirectly, in any theory of law or equity including, without limitation, any laws affecting antitrust or unfair competition, ERISA, successor, transferee, or vicarious liability.

CC.    The total consideration provided by the Purchaser for the Purchased Assets, including the Credit Bid in the Credit Bid Amount, was the highest or best offer received by the Debtor, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act or the Uniform Voidable Transactions Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act, and

(c) reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Purchased Assets.

DD.    Time is of the essence in consummating the sale. In order to maximize the value of the Purchased Assets, it is essential that the sale of the Purchased Assets occur within the time constraints set forth in the Agreement. Accordingly, cause exists to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

EE.    At and effective as of the Closing, the Purchaser shall assume sole responsibility for paying and satisfying the Assumed Liabilities, including all liabilities and obligations of Seller related to or arising under the Assigned Contracts. For the avoidance of doubt, nothing in this Order (including, without limitation, any provisions in this Order regarding the sale, transfer or conveyance of the Purchased Assets free and clear of Excluded Claims and Liens) nor in the Agreement shall be construed to mean that the Purchaser is not assuming from the Debtor and thereafter becoming solely responsible for the payment, performance and discharge of the Assumed Liabilities. After the Closing and except for amounts exceeding the Assumed Liabilities cap of $21,500,000 as set forth in the Agreement (the "Assumed Liabilities Cap"),[4] the, the Debtors shall have no liability whatsoever with respect to the Assumed Liabilities. The Purchaser shall have no obligations with respect to any liabilities of the Debtors other than the Assumed Liabilities.

---

[4] As set forth in the Agreement, notwithstanding anything to the contrary in this Order, the aggregate amount of Assumed Liabilities with respect to subpart (c) (excluding the obligation to provide adequate assurance of future performance), subparts (d) – (g), and subpart (h) (excluding Property Taxes accruing after the Closing Date) of Section 2.3 of the Agreement shall not exceed $21,500,000.

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The relief requested in the Sale Motion is GRANTED in its entirety and the Agreement is approved, subject to the terms and conditions contained herein.

2.      Except as set forth in paragraph 46 of this Order, all objections, responses, reservations of rights, and requests for continuance concerning the Sale Motion are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing. To the extent any such objection, response, reservation of rights, or request for continuance was not otherwise withdrawn, waived, or settled, it is overruled and denied on the merits.

3.      Notice of the Sale Hearing was fair, sufficient, proper, and equitable under the circumstances and complied in all respects with 11 U.S.C. § 102(1) and Bankruptcy Rules 2002, 6004, 6006, the local rules of the Court, and the procedural due process requirements of the United States Constitution.

4.      The sale of the Purchased Assets, the terms and conditions of the Agreement (including all schedules and exhibits affixed thereto), and the transactions contemplated thereby shall be, and hereby are, authorized and approved in all respects.

5.      The sale of the Purchased Assets and the consideration provided by the Purchaser under the Agreement, including the Credit Bid in the Credit Bid Amount, are fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

6.      The Purchaser is hereby granted and is entitled to all of the protections provided to a good faith purchaser under Section 363(m) of the Bankruptcy Code, including with respect to the transfer of the Assigned Contracts as part of the sale of the Purchased Assets pursuant to

Section 365 of the Bankruptcy Code and this Order. Because the Purchaser has acted in good faith under Section 363(m) of the Bankruptcy Code, the reversal or modification of this Order on appeal will not affect the validity of the transfer of the Purchased Assets (including, without limitation, the assumption and assignment of the Assigned Contracts, if any) to the Purchaser or any other transactions contemplated by the Agreement or authorized by this Order, unless the same is stayed pending appeal within the applicable period set forth in the Bankruptcy Code and Bankruptcy Rules.

7.      The Debtor shall be, and hereby is, authorized and directed to fully assume, perform under, consummate, and implement the terms of the Agreement together with any and all additional instruments and documents that may be necessary or desirable in connection with implementing and effectuating the terms of the Agreement, this Order, and the sale of the Purchased Assets, including, without limitation, certificates, deeds, assignments, and other instruments of transfer, and to take all further actions as may reasonably be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser, or reducing to possession, any or all of the Purchased Assets or Assumed Liabilities, as may be necessary or appropriate to the performance of the Debtor's obligations as contemplated by the Agreement, without any further corporate action or orders of this Court.

