**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: : | |
| : | Chapter 11 |
| **THE KRYSTAL COMPANY, et al.** : | |
| : | Case No. 20-61065 (PWB) |
| **Debtors.** : | (Jointly Administered) |
| : | |

**LIMITED OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER REGARDING DISMISSAL OF THE DEBTORS' CHAPTER 11 CASES AND GRANTING RELATED RELIEF**

COMES NOW Live Oak Restaurant Services, LLC ("**LORS**") and T.B. of Starke, Inc. ("**Starke**"), by and through their undersigned counsel, and hereby file this limited objection to the *Debtor's Motion for Entry of an Order Regarding Dismissal of the Debtors' Chapter 11 Cases and Granting Related Relief* [Dkt. No. 596] respectfully showing as follows:

1.　On or about September 9, 2019 and September 16, 2019, LORS and Starke, respectively, entered into Asset Purchase Agreements ("**APAs**") with The Krystal Company ("**Krystal**" or the "**Debtor**") reflecting a sale under which Starke and LORS agreed to sell, and Krystal Company agreed to purchase, the operations, assets, and contractual rights of Krystal-branded restaurants in Lake City, Florida and Live Oak Florida ("**Sale Assets**"). The primary consideration for the sale of each location was $100,000.00 (the respective "**Purchase Price**"). The combined purchase price was $200,000.00. The sale transactions closed almost immediately, and Krystal took immediate possession and control of the Sale Assets. Under the terms of the APAs, Starke and LORS were granted respective liens in the Sale Assets, and perfected their liens properly in the State of Florida. In addition, liens were also recorded in the State of

1

Tennessee. The APAs provided that payment of the Purchase Price ($100,000.00 each) was to be due by March 1, 2020.

2. Krystal and its related entities filed Chapter 11 Voluntary Petitions on January 19, 2020 (the "**Petition Date**"). As will be set forth below, Starke and LORS have not been paid either Purchase Price, even though both became due on March 1, 2020. Starke and LORS have sought without success the payment of the Purchase Price from the Debtor Krystal Company and from Krystal Restaurants, LLC - the purchaser of certain assets (the "**Purchaser**"). The salient fact is that either the Debtor or Purchaser has ownership and possession of the Sale Assets despite having not paid for them.

3. On February 21, 2020, Debtor filed, inter alia, its Summary of Schedules and Schedules A-H [Doc. No. 182] in which it (a) acknowledged the Purchase Price obligations as undisputed secured claims in favor of Starke and LORS on Schedule D (the "**Scheduled Secured Claims**") and (b) the APAs as executory contracts on Schedule G. This filing reflected that although the Debtor's obligation to pay the Purchase Prices was binding as of the Petition Date, the act of paying the Purchase Prices was March 1, 2020.

4. On May 6, 2020, although not required to do so to the extent it agreed with the Debtor's listing of the Scheduled Secured Claims, Starke and LORS filed Proofs of Claim. *See* Claim Nos. 629 and 630. In addition, the Proofs of Claim made specific reference to the fact that the Debtor had scheduled the unpaid Purchase Price due in the Scheduled Secured Claims.

5. On May 11, 2020, as part of its contemplated sale transaction with the Purchaser, Debtor filed its *Supplemental Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases* [Doc. No. 441] ("**Supplemental Notice**"), in which Debtor

2

purported to list all "Cure Amounts" due as of April 30, 2020. Despite the fact that Debtor had acknowledged that its payment of the Purchase Prices was due by March 1, 2020, in the Supplemental Notice it listed the "Cure Amount" on both APAs as $0.00. In retrospect, the Debtor's filing was inconsistent with its previous filing identifying the Scheduled Secured Claim.

6. On May 13, 2020, the Debtor filed the *Notice Regarding Supplemental Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases* [Doc. No. 460] (the "**Corrected Supplemental Notice**"), which states in relevant part:

> **PLEASE TAKE NOTICE** that on May 11, 2020, the Debtors filed the *Supplemental Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases* [Docket No. 441] (the "Supplemental Cure Notice").
>
> **PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file this *Notice Regarding Supplemental Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases* to clarify that the Cure Costs set forth on Exhibit A to the Supplemental Cure Notice on account of unexpired leases reflect unpaid monetary obligations as of April 30, 2020. **The Cure Costs set forth on Exhibit A to the Supplemental Cure Notice on account of executory contracts reflect unpaid monetary obligations as of the Petition Date**.

