**IT IS ORDERED as set forth below:**



**Date: November 12, 2020**

_____

**Paul W. Bonapfel
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE KRYSTAL COMPANY, *et al.*,[1] | ) | Case No. 20-61065 (PWB) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**MEMORANDUM REGARDING OBJECTIONS TO
DISMISSAL OF THE DEBTORS' CHAPTER 11 CASES**

The Krystal Company (the "Debtor") and related companies[2] filed chapter 11 cases in this Court on January 19, 2020. With the authorization of this Court, the Debtor has sold all of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: The Krystal Company (4140); Krystal Holdings, Inc. (5381); and K-Square Acquisition Co., LLC (8916). The location of the Debtors' corporate headquarters and service address is: 1455 Lincoln Parkway, Suite 600, Dunwoody, Georgia 30346.

[2] The related companies are the holders of equity interests in The Krystal Company and have no significant assets other than ownership of those interests.

its assets.  As the Court describes below, under the terms of the sale and a related settlement, all postpetition obligations of the Debtor are being paid.  The sale did not, however, produce enough money to pay anything to creditors who hold general unsecured claims that arose prior to the filing of the case ("prepetition claims," in bankruptcy terminology).

Because the Debtor now has no assets and because all obligations that arose after the bankruptcy filing ("postpetition claims") have been paid, the Debtor has requested dismissal of the case.  The Court has received objections to dismissal from, among others, Linda S. Mitchell, Cecelia Jenks, Southeast Gas, Black Horse Studio, Jerry Van Hoose, Mona L. Berry, Bessie A. Berry, Khaaliyah Berry, and Adrianna C. Dukes.

The Court sympathizes with the problems that the failure of the Debtor's business has created for these objecting parties.  One person has lost the ability to feed poor people and help a high school student attend college because gift cards and a scholarship that the Debtor is obligated to provide under the terms of a settlement agreement for wrongful termination of employment will not be honored.  Another individual has not been paid for services rendered in good faith in December 2019, right before the bankruptcy filing.  A small business has lost about $ 18,700 for services rendered and expenses incurred that will not be paid.  A customer injured at a Krystal restaurant has not received compensation for his injuries.  Four workers who were laid off due to the Coronavirus pandemic are struggling to make ends meet for their families and have had difficulty receiving unemployment compensation.   There are a lot of other people and companies with valid debts that the Debtor has not paid, and it is likely that many of them are suffering similar financial hardship.

One of the objectors made this observation:

. . . Krystal [should] be required to pay its debts to us for this project. There has been too much corporate welfare in this country this summer to the gross detriment of small businesses and the American people. Krystal should not be a part of that – their marketing team and other high pay level execs still have jobs, their restaurants are still open. They should not be released from their moral and legal responsibilities when they still have the means to pay the debts to the small businesses who have worked hard and spent their own money for them. The small businesses who make this country what it is and without whom there would be no large corporations.

Sadly, the Court has no remedy for these creditors. Unfortunately, not dismissing the bankruptcy case will not make anything better. A new, separate company has purchased the assets of the Debtor and now operates the restaurants that were not closed, and it is responsible only for certain debts that it assumed. "Old Krystal" – the Debtor in this case – is no longer operating and does not have any assets left.

The Court can, however, attempt to explain what has happened in this case, why it is appropriate to dismiss this case, and how the unfortunate result for the objectors (and many others in similar circumstances) arises under the bankruptcy laws as enacted by Congress.

### What Happened in This Case?

The Debtor's largest creditor was a group of lenders including Wells Fargo Bank. The Court refers to this claim as the claim of "Wells Fargo."

On May 13, 2020, the Court entered an Order approving a settlement agreement, which involved the Committee of Unsecured Creditors (the "Committee"),[3] that established the amount owed on the Wells Fargo claim as approximately $ 51 million and that agreed that the claim was secured by a lien or security interest in all of the Debtor's assets.[4] In general, if a creditor has a lien on security interest in an asset, the creditor is entitled to the proceeds from the sale of the asset before other creditors get any of the sales proceeds.

During the course of the case, the Debtor, Wells Fargo, and the Committee determined that the best way to pay creditors in this case would be to sell the assets of The Krystal Company as a going concern. The idea was to market Krystal to potential buyers and investors and hopefully attract several bidders who would engage in an auction. The hope was that a buyer would pay enough to permit payment of Wells Fargo and to have money left to pay unsecured claims, at least in part.