8.      The Debtor and each other person or entity having duties or responsibilities under the Agreement, any agreements or instruments related thereto or this Order, and their respective directors, officers, managers, employees, members, agents, representatives, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the Agreement and this Order, to carry out all of the provisions of the Agreement and any related agreements or

instruments; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the Agreement and any related agreements or instruments; to take any and all actions contemplated by the Agreement, any related agreements or instruments, or this Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, guaranties, intercreditor agreements, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and necessary, desirable or appropriate to implement, effectuate, and consummate, the Agreement, any related agreements or instruments, and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court or further action by its directors, officers, managers, employees, members, agents, representatives, and attorneys, and with like effect as if such actions had been taken by unanimous action of the directors, officers, managers, employees, members, agents, representatives, and attorneys of such entity. The secretary, any assistant secretary of the Debtor, and the Chief Restructuring Officer shall be, and hereby is, authorized to certify or attest to any of the foregoing actions (but no such certification or attestation shall be required to make any such action valid, binding, and enforceable). The Debtor is further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable Governmental Authority any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Agreement, any related agreements, and this Order, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable Governmental Authorities or as any of the officers of the Debtor may determine are

necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the corporate laws of the states of formation of the Debtor and all other applicable business, corporation, trust, and other laws of the applicable Governmental Authorities with respect to the implementation and consummation of the Agreement, any related agreements or instruments and this Order, and the transactions contemplated thereby and hereby.

9.      To the fullest extent permitted by law, effective as of the Closing Date, (a) the sale of the Purchased Assets by the Debtor to the Purchaser shall constitute a legal, valid, and effective transfer of the Purchased Assets, notwithstanding any requirement for approval or consent by any Person or entity, and shall vest the Purchaser with all right, title, and interest of the Debtor in and to the Purchased Assets, free and clear of all Excluded Claims and Liens of any kind pursuant to Section 363(f) of the Bankruptcy Code, and (b) the assumption of the Assumed Liabilities by the Purchaser shall constitute a legal, valid, and effective delegation and assignment of all Assumed Liabilities to the Purchaser, and shall divest the Debtor of all liability with respect to any Assumed Liabilities, except for amounts above the Assumed Liabilities Cap. Unless otherwise agreed to by the Debtor and the Purchaser, the Closing Date shall be May 18, 2020. For the avoidance of doubt, the Purchaser shall be responsible for performing under the Assigned Contracts in accordance with the provisions of Agreement.

10.     The sale of the Purchased Assets is not subject to avoidance and the Purchaser shall not be subject to damages, including any costs, fees, or expenses under Section 363(n) of the Bankruptcy Code.

11.    At the Closing, the Debtor shall be, and hereby is, authorized, empowered, and directed, pursuant to Sections 105, 363(b), 363(f), and 365 of the Bankruptcy Code, to sell the Purchased Assets, including the Assigned Contracts, to the Purchaser. The sale of the Purchased Assets shall vest the Purchaser with all right, title, and interest of the Debtor to the Purchased Assets free and clear of any and all Excluded Claims and Liens in accordance with Section 363(f) of the Bankruptcy Code, with all such Excluded Claims and Liens to attach only to the proceeds of the sale with the same priority, validity, force, and effect, if any, as they now have in or against the Purchased Assets, subject to all claims and defenses the Debtor may possess with respect thereto. Following the Closing Date, no holder of any Excluded Claims and Liens in the Purchased shall interfere with the Purchaser's title, use, or enjoyment of the Purchased Assets based on or related to such Excluded Claims and Liens or any actions that the Debtors may take in these chapter 11 cases, and no person shall take any action to prevent, interfere with, delay, or otherwise enjoin consummation of the transactions contemplated in or by the Agreement or this Order.

12.    The provisions of this Order authorizing the sale of the Purchased Assets free and clear of Excluded Claims and Liens in accordance with Section 363(f) of the Bankruptcy Code shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order. However, the Debtors  and the Purchaser, and each of their respective officers, employees, and agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents and

instruments that either the Debtors  or the Purchaser deem necessary, desirable or appropriate to implement and effectuate the terms of the Agreement and this Order.