(Emphasis added in final sentence.)

7. On May 13, 2020, the Court entered its *Order (A) Approving Sale Motion and Asset Purchase Agreement, (B) Authorizing the Sale of Assets Outside the Ordinary Course of Business and Free and Clear of All Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption and Sale and Assignment of Certain Executory Contracts and Unexpired Leases, and (D) Granting Related Relief* [Doc. No. 468] (the "**Sale Order**"). In the Sale Order, the Court retained jurisdiction to consider disputes regarding its implementation.

3

8. On information and belief, on or about May 18, 2020, the sale of substantially all of the Debtor's assets to Purchaser occurred, presumably as authorized by the Sale Order. On further information and belief, the consideration for the sale was a "credit bid" and the assumption by Purchaser of certain liabilities up to an "Assumed Liabilities Cap" of $21,500,000.00. LORS and Starke assert that the Purchaser assumed the Debtor's obligations under the APAs, including the obligation to pay the Purchase Prices under the Assumed Liabilities Cap. *See* Doc. No. 577.

9. Contemporaneously herewith, LORS and Starke have filed or are filing two adversary proceedings seeking a declaratory judgment and payment of the Purchase Prices (the "**Adversary Proceedings**").

## Limited Objection

10. Bankruptcy jurisdiction normally ends once the estate is settled and property transferred. *Free-Tan Corp. v. 49-50 Assocs. (In re Liberty Music and Video, Inc.)*, 50 B.R. 379 (S.D.N.Y. 1985). Dismissal of a bankruptcy case normally results in dismissal of related adversary proceedings, but the court has discretion to retain jurisdiction. *Porges v. Gruntal & Co. (In re Porges)*, 44 F.3d 159, 162-63 (2d Cir. 1995) (although the "general rule favors dismissal" of adversary proceedings when the underlying bankruptcy case is terminated, this is not "automatic"); *Fid. & Dep. Co. of Md. v. Morris (In re Morris)*, 950 F.2d 1531, 1534 (11th Cir. 1992) (same); *In re Davison*, 186 B.R. 741, 742-43 (Bankr. N.D. Fla. 1995) ("actions that depend upon the existence of the bankruptcy" -- here an action to recover preferential transfers -- must be dismissed when the bankruptcy case is dismissed); *Roddam v. Metro Loans, Inc. (In re Roddam)*, 193 B.R. 971 (Bankr. N.D. Ala. 1996) (ordinarily, dismissal of bankruptcy case will

result in dismissal of all pending adversary proceedings, but considerations of judicial economy, convenience and fairness may permit proceeding to continue); *In re Hanks*, 182 B.R. 930 (Bankr. N.D. Ga. 1995) (court lacks jurisdiction to enforce settlement which required dismissal of case; after dismissal, enforcement of the settlement was a contract claim to be disposed of under applicable state law).

11. To the extent, that dismissal of the Debtors' Chapter 11 cases would create a dismissal of the Adversary Proceedings, the LORS and Starke object to dismissal.

WHEREFORE, LORS and Starke pray the Court allow the Adversary Proceedings to move forward and for such other relief as is just and proper.

Respectfully submitted, this 18th day of September, 2020.

**STONE & BAXTER, LLP**

/s/ Matthew S. Cathey
Matthew S. Cathey
Georgia Bar No. 759547
Thomas B. Norton
Georgia Bar No. 997178

577 Mulberry Street, Suite 800
Macon, Georgia 31201
(478) 750-9898
mcathey@stoneandbaxter.com
tnorton@stoneandbaxter.com

Counsel for Live Oak Restaurant Services, LLC and T.B. of Starke, Inc.

5

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2020, a true and correct copy of the foregoing was served via the Court's Case Management/Electronic Case Filing system upon all parties entitled to received notice in this case pursuant to BLR 5005-8.

This 18th day of September, 2020.

/s/ Matthew S. Cathey
Matthew S. Cathey
Georgia Bar No. 759547