To that end, after substantial efforts to find interested buyers, the Debtor sought approval of an agreement with Krystal Acquisition, LLC (a separate company) to purchase all of the assets for $ 1,000,000 plus the assumption of certain liabilities, subject to higher and better bids. The assumed liabilities, in general, were obligations that the Debtor incurred after the bankruptcy filing in the operation of its business and obligations under certain store leases and other

---

[3] The Bankruptcy Code provides for the appointment of a committee of unsecured creditors in a chapter 11 case to represent the interests of general unsecured creditors, such as the objectors.

[4] In April 2018, investors made an equity investment of about $ 59.8 million in the Debtor, which was used to reduce the Wells Fargo debt by about $ 42 million and to fund remodeling costs, marketing expenditures, and working capital needs in an effort to improve the Debtor's financial situation and business operations at the time. The investors, like the objecting parties, will not receive anything in this case on account of this investment.

4

agreements that the purchaser needed to assume in order to continue the operations of the Krystal stores after the acquisition.

The Debtor later withdrew its request to enter into the agreement with Krystal Acquisition, LLC, and instead filed a motion to sell its assets to DB KRST Investors, LLC, the sub-agent for Wells Fargo, acting as purchaser for the benefit of Wells Fargo and the other lenders in the group. In addition, the Debtor sought approval of an agreement among the Debtor, DB KRST Investors, LLC, and the Committee relating to the sale, the assumption of the Debtor's obligations arising after the filing of the petition, the assumption of obligations under certain other leases and other agreements that DB KRST Investors wanted in order to continue operating the Krystal stores after the acquisition, the amount and secured status of the Wells Fargo claim, and a budget for the wind-down of the chapter 11 case after closing of the sales transaction.

The material effects of the proposed settlement and sale were that DB KRST Investors, LLC, would purchase the assets in exchange for: (1) reduction of the amount of the Wells Fargo debt by $ 27 million (leaving an unpaid claim of about $ 24 million); (2) assumption by DB KRST Investors of postpetition debts incurred in the ordinary course of business, including attorneys and other professionals employed by the Debtor and the Committee for their work in the case; (3) assumption of liabilities under certain leases and other agreements; and (4) use of cash to pay expenses necessary to pay postpetition obligations the Debtor had incurred during the case and to "wind down" the chapter 11 case.

The Court approved the settlement and the sale in Orders entered on May 13, 2020. Among other things, the Court determined that the contemplated transactions were in the best

5

interests of creditors because no better terms appeared possible and because the alternative would be the liquidation of the Debtor's assets through the closing of its stores. The closing of stores would mean the loss of jobs for employees and the loss of a tenant for all of the landlords. Liquidation would not produce enough money to pay these claims, and would most likely result in more money being owed on the Wells Fargo claim than the $ 24 million remaining after the transaction.

After approval of the sale and the settlement, the Debtor, DB KRST Investors, and the Committee worked to resolve various disputes involving the amount that had to be paid to keep the leases in effect that the buyer wanted to retain and other issues. The attorneys and other professionals filed applications for the court to approve compensation for the work they did during the case. Obligations incurred in the ordinary course of business after the bankruptcy filing were paid.

After working through all of this, the Debtor moved to dismiss the case because it has no remaining assets, and nothing can be done to pay other creditors.

## Why Should This Case Be Dismissed?

A chapter 11 bankruptcy case can end in one of three ways: (1) confirmation (court approval) of a plan of reorganization for the payment of creditors; (2) conversion to a case under chapter 7 for the appointment of a trustee, liquidation of assets by the trustee, and distribution of the proceeds to creditors in accordance with the priorities that Congress has established in the Bankruptcy Code; or (3) dismissal.

With no assets and no business, the Debtor cannot possibly propose a plan for reorganization.

Conversion to chapter 7 would be futile. Again, the Debtor has no assets, so a chapter 7 case could not possibly result in any benefit to anyone.

The only alternative, therefore, is to dismiss the case. Nothing can be accomplished in the bankruptcy case to produce any money to pay the objectors and other creditors.

## Why Do the Bankruptcy Laws Permit This?

A primary purpose of the bankruptcy laws is to preserve the going concern value of a distressed business in order to maximize payment to creditors. Preservation of going concern value also avoids loss of jobs that occurs when a company shuts down.