13.    On or before the Closing Date, the Debtor's creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release any Excluded Claims and Liens of any kind against the Purchased Assets, as such Excluded Claims and Liens may have been recorded or may otherwise exist. Except as expressly provided in the Agreement, if any Person or entity that has filed financing statements or other documents or agreements evidencing any Excluded Claims and Liens in or against the Purchased Assets shall not have delivered to the Debtors  before the Closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Excluded Claims and Liens that the Person or entity has with respect to the Purchased Assets, the Debtors are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the Person or entity with respect to such Purchased Assets before the Closing, and the Purchaser is authorized to file such documents after Closing.

14.    To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, approval, certificate of occupancy, authorization, operating permit, registration, plan and the like of any Governmental Authority relating to the Purchased Assets, and all such licenses, permits, approvals, certificates of occupancy, authorizations, operating permits, registrations, plans and the like of any Governmental Authority are deemed to have been, and hereby are, deemed to be transferred to the Purchaser as of the Closing Date.

15.    All of the Debtor's interests in the Purchased Assets to be acquired by the Purchaser under the Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Purchaser. Upon the occurrence of the Closing, this Order shall be considered and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Purchased Assets acquired by the Purchaser under the Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Purchased Assets to the Purchaser.

16.    Except as expressly provided in the Agreement, the Purchaser is not assuming nor shall it or any affiliate of the Purchaser be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtors  in any way whatsoever relating to or arising from the Debtors' ownership or use of the Purchased Assets before the consummation of the transactions contemplated by the Agreement, or any liabilities calculable by reference to the Debtors or their operations or the Purchased Assets, or relating to continuing or other conditions existing on or before consummation of the transactions contemplated by the Agreement, which liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against the Purchaser or any affiliates or subsidiaries of the Purchaser.

17.    Except as otherwise expressly provided in the Agreement, on the Closing Date, each of the Debtor's creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release their respective Excluded Claims and Liens against the Purchased Assets, if any, as may have been recorded or may otherwise exist.

23

18.      Except as otherwise expressly provided in the Agreement, all persons or entities presently or on or after the Closing Date in possession of some or all of the Purchased Assets are directed to surrender possession of the Purchased Assets to the Purchaser on the Closing Date or at such time thereafter as the Purchaser may request.

19.      Subject to the terms of the Agreement and the occurrence of the Closing Date, the assumption by the Debtor of the Assigned Contracts and the sale and assignment of such agreements and unexpired leases to the Purchaser, as provided for or contemplated by the Agreement, be, and hereby is, authorized and approved under Sections 363 and 365 of the Bankruptcy Code.

20.      The Assigned Contracts shall be deemed valid and binding and in full force and effect and assumed by the Debtor and sold and assigned to the Purchaser at the Closing (or such later date pursuant to Section 2.5 of the Agreement), pursuant to Sections 363 and 365 of the Bankruptcy Code, subject only to the payment of the Cure Costs.

21.      Upon the Closing (or such later date pursuant to Section 2.5 of the Agreement), in accordance with Sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title, and interest in and to each Assigned Contract. The Debtor shall reasonably cooperate with, and take all actions reasonably requested by, the Purchaser to effectuate the foregoing.

22.      Pursuant to Sections 365(b)(l)(A) and (B) of the Bankruptcy Code, and except as otherwise provided in Paragraph 46 of this Order, the Purchaser, pursuant to Section 2.3 of the Agreement, shall pay on the Closing Date (or, with respect to Designation Right Assets, promptly following the date that such contract becomes an Assigned Contract) to the non-debtor

parties to any Assigned Contracts the requisite Cure Costs, if any, set forth on the supplemental notice filed with the Court on May 11, 2020 (the "Cure Costs Schedule") [Docket No. 441], except to the extent that a Cure Cost was amended on the record of the Sale Hearing, agreed to between the non-Debtor party to the Assigned Contract and the Purchaser or hereafter determined by Court order, as the case may be, following the assumption and assignment thereof. The Cure Costs are hereby fixed at the amounts set forth on the Cure Costs Schedule, the amounts set forth on the record of the Sale Hearing, as otherwise agreed to by the non-Debtor counterparty to the Assigned Contract and the Purchaser, or as hereafter determined by Court Order, as the case may be, and the non-debtor parties to the Assigned Contracts are forever bound by such Cure Costs. For the avoidance of doubt, all counterparties to any of the Debtor's executory contracts or unexpired leases that are Designation Right Assets shall also be forever bound by such Cure Costs in the Cure Costs Schedule; provided, however, that if a timely objection to such Cure Costs has been or is filed, the Court shall hereafter determine the amount of such Cure Costs.

23.    All defaults or other obligations under the Assigned Contracts arising before the Closing (without giving effect to any acceleration clauses, assignment fees, increases, advertising rates, or any other default provisions of the kind specified in Section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by payment of the Cure Costs; provided, however, that Purchaser shall be responsible for the payment of any accrued but unbilled obligations with respect to any year-end adjustments or reconciliations when billed in accordance with the terms of the Assigned Contracts that become due and owing after the Closing Date (irrespective of whether such obligations accrued or relate to the period before the Closing Date).

24.        Any provision in any Assigned Contract that purports to declare a breach, default, or payment right as a result of an assignment or a change of control in respect of the Debtor is unenforceable, and all Assigned Contracts shall remain in full force and effect, subject only to payment of the appropriate Cure Costs, if any. No sections or provisions of any Assigned Contract that purport to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor party to the Assigned Contract shall have any force and effect with respect to the sale transaction and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under Section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under Section 365(e) of the Bankruptcy Code, and no assignment of any Assigned Contract pursuant to the terms of the Agreement shall in any respect constitute a default under any Assigned Contract. The non-debtor party to each Assigned Contract shall be deemed to have consented to such assignment under Section 365(c)(1)(B) of the Bankruptcy Code, and the Purchaser shall enjoy all of the Debtor's rights and benefits under each such Assigned Contract as of the applicable date of assumption without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof.

25.        The Purchaser has satisfied all requirements under Sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code to provide adequate assurance of future performance under the Assigned Contracts.

26.        The Debtor and its estate shall be relieved of any liability for any breach of any of the Assigned Contracts occurring from and after Closing, pursuant to and in accordance with Section 365(k) of the Bankruptcy Code.

27.      Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code, all parties to the Assigned Contracts are forever barred and enjoined from raising or asserting against the Purchaser any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts existing as of the Closing or arising by reason of the Closing, except for any amounts that are Assumed Liabilities, including Cure Costs, being assumed by the Purchaser under the Agreement.

28.      Notwithstanding anything to the contrary herein, the Purchaser shall have the right, with respect to the Designation Right Assets, to notify the Debtors  of the Purchaser's intention to include an as Assigned Contract or as a Purchased Asset, any Designation Rights Asset, through July 2, 2020. The Debtor shall provide the counterparties of the Debtor's executory contracts and unexpired leases of the Purchaser's intention to assume any Designation Right Asset. For the avoidance of doubt, any reference in this order to "Assigned Contracts" or "Purchased Assets", unless otherwise indicated, shall include any Designation Right Asset that becomes an Assigned Contract and/or Purchased Asset after the date of this Order, subject to the terms and conditions of the Agreement.

29.      Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Order. This Order and the Agreement shall be binding upon and govern the acts of all such federal, state, and local governmental agencies and departments, including any filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other Persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise

27

record or release any documents or instruments, or who may be required to report or insure any title in or to the Purchased Assets.

30.        To the extent permitted by Section 525 of the Bankruptcy Code, no Governmental Authority may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the transactions contemplated by the Agreement.

31.        The Purchaser has not assumed or is otherwise not obligated for the Excluded Liabilities or any other of the Debtor's liabilities other than the Assumed Liabilities as set forth in the Agreement, and the Purchaser has not purchased any of the Excluded Assets. Consequently, all Persons, entities, governmental units, and all holders of Excluded Claims and Liens based upon or arising out of liabilities retained by the Debtor, including the Excluded Liabilities, are hereby enjoined from taking any action against the Purchaser, its affiliates, or subsidiaries, or the Purchased Assets to recover any Excluded Claims and Liens or on account of any liabilities of the Debtors other than Assumed Liabilities pursuant to the Agreement. All Persons and entities holding or asserting any Excluded Claims and Liens in the Excluded Assets are hereby enjoined from asserting or prosecuting such Excluded Claims and Liens or any cause of action against the Purchaser or the Purchased Assets for any liability associated with the Excluded Assets.

32.        The Purchaser is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of the Debtors or their estates including, including, without limitation, any bulk sales law, successor liability, or similar liability except

for the assumption of the Assumed Liabilities as expressly provided in the Agreement. Except to the extent the Purchaser assumes the Assumed Liabilities pursuant to the Agreement, neither the purchase of the Purchased Assets by the Purchaser, nor the fact that the Purchaser is using any of the Purchased Assets previously operated by the Debtor, will cause the Purchaser or any of its affiliates to be deemed a successor in any respect to the Debtor's business within the meaning of any foreign, federal, state or local revenue, pension, ERISA, ERISA Affiliate plan (including any pension or retirement plan), tax, including with respect to any claims against Debtors arising under the Code, labor, employment, environmental, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtor's liability under such law, rule or regulation or doctrine, including, without limitation, with respect to any Claims or liabilities owed or owing to the PBGC.

33.     Further, except as provided in the Agreement, transfer of title and possession of the Purchased Assets shall be free and clear of any Excluded Claims and Liens pursuant to any successor or successor-in-interest liability theory, including the following: (a) any employment or labor agreements, (b) all deeds of trust and security interests, (c) any pension or medical benefit plans of the Debtor, compensation or other employee benefit plans of the Debtor, including all Employee Benefit Plans, welfare, agreements, practices and programs, (d) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, Excluded Claims and Liens that might otherwise arise under, in connection with, or related to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of

1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Notification Act of 1988, (vii) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985 (unless otherwise provided for under such statute and any regulations promulgated thereunder), (x) state discrimination laws, (xi) state unemployment compensation laws or any other similar state laws, (xii) the Code, or (xiii) any other state or federal benefits or Excluded Claims and Liens relating to any employment with the Debtors or any predecessors, (e) environmental or other Claims or Excluded Claims and Liens arising from existing conditions on or before the Closing (including, without limitation, the presence of hazardous, toxic, polluting or contaminating substances or waste) that may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, *et seq*., or other state or federal statute, (f) any bulk sales or similar law, (g) any Tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and (h) any and all theories of successor liability, including any theories on successor products liability grounds or otherwise.

34.       The Purchaser and its affiliates shall have no liability, obligation, or responsibility arising from or related to Debtor's failure to comply with the WARN Act (29 U.S.C. §§ 210 *et seq*.) or state law equivalents. Except to the extent expressly included in the Assumed Liabilities, Purchaser and its affiliates shall have no liability, obligation, or responsibility under the Comprehensive Environmental Response Compensation and Liability Act, or any foreign,

federal, state or local labor, employment, or environmental law by virtue of the Purchaser's purchase of the Purchased Assets or assumption of the Assumed Liabilities.

35.     Except to the extent expressly included in the Assumed Liabilities, pursuant to Sections 105 and 363 of the Bankruptcy Code, all Persons and entities, including, without limitation, the Debtor, its estate, the Committee, all debt holders, equity security holders, the Debtor's employees or former employees, Governmental Authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding a Claim or Excluded Claim and Lien of any kind or nature whatsoever against, in, or with respect to any of the Debtors  or the Purchased Assets arising under or out of, in connection with, or in any way relating to the Debtor, the Purchased Assets, the operation of the Debtor's businesses before the Closing Date, or the transfer of the Purchased Assets to the Purchaser, shall be forever barred, estopped, and permanently enjoined from: (1) commencing or continuing, in any manner, any action or other proceeding against Purchaser, its affiliates, successors or assigns, assets (including the Purchased Assets) or properties; (2) enforcing, attaching, collecting or recovering, in any manner, any judgment, award, decree, or order against Purchaser, its affiliates, successors or assigns, assets, or properties; (3) creating, perfecting, or enforcing any liens, claims, encumbrances or other interests against the Debtors as against Purchaser, or its affiliates, successors, assigns, assets (including the Purchased Assets) or properties; (4) asserting any setoff, right of subrogation, or recoupment of any kind for any obligation of any of the Debtors as against any obligation due to Purchaser, or its affiliates, successors, or assigns or their respective assets, including the Purchased Assets; or (5) commencing or continuing any action,

in any manner or place, that does not comply, or is inconsistent with, the provisions of this Sale Order or the agreements or actions contemplated or taken in respect thereof

36.     Without limiting the generality of the foregoing, except as otherwise specifically set forth in the Agreement, the Purchaser shall not assume or be obligated to pay, perform or otherwise discharge any workers' compensation debts, obligations, and liabilities of the Debtors arising pursuant to state law or otherwise. This Order is intended to be all inclusive and shall encompass, without limitation, workers' compensation Claims or suits of any type, whether now known or unknown, whenever incurred or filed, which have occurred or which arise from work-related injuries, diseases, death, exposures, intentional torts, acts of discrimination, or other incidents, acts, or injuries before the Closing Date, including, without limitation, any and all workers' compensation Claims filed or to be filed, or reopenings of those Claims, by or on behalf of any of the Debtor's current or former employees, persons on laid-off, inactive or retired status, or their respective dependents, heirs or assigns, as well as any and all premiums, assessments, or other obligations of any nature whatsoever of the Debtors  relating in any way to workers' compensation liability, except as otherwise specifically set forth in the Agreement.

37.     The Debtors are authorized and required, without further need of any authorization from the Court, to transfer immediately, and in no event later than 10 days, to the Purchaser any cash or receipts received by the Debtors that should have been submitted to or is the property of the Purchaser under the Agreement.

38.     Subject to the terms of the Agreement, the Agreement and any related agreements and/or instruments may be modified, amended, or supplemented and the terms thereof waived by

written agreement of the Debtor and the Purchaser, without further action or order of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not materially adverse to the Debtors and substantially conforms to, and effectuates, the Agreement and any related agreements and/or instruments and this Order; provided, further, that the Debtors shall provide the Committee with three (3) business days' advance notice of any such modification, amendment, or supplement.

39.     The failure specifically to include any particular provisions of the Agreement or any related agreements or instruments in this Order shall not diminish or impair the effectiveness of the Agreement or the provisions thereof, it being the intent of the Court, the Debtor, and the Purchaser that the Agreement and any related agreements and instruments are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order before Closing.

40.     Nothing contained in this Order shall affect or impair the claims, rights, and powers of the United States of America; provided, however, that, except as otherwise provided in the Agreement, any such claims, rights, or powers of the United States of America shall not be construed in any way as Assumed Liabilities under this Order or the Agreement.

41.     No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the sale and the transactions contemplated by the Agreement.

42.     This Order and the Agreement shall be binding upon and govern the acts of all Persons and entities, including, without limitation, the Debtors  and the Purchaser, their respective successors, and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed or any trustee appointed in a chapter 7 case if these cases are converted

from chapter 11, all creditors of any of the Debtors (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to the Purchased Assets.

43.       Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in these chapter 11 cases, or in any subsequent or converted cases of the Debtors in these cases under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

44.       Notwithstanding Bankruptcy Rules 6004, 6006, and 7062, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any person or entity obtaining a stay pending appeal, the Debtor and the Purchaser are free to close under the Agreement at any time, subject to the terms of the Agreement. In the absence of any person obtaining a stay pending appeal, if the Debtor and the Purchaser close under the Agreement, the Purchaser shall be deemed to be acting in "good faith" and shall be entitled to the protections of Section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

45.       The automatic stay provisions of Section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the terms and conditions of the Agreement and the provisions of this Order.

46.     Notwithstanding any provision in this Order, the determination of whether the Debtor may assume and assign certain contracts and leases pursuant to Section 365 of the Bankruptcy Code, including but not limited to, determination as to adequate assurance of future performance by the Purchaser as to each of the following listed parties, shall be expressly reserved for further proceedings pending the Purchaser's further determination whether to assume and have assigned the contract or lease the Debtor has with these parties, at which time the Purchaser and each of these listed objecting parties may schedule a further hearing before the Court on the issue of adequate assurance of future performance on at least seven (7) days' prior notice to the parties affected: Preferred Premium Properties, LLC [Informal Objection]; 522 Highway LLC [Informal Objection]; Marvin Espinola [Informal Objection]; and Faith Summerson, Trustee under the Faith Summerson Family Trust [Informal Objection] (collectively, the "Objecting Parties").  Provided, however, any timely objection to the proposed assumption and assignment of an Assigned Contract or related Cure Cost that remained unresolved as of the commencement of the Sale Hearing shall be heard at a later date as may be fixed by the Court.  Pending such further determinations, no assets associated with the Objecting Parties' contracts and leases shall be deemed sold or assigned to Purchaser, and the rights of the Objecting Parties under Section 365 of the Bankruptcy Code with respect to adequate assurance of future performance are fully preserved. Provided, however, that: (a) the foregoing Contracts and Leases shall be Designation Rights Assets until such time as the Court resolves such outstanding objection, and Purchaser shall be liable for paying any Continuation Costs for such Designation Rights Assets; and (b) the failure of the Purchaser to provide adequate assurance of future performance at such hearing with respect to any Designation Right Asset and any resulting

35

failure of assignment of such Designation Right Asset shall not result in any adjustment to the Purchase Price or otherwise give rise to any liability on the part of the Seller.  Furthermore, nothing in this Order shall prejudice the right of any party to object to the assumption and assignment of any Contract in the event that the Debtor breaches its obligations under the Contract after the date hereof and prior to the assumption and assignment of the Assigned Lease; provided, however, that the counter party to any such Contract must give the Debtor notice in writing by email to sborders@kslaw.com of the breach within three (3) business days of such counter party having knowledge of the occurrence of the breach.

47.     Further, pursuant to the Agreement, obligations owed to the Objecting Parties shall be fulfilled as they come due, including any rent payments or requirements related to insurance policies provided in the Objecting Parties' contracts and leases. Notwithstanding any provision of this Order, the Objecting Parties shall retain all of their rights regarding the Debtor's timely performance of all obligations under the Objecting Parties' contracts and leases, including without limitation their rights under Section 365(d)(3) of the Bankruptcy Code, until such time as the Debtor rejects or assumes and assigns the Objecting Parties' contracts and leases.

48.     Notwithstanding any provision in this Order, the Cure Costs, or any of the previously served Cure Costs Schedules, the agreement between the Debtor and NCR Corporation ("NCR") described in the Cure Costs Schedules as Master Agreement Terms & Conditions for Purchases from NCR in the United States (as amended, the "NCR Agreement") shall be assumed and assigned to Purchaser upon the following conditions: (i) payment to NCR at Closing in the amount of $695,000 as cure of the Debtor's existing prepetition defaults under the NCR Agreement; and (ii) payment to NCR at Closing for postpetition amounts owed by the

Debtor or Purchaser coming due on or before Closing in the estimated amount of $230,000. Furthermore, Purchaser agrees to pay NCR after Closing in the ordinary course of its business and within payment terms all amounts incurred by the Debtor or Purchaser prior to Closing but coming due after Closing in the capped amount of $100,000.

49.    MetroAir & Refrigeration Services, Inc. ("MetroAir") asserts a secured claim in the amount of $52,539.52 for labor and goods provided to the Debtors.  On or before the date that is seven (7) days after the Closing Date, the Debtors shall either pay the amounts due to MetroAir or file an objection to its Proof of Claim.  On the Closing Date, the Debtors shall reserve and segregate an amount equal to $52,539.52 for payment of the MetroAir's claim.

50.    On or prior to the Closing Date, the Debtors shall pay to Oline W. Price, Revenue Commissioner for Lee County, Alabama the unpaid ad valorem taxes due in an amount equal to $232.20.

51.    This Court shall retain exclusive jurisdiction to implement and enforce the terms and provisions of this Order, the Bidding Procedures Order, and the Agreement in all respects and to decide any disputes concerning this Order, the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Order including, without limitation, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Purchased Assets and any Assigned Contracts, and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Purchased Assets free and clear of all Excluded Claims and Liens and successor liability and to enforce the injunctions set forth herein. This Court shall retain

jurisdiction over any issues relating to the Agreement and to enforce this Order pursuant to 11

U.S.C. § 105 and Bankruptcy Rule 7070.

[END OF ORDER]

Prepared and presented by:

*/s/  Sarah R. Borders*
Sarah R. Borders
Georgia Bar No. 610649
Jeffrey R. Dutson
Georgia Bar No. 637106
Leia Clement Shermohammed
Georgia Bar No. 972711
**KING & SPALDING LLP**
1180 Peachtree Street NE
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Email: sborders@kslaw.com
Email: jdutson@kslaw.com
Email: lshermohammed@kslaw.com

*Counsel for the Debtors in Possession*


Reviewed and Approved By:

*/s/ Jonathan T. Edwards*
JONATHAN T. EDWARDS
Georgia Bar No. 13400
C. JORDAN MYERS
Georgia Bar No. 201008
**ALSTON & BIRD LLP**
One Atlantic Center
1202 West Peachtree Street
Atlanta, Georgia 30309-3424
(W) 404-881-4985
jonathan.edwards@alston.com
jordan.myers@alston.com

*Counsel for Purchaser*