Preservation of most of Krystal's business is what happened in this case. Together, the sale and the related settlement of matters involving the Wells Fargo claim resulted in the preservation of the Krystal restaurant business as a going concern under new ownership and the realization of more value than would have occurred if its assets had been sold in piecemeal sales at each location. Although many employees lost jobs arising out of lay-offs during the pandemic or because some locations closed, many others continued to have employment.

What this chapter 11 case accomplished was the preservation of jobs, the payment of rent in full under most leases, and a reduction in amount of the Wells Fargo debt. It occurred through a transparent process in which unsecured creditors, such as the objectors, were able to participate through the Committee as their representative. And although it is usually not economical for a single unsecured creditor to get involved in the process, bankruptcy procedure contemplates that unsecured creditors may be heard on anything that happens in the case.

None of this, however, benefitted unsecured creditors like the objectors, who will receive no payment on their claims and have suffered as a result. Unfortunately, the bankruptcy system

has no answer to this difficulty.  The problem arises from the economic realities of the Debtor's situation, not the way the bankruptcy laws work.

It cannot be good when a company does not pay its debts.  But when a creditor, such as Wells Fargo, has a claim on all of a debtor's assets for an amount that is substantially in excess of the realizable value of the assets, payment of other debts is not possible under any set of circumstances when no other sources of payment exist.

In this case, the process worked for some parties, such as employees and landlords.  The result for others, like the objectors, was a disaster.  The point is that the disaster resulted from financial circumstances, not the operation of the bankruptcy laws.

The Court understands why the objection quoted earlier characterizes this situation as "corporate welfare" and observes that the laws benefit high-paid executives who still have their jobs with restaurants open.  The Court, however, respectfully disagrees.

The Court does not think it is "corporate welfare" when a business is sold (or reorganized) with the result that the owners of the company lose their investment as owners, as occurred in this case.  If high-paid executives still have jobs, it is because they are now working for the purchaser, who did not have to hire them.  It is true that Krystal restaurants are still open, but they belong to the new owner, not to the Debtor, which has no interest in them.

The Court agrees with the objector's observation that companies should not be released from their debts when they have the means to pay them.  The problem is that the Debtor here has no prospect for paying its debts.[5]

---

[5]  As a technical bankruptcy matter, the Debtor is not being released from its debts.  Dismissal of the case will not result in a discharge of its debts, so the Debtor still owes them.  The

8

**Conclusion**

It has been said that, in many bankruptcy cases, there are no good alternatives, only less bad ones.  As financial realities in this case took hold, it became clear that, for most creditors, including the objectors, there were not even "less bad" alternatives.  The Court is saddened that it can offer only an explanation for what happened and why.

For the reasons stated above, the Court must overrule the objections, and will enter a separate order dismissing this case.

**[End of Memorandum]**

**THIS MEMORANDUM HAS NOT BEEN PREPARED FOR
PUBLICATION AND IS NOT INTENDED FOR PUBLICATION**

---

technical point is of no importance, however, because the Debtor has no assets or business operations that would permit it to pay any debts.

9

**Distribution List**

Sarah Robinson Borders
King & Spalding LLP
1180 Peachtree Street
Atlanta, GA  30309

Thomas W. Dworschak
Office of the U.S. Trustee
Room 362
75 Ted Turner Drive
Atlanta, GA  30303

Jason R. Adams
Kelley Drye & Warren LLP
101 Park avenue
New York, NY 10178

Cecilia Jenks
6315 Overlook Club Circle
Suwanee, GA  30024

James K. Daugherty
Southeast Gas
715 MLK Jr Expressway
Andalusia, AL  36420

Linda S. Mitchell
100 Live Oak Lane
Cordele, GA  31015

Jennifer Bostic
Black Horse Studio
310 East Third St.
Winston-Salem, NC 27101

Mona L. Berry
526 North 3rd Street
Griffin, GA  30223

Bessie A. Berry
526 North 3rd Street
Griffin, GA  30223

Adrianna Dukes
526 North 3rd Street
Griffin, GA  30223

Khaaliyah Berry
526 North 3rd Street
Griffin, GA  30223

Jerry Van Hoose
c/o Carroll & Turner, P.S.C.
Attorneys at Law
56 Court St.
Monticello, KY  